**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EVY GRU, Individually and on Behalf of All
Others Similarly Situated,

      Plaintiff,

          v.

AXSOME THERAPEUTICS, INC.,
HERRIOT TABUTEAU, NICK PIZZIE,
MARK JACOBSON, CEDRIC O'GORMAN,
and KEVIN LALIBERTE,

      Defendants.

No. 1:22-CV-03925 (LGS)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**MORGAN, LEWIS & BOCKIUS LLP**

Michael L. Kichline (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
michael.kichline@morganlewis.com

Emily E. Renshaw
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
emily.renshaw@morganlewis.com

Matthew C. McDonough (*pro hac vice*)
Michael A. Hacker
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
matthew.mcdonough@morganlewis.com
michael.hacker@morganlewis.com

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ........................................................................................................................... 5

I.      PLAINTIFFS FAIL TO STATE A CLAIM
        UNDER SECTION 10(B) OF THE EXCHANGE ACT ................................................. 5

        A.      Plaintiffs Fail To Plead Scienter With The Required Particularity ...................... 5

                1.      Plaintiffs Fail Adequately To Allege
                        That Any Defendant Had Any Motive To Defraud. ................................. 6

                2.      Plaintiffs Fail To Plead Specific Facts
                        Constituting Strong Circumstantial Evidence Of Scienter. ...................... 7

                        a.      The Confidential Witness Allegations
                                Do Not Give Rise To A Strong Inference Of Scienter. ................ 8

                        b.      Plaintiffs' Status And Access, "Core
                                Operations," And "SOX Certification" Allegations
                                Do Not Give Rise To A Strong Inference Of Scienter. ............... 11

                        c.      Alleged Issues With AXS-05
                                Do Not Give Rise To Scienter. .................................................... 12

                        d.      The "Unresolved" Statement Does Not
                                Give Rise To A Strong Inference Of Scienter. ........................... 13

                3.      Plaintiffs Improperly Employ Group Pleading. ..................................... 14

                4.      Opposing Inferences Of Nonculpable Conduct
                        Are More Plausible Than Any Inference Of Fraud. ............................... 14

        B.      Plaintiffs Fail To Identify Any
                Actionable Material Misrepresentation Or Omission. ...................................... 15

                1.      Defendants' Forward-Looking Statements Are Not Actionable. ............ 15

                        a.      Defendants' Forward-Looking Statements Are Protected
                                By The Safe Harbor And The Bespeaks Caution Doctrine. ........ 15

                        b.      Defendants' Forward-Looking Statements Are Also
                                Protected By The Second Prong Of The Safe Harbor. ............... 19

                2.      The Remaining Challenged Statements Are Not Actionable. ................. 19

                        a.      Accurate Statements Of Fact Are Not Actionable. ...................... 19

                        b.      Opinion Statements Are Not
                                Actionable As A Matter Of Law. ................................................. 20

## TABLE OF CONTENTS
(continued)

**Page**

c.      Vague And Indefinite Statements Of
Optimism Are Immaterial As A Matter Of Law...........................21

3.     Plaintiffs Fail To Identify Any
Actionable Omission Of Material Fact. ...................................................21

a.      Axsome Had No Duty To Disclose Alleged "CMC Issues.".......22

b.      No Challenged Statement
Was "So Incomplete As To Mislead.".........................................22

4.     Defendants' SOX Certifications Are Not Actionable.............................23

C.     Plaintiffs Fail To Identify Any Statement Actually Made By Dr.
O'Gorman. ...............................................................................................24

D.     Plaintiffs Fail Adequately To Allege Loss Causation..........................24

II.     PLAINTIFFS FAIL TO STATE A CLAIM
UNDER SECTION 20(A) OF THE EXCHANGE ACT. ...............................................25

CONCLUSION...............................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aceto Corp. Sec. Litig.*,
 2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)............................................................................11

*In re Aegon N.V. Sec. Litig.*,
 2004 WL 1415973 (S.D.N.Y. June 23, 2004) ........................................................................19

*In re Aratana Therapeutics Inc. Sec. Litig.*,
 315 F. Supp. 3d 737 (S.D.N.Y. 2018)..............................................................................16, 17

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007)..................................................................................................5, 25

*Backman v. Polaroid Corp.*,
 910 F.2d 10 (1st Cir. 1990)....................................................................................................23

*Basic v. Levinson*,
 485 U.S. 224 (1988)................................................................................................................21

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
 506 F. App'x 32 (2d Cir. 2012) ...............................................................................................2

*In re Bristol Myers-Squibb Sec. Litig.*,
 312 F. Supp. 2d 549 (S.D.N.Y. 2004)......................................................................................7

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
 752 F.3d 173 (2d Cir. 2014)...................................................................................................21

*In re CRM Holdings, Ltd. Sec. Litig.*,
 2012 WL 1646888 (S.D.N.Y. May 10, 2012) ........................................................................14

*Dempsey v. Vieau*,
 130 F. Supp. 3d 809 (S.D.N.Y. 2015)....................................................................................20

*In re DRDGOLD Ltd. Sec. Litig.*,
 472 F. Supp. 2d 562 (S.D.N.Y. 2007)......................................................................................8

*ECA, Local 134 IBEW Joint Pension Fund Tr. of Chi. v. JP Morgan Chase Co.*,
 553 F.3d 187 (2d Cir. 2009)......................................................................................................7

*In re EDAP TMS S.A. Sec. Litig.*,
 2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) (Schofield, J.) ........................................ *passim*

*In re Fannie Mae 2008 Sec. Litig.*,
    742 F. Supp. 2d 382 (S.D.N.Y. 2010)..................................................................................15

*In re Ferro Corp. Sec. Litig.*,
    2007 WL 1691358 (N.D. Ohio June 11, 2007)......................................................................8

*Frederick v. Mechel OAO*,
    475 F. App'x 353 (2d Cir. 2012) ...........................................................................................7

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019)................................................................................................25

*In re Garrett Motion Inc. Sec. Litig.*,
    2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) ......................................................................1, 6

*In re Genzyme Corp.*,
    2012 WL 1076124 (D. Mass. Mar. 30, 2012),
    *aff'd sub nom.*, 754 F.3d 31 (1st Cir. 2014)......................................................................22

*Gillis v. QRX Pharma Ltd.*,
    197 F. Supp. 3d 557 (S.D.N.Y. 2016)....................................................................................7

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)..........................................................................6, 10, 11

*Glazer v. Formica Corp.*,
    964 F.2d 149 (2d Cir. 1992)...........................................................................................22, 23

*In re GPC Biotech AG Sec. Litig.*,
    2009 WL 5125130 (S.D.N.Y. Dec. 29, 2009) ......................................................................21

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
    445 F. App'x 368 (2d Cir. 2011) ...........................................................................................8

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020)....................................................................................................5

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011).................................................................................................7, 12, 24

*Lefkowitz v. Synacor, Inc.*,
    2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019) (Schofield, J.), *aff'd sub nom.*,
    832 F. App'x 54 (2d Cir. 2020) ...........................................................................................17

*In re Lions Gate Entm't Corp. Sec. Litig.*,
    165 F. Supp. 3d. 1 (S.D.N.Y. 2016)....................................................................................6, 14

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)..........................13

*Missere v. Gross*,
   826 F. Supp. 2d 542 (S.D.N.Y. 2011)...............................................................................5

*In re Neurotrope, Inc. Sec. Litig.*,
   315 F. Supp. 3d 721 (S.D.N.Y. 2018) (Schofield, J.) ...............................................18

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ...............................................................................1, 6

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
   563 F. Supp. 3d 259 (S.D.N.Y. 2021)..............................................................................24

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015).....................................................................................................20

*In re Regeneron Pharm., Inc. Sec. Litig.*,
   2005 WL 225288 (S.D.N.Y. Feb. 1, 2005)......................................................................6

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)...........................................................................15, 16, 21

*Rudman v. CHC Grp. Ltd.*,
   217 F. Supp. 3d 718 (S.D.N.Y. 2016)...............................................................................2

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
   75 F.3d 801 (2d Cir. 1996)..............................................................................................12

*In re Sanofi Sec. Litig.*,
   155 F. Supp. 3d 386 (S.D.N.Y. 2016)..............................................................................23

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015)...............................................................................22

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010).........................................................................15, 16, 19

*In re Smith Barney Transfer Agent Litig.*,
   884 F. Supp. 2d 152 (S.D.N.Y. 2012)...............................................................................25

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)...............................................................................................5, 15

*In re The Hain Celestial Grp. Inc. Sec. Litig.*,
   2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019).................................................................12

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)..................................................................................20

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) (Schofield, J.)....................................9

*Vallabhaneni v. Endocyte, Inc.*,
    2016 WL 51260 (S.D. Ind. Jan. 4, 2016)................................................................22

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011).....................................................................9

*In re WebMD Health Corp. Sec. Litig.*,
    2013 WL 64511 (S.D.N.Y. Jan. 2, 2013) ...............................................................16

*In re Weight Watchers Int'l Sec. Litig.*,
    2016 WL 2757760 (S.D.N.Y. May 11, 2016) ..........................................................9

*Woodley v. Wood*,
    2022 WL 103563 (S.D.N.Y. Jan. 11, 2022), *aff'd sub nom.* 2022 WL
    14997930 (2d Cir. Oct. 27, 2022) ....................................................................11, 12

*Zhong Zheng v. Pingtan Marine Enter. Ltd.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) ...................................................................12

**Statutes and Authorities**

15 U.S.C. § 78u-5(c)(1) ......................................................................................15, 19

21 CFR 314.50(d)(1).................................................................................................3

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), Defendants Axsome Therapeutics, Inc. ("Axsome"), Tabuteau, Pizzie, Jacobson, O'Gorman, and Laliberte (collectively, the "Individual Defendants" and, with Axsome, "Defendants") respectfully move to dismiss the Amended Class Action Complaint ("Complaint") in its entirety, with prejudice.

## PRELIMINARY STATEMENT

Plaintiffs' overarching allegation is that Defendants told investors they believed FDA approval of Axsome's drug candidate AXS-07 was likely and impending, despite knowing the FDA would reject the application because Axsome purportedly could not manufacture the drug. *See* ¶4.[1]  Aside from being legally deficient, Plaintiffs' "theory does not make a whole lot of sense."[2]  "It depends on the supposition that defendants would rather keep the stock price high for a time and then face the inevitable fallout" once the FDA rejected the NDA.  *Id.*  "If defendants had sought to profit from this scheme in the interim, such as by selling off their stock . . . the theory might have more legs."  *Id.*  But Plaintiffs do not allege any stock sales, period.  To the contrary, Individual Defendants' equity *increased significantly* during the Class Period, including through open market purchases.  And the value of their personal holdings declined by *tens or hundreds of millions of dollars* on the announcements that the NDA had been delayed and, ultimately, rejected. "[T]he PSLRA neither allows nor requires [the Court] to check [its] disbelief at the door."  *Id.*

Not only does Plaintiffs' theory belie common sense, it fails as a matter of law because (among other reasons) Plaintiffs lack any cogent allegation of scienter.  This is fatal to their claims. Plaintiffs' scienter allegations principally are based on "Confidential Witness 1" (or "CW1").  But CW1 is not alleged to have had *any* personal contact with any Individual Defendant, and neither CW1 nor Plaintiffs allege that any Individual Defendant was privy to information contrary to their

---

[1] Paragraphs of the Complaint are referred to herein as "¶__."  Unless otherwise noted, all emphases are added.
[2] *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020); *see also In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at *13 (S.D.N.Y. Mar. 31, 2022).

challenged statements. Unable to plead scienter with particularity, as is required, Plaintiffs take a blunderbuss approach, asserting a dozen dubious and frequently rejected theories against all Defendants as a group—a strategy that fails as a matter of law. *See infra* §I.A.

Scienter is the Complaint's most glaring failing, but not its only one. By employing puzzle pleading, Plaintiffs also fail to plead their claims with the requisite particularity. Plaintiffs allege that Defendants' statements about AXS-07 for nearly two-and-a-half years were materially false or misleading, and identify four general "reasons" why. *See* ¶108. Over the next 76 paragraphs, Plaintiffs list Defendants' statements about AXS-07 and summarily reference back to one or more of those canned "reasons." ¶¶109-85. This puzzle-style pleading forces the reader to pick through the preceding paragraphs to connect each challenged statement with the allegedly actionable "reasons" why each is false or misleading. This alone is grounds for dismissal.[3]

Even if the Complaint satisfied Rule 9(b)'s and the PSLRA's heightened pleading standards, Plaintiffs challenge dozens of forward-looking statements that were accompanied by meaningful cautionary language, including regarding the "inherently unpredictable" FDA approval process and Axsome's reliance on third-party manufacturers. *See infra* §I.B.1. Plaintiffs also challenge many accurate statements of fact, opinion, and puffery. *See infra* §I.B.[4] And, to the extent that Plaintiffs allege that Axsome failed to disclose FDA commentary concerning its manufacturing capabilities, it is well settled that an applicant is not required to disclose interim FDA feedback. *See infra* I.B.3. Ultimately, none of the challenged statements are actionable.

---

[3] *See Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37-38 (2d Cir. 2012) (affirming dismissal of securities fraud complaint that "consists in large part of large block quotations with italicized text, followed by a passage that reads '[t]he statements referenced in [the preceding paragraphs] were each materially false and misleading when made for the reasons set forth in ¶ 256'").

[4] The Declaration of Matthew C. McDonough ("Decl.") attaches documents this Court may consider. *See Rudman v. CHC Grp. Ltd.*, 217 F. Supp. 3d 718, 723 (S.D.N.Y. 2016) (court may consider documents referenced in the complaint, SEC filings, and documents plaintiff relies upon). Axsome's SEC filings are publicly available and those referenced in the Complaint and herein are hyperlinked for the Court's convenience at Decl. ¶3.

**BACKGROUND**

Axsome is a biopharmaceutical company. ¶26. One of its drug candidates is AXS-07, a migraine medication. ¶¶28, 29. During the Class Period (December 30, 2019 to April 22, 2022), Axsome sought FDA approval of AXS-07's new drug application ("NDA"). ¶¶30, 31. One component of an NDA is "chemistry, manufacturing, and controls," or "CMC," information (¶2), which covers many topics, including a "facility's manufacturing process," "quality control of the drug," drug "consistency," and information concerning "supply" of drug components. ¶85.[5]

Between December 2019 and November 2020, Axsome anticipated filing its AXS-07 NDA in the "second half of 2020." *See* ¶¶40, 46. On November 5, 2020, Axsome announced that "[p]re-submission activities" for the NDA were "progressing," and that "major NDA-related items [were] on track for completion by year-end." ¶146. Axsome later adjusted its anticipated submission timeline to the first quarter of 2021, noting that the extra time was intended to allow for "inclusion of supplemental manufacturing information to ensure a robust submission package." *Id.*; ¶145. On March 1, 2021, Axsome announced a "successful pre-NDA meeting[] with the FDA . . . for AXS-07" and that it expected to file the NDA early in the second quarter of 2021. ¶154. On August 9, 2021, Axsome announced that it submitted the NDA in the second quarter, consistent with its updated submission timeline. ¶163. On September 14, 2021, Axsome stated that the FDA had accepted the NDA and set a target date of April 30, 2022 for taking action on the NDA. ¶169.

On Friday, April 22, 2022 (the last day of the Class Period), the FDA rejected the NDA. ¶2. Before the market opened on Monday, April 25, Axsome disclosed that the FDA had informed Axsome that "chemistry, manufacturing, and controls ('CMC') issues identified during the FDA's review [of the AXS-07 NDA] are unresolved." ¶53.

---

[5] *See* 21 CFR 314.50(d)(1).

3

On April 25, 2022, Axsome's stock price dropped approximately 22% from the prior day's closing price. ¶2. Plaintiffs then raced to the courthouse. Their Complaint hinges on the allegation that, because the AXS-07 NDA was rejected due to "unresolved" "CMC issues" (¶53), those issues must have existed prior to submission of the NDA and Defendants must have known about them; thus, Defendants fraudulently misled investors when they made almost any statement about AXS-07. *See* ¶108. While Plaintiffs vaguely allude to undisclosed "CMC issues" that purportedly "plagued" Axsome's development of AXS-07 (¶3), the only particular "CMC issue" they identify is a "contract manufacturing organization's equipment problem," which they claim is the problem that comprised the FDA's "CMC issues." ¶74.

Plaintiffs rely heavily on CW1 to allege that "equipment problems" forced Axsome to delay a singular post-NDA-filing ***marketing*** study. ¶71. Plaintiffs then jump to the conclusion that these alleged equipment issues ***must*** be the "CMC issues" that caused the FDA to reject the NDA. *See* ¶¶83-86. Importantly, however, Plaintiffs do not connect the NDA to this "marketing study," nor do Plaintiffs allege that Axsome could not complete the clinical trials necessary to submit the NDA.[6] Plaintiffs also do not allege that CW1 had any contact with, or at any point informed, any of the Individual Defendants of these alleged "equipment problems." Plaintiffs fail to plead any facts demonstrating any Defendant learned of any purported "CMC issue."

All told, the Complaint challenges as "false and misleading" virtually every statement Axsome made during the Class Period concerning manufacturing, its anticipated AXS-07 NDA

---

[6] In fact, Axsome received a Complete Response Letter ("CRL") from the FDA on April 29, which did not identify any efficacy or safety concerns regarding AXS-07, and did not order any new clinical trials. ¶58. Plaintiffs also attempt to muddy the waters by discussing AXS-05, another of Axsome's drug candidates. *See* ¶¶89–107. Plaintiffs conclude that "CMC issues" AXS-05 faced during its approval process must have put Axsome on "heightened notice" for "CMC issues" with AXS-07. ¶89. As Plaintiffs concede, however, the issues AXS-05 faced were "analytical methods in the CMC" (¶90), wholly unrelated to the supply issues Plaintiffs claim affected AXS-07. ¶93. Plaintiffs also spend two paragraphs on allegations from CW1 regarding an alleged "poorly written" testing protocol for an AXS-***05*** clinical trial. ¶¶105–06. Plaintiffs do not even attempt to connect this clinical trial to AXS-07. ¶105. Plaintiffs' purpose in focusing on AXS-05 appears to be to obscure the failings of their AXS-07 allegations.

timeline, and its hope that the NDA would be approved (¶¶7-9, 108-86).  None of the challenged statements are actionable under the federal securities laws for the reasons described below.

## ARGUMENT

**I.     PLAINTIFFS FAIL TO STATE A CLAIM
        UNDER SECTION 10(b) OF THE EXCHANGE ACT.**

"Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b)." *In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at *7 (S.D.N.Y. Sept. 14, 2015) (Schofield, J.).  Allegations premised on "distorted inferences and speculations," *id.* at *7, or "unwarranted inferences and unsupported conclusions cast in the form of factual allegations," should be rejected. *Missere v. Gross*, 826 F. Supp. 2d 542, 565 (S.D.N.Y. 2011).  Plaintiffs fail to plead with particularity (a) scienter, (b) any material misrepresentation or omission, or (c) loss causation, any one of which is independently sufficient for dismissal.

**A.     Plaintiffs Fail To Plead Scienter With The Required Particularity.**

The PSLRA's "[e]xacting pleading requirements" obligate plaintiffs to "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).  To plead the required strong inference of scienter, plaintiffs must allege specific facts:  "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 99 (2d Cir. 2007).[7]  A reasonable or plausible inference of scienter is not sufficient: a complaint must raise an inference that is "cogent and *at least as compelling as any opposing inference* one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  Moreover,

---

[7] To plead Axsome's scienter, Plaintiffs must sufficiently plead "that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020).  Plaintiffs fail to plead the scienter of any individual "whose scienter may be imputed to [Axsome]." *Id.* at 99.

insofar as Plaintiffs rely on "allege[d] fraudulent omissions, rather than false statements, 'it is especially important to rigorously apply the standard for pleading intent.'"[8]

### 1. Plaintiffs Fail Adequately To Allege That Any Defendant Had Any Motive To Defraud.

To plead motive to defraud, "plaintiffs must allege that 'defendants benefitted in some concrete and personal way from the purported fraud.'" *EDAP*, 2015 WL 5326166, at *14 (citation omitted). Plaintiffs' scienter allegations "encounter an immediate motive problem" because they are based on the theory that the Defendants "would rather keep the stock price high for a time and then face the music once the inevitable problem surfaced." *Garrett,* 2022 WL 976269, at *13. That theory makes sense only if the defendants "sought to profit from this scheme in the interim, such as by 'sell[ing] their own shares at a profit . . .'" *Id.*

The Complaint is devoid of any trading allegations. Notably, Dr. Tabuteau, Mr. Jacobson, and Mr. Pizzie[9] *increased* their stock holdings through the receipt of equity compensation. *See* Decl. ¶13, Ex. K (Trading Summary). Mr. Pizzie, moreover, *purchased* approximately $60,000 and $18,700 in Axsome shares in the open market in June 2020 and November 2021, respectively. *Id*. These Defendants' holdings *declined* in value by *tens or hundreds of millions of dollars* upon the announcement that the NDA had been rejected. *Id.* Plaintiffs do not explain why, if the Individual Defendants were committing fraud, they would *add to* their substantial holdings when they simultaneously knew that manufacturing issues would lead to a day of reckoning. Plaintiffs' theory defies common sense. *See Nguyen*, 962 F.3d at 415; *see also Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 593 (S.D.N.Y. 2011) ("It defies reason that [a defendant] looking to profit on a fraudulently inflated stock price would hold . . . its shares as the share prices fell"); *In re Regeneron*

---

[8] *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 23 (S.D.N.Y. 2016).
[9] Neither Cedric O'Gorman nor Kevin Laliberte occupied positions at Axsome requiring them to file transaction reports with the SEC. Regardless, Plaintiffs fail to allege that Drs. O'Gorman or Laliberte had any motive to commit a fraud, through stock sales or otherwise.

6

*Pharm., Inc. Sec. Litig.*, 2005 WL 225288, *22 (S.D.N.Y. Feb. 1, 2005) (purchasing shares inconsistent with fraudulent intent); *In re Bristol Myers-Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (lack of insider sales "wholly inconsistent with fraudulent intent").

Plaintiffs' only other arguable "motive" allegation is CW1's general "observation that the Company's executive leadership appeared to prioritize profit over patients, they 'cut corners,' and they seemed to be always in a rush to meet milestones." ¶¶87, 214.  This allegation does not give rise to any inference of scienter, let alone the requisite strong inference.  *First*, it is not reliable because, as discussed further below, CW1's allegation amounts to vague hearsay which cannot support an inference of scienter.  *See infra* I.A.2.a.  *Second*, by Plaintiffs' own admission, this general allegation concerns "Axsome's quality controls," not the "the specific issue related to the manufacturing of AXS-07" on which Plaintiffs' fraud claims are based. ¶87.  *Third*, the allegation does not make sense for similar reasons to those discussed above—any supposed "profit over patients" motive would be undermined by submitting an application for AXS-07's approval that was doomed to fail.[10]  *Finally*, even if the allegation was coherent, motives "generally possessed by most corporate directors and officers," like generating profits, are "insufficient to withstand a motion to dismiss." *Frederick v. Mechel OAO*, 475 F. App'x 353, 355 (2d Cir. 2012); *see EDAP*, 2015 WL 5326166, at *14.  In short, Plaintiffs allege no cogent motive to support any inference of scienter, much less a strong inference.

### 2.    Plaintiffs Fail To Plead Specific Facts Constituting Strong Circumstantial Evidence Of Scienter.

Where, as here, Plaintiffs fail to plead motive, "the circumstantial allegations must be correspondingly greater." *ECA, Local 134 IBEW Joint Pension Fund Tr. of Chi. v. JP Morgan*

---

[10] *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (absent "insider sales during the period of stock-price inflation, there would be no concrete benefit to defendants to justify the[] risks" of touting "NDA submissions [defendants] knew were doomed to fail").

*Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009). Plaintiffs must do more than allege "that defendants 'knew facts or had access to information suggesting that their public statements were not accurate.'" *Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011) (citation omitted). They "must 'specifically identify the reports or statements containing this information'" tending to show that the defendants knew the statements in question were false. *Id.* "Significantly, the [Complaint] fails to reference any actual reports reviewed by any specific individuals at [Axsome] on any specific dates that indicated the [AXS-07 NDA] could not succeed." *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 572 (S.D.N.Y. 2007). Instead, Plaintiffs offer a variety of vague and legally insufficient theories as to why Defendants "would have had known" (¶¶76, 213) that their statements were false or misleading.

### a. The Confidential Witness Allegations Do Not Give Rise To A Strong Inference Of Scienter.

Plaintiffs' scienter allegations principally rely on "CW1" and "CW3."[11] Neither give rise to the requisite strong inference of scienter. CW3 "had a senior role in Clinical Operations" and allegedly participated in a June 2021 FDA inspection of "one of Axsome's facilities" related to AXS-05. ¶¶205, 215. CW3's ***sole*** allegation is that "Axsome's top leadership [was] 'extremely secretive' and not forthcoming internally about Axsome's interactions with the FDA." ¶215.[12] This "water-cooler gossip" falls far short of supporting an inference of scienter under the PSLRA. *In re Ferro Corp. Sec. Litig.*, 2007 WL 1691358, at *12 (N.D. Ohio June 11, 2007). CW1 alleges that: s/he reported (at some point during his or her tenure) to Amanda Jones who reported to Dr. Tabuteau, so "Tabuteau would be aware of the items that CW1 observed"[13] (¶¶210-12, 215);

---

[11] Notably, the Complaint does not include any allegation attributed to, or references to, a "CW2."

[12] Indeed, Plaintiffs concede that CW3 was not informed of the filing of NDAs for AXS-05 and AXS-07 (¶ 215), which undercuts any insinuation that s/he was in a position to characterize Axsome's top leadership.

[13] CW1 alleges that s/he worked at Axsome for over two years. ¶67. Plaintiffs concede that CW1 reported to different people "at various points during CW1's tenure at the Company." ¶210. Even if the Court accepted the dubious conclusion that CW1 could know Dr. Tabuteau's state of mind solely because s/he reported to Jones, who reported to

management "would have known" about Axsome's vendor's "equipment problems" (¶213); and Axsome's leadership "appeared to prioritize profit over patients," "cut corners" and "rush[ed] to meet milestones" (¶¶87, 214).  Like CW3, CW1's allegations do not reveal that any Individual Defendant actually was presented with, or even had access to, any information contrary to any challenged statement.  Thus, CW1's allegations are also the type of generalized opinions courts routinely find inadequate.  *See In re Weight Watchers Int'l Sec. Litig.*, 2016 WL 2757760, at *7 (S.D.N.Y. May 11, 2016) ("characterization or opinion of the witness" is insufficient).

That CW1's allegations are based on vague complaints about management's character is not surprising because Plaintiffs do not allege that CW1 "had any contact with the individual Defendants." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) (Schofield, J.).  Plaintiffs do not allege that CW1 ever attended a meeting, exchanged an email, or had a conversation with any Individual Defendant, or even overheard or became aware of any such communication.[14]  Plaintiffs instead infer from CW1's chain of command that Dr. Tabuteau ***must have known*** what CW1 claims to have known.  *See* ¶¶68, 210-11.  The PSLRA requires much more.  *See, e.g.*, *Turquoise Hill*, 2014 WL 7176187, at *7.

Even reading the CW allegations liberally, they do not support that any Individual Defendant knew of any information contradicting their public statements.  For instance, even if it were true that, at some point "Axsome was simply unable to manufacture the drug" (¶4), and even if the Individual Defendants knew those facts, that would not contradict their statements concerning their anticipated NDA timeline or their expectation that their third-party manufacturers would support development and commercialization because Plaintiffs do not allege that Axsome's

Dr. Tabuteau, Plaintiffs fail to allege that CW1 reported to Jones ***during the time*** CW1 alleges AXS-07 suffered from "CMC issues."

[14] *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (lack of contact between confidential sources and defendants undermines inference of scienter).

supposed manufacturing problems were unable to be remedied in advance of NDA approval or for commercialization. Indeed, Plaintiffs concede that Axsome successfully completed three Phase 3 trials in support of its AXS-07 NDA.[15] CW1's "marketing" study may have been delayed or canceled because of manufacturing issues or any other reason, but that does not mean the NDA was bound to fail. *See Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at *10 (S.D.N.Y. Apr. 28, 2020) (despite knowledge of potential manufacturing issues, challenged statements not actionable where plaintiff failed to show why such issues "could not be remedied").

Finally, neither CW can assert that they know the specific "CMC issues" that ultimately caused the FDA to reject the AXS-07 NDA because **neither CW can allege that they know what is in the CRL**. On April 25, 2022, Axsome disclosed only that the FDA informed Axsome that it had identified "[CMC] issues" with the AXS-07 NDA. ¶193. While Plaintiffs insist that "CW1 stated that the CMC issues that the FDA identified in its CRL for AXS-07 involved" the "equipment problem" s/he supposedly observed (¶74), **CW1 left Axsome two months before the FDA issued its CRL**. *Compare* ¶67 (CW1 left in February 2022) *with* ¶58 (Axsome received CRL at the end of April). CW1's alleged knowledge of the "CMC issues" that the FDA identified is simply not plausible. CW3 likewise left the Company in September 2021 (¶215), **seven months before** the CRL was issued. Thus, even if either CW attested to any Individual Defendant's knowledge of any actual information about "CMC issues" (which they do not), they cannot allege with particularity that any Defendant knew the issues would cause the FDA to reject the NDA.

Plaintiffs' CW allegations amount to no more than rumor, innuendo, and general criticism of their former employer. Such allegations fail to give rise to any inference of scienter. *See Glaser*,

---

[15] The results of the Phase 3 trials, in which AXS-07 was administered to many hundreds of patients and treated tens of thousands of migraines, further undermine CW1's contentions that Axsome simply could not manufacture the drug. *See* Decl. ¶12, Ex. J (citing Form 8-K (12/20/19) at 1 (MOMENTUM trial: 1,594 patients); Form 8-K (4/6/20) at 1 (INTERCEPT trial: 302 patients); Form 8-K (12/31/20) at 1 (MOVEMENT trial: 706 patients, 21,000 migraines)).

772 F. Supp. 2d at 591 ("[C]onfidential source allegations must show that individual defendants actually possessed the knowledge highlighting the falsity of public statements.").

###### b.    Plaintiffs' Status And Access, "Core Operations," And "SOX Certification" Allegations Do Not Give Rise To A Strong Inference Of Scienter.

Plaintiffs insist that Individual Defendants "would have known" their statements were false or misleading because of their executive positions and access to general categories of information. *E.g.*, ¶76.  For example, Plaintiffs point to a June 2021 FDA report of an inspection of "one of Axsome's facilities" in connection with Axsome's development of a different drug candidate, AXS-05.  ¶205.  Plaintiffs assert that the report described each Individual Defendant's role and responsibilities at Axsome and that "[t]his organizational structure . . . shows even further that [] Tabuteau would be aware of the items that CW1 observed."  ¶212.  Setting aside that this report related to AXS-**_05_** (a fact Plaintiffs bury in a footnote) and that the report was **_positive_**, "it is not enough that defendants held senior positions and had access to inside information." *Woodley v. Wood*, 2022 WL 103563, at *7 (S.D.N.Y. Jan. 11, 2022), *aff'd sub nom.* 2022 WL 14997930 (2d Cir. Oct. 27, 2022) (collecting cases). [16]

Plaintiffs similarly ask the Court to infer scienter from the fact that the challenged statements "concerned Axsome's core operations."  ¶216. [17]  The "core operations doctrine has been cast into doubt by the Second Circuit following the enactment of the PSLRA." *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *10 (E.D.N.Y. Aug. 6, 2019).  Even where the doctrine has been applied, "the majority rule is to 'consider the core operations allegations to constitute

---

[16] *See Glaser*, 772 F. Supp. 2d at 591 ("[C]onclusory statements that defendants 'were aware' of certain information, and mere allegations that defendants 'would have' or 'should have' had such knowledge is insufficient.").

[17] Plaintiffs also allege that Dr. Tabuteau's and Mr. Jacobson's scienter is demonstrated by the mere fact that they spoke about manufacturing on November 5, 2020, when Axsome announced that it was delaying AXS-07's NDA submission (¶ 201) and because those two discussed "CMC issues" on May 2, 2022 a week after the alleged corrective disclosure (¶ 202).  At best, this is a form of the "core operations" theory.

11

supplementary, but not an independent means to plead scienter.'" *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 181 (E.D.N.Y. 2019).

That Dr. Tabuteau and Mr. Pizzie signed SOX certifications also does not support scienter. *See Woodley*, 2022 WL 103563, at *8 ("[P]laintiff 'cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements.'").[18]

These "must have known" allegations do not satisfy the PSLRA's requirement to *specifically identify* documents or contemporaneous facts tending to show that defendants knew the challenged statements were false when made. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996). Plaintiffs' vague and conclusory allegation that "[i]n addition, Defendants had access to reports and communications describing these operations" serves to highlight this failing. *See In re The Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *19 (E.D.N.Y. Mar. 29, 2019) ("Plaintiffs' claim that the individual defendants' access to reports" fails, as "Plaintiffs do not identify any specific reports.").

### c.    <u>Alleged Issues With AXS-05 Do Not Give Rise To Scienter.</u>

Grasping at straws, Plaintiffs wrest out of context deficiencies concerning "analytical methods" in AXS-***05***'s NDA in an attempt to paint all of Axsome's drugs as "plagued" by "CMC issues." A close reading defeats this specious claim. *First*, Plaintiffs' allegations face a temporal problem; they allege that, as of August 9, 2021, Defendants were on notice that "CMC issues" might prevent the FDA from approving Axsome's applications. ¶102. But, as Plaintiffs concede, on August 9, Axsome reported that the FDA had "identified deficiencies" with AXS-05 but "***did not state what the deficiencies are***." ¶98. In other words, the FDA ***did not raise "CMC issues"***

---

[18] *See Zhong Zheng*, 379 F. Supp. 3d at 181 ("[C]ourts in this circuit regularly hold that the signing of a SOX certification, without more, is insufficient to plead scienter" since "allowing [SOX] certifications to create an inference in every case . . . would eviscerate the pleading requirements for scienter set forth in the PSLRA.").

related to AXS-05 in August 2021, and these allegations could not support the scienter of any Defendant in or before August 2021. *Second*, the FDA later advised Axsome of deficiencies in "***analytical methods*** in the [CMC] section of the [AXS-05] NDA." ¶104. But, Plaintiffs do not allege that deficiencies related to "analytical methods" were the cause of any delay in AXS-***07***'s NDA. The only specific "CMC issue" they identify is that "Axsome's CMO was unable to produce sufficient supply of AXS-07." ¶108.[19] It is not plausible to infer from AXS-05's "analytical methods" issues that any Defendant knew that unrelated manufacturing issues would cause the AXS-07 NDA to fail. (And the "analytical method" issues were ultimately resolved; as Plaintiffs sheepishly admit, the FDA approved AXS-05 before they filed their Amended Complaint. ¶107.) To the extent that there could theoretically be any connection between the two sets of issues, the market was on notice of the issues, defeating any inference of scienter. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 583 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ("[T]o the extent the allegations in the [complaint] about past quality control problems put the company on notice of potential issues, they also put the market on notice that statements concerning the superior quality of the company's product had to be understood in this context.").

**d.    The "Unresolved" Statement Does Not
Give Rise To A Strong Inference Of Scienter.**

Plaintiffs also allege that scienter is demonstrated because Axsome characterized the AXS-07 NDA's "CMC issues" as "unresolved." ¶203. Based on this word alone, Plaintiffs conclude "the FDA had previously discussed these issues with the Company." *Id.* Such a vague and conclusory allegation cannot give rise to a strong inference of scienter. It is just as likely that, as with AXS-05, the FDA's did not initially identify "what the deficiencies are." *Supra* §I.A.2.c.

---

[19] The market understood that AXS-05's "analytical method" issues did not concern "manufacturing." *See* Decl. ¶17, Ex. O (Ladenburg Thalmann Report (11/9/21)) ("[O]f note, the [AXS-05] CMC deficiencies ***do not relate to the manufacturing process*** but to the testing of the finished drug product.").

And, Plaintiffs fail to demonstrate that, even if the FDA identified "CMC issues" earlier, those issues "could not be remedied." *Schaeffer*, 2020 WL 7701463, at *10. In any event, Plaintiffs fail to allege any facts detailing the alleged "discuss[ion]" with the FDA, including, critically, ***when*** such discussion occurred; only if such discussion occurred before the making of any challenged statement could that fact possibly support an inference of scienter. Without such particulars, this allegation falls short of the PSLRA's requirements.

### 3.    Plaintiffs Improperly Employ Group Pleading.

Plaintiffs' Section 10(b) claims should be dismissed for the related reason that Plaintiffs fail to "allege facts supporting a strong inference [of scienter] with respect to ***each*** defendant." *Lions Gate*, 165 F. Supp. 3d at 22.[20]    Instead, Plaintiffs attempt to lump them together. *See, e.g.*, ¶¶200, 203-05, 213-16 ("Defendants' scienter"), 234 ("Defendants' knowledge"), 234 ("As the senior managers and/or directors . . . the Individual Defendants had knowledge"). This strategy is particularly troublesome given the paucity of non-group scienter allegations. At best, Plaintiffs allege that: Drs. O'Gorman and Laliberte once participated in an inspection of a facility manufacturing AXS-***05*** (¶207) and had certain job responsibilities and reported to Dr. Tabuteau (¶¶208-09); Mr. Jacobson spoke about "manufacturing" on occasion (¶¶201–02); Mr. Pizzie signed SOX certifications (¶199); and Dr. Tabuteau signed SOX certifications (¶199), spoke about "manufacturing" on occasion (¶¶201–02), and is involved in operations (¶¶205-06), and supervision of others (¶¶208–09, 211–12). The Court should reject Plaintiffs' attempt to make up for their failure to plead scienter as to any individual by grouping all Defendants together.

### 4.    Opposing Inferences Of Nonculpable Conduct Are More Plausible Than Any Inference Of Fraud.

Well-established law requires courts to consider competing inferences of scienter. *See*

---

[20] *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *30 (S.D.N.Y. May 10, 2012) (scienter "cannot be satisfied through group pleading" because a complaint must allege each individual defendant's fraudulent intent).

14

*Tellabs*, 551 U.S. at 314.  Plaintiffs do not allege that Defendants gained anything from their supposed scheme.  Indeed, the value of their personal stock holdings plummeted during the Class Period.  Weighed against Plaintiffs' vague "would have known" scienter allegations, the more compelling inference is that Defendants, whose "financial interests were aligned with those of the investors," "legitimately believed" in the promise of the AXS-07 NDA at the time they made the challenged statements.  *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 403 (S.D.N.Y. 2010).  A nonculpable explanation for Defendants' statements is far more plausible than fraud.

**B.      Plaintiffs Fail To Identify Any
Actionable Material Misrepresentation Or Omission.**

Aside from failing to plead adequately that any Defendant made any statement with scienter, none of the challenged statements are actionable because they are forward-looking, expressions of optimism, statements of opinion, and/or accurate statements of fact, or Axsome had no duty to disclose allegedly omitted information.

**1.      Defendants' Forward-Looking Statements Are Not Actionable.**

The PSLRA safe harbor permits companies to make projections without fear of liability should those projections not come to pass.  *See Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004).  A defendant shall not be liable (1) if a forward-looking statement is "identified" as such and "accompanied by meaningful cautionary statements" or (2) if the plaintiff "fails to prove that the forward-looking statement…was made with actual knowledge by that person that the statement was false or misleading."  15 U.S.C. § 78u-5(c)(1); *Slayton v. Am. Express Co.*, 604 F.3d 758, 765-66 (2d Cir. 2010).  Plaintiffs' claims fail under both independent prongs.

**a.      Defendants' Forward-Looking Statements Are Protected
By The Safe Harbor And The Bespeaks Caution Doctrine.**

The first prong protects forward-looking statements accompanied by cautionary language conveying "substantive information about factors that realistically could cause results to differ

15

materially from those projected in the forward-looking statement." *Slayton*, 604 F.3d at 771. Companies need not predict the future but must disclose risks important to their projections. *In re WebMD Health Corp. Sec. Litig.*, 2013 WL 64511, at \*9 (S.D.N.Y. Jan. 2, 2013).[21]

Plaintiffs challenge Axsome's projections regarding the AXS-07 manufacturing process. As one example, Plaintiffs allege that it was false for Axsome to state: "We believe that our existing suppliers of our product candidate active pharmaceutical ingredients and finished products will be capable of providing sufficient quantities of each to meet our clinical trial supply needs." ¶¶121, 184.[22]  Axsome expressly identified such statements as forward-looking. *See, e.g.*, Decl. ¶2, Ex. A (10-K (3/12/20)) at 3 (identifying as forward-looking statements of "belie[f]" and "[e]xpectations for the clinical and preclinical development, manufacturing, regulatory approval, and commercialization of our pharmaceutical product candidates . . . [and] the performance of third-party manufacturers").[23]  These projections were accompanied by meaningful cautionary language.[24]  Every 10-K and 10-Q filed during the Class Period includes an entire section devoted to the risks related to Axsome's dependence on third parties, and states clearly:

> ***If the manufacturers upon whom we rely fail to produce our product candidates in the volumes that we require on a timely basis . . . we may face delays in the development and commercialization of, or be unable to meet demand for, our products and may lose potential revenues.***

*See, e.g.*, Decl. ¶2 (10-K (3/12/20)) at 84.  Courts hold that risk disclosures such as this render accompanying forward-looking statements inactionable under the safe harbor.[25]

---

[21] The Safe Harbor is reinforced by the "bespeaks caution" doctrine, which holds that alleged misrepresentations are "immaterial as a matter of law [if] it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Rombach*, 355 F.3d at 173 (citation omitted).

[22] Additional forward-looking statements concerning Axsome's manufacturing processes include those at: ¶¶123-24, 126-27, 137, 139, 144-45, 148-50, 153, 158, 162, 167, 177, 182, 185.

[23] The first 10-K in the class period is provided as an excerpt as Decl. ¶2, Ex. A (10-K (3/12/20)) and substantially similar or identical language is included in each annual and quarterly filing in the Class Period.  Hyperlinks to each of these filings are provided in the McDonough Declaration at ¶3.

[24] A corporation may incorporate by reference risk factors in its recent SEC filings. *See Slayton*, 604 F.3d at 763.

[25] *See, e.g.*, *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 759-60 (S.D.N.Y. 2018) (risk disclosure

16

Axsome's statements regarding its anticipated NDA submission timeline are similarly inactionable. At points during the Class Period, Axsome stated that it: "plans to," "look[s] forward to," "anticipate[s]" and "remains on track" to file its NDA. ¶¶110, 111, 113, 129.[26] Accompanying every one of these statements was cautionary language disclosing the risk that the NDA process may suffer delay. For example, Axsome emphasized:

> ***The regulatory approval processes of the FDA . . . [is] lengthy, time consuming, and inherently unpredictable. If we are not able to obtain, or if there are delays in obtaining, required regulatory approvals, we will not be able to commercialize our product candidates as expected, and our ability to generate revenue will be materially impaired.***

*See, e.g.*, Decl. ¶2 (10-K (3/12/20)) at 64. Far from boilerplate, Axsome's disclosures include a list of specific reasons why delay in AXS-07's approval might occur. Axsome consistently warned that "the FDA may also request or require additional [CMC], or other data and information," which may be "time consuming and expensive" and that "[e]ven if such data and information are submitted, the FDA may ultimately decide that the NDA does not satisfy the criteria for approval." *See, e.g.*, Decl. ¶2 (Ex. A (10-K (3/12/20)) at 34, 67. Axsome further warned:

- "[A]lthough we believe that we may be able to rely on a single pivotal study to support our NDA for AXS-07 . . . the FDA may ultimately disagree and require us to conduct additional pivotal studies." *Id.* at 65.
- "Certain of our product candidates, including . . . AXS-07 . . . are combination therapies . . . The development of combination drugs may be more complex. . . We also may not be able to meet the FDA's approval standards required for combination products." *Id*. at 71.

These specific risk disclosures render the forward-looking "manufacturing" statements inactionable. *See, e.g.*, *Lefkowitz v. Synacor, Inc.*, 2019 WL 4053956, at *9 (S.D.N.Y. Aug. 28, 2019) (Schofield, J.), *aff'd sub nom.*, 832 F. App'x 54 (2d Cir. 2020) ("'anticipate' and 'expect' are common markers of forward looking statements); *Aratana*, 315 F. Supp. 3d at 760 (finding

---

regarding reliance on third-party manufacturers foreclosed argument that defendant misrepresented drug commercialization timeline).

[26] Additional forward-looking statements concerning AXS-07's NDA "timeline" include those at: ¶¶114, 131, 136, 140-41, 144-46, 148-49, 153-55, 158-59, 162-63, 167, 169, 171, 176, 178-79, 182.

17

inactionable statements that: "[T]he Company *anticipates* submitting [a new drug application] in early 2016," "[W]e believe that we are *on track* to have these products reach the market in 2016 .... We very much *look forward to* launching these products next year").

Axsome's statements describing its positive clinical data as supporting its NDA (¶9) are also not actionable. For instance, Plaintiffs challenge the following statements:

- "Based on FDA feedback, Axsome believes that MOMENTUM will be the only efficacy trial required to support an NDA filing for AXS-07 for the acute treatment of migraine" ¶110.
- "The positive results [of the clinical trial] support the filing of an NDA for AXS-07." ¶¶110, 114, 131, 169.
- "We plan to submit an NDA for AXS-07 for the acute treatment of migraine supported by the positive results from the MOMENTUM and INTERCEPT trials." ¶136.[27]

Courts consistently hold that "statements about the likelihood of regulatory approval are 'classically forward-looking, as they address what defendants expect[] to occur in the future.'" *In re AstraZeneca plc Sec. Litig.*, 2022 WL 4133258, at *9 (S.D.N.Y. Sept. 12, 2022) (quoting *Gillis*, 197 F. Supp. 3d at 585); *see In re Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 734 (S.D.N.Y. 2018) (Schofield, J.) (optimistic statements about clinical trial results are inactionable).

Axsome clearly warned of risks inherent in the NDA process. For instance, in addition to those warnings discussed above, Axsome warned that "[d]ata obtained from clinical trials are not always conclusive and the FDA may interpret data differently than an applicant interprets the same data." *See, e.g.*, Decl. ¶2 (10-K (3/12/20)) at 34. And it specifically noted that "Special Protocol Assessments" do not guarantee success.[28] Thus, statements regarding the promise of Axsome's AXS-07 NDA based on its clinical trial results are not actionable. *See EDAP*, 2015 WL 5326166, at *10 (company's warnings regarding risk of FDA rejection warranted safe harbor protection).

---

[27] Additional forward-looking statements concerning Axsome's clinical trials and its optimism for the AXS-07 NDA include those at: ¶¶111, 113, 118-19, 129, 140-41, 144, 146-47, 153-54, 158, 162, 167, 171, 177, 182, 184.

[28] *See, e.g.*, Decl. ¶2, Ex. A (10-K (3/12/20)) at 32 ("SPA agreements are not a guarantee of an approval of a product candidate…SPAs are not binding on the FDA . . .").

18

### b.    Defendants' Forward-Looking Statements Are Also Protected By The Second Prong Of The Safe Harbor.

The challenged forward-looking statements are not actionable for the independent reason that, under the safe harbor's second prong, forward-looking statements are actionable only if made with **actual knowledge** of falsity.  15 U.S.C. § 78u-5(c)(1)(B); *Slayton*, 604 F.3d at 773.  To overcome the safe harbor, a plaintiff must plead "specific facts" and may not "generally allege that the Defendants had actual knowledge of the alleged falsity of their statements."  *In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *12 (S.D.N.Y. June 23, 2004).  As discussed above, Plaintiffs do not plead a single specific contemporaneous fact giving rise to a strong inference that any challenged statement was made with scienter under the Section 10(b) standard, *see supra* §I.A, let alone under the safe harbor's more demanding "actual knowledge" standard.

### 2.    The Remaining Challenged Statements Are Not Actionable.

Like Axsome's forward-looking statements, other statements Plaintiffs challenge are not actionable, as a matter of law, because they are accurate statements of fact, opinion statements, immaterial puffery, and/or not misleadingly incomplete.

### a.    Accurate Statements Of Fact Are Not Actionable.

Many challenged statements are not actionable because they are statements of fact that Plaintiffs fail to plead adequately were false or misleading when made.  Examples include:[29]

- "[E]nrollment in a Phase 3 open-label, long-term safety extension study of AXS-07 is ongoing." ¶113.
- Axsome reached a "Special Protocol Assessment" with the FDA for its MOMENTUM trial ¶118.
- "With INTERCEPT and the previously completed MOMENTUM Phase 3 trial in patients with a history of inadequate response to prior acute treatments, AXS-07 has now been evaluated in two positive well-controlled trials." ¶129.
- "With regards to CMC activities, there are registration batches which are being manufactured now. A good thing for us is that we have been manufacturing our clinical

_____

[29] Additional accurate statements of fact challenged by Plaintiffs include those at: ¶¶117, 119, 121, 123-24, 126-27, 131, 135, 137, 139, 140-41, 143-44, 150, 152, 153-55, 157-58, 161-64, 166-67, 169, 171-73, 175-79, 181-82, 185.

trial supply at commercial scale and also at the same CMO that we're using for commercial production. So, there's no scale up that needs to be done. Now, with regards to manufacturing and any kind of science to it, there's always tweaks and experimentation, but I would say that there is no rate-limiting step and there is no extensive experimentation. This is simply manufacturing our registration batches for regulatory purposes." ¶133.

Plaintiffs' puzzle pleading provides no meaningful indication of why any of these statements may be false or misleading. Other than vague references to the canned "reasons" Plaintiffs ascribe to every challenged statement, Defendants are left wondering why, for example, reporting that clinical trial enrollment is ongoing (¶113) is false or misleading. "[S]imply stating that the statements are false is not enough." *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *13 (S.D.N.Y. Apr. 2, 2020) (citing *Rombach*, 355 F.3d at 174).

> ### b. <u>Opinion Statements Are Not Actionable As A Matter Of Law.</u>

Many of the challenged statements are inactionable statements of opinion. These include:[30]

- "Based on FDA feedback during this SPA process, Axsome believes that only one Phase 3 trial may be needed for the approval of AXS-07." ¶118.
- "We believe that our existing suppliers of our product candidate active pharmaceutical ingredients and finished products will be capable of providing sufficient quantities of each to meet our clinical trial supply needs." ¶¶121, 184.

"To state a claim based on an allegedly false opinions [*sic*], plaintiffs must plead both their objective falsity and their subjective falsity." *Dempsey v. Vieau*, 130 F. Supp. 3d 809, 818 (S.D.N.Y. 2015) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015)); *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016) (applying *Omnicare* to affirm dismissal of Section 10(b) claims concerning expected timing of FDA approval). Plaintiffs fail to allege either. As described herein, the challenged statements were not materially false or misleading. This ends the inquiry. But even if it did not, Plaintiffs fail to allege that any opinion statement was subjectively false because Plaintiffs fail to plead adequately what any Individual

---

[30] Additional opinion statements challenged by Plaintiffs include those at: ¶¶110, 111, 113-14, 119, 129, 131, 133, 136, 140-41, 144, 147-50, 153-55, 158-59, 162, 167, 169, 171-73, 177, 179, 182.

Defendant *actually* knew at the time they made a challenged statement. *See supra* §I.A.

### c.    Vague And Indefinite Statements Of Optimism Are Immaterial As A Matter Of Law.

Still other challenged statements are "expressions of puffery and corporate optimism," which cannot give rise to liability under the federal securities laws. *Rombach*, 355 F.3d at 174. Examples include:[31]

- "The positive results from the MOMENTUM trial support an NDA filing for AXS-07 in the acute treatment of migraine and we remain on track to file this NDA in the second half of 2020. With . . . two planned NDA filings Axsome is on track to transition to commercial stage potentially as early as next year." ¶114.
- "Pre-submission activities for the Company's NDA for AXS-07 in the acute treatment of migraine are progressing with major NDA-related items on track for completion by year-end." ¶146.
- "2021 was a year of continued progress which has put us in a position to potentially launch two new investigational medicines for patients living with depression and migraine." ¶179.

Courts find such statements "too vague" or "too open-ended and subjective" to be material. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 186 (2d Cir. 2014); *see, e.g.*, *Adient*, 2020 WL 1644018, at *31 n.14 ("Statements about Adient's progress with respect to certain goals, including it being '*on track*,' also constitute inactionable puffery.") (collecting cases); *In re GPC Biotech AG Sec. Litig.*, 2009 WL 5125130, at *6 (S.D.N.Y. Dec. 29, 2009) (statements that clinical trial "*was going well*" were inactionable puffery).

### 3.    Plaintiffs Fail To Identify Any Actionable Omission Of Material Fact.

Unable to identify any false or misleading statement, Plaintiffs' theory of liability largely relies on Defendants' alleged failure to disclose "CMC issues." *See* ¶¶7-9. It is well settled, however, that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic v. Levinson*, 485 U.S. 224, 239 n.17 (1988). Plaintiffs fail adequately to allege either: (a) any

---

[31] Additional puffery and vague and indefinite statements of corporate optimism challenged by Plaintiffs include those at: ¶¶110-11, 113, 118, 129, 131, 136, 140-41, 144-45, 147-50, 153-55, 158-59, 162-63, 167, 169, 171, 177, 182.

freestanding duty to have disclosed the allegedly omitted information; or (b) any voluntary statement that was rendered so incomplete as to mislead due to the nondisclosure of omitted information; accordingly, there was no duty to disclose the allegedly omitted information. *See Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992).

### a.    Axsome Had No Duty To Disclose Alleged "CMC Issues."

Plaintiffs insist that, because Axsome described the FDA's rejection of the NDA as related to "unresolved" "CMC issues," the FDA must previously have made Axsome aware of such "CMC issues" and it should have disclosed those issues. Setting aside that this allegation is based on nothing other than the single word "unresolved" and that Plaintiffs fail to allege **when** such alleged FDA discussion occurred (*see supra* §I.A.2.d), **even if** the FDA had informed Axsome of "CMC issues," Axsome would have had no duty to disclose that fact. The substantial weight of authority "reject[s] claims of material omissions where pharmaceutical companies d[o] not reveal procedural or methodological commentary, or other interim status reports, received from the FDA as to drugs under review." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 541-42 (S.D.N.Y. 2015) (collecting cases).[32] Such "interim FDA feedback is not material because it does not express a binding agency decision and is subject to change as the FDA and pharmaceutical companies work together to develop viable clinical trials and approvable licensing applications." *Id.* at 542.

### b.    No Challenged Statement Was "So Incomplete As To Mislead."

A statement that is allegedly "so incomplete as to mislead" is only actionable in limited circumstances. *Glazer*, 964 F.2d at 156 (citing *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st

---

[32] This principle is well-settled. *See Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260, at *12 (S.D. Ind. Jan. 4, 2016) ("[N]umerous courts have concluded that a defendant pharmaceutical company does not have a duty to reveal interim FDA criticism regarding study design or methodology.") (collecting cases); *In re Genzyme Corp.*, 2012 WL 1076124, at *10 (D. Mass. Mar. 30, 2012) ("Because the [FDA's] observations do not represent a final agency determination, they are necessarily interim statements, subject to revision. ... It simply cannot be that every critical comment by a regulatory agency ... has to be seen as material for securities law reporting purposes, especially in an industry ... where there is constant and close supervision by the FDA."), *aff'd sub nom.*, 754 F.3d 31 (1st Cir. 2014).

Cir. 1990)). "[C]omplete and accurate" disclosure does not require that a company publish every fact about every subject it voluntarily discloses. *Backman*, 910 F.3d at 16. Since *Glazer*'s adoption of *Backman*, courts in the Second Circuit have adhered to a strict construction of this principle. *See Glazer*, 964 F.2d at 156; *see also In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016) ("The critical consideration . . . is whether 'the alleged omissions . . . are sufficiently connected to defendants' existing disclosures to make those public statements misleading.'").

Plaintiffs allege that Axsome failed to disclose "equipment problems" affecting its ability to manufacture AXS-07 for a planned marketing study at some point before or during the NDA process. ¶¶71, 75. But, none of the challenged statements relate to that alleged marketing study. And, even if it were true that Axsome was unable to manufacture AXS-07 at some point during the NDA process, that information is not inconsistent with Axsome's statements, including those stating that it believed it could manufacture enough to meet its needs and that it hoped that the FDA would approve AXS-07's NDA.

### 4.    Defendants' SOX Certifications Are Not Actionable.

Plaintiffs allege that Axsome's SOX certifications were misleading because they stated that Axsome's SEC filings "[did] not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading." *See* ¶¶117, 135, 143, 152, 157, 161, 166, 175, 181. Plaintiffs do not allege that any SOX certification independently contained a material misrepresentation or omission; rather, they piggyback on Plaintiffs' other fraud claims. Because Plaintiffs have not alleged a separate material misrepresentation or omission, they fail adequately to allege that the SOX certifications were false or misleading.[33]

---

[33] Even if Plaintiffs adequately pled that Axsome's SOX certifications were false or misleading, Plaintiffs fail adequately to plead that the executives who signed the certifications had knowledge of their falsity. *See In re Sanofi*,

**C.**    **Plaintiffs Fail To Identify Any Statement Actually Made By Dr. O'Gorman.**[34]

According to Plaintiffs, on a May 10, 2021 earnings call, Dr. O'Gorman allegedly said that Axsome was "on track to file the NDA this quarter…" ¶159.  However, three reputable transcripts of this earnings call show that Dr. Tabuteau, ***not*** Dr. O'Gorman, made this statement.[35]  *See* Decl. ¶11, Ex. J.  It almost goes without saying that one is only liable under Section 10(b) for statements they actually make.  *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("One 'makes' a statement by stating it.").  Plaintiffs' Section 10(b) claim against Dr. O'Gorman should be dismissed because Plaintiffs fail to allege even plausibly, much less specifically, that Dr. O'Gorman made the single statement attributed to him.

**D.**    **Plaintiffs Fail Adequately To Allege Loss Causation.**

Plaintiffs may plead loss causation either by alleging "(a) the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud; or (b) that that [*sic*] the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement."  *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 266 (S.D.N.Y. 2021).  Plaintiffs fail to do either.  Plaintiffs claim that Axsome failed to disclose that "equipment problems" prevented it from being able to manufacture the drug.  ¶¶ 71, 74.  But Plaintiffs cannot allege that any such manufacturing problems were subsequently revealed to the market.  The supposed "corrective disclosure" was Axsome's April 25 announcement that the FDA had identified "CMC issues" that would cause it to reject the AXS-07 NDA. ¶ 193.  That disclosure

---

155 F. Supp. 3d at 402 (SOX certifications not actionable because, among other reasons, plaintiffs did "not plead any facts giving rise to a strong inference that [defendant] knew . . . that the report misstated or omitted a material fact"); *supra* §I.A. (discussing Plaintiffs' failure adequately to plead scienter).

[34] Before filing this Motion, Defendants' Counsel advised Plaintiffs' counsel that Plaintiffs' securities fraud allegations against Dr. O'Gorman appeared to be erroneous.  Decl. ¶18.  Although Plaintiffs' counsel acknowledged the discrepancy between the transcripts and their allegation, Plaintiffs refused to drop their claim against Dr. O'Gorman unless he entered into a tolling agreement.  *Id.*  Dr. O'Gorman refused to capitulate to that demand.  *Id.*

[35] The statement is also not actionable for all of the reasons discussed above.

did not reveal any allegedly omitted "manufacturing" issues.  As Plaintiffs concede, "CMC issues" might refer to a host of issues, including many unrelated to manufacturing.  *See* ¶85 (April 25, 2022 Berenberg Capital Markets Report).  And, other than unsupported allegations from CW1 (who departed Axsome months before it received the CRL), Plaintiffs fail to allege the content of the CRL.  Instead, Axsome's April 25 announcement that the FDA would reject the AXS-07 NDA due to "CMC issues" was the materialization of a risk that Axsome specifically disclosed.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 20(a) OF THE EXCHANGE ACT.

"Control person" liability requires: "(1) a primary violation by the controlled person; (2) control of the primary violator by the defendant, and (3) that the [controlling person] was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI*, 493 F.3d at 108.  The Section 20(a) claim fails because Plaintiffs fail to plead any primary violation.  *See supra* § I.  Separately, Plaintiffs fail to plead specifically that any Defendant actually controlled Axsome or any other Defendant, or that any Defendant culpably participated in any other Defendant's alleged fraud.  *See supra* §I.A; *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (dismissing Section 20(a) claims based on "high-level position[]," "awareness of [Defendants'] operations," and "intimate knowledge" of public statements).  Plaintiffs' Section 20(a) claim also suffers from the inappropriate use of group pleading.  *See supra* §I.A.3.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.[36]

---

[36] Plaintiffs have amended their pleading and provided "no particularized basis for any belief that any further amendment of the already-amended Complaint would cure its deficiencies."  *Razorfish*, 2001 WL 1111502, at *2.  Defendants' pre-motion letter (ECF No. 38) apprised Plaintiffs of the Complaint's failings.  Dismissal with prejudice is warranted in such circumstances.  *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455 (2d Cir. 2019).

Dated: December 16, 2022          Respectfully submitted,

                                  **MORGAN, LEWIS & BOCKIUS LLP**

                                  */s/ Michael L. Kichline*
                                  Michael L. Kichline (*pro hac vice*)
                                  1701 Market Street
                                  Philadelphia, PA 19103
                                  Tel: (215) 963-5000
                                  michael.kichline@morganlewis.com

                                  Emily E. Renshaw
                                  101 Park Avenue
                                  New York, NY 10178-0060
                                  Tel: (212) 309-6000
                                  emily.renshaw@morganlewis.com

                                  Matthew C. McDonough (*pro hac vice*)
                                  Michael A. Hacker
                                  One Federal Street
                                  Boston, MA 02110
                                  Tel: (617) 341-7700
                                  matthew.mcdonough@morganlewis.com
                                  michael.hacker@morganlewis.com

                                  *Counsel for Defendants*

26