**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EVY GRU, Individually and on Behalf of All Others Similarly Situated, <br><br><br>Plaintiff, <br><br>v. <br><br><br>AXSOME THERAPEUTICS, INC., HERRIOT TABUTEAU, NICK PIZZIE, MARK JACOBSON, CEDRIC O'GORMAN, and KEVIN LALIBERTE, <br><br><br>Defendants. | Case No.: 1:22-cv-3925-LGS |

## <u>LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS'</u>
## <u>MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 3

III.  ARGUMENT ...................................................................................................... 6

      A.    The Complaint Adequately Alleges a Strong Inference of Scienter ...................... 6

            1.    Defendants' Conscious Misbehavior and Recklessness ............................. 7

            2.    Defendants' Motive to Commit Fraud ........................................................ 11

      B.    The Complaint Adequately Alleges False and Misleading Statements ................ 12

            1.    Defendants' Manufacturing Statements Were False and Misleading ....... 13

            2.    Defendants' Statements Concerning the AXS-07 NDA Were False and Misleading ..................................................................................................... 19

            3.    Defendants' Statements Are Not Puffery ................................................... 22

            4.    Plaintiff Adequately Alleges Claims Against Defendant O'Gorman ....... 23

      C.    The Complaint Adequately Alleges Loss Causation ........................................... 24

      D.    The Complaint Adequately Alleges Claims Under Section 20(a) ....................... 25

IV.   CONCLUSION ................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Teach. Ret. Sys. v. Bankrate*,
  18 F. Supp. 3d 482 (S.D.N.Y. 2014)......................................................................................22

*Busic v. Orphazyme A/S*,
  2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) .............................................................10, 11, 12

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014).................................................................................................23

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*,
  423 F. Supp. 2d 348 (S.D.N.Y. 2006).....................................................................................8

*Cohen v. Kitov Pharms. Holds.*,
  2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) .......................................................................25

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).............................................................................................................24

*Freudenberg v. E\*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010)...................................................................................24

*Galestan v. OneMain Holdings, Inc.*,
  348 F. Supp. 3d 282 (S.D.N.Y. 2018)...................................................................................16

*Ganino v. Citizens Utilities Co.*,
  228 F.3d 154 (2d Cir. 2000).................................................................................................11

*Gauquie v. Albany Molecular Rsch.*,
  2016 WL 4007591 (E.D.N.Y. July 26, 2016).....................................................................10, 11

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011).................................................................................10, 12

*Glazer v. Formica Corp.*,
  964 F.2d 149 (2d Cir. 1992).................................................................................................19

*In re Allergan PLC Sec. Litig.*,
  2019 WL 4686445 (S.D.N.Y. Sept. 20, 2019).......................................................................18

*In re Aratana Theraps. Sec. Litig.*,
  315 F. Supp. 3d 737 (S.D.N.Y. 2018)...............................................................................16, 21

*In re AstraZeneca plc Sec. Litig.*,
  2022 WL 4133258 (S.D.N.Y. Sept 12,2022)..............................................................21

*In re Avon Sec. Litig.*,
  2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019)............................................................17

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011).......................................................................24

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004).......................................................................12

*In re Cannavest Corp. Sec. Litig.*,
  307 F. Supp. 3d 222 (S.D.N.Y. 2018).......................................................................23

*In re Delcath Sys., Inc. Sec. Litig.*,
  36 F. Supp. 3d 320 (S.D.N.Y. 2014)................................................................. *passim*

*In re EDAP TMS S.A. Sec. Litig.*,
  2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015)...........................................................21

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013).......................................................................16

*In re Ferro Corp. Sec. Litig.*,
  2007 WL 1691358 (N.D. Ohio June 11, 2007)..........................................................10

*In re Garrett Motion Inc. Sec. Litig.*,
  2022 WL 976269 (S.D.N.Y. Mar. 31, 2022)..............................................................12

*In re Genzyme Corp.*,
  2012 WL 1076124 (D. Mass. Mar. 30, 2012).............................................................19

*In re GPC Biotech AG Sec. Litig.*,
  2009 WL 5125130 (S.D.N.Y. Dec. 29, 2009)............................................................23

*In re The Hain Celestial Grp. Inc. Sec. Litig.*,
  2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019)..............................................................8

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013)..............................................................11

*In re iDreamSky Tech. Sec. Litig.*,
  236 F. Supp. 3d 824 (S.D.N.Y. 2017).......................................................................22

*In re ITT Educ. Servs.*,
  34 F. Supp. 3d 298 (S.D.N.Y. 2014)...........................................................................9

*In re Neurotrope, Inc. Sec. Litig.*,
  315 F. Supp. 3d 721 (S.D.N.Y. 2018)...................................................................................21

*In re NTL, Inc. Sec. Litig.*,
  347 F. Supp. 2d 15 (S.D.N.Y. 2004)....................................................................................13

*In re Regeneron Pharms., Inc. Sec. Litig.*,
  2005 WL 225288 (S.D.N.Y. Feb. 1, 2005)..........................................................................12

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015)....................................................................................19

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001)...................................................................................................13

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)......................................................................11

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .....................................................................10

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016).....................................................................................21, 24, 25

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011)..................................................................................10

*In re WEBMD Health Corp. Sec. Litig.*,
  2013 WL 64511 (S.D.N.Y. Jan. 2, 2013) ............................................................................16

*In re Weight Watchers Int'l Sec. Litig.*,
  2016 WL 2757760 (S.D.N.Y. May 11, 2016) ......................................................................10

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016)...................................................................................................12

*Irvine v. ImClone Sys., Inc.*,
  2003 WL 21297285 (S.D.N.Y. June 4, 2003) .................................................................20, 21

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)........................................................................................................11, 23

*Kendall v. Odonate Theraps., Inc.*,
  2021 WL 3406271 (S.D. Cal. Aug. 4, 2021) ............................................................... *passim*

*Lefkowitz v. Synacor, Inc.*,
  2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019)......................................................................21

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)...................................................................................7, 25

*Meyer v. JinkoSolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)..........................................................................................6

*Nguyen v. Endologix*,
    962 F.3d 405 (9th Cir. 2020) .......................................................................................12

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...................................................................6, 10, 13, 23

*Odeh v. Immunomedics, Inc.*,
    2020 WL 4381924 (D.N.J. July 31, 2020)..................................................14, 16, 21

*Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
    2020 WL 3268531 (S.D.N.Y. June 17, 2020) ...........................................................24

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)...............................................................................................17, 22

*Patel v. L-3 Commc'ns Holds.*,
    2016 WL 1629325 (S.D.N.Y. 2016)..............................................................................7

*Pens. Comm. of Univ. of Montreal Pens. Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006).........................................................................23

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
    89 F. Supp. 3d 602 (S.D.N.Y. 2015)...........................................................................10

*Ret. Sys. of Gov't of V.I. v. Blanford*,
    794 F.3d 297 (2d Cir. 2015)...........................................................................................6

*Rihn v. Acadia Pharms. Inc.*,
    2016 WL 5076147 (S.D. Cal. Sept. 19, 2016)................................................. *passim*

*Rosi v. Aclaris Theraps.*,
    2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021) ............................................................25

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris
    Companies, Inc.*,
    75 F.3d 801 (2d Cir. 1996)............................................................................................8

*Schaeffer v. Nabriva Theraps., plc*
    2020 WL 7701463 (S.D.N.Y Apr. 28, 2020)...............................................................9

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) .........................................................................10

*Setzer v. Omega Healthcare Invs., Inc.*,
    968 F.3d 204 (2d Cir. 2020)..................................................................................................13

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
    348 F. Supp. 3d 313 (S.D.N.Y. 2018)..........................................................................8, 12, 19

*Sinnathurai v. Novavax, Inc.*,
    2022 WL 17585715 (D. Md. Dec. 12, 2022)................................................................ *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................................6, 7, 12

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016) (Mem. 20) ...........................................................................17, 19

*Vallabhaneni v. Endocyte, Inc.*,
    2016 WL 51260 (S.D. Ind. Jan. 4, 2016).................................................................................19

*Venkataraman v. Kandi Tech. Grp.*,
    2022 WL 4225562 (S.D.N.Y. Sept 13, 2022)..........................................................................25

*Wilson v. LSB Indus., Inc.*,
    2017 WL 7052046 (S.D.N.Y. Mar. 2, 2017) ..........................................................................16

*Woodley v. Wood*,
    2022 WL 103563 (S.D.N.Y. Jan. 11, 2022) ..............................................................................8

**Statutes**

15 U.S.C. §78(j)(b) .......................................................................................................................25

15 U.S.C. §78t(a) ..........................................................................................................................25

PSLRA ..........................................................................................................................................16

**Rules**

Fed. R. Civ. P. 8(a) .......................................................................................................................24

Fed. R. Civ. P. 12(b)(6).................................................................................................................6

Lead Plaintiff Evy Gru ("Plaintiff")[1] respectfully submits this Memorandum in opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint (ECF Nos. 41-43).[2]

## I.    INTRODUCTION

Axsome Therapeutics, Inc. ("Axsome" or the "Company") is biopharmaceutical company that develops therapies for central nervous system ("CNS") disorders. During the Class Period, from December 30, 2019 to April 22, 2022, the Company had only two drug candidates that it planned to commercialize in the near term. One those was AXS-07, for the treatment of migraines.

Defendants promised investors that Axsome would submit the New Drug Application ("NDA") for AXS-07 to the Food & Drug Administration ("FDA") by the end of 2020. Then, after delaying its submission twice, Defendants promoted the strength of the application and its prospects for FDA approval. All along, Defendants assured investors that there were no issues with the manufacturing of AXS-07, including in response to specific questions from investment analysts about the topic and in every periodic filing with the SEC that Axsome made during the Class Period. For example, Axsome told investors that its supplier "will be capable of providing sufficient quantities . . . to meet our clinical trial supply needs," and specifically reassured investors, in response to questions from investment analysts, that there were no manufacturing problems with AXS-07. ¶¶182-84; (*see also infra* at 13-14, 17-19).

On April 25, 2022, Axsome announced that the FDA identified problems with the chemistry, manufacturing, and controls ("CMC") of AXS-07 and would therefore be rejecting Axsome's application for approval of the drug. ¶53. Axsome's stock fell almost 22% in reaction to this "obviously disappointing" news, causing substantial losses to its investors. ¶¶54-55.

---

[1] Co-Lead Plaintiff Santoshanand Thakkar has filed a request to withdraw from this action. (*See* Grunfeld Decl. ¶ 2).

[2] ¶ _ references herein are to paragraphs of the Amended Class Action Complaint ("Complaint," ECF No. 37). Defendants' Memo of Law in Support of their Motion (ECF No. 42) is referenced as "Mem." Internal quotations marks, citations, and brackets are omitted, and emphases are added, unless noted otherwise.

While Defendants assured investors about the absence of any manufacturing issues with AXS-07, the Company was actually experiencing severe manufacturing problems. A former Senior Clinical Trial Manager ("CW 1"), who was tasked in early 2021 to manage a new study for AXS-07, reported that the contract manufacturing organization ("CMO") that manufactured AXS-07 was suffering equipment problems that made it unable to produce the drug for an extended period of time. ¶¶68-75. The timing of these problems coincided with Axsome's multiple delays in the submission of the AXS-07 NDA—from the end of 2020 until June 2021—and the subsequent time that the NDA was under review by the FDA. ¶¶72, 74, 77. Defendants' misstatements exposed investors to the substantial risk that AXS-07 would not be approved along the timeline that Defendants represented and that they would suffer significant losses when that fact was revealed or materialized in the FDA's denial of the AXS-07 NDA. Investors were not able to account properly for this risk because, throughout the Class Period, Defendants promoted the AXS-07 NDA and indicated that there were no manufacturing problems with AXS-07.

Each Defendant's scienter is supported by multiple factors. This includes a report from the FDA's inspection of Axsome's facilities in which the Individual Defendants described themselves to the FDA as the people responsible for manufacturing issues and the FDA approval process (¶¶205-09); CW 1's statement that executive management "cut corners" and would have known about the equipment problems that Axsome's vendor was having with manufacturing AXS-07 (¶¶213-14); Defendants' public statements specifically addressing the manufacturing of AXS-07 (¶¶200-02); correspondence with the FDA about the issues with AXS-07 (¶203); Axsome having recently had the NDA for AXS-05 delayed because of CMC issues (¶205); and the importance of AXS-07 to Axsome's business (¶216), among other facts alleged in the Complaint.

The Complaint easily meets the light pleading burden for loss causation, since, among other

allegations, Axsome's stock dropped approximately 22% when the FDA rejected the AXS-07 NDA. Investors were completely surprised by this news because of Defendants' earlier misrepresentations of the issues that led to the FDA's decision. Defendants' argument that this risk was already disclosed is belied by the market's shock at the FDA's denial, as well as the fact that Defendants reassured investors as to the manufacturing of AXS-07 and the status of its NDA instead of disclosing the problems that Axsome was experiencing.

Courts regularly sustain securities claims against pharmaceutical companies raising allegations similar to those here, where the defendants are alleged to have misrepresented problems—including manufacturing or CMC issues—that caused the company to delay its submission of an NDA or increased the risk that the FDA would reject the application. (*See, e.g., infra* at 8, 10, 14, 20-21 (discussing cases)). Defendants argue that their statements were either inactionable or technically true, that they had no independent duty to disclose the manufacturing problems with AXS-07, and that Plaintiff has not adequately alleged the Individual Defendants' knowledge of these issues. But Defendants do not deny the basic fact, identified by CW 1, of Axsome's inability to produce AXS-07 during the crucial period leading up to, and while, its NDA was under review by the FDA. The most straightforward reading of these events is that Defendants misled investors as to the manufacturing problems with AXS-07. It also is simply not plausible that the Individual Defendants were not aware of, or reckless as to, these significant issues with one of only two drugs that contributed to Axsome's value. Plaintiff's allegations are certainly at least as plausible as Defendants' competing inference that they were completely truthful and unaware of Axsome's inability to produce AXS-07 during the Class Period.

## II.    STATEMENT OF FACTS

Axsome develops therapies for CNS disorders. ¶2. The first two NDAs that Axsome

3

submitted to the FDA were for AXS-05 and AXS-07. ¶30. Axsome's ability to win approval for and commercialize these therapies was critical its operations and potential financial success because they were part of its "core CNS portfolio" and the only two drugs that the Company planned to commercialize in the near term. ¶¶30, 32.

Chemistry, manufacturing, and controls are an integral part of a drug's development and FDA approval. ¶59. Drug developers must demonstrate the manufacturing process for a drug produces a consistent product for both clinical trials and for commercialization. ¶¶3, 59, 61. CMC issues include "inadequacies with the manufacturing process," such as "the facility's manufacturing process" and "supply shortages." ¶85. Axsome uses independent CMOs to manufacture its drug candidates and to supply clinical trials. ¶33. During the Class Period, Axsome kept its investors in the dark regarding significant manufacturing problems at a CMO responsible for manufacturing AXS-07. ¶¶4, 73. Defendants knew of the CMO's equipment problems and the impact they would have on the timing of FDA approval. ¶¶4-5, 71-72, 81, 213.

Defendants' awareness of the importance of CMC issues for a drug's approval was heightened because the FDA did not approve an NDA for AXS-05 in July 2021 because of CMC issues. ¶¶89, 97-98, 102. Despite this previous experience, Defendants provided investors an unrealistic timeline for the submission of the AXS-07 NDA, failing to disclose the manufacturing issues, including equipment problems, that plagued the development of AXS-07. Moreover, the Individuals Defendants themselves told the FDA of their specific, individual roles in the drug manufacturing and FDA approval processes. ¶¶205-09.

Starting in December 2019, Defendants stated that Axsome would be submitting the NDA in the "second half of 2020" and that it was "on track" to submit it in the fourth quarter. ¶¶40, 41, 46, 110, 114, 141. On November 5, 2020, Defendants announced they now anticipated that the

4

NDA would be submitted to the FDA in the first quarter of 2021, because they needed to add "supplemental manufacturing information to ensure a robust submission package." ¶¶47, 145, 148. On this news, Axsome's stock price fell almost 7%. ¶190. Defendants, however, downplayed the delay, attributing it to a minor postponement because of the need to provide "standard information" rather than indicating that there were actual problems at the manufacturing facility. ¶¶48, 82. Axsome submitted the AXS-07 NDA in June 2021, months after the initial deadline. ¶50.

On April 25, 2022, Defendants stunned the market by announcing that the FDA was rejecting the NDA for AXS-07, resulting in a stock price decline of almost 22%. ¶194. The FDA denied the NDA due to "unresolved" CMC issues. ¶193. Days later, Tabuteau and Jacobson discussed that the FDA's rejection related "to the drug product and manufacturing process." ¶¶84, 202. Analysts noted this was a "surprise setback" in Axsome's inability to address CMC deficiencies, particularly given the previous CMC issues with AXS-05's approval. ¶¶90-93, 204.

Although the FDA's rejection was a surprise to the market, it should not have been to Defendants. They knew about the manufacturing delays and their impact on the AXS-07 NDA. This is corroborated by former Axsome employees. CW 1, a former Axsome Senior Clinical Trial Manager, was tasked in early 2021 to manage a new study for AXS-07 scheduled for April 2021. ¶¶67-69.[3] This study was still delayed as of February 2022, when CW 1 left Axsome. ¶¶69, 72. The study was delayed because Axsome did not have sufficient supply of AXS-07 for the study, as its CMO was unable to manufacture the drug due to equipment problems for the entire time the study was delayed. ¶¶70-71. Furthermore, Defendant Tabuteau explained that the manufacturer of Axsome's "clinical trial supply" was "the same CMO that we're using for commercial production." ¶133. The CMO's inability to produce AXS-07 for the study that CW 1 described

---

[3] CW 1 reported to Amanda Jones, Executive Director of Clinical Research, who reported to Tabuteau. ¶¶210-212.

thus also meant that Axsome could not produce the drug for commercial use. Axsome was therefore completely unable to produce AXS-07 leading up to submission of its NDA and while the NDA was under review. The CMC issues that the FDA identified in the Complete Response Letter for AXS-07 involved the same problems that CW 1 identified. ¶74. According to CW1, Axsome's executive management knew about these issues. ¶¶75-76.

CW 1 also observed that Axsome's executive leadership prioritized profits over patients, "cut corners," and rushed to meet milestones. ¶87. Similarly, CW 3, who had a senior role in Axsome's Clinical Operations, noted leadership's personal involvement in the FDA approval process, particularly their "extremely secretive" interactions with the FDA. ¶215. CW 3 participated in a June 2021 FDA inspection, along with Tabuteau, Jacobsen, O'Gorman, and Laliberte. ¶¶206-07, 215.

## III.    ARGUMENT

When reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014).

### A.    The Complaint Adequately Alleges a Strong Inference of Scienter

A complaint adequately pleads scienter where "*all* of the facts alleged, taken collectively," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007), support a strong inference (a) that "defendants had both motive and opportunity to commit fraud" *or* (b) "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Knowledge or "access to information suggesting that their statements were not accurate" suffices to plead recklessness. *Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). No "smoking gun" is necessary, but a complaint's scienter allegations suffice where the inference is "cogent and at least as compelling as any

opposing inference." *Tellabs*, 551 U.S. at 322-24.

The Complaint adequately alleges Axsome's scienter based on the Individual Defendants' scienter, as well as that of "management-level employees" that knew of the problems with manufacturing AXS-07 while Axsome made false and misleading statements on that topic, regardless of whether those employees "made the material misstatements at issue." *Patel v. L-3 Commc'ns Holds.*, 2016 WL 1629325, at \*14 n.37 (S.D.N.Y. 2016); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177-78 (2d Cir. 2015).

### 1.    Defendants' Conscious Misbehavior and Recklessness

An individual defendant making decisions concerning the topic at issue supports their scienter. *See In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 335 (S.D.N.Y. 2014) (Schofield, J.) (denying dismissal, ruling complaint pleaded scienter based on allegation that "all decisions came from" the CEO). ***The Individual Defendants admitted that they were involved in making decisions concerning CMC issues and NDA filings.*** These activities, by definition, exposed them to the manufacturing problems that plagued AXS-07 to the point that the Company was not able to produce the drug while the NDA was under submission.

For example, Defendant Tabuteau told the FDA that he is "the most responsible person" for the Company and "is and has been involved[d] in almost every aspect associated with the development, implementation, and realization of" Axsome's "drug development projects," including "product development and regulatory strategies;" "Clinical development and clinical trial outlook and implementation;" "Protocol development and review;" "NDA filings;" and "Oversight [of] all company departments and personnel." ¶205. Laliberte was responsible for "chemistry manufacturing and controls," "Quality assurance/product strategy," and "research and operations." ¶¶206, 208. Jacobsen was responsible for "Operations;" Pizzie for "Finance;" and

7

O'Gorman for "overseeing and providing medical monitoring services." ¶¶206-07, 209.[4] Similarly, CW 3 noted the personal involvement of Axsome's leadership in the FDA approval process, describing them as "extremely secretive" about the Company's interactions with the FDA. ¶215. Given these admissions to the FDA, and observations by a Company insider, the Complaint raises a strong inference that the Individual Defendants knew, or were at the very least willfully blind as to, the manufacturing issues with AXS-07. *See Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018) (holding "evidence depicting Defendants' central roles in" drug development and "drafting of its NDA" supports scienter); *Sinnathurai v. Novavax, Inc.*, 2022 WL 17585715, at *22 (D. Md. Dec. 12, 2022) (denying dismissal, finding senior officers "would necessarily have been aware of" FDA findings); *Delcath Sys.*, 36 F. Supp. 3d at 335.

Even as the core operations doctrine applies here (*see infra* at 11), Defendants mischaracterize these allegations as a "core operations" theory, confusing the importance of AXS-07 to Axsome with the actual day-to-day tasks in which Defendants' admitted they engaged. (Mem. 11-12).[5] Defendants' detailed descriptions to the FDA of their jobs during the drug manufacturing and approval process particularize their actual control over the very processes involved in their false and misleading statements. Defendants were either directly involved in those activities or were reckless in failing to be aware of them. *See City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 361 (S.D.N.Y. 2006) (finding support for

---

[4] The FDA report detailing these tasks related to an inspection for AXS-05 (*see* Mem. 11), but there is no reason why Defendants' responsibilities would have changed for AXS-07. Axsome filed the AXS-07 NDA during the same time period and AXS-07 and AXS-05 were the first two drugs for which Axsome submitted NDAs. (¶¶28, 30, 95-97).

[5] Defendants' cases are inapposite, because the complaints in those cases neither alleged that the defendants were personally involved in the underlying conduct at issue nor contained additional supporting allegations. (*See* Mem. at 11-12 (citing *Woodley v. Wood*, 2022 WL 103563, at *10 (S.D.N.Y. Jan. 11, 2022) (rejecting argument that restatement, itself, is evidence of scienter); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) (affirming dismissal for failure to adequately allege falsity, without ruling on scienter); *In re The Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *14, 17 (E.D.N.Y. Mar. 29, 2019) (plaintiffs failed to adequately allege underlying channel stuffing scheme that formed the basis for their claims)).

scienter included repeated statements about company's "extensive structure for risk monitoring").

The FDA's identification during the NDA review process of manufacturing problems with AXS-07 also supports a strong inference of scienter. *See Delcath Sys.*, 36 F. Supp. 3d at 335. During its review, the FDA alerted Axsome that manufacturing problems jeopardized the approval of AXS-07, and those issues that were "unresolved" as of April 22, 2022. ¶¶53, 56, 203.

Defendants argue that the Complaint fails to allege when they were aware of the manufacturing issues or whether Axsome was capable of remedying them. (Mem. 13-14). They take issue, however, with the plain meaning of the FDA's characterization in April 2022, when it rejected the NDA, of the issues as "unresolved." ¶53. It is cogent, and at least equally compelling, that "unresolved" means that the FDA had mandated that Axsome resolve the issues before March 1, 2022 (the date of Defendants' last alleged misstatement (¶¶178-82)), which was less than two months earlier and after the AXS-07 NDA was already under submission for approximately nine months. *See In re ITT Educ. Servs.*, 34 F. Supp. 3d 298, 310 (S.D.N.Y. 2014) (holding the court need not "identify the precise moment at which the culpable inference overtook the innocent one").

Moreover, whether Axsome could have resolved the CMC issues is irrelevant.[6] Defendants misrepresented manufacturing issues that were material to AXS-07's prospects for FDA approval even though those issues persisted for an extended period of time, at least from when Defendants first postponed submission of the NDA in November 2020 through the FDA's determination on April 22, 2022 that it would reject the NDA because of these issues. (*See infra* at 15). Defendants were, at the very least, severely reckless in making repeated, positive statements about the NDA and manufacturing of AXS-07.

Defendants' scienter is also supported by additional evidence. CW 1, who was involved in

---

[6] In *Schaeffer v. Nabriva Theraps. plc*, 2020 WL 7701463, at *10, 13 (S.D.N.Y. Apr. 28, 2020) (Mem. 10, 14), the plaintiffs did not "plead extra facts to render their account regarding the extent of the cGMP issues plausible."

9

a study that was delayed because Axsome was completely unable to manufacture AXS-07, attested to the fact that the Company's executive management would have known about the equipment problems that Axsome's vendor was having with AXS-07. ¶¶75, 213. Moreover, CW 1 observed that Axsome's executive leadership prioritized profit over patients, "cut corners," and was always in a rush to meet milestones. ¶¶87, 214. CW 1 was in a position to make this assessment because the witness reported to senior directors at Axsome who, in turn, reported to Defendant Tabuteau. ¶¶68, 210-11. The Complaint thus describes CW 1 "with sufficient particularity to support the probability that" this individual "would possess the information alleged." *Novak*, 216 F.3d at 314.[7]

Further supporting a strong inference of scienter are "public statements evinc[ing] familiarity with the data" at issue." *Delcath Sys.*, 36 F. Supp. 3d at 335; *Busic v. Orphazyme A/S*, 2022 WL 3299843, at *23 (N.D. Ill. Aug. 11, 2022) (same); *Rihn v. Acadia Pharms. Inc.*, 2016 WL 5076147, at *9 (S.D. Cal. Sept. 19, 2016) (defendants' statements about "CMC issues" supported the inference that they "had access to the information at issue"); *Gauquie v. Albany Molecular Rsch.*, 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016) (communications about issue supports the inference that defendants knew contradictory information); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 906 (E.D. Pa. 2018) (comments about clinical data confirms "intimate knowledge of the data"). In response to analysts' questions about the manufacturing of

---

[7] *See also Delcath Sys.*, 36 F. Supp. 3d at 335 (holding CWs "stated that all decisions came from" the CEO); *Novavax*, 2022 WL 17585715, at *21-22 (crediting CW allegations "that the relevant information generally flowed to senior company officials"); *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 615–16 (S.D.N.Y. 2015) (crediting witness and holding "there is no baseline requirement" of contact with a defendant). Defendants' cases are inapposite, dealing with CWs that had less specific knowledge and lacked corroboration. (Mem. 8-11 (citing *In re Weight Watchers Int'l Sec. Litig.*, 2016 WL 2757760, at *6-7 (S.D.N.Y. May 11, 2016) (CWs were "not in a position to know" information and complaint lacked facts undermining alleged misstatements); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) (Schofield, J.) (CWs had no contact with company employees); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352, 358 (S.D.N.Y. 2011) (not crediting vague allegations that omitted the region of a large bank that CW supervised); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 594-95 (S.D.N.Y. 2011) (inadequately described CWs did not work for company); *In re Ferro Corp. Sec. Litig.*, 2007 WL 1691358, at *12 (N.D. Ohio June 11, 2007) (CW allegations not based on personal knowledge)).

AXS-07, Tabuteau and Jacobson reassured investors that there was no reason for concern, indicating that they knew of, or were willfully blind about, any material CMC issues. ¶¶78, 82-84, 148-50, 155, 200-01; *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *16 (S.D.N.Y. Nov. 26, 2018) (holding attempts to placate analyst concerns support scienter).

Still further, AXS-07 was essential to Axsome's operations and finances, making it a "core operation," supporting a strong inference of scienter. *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at *26 (S.D.N.Y. Dec. 2, 2013). Indeed, Defendants stated that AXS-07 was part of its "core CNS portfolio" of five therapies, only the second NDA that Axsome submitted, and, critically, one of only two drugs that contributed any significant value to the Company. ¶¶28, 30, 32, 216. The Individual Defendants were the most senior executives responsible for Axsome's drug development process and therefore should have known about the CMC issues with AXS-07. *See Acadia Pharms.*, 2016 WL 5076147, at *9 (denying dismissal, finding "absurd" that senior executives did not know of issues given importance of drug and role of manufacturing in the NDA); *Orphazyme A/S*, 2022 WL 3299843, at *22-23 (denying dismissal, finding it "unlikely that" CEO and CMO were "unaware" of FDA communications concerning company's "sole drug candidate"); *Novavax*, 2022 WL 17585715, at *22; *Gauquie,* 2016 WL 4007591, at *2.

### 2.    <u>Defendants' Motive to Commit Fraud</u>

Once this Court finds conscious misbehavior or recklessness, it need not find motive as well. *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 170 (2d Cir. 2000); *Delcath Sys.*, 36 F. Supp. 3d at 334 n.4. Defendants thus cannot rebut a strong inference of scienter by arguing that no motive exists because they increased their Axsome holdings.

These arguments also fail for the following additional reasons. ***First***, Defendants did not increase their actual holdings of Axsome stock during the Class Period. (Mem. 6-7). The "shares"

11

that Defendants supposedly acquired were "unexercised options"[8] or restricted stock units whose shares Defendants would not receive until "seven (7) years from the [grant] date." (*See* McDonough Decl., Ex. K at § IV and Form 4s in Exs. L to N (ECF Nos. 43-11 to 14)).

***Second***, in the face of strong circumstantial evidence of conscious misbehavior or recklessness, Defendants cannot evade liability by speculating about the rationale of the alleged fraud. *Orphazyme A/S*, 2022 WL 3299843, at \*24 (explaining defendants "could still have hoped to benefit" if a "resubmitted NDA were ultimately approved"); *see also Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 97 (2d Cir. 2016) (holding alleged fraud that was revealed after two months was "hardly implausible").[9]

***The Allegations as a Whole Support a Strong Inference of Scienter.*** The inference of scienter need only be "at least as compelling" as any non-culpable inference on a "holistic" basis. *Tellabs*, 551 U.S. at 324-26. A common-sense review of the allegations as a whole creates an inference that is at least as strong as Defendants' assertion that they were not aware of, or recklessly blind as to, severe manufacturing problems with one of Axsome's two primary drug candidates while its NDA was under submission. *See Delcath Sys.*, 36 F. Supp. 3d at 335-36 (holding "allegations taken together" adequately allege "Defendants were reckless"); *Intellipharmaceutics Int'l*, 348 F. Supp. 3d at 326 (same); *Acadia Pharms.*, 2016 WL 5076147, at \*9 (same).

**B.      The Complaint Adequately Alleges False and Misleading Statements**

The Complaint alleges that Defendants made misstatements concerning Axsome's (1)

---

[8] These options enabled Defendants to purchase additional shares. During the Class Period, nearly all of them did not and, in any event, the options did not fully vest until 2024 or until the realization of "performance based milestones."

[9] Defendants' cases are distinguishable. (*See* Mem. 6-7 (citing *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) (addressing claims relating to company's bankruptcy); *In re Regeneron Pharms., Inc. Sec. Litig.*, 2005 WL 225288, at \*22-23 (S.D.N.Y. Feb. 1, 2005) (each of the "defendants increased their" holdings and plaintiffs adequately alleged scienter based on "conscious recklessness"); *Glaser*, 772 F. Supp. 2d at 593 (defendant owned "close to ninety percent of" company's shares); *Nguyen v. Endologix*, 962 F.3d 405, 416-17 (9th Cir. 2020) (complaint also did not plead conscious misbehavior or recklessness); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (addressing "Plaintiffs' allegations of insider trading")).

manufacturing of AXS-07, (2) timing for submission of the AXS-07 NDA, and (3) support for approval of the NDA. All of these statements were false and misleading in light of the manufacturing problems that prevented the approval and commercialization of AXS-07 along the timeline that Defendants represented. In addition to making material misrepresentations about CMC issues, once Defendants chose to speak on these topics, they were duty-bound to disclose the CMC issues to avoid a false impression about the timing and support for the NDA. *See Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 213-14 (2d Cir. 2020) (holding there is a duty to disclose where a statement "would otherwise be inaccurate, incomplete, or misleading").

Plaintiffs need not plead "detailed evidentiary matter," *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001), but merely enough facts "to support a reasonable belief" that Defendants' statements were materially false or misleading. *Novak*, 216 F.3d at 314 n.1. The Complaint does this for each specifically alleged false and misleading statement.[10]

### 1.    Defendants' Manufacturing Statements Were False and Misleading

Defendants made many statements during the Class Period concerning the manufacturing of AXS-07 and the CMC component of the AXS-07 NDA. ¶¶123-24, 133, 148-50, 155, 163-64, 172-73, 178, 183-85. For example, Axsome disclosed in every annual 10-K that "[w]e believe that our existing suppliers of our product candidate active pharmaceutical ingredients and finished products will be capable of providing sufficient quantities of each to meet our clinical trial supply needs." ¶¶121, 158, 182-84. Similarly, Defendants stated that Axsome's "manufacturers" might "fail to produce our product candidates in the volumes that we require on a timely basis," which could lead to "delays in the development and commercialization of" its products or "delays in

---

[10] Defendants' accusation of "puzzle pleading" (Mem. 2, 20) is particularly misplaced because the allegations here all focus on the issue of the manufacturing problems with AXS-07. *See In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 22 (S.D.N.Y. 2004) (rejecting "puzzle pleading" argument because plaintiffs identified the date, source, speaker, and reasons why statements were misleading).

obtaining sufficient quantities of our product candidates for us to meet commercial demand or to advance our clinical trials." ¶¶126-27, 139, 144, 153, 158, 162, 167, 177, 182, 185.

The Complaint particularizes that these statements were false because Defendants knew about manufacturing problems with Axsome's "existing suppliers" for a planned study and therefore did not "believe that our existing suppliers . . . will be capable of providing sufficient quantities of each to meet our clinical trial supply needs." ¶¶121-22, 183-84. These problems were also *already* causing "delays in the development and commercialization of" AXS-07 and preventing Axsome from "obtaining sufficient quantities" of the product when Defendants made these statements. ¶¶126-28, 185.

In addition to being false on their face, these statements were misleading because "when a pharmaceutical company makes statements about its product, the company is required to disclose information that would render those statements not misleading." *Delcath Sys.*, 36 F. Supp. 3d at 332-33 (denying dismissal, ruling defendants may not selectively disclose trial results without "additional facts that would cast those results in a more negative light"); *see also Acadia Pharms.*, 2016 WL 5076147, at *6 (denying dismissal, finding statements about NDA misleading "without mentioning" lack of "meaningful assessment of the manufacturing and quality assurance systems"); *Odeh v. Immunomedics, Inc.*, 2020 WL 4381924, at *6 (D.N.J. July 31, 2020) (positive statements about FDA approval process, including that "manufacturing validation runs, were yielding positive results," were actionable in light of data integrity breach that "could seriously jeopardize" FDA approval); *Novavax*, 2022 WL 17585715, at *14-16 (statements discussing manufacturing status that "left out another important factor in the delay" were actionable because company "faced significant manufacturing concerns and thus was facing delays"); *Kendall v. Odonate Theraps., Inc.*, 2021 WL 3406271, at *5 (S.D. Cal. Aug. 4, 2021) (omitted information

14

rendered statements misleading because "the undisclosed reality was materially different"). !

CW 1 makes clear that Axsome was unable to produce "sufficient quantities of" AXS-07 "to meet our clinical trial supply needs," which made Defendants' statements on the topic false and misleading. ¶¶ 69-74, 121-22, 183-84. Axsome's manufacturing problems also went even further. While discussing CMC issues related to AXS-07 on May 8, 2020, Defendant Tabuteau explained that Axsome was "manufacturing our clinical trial supply at commercial scale and also at the same CMO that we're using for commercial production." ¶133. This means that the CMO's inability to produce AXS-07 for the study that CW 1 described also made Axsome unable to produce AXS-07 in "sufficient quantities . . . to meet commercial demand." ¶185.

Given how the timing in Axsome's delay in submitting the AXS-07 NDA aligns with CW 1's description of the manufacturing problem that Axsome was experiencing for a marketing study that CW 1 was tasked to start managing in early 2021 (¶¶69, 77-78, 82-83), the most likely (and undoubtedly a plausible) explanation is that Axsome was experiencing these problems the entire Class Period—and certainly during the time leading up to its initial delay of the NDA on November 5, 2020 "to allow for inclusion of supplemental manufacturing information" (¶¶47-48, 82-83). And while CW 1 left the Company in February 2022, it is reasonable to infer that these issues remained when the FDA told Axsome on April 22, 2022, that issues were still "unresolved" because of "CMC data pertaining to the drug product and manufacturing process." ¶¶53, 58, 67. This conclusion is supported even further because the manufacturing problem that CW 1 described had persisted for so long and CW 1 stated that the CMC issues that the FDA identified when it rejected the application for AXS-07 involved this same problem. ¶¶69-74.

Defendants argue that their statements about the ability of Axsome's suppliers to provide sufficient quantities of AXS-07 are protected forward-looking or statements of opinion. (Mem.

15-16, 19-21). But these statements do not qualify for the first prong of the PSLRA safe harbor for forward-looking statements (or the related "bespeaks caution" doctrine), because Defendants have not identified any "meaningful cautionary language" concerning these statements. Statements framed as "risk disclosures" are not only unavailing, but are also independently "misleading where the company warns only that a risk may impact its business when that risk has already materialized." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013). The only purported cautionary language that Defendants point to for these manufacturing statements noted that Axsome "may face delays" if its manufacturers "fail to produce our product candidates in the volumes that we require on a timely basis." (Mem. 16).[11] These statements are independently actionable because the risk that they portrayed had already materialized, as at that time, Axsome's CMO could not produce enough AXS-07 even to complete clinical trials. *See Immunomedics*, 2020 WL 4381924, at *6 (holding risk disclosure was actionable because it "framed a data breach as a potential risk when such a risk had already materialized").

Defendants' only argument as to the second prong of the safe harbor (for their manufacturing statements and their statements concerning the timeline and support for the AXS-07 NDA) repeats their scienter arguments. (Mem. 19). Defendants had knowledge of the falsity of their statements for the reasons discussed above. (*See supra* at 7-11).

Furthermore, the safe harbor "does not protect material omissions," including "omissions that would make the challenged statements misleading to a reasonable investor." *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 303-04 (S.D.N.Y. 2018) (quoting *Wilson v. LSB*

---

[11] The cases that Defendants cite, unlike here, dealt with risks that were specifically disclosed and did not involve risk disclosures that were themselves independently false and misleading. (*See* Mem. at 16 (citing *In re Aratana Theraps. Sec. Litig.*, 315 F. Supp. 3d 737, 757, 759-60 (S.D.N.Y. 2018) (defendants disclosed need for FDA approval of third-party manufacturer); *In re WEBMD Health Corp. Sec. Litig.*, 2013 WL 64511, at *9 (S.D.N.Y. Jan. 2, 2013) (specific risk that resulted in failure to meet revenue forecast "was publicly available common knowledge")).

*Indus., Inc.*, 2017 WL 7052046, at \*3 (S.D.N.Y. Mar. 2, 2017)). Defendants are therefore not entitled to safe harbor protection for their omission of the manufacturing problems with AXS-07.

In addition, Defendants argue that certain of their statements about the capabilities of Axsome's existing suppliers are inactionable statements of opinion. (Mem. 20-21). Under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015), a statement of opinion is actionable if it: (i) is not sincerely held (*id.* at 184); (ii) contains an embedded or "underlying" fact that is false (*id.* at 185-86); or (iii) omits a fact that renders it misleading to an ordinary investor (*id.* at 189-90). Defendants' statements about the capabilities of Axsome's suppliers could not possibly have been sincerely held given their knowledge of the complete shutdown of the Company's AXS-07 manufacturer when their statements were made, as discussed in connection with scienter above. But regardless of what Defendants believed, their statements are independently actionable under *Omnicare*'s third prong, because they omitted that crucial fact that made their statements misleading to an ordinary investor. *See Odonate*, 2021 WL 3406271, at \*5 (holding opinion that "side effects were 'manageable'" was actionable because it omitted "emergency change in protocol" that was "implemented to manage side effects"); *In re Avon Sec. Litig.*, 2019 WL 6115349, at \*17 (S.D.N.Y. Nov. 18, 2019) (holding opinions that conflict with omitted information are actionable regardless of defendants' personal beliefs).[12]

Defendants also made additional false and misleading statements concerning the manufacturing of AXS-07 and the CMC component of its NDA that cannot possibly be described as forward-looking or opinion statements. These include statements promoting Axsome's using the same manufacturer for clinical trials and commercialization so that "there's no scale up that needs to be done" (¶ 133), Axsome's decision to delay submission of the AXS-07 NDA to the first

---

[12] *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (Mem. 20) is distinguishable because it involved a disagreement over data interpretation and not an established inability to manufacture. (*See also infra* at 19 (discussing *Sanofi*)).

quarter of 2021 "to allow for inclusion of supplemental manufacturing information to ensure a robust submission package" that was "standard information" and not the result of any issues with "the manufacturing or stability issue or anything like that" (¶¶145-46, 148-50), needing to "wait[] on one vendor report" for the AXS-07 NDA (¶155), discussing "the manufacturing process for AXS-07" as compared to AXS-05 (¶¶163-64), reassuring investors concerning the FDA's inspection of a manufacturing site for AXS-07 (¶¶172, 178), and downplaying any concern that AXS-07 suffered from CMC problems as did AXS-05 (¶¶173). These statements were similarly misleading because they discussed manufacturing and CMC issues related to AXS-07 while omitting that Axsome was unable to produce the drug. Even as the inability to produce AXS-07 dragged on for months after its NDA was under review, Defendants continued to reassure investors that they did not have any reason to be concerned with manufacturing issues related to AXS-07.

These statements are not forward-looking because they plainly described Axsome's current manufacturing capabilities for, and the current status of, CMC issues related to AXS-07. The most that Defendants argue as to these statements is that they were "accurate statements of fact" or that they did not have a duty to disclose the CMC issues with AXS-07. (Mem. 19-20, 21-23). But Defendants ignore the rule that "even a statement that is literally true when viewed in isolation can be misleading in context if it leaves investors with a false impression." *In re Allergan PLC Sec. Litig.*, 2019 WL 4686445, at *23 (S.D.N.Y. Sept. 20, 2019).[13] Even if certain of these statements were technically "truthful," they were "incomplete" and "misleading" because they left out crucial information that was needed "to allow a reasonable investor to make an accurate assessment" of Defendants' reassurances as to the manufacturing of AXS-07. *Delcath Sys.*, 36 F. Supp. 3d at 332; *see also Odonate*, 2021 WL 3406271, at *6 (holding that even if defendants' statements "may have

---

[13] In *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *13 (S.D.N.Y. Apr. 2, 2020) (cited by Mem. 20), issues in a single business line did not contradict a plan for company-wide margin expansion or to improve the business at issue.

been true, it is plausible that a reasonable investor would consider the omission" of negative trial information "to be material and misleading"); *see supra* at 14.

Defendants cite the District Court's opinion in *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510 (S.D.N.Y. 2015), to argue that they had no duty to disclose "interim" reports "from the FDA as to drugs under review." (Mem. 22).[14] But the false statements at issue here are not premised on a disagreement with the FDA over "Defendants' interpretation of . . . data," as was the case in *Sanofi*, but rather on Defendants' false and misleading descriptions of Axsome's manufacturing capabilities and CMC components of AXS-07, for which "there was no such data to interpret" because Defendants concealed Axsome's inability to manufacture AXS-07 during the Class Period. *Intellipharmaceutics Int'l*, 348 F. Supp. 3d at 325 (distinguishing *Sanofi*); *see also Delcath Sys.*, 36 F. Supp. 3d at 333 (holding that "[t]he allegations here do not involve differing interpretations of disclosed data, but rather data that was not disclosed").[15]

## 2. Defendants' Statements Concerning the AXS-07 NDA Were False and Misleading

Defendants also made false and misleading statements that Axsome was "on track" to submit the NDA for AXS-07 on the promised timeline (¶¶114, 129, 131, 140-41, 148, 155, 159; *see also* ¶¶110-11, 113, 147, 154) and that promoted its prospects for FDA approval (¶¶148, 154, 167-69, 171, 176-77, 179).[16] These statements were false and misleading because they told investors that there were no hurdles for the AXS-07 NDA while concealing manufacturing

---

[14] *Glazer v. Formica Corp.*, 964 F.2d 149, 156-57 (2d Cir. 1992) (cited by Mem. 22-23) addressed the corporate buyout context and held merely that there is no freestanding duty to disclose all material information.

[15] Defendants' other cases similarly dealt with disagreements over interim FDA feedback rather than the omission of information that rendered affirmative statements misleading. (*See* Mem. 22 n.32 (citing *Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260, at *13 (S.D. Ind. Jan. 4, 2016) (concluding "FDA's concerns were not as severe as the Plaintiff asserts"); *In re Genzyme Corp.*, 2012 WL 1076124, at *10-11 (D. Mass. Mar. 30, 2012) (interim FDA feedback did not support scienter for "statements about the [drug] approval process" absent "more specific" allegations)).

[16] Defendants also made misstatements concerning CMC aspects of all NDAs without noting the manufacturing problems that impacted the AXS-07 NDA. ¶¶123-24, 137, 144, 153, 158, 162, 167, 177, 182.

19

problems that forced Axsome to delay the NDA twice and caused the FDA to reject it.

It is misleading for Defendants to portray the timeline for submission of an NDA, or the prospects for its approval, in a positive light while omitting negative information that was likely to cause delays or lead to rejection of the NDA. For example, *Acadia Pharmaceuticals* held that statements that a company was "'on track' to submit the NDA" by a certain date were misleading because the sponsor's "third-party contract manufacturers"—like Axsome's—could not support "commercial-scale operations" that were necessary for the CMC section of the NDA. 2016 WL 5076147, at \*3, 5-6; *see also Novavax*, 2022 WL 17585715, at \*16 (addressing problems jeopardizing "ability to obtain regulatory approval and produce" at scale).

In addition to misrepresenting that Axsome was "on track" to submit the AXS-07 NDA, Defendants misstated its prospects for approval after the NDA was under review. Even at the end of 2021 and through March 2022, when Axsome's inability to produce AXS-07 had dragged on for many months, Defendants continued to promote the NDA as "supported by the positive results from" Axsome's clinical trials and "positioning Axsome to potentially commercialize" the drug "in the near to intermediate term," as well as the upcoming FDA "target action date of April 30, 2022." ¶¶167, 169, 171, 176-79.

These statements gave investors a highly misleading impression of the level of risk associated with the AXS-07 NDA. Such statements are actionable when defendants omit significant information that undercuts their positive descriptions of the FDA approval process. *See Irvine v. ImClone Sys., Inc.*, 2003 WL 21297285, at \*1 (S.D.N.Y. June 4, 2003) (statement that company "reasonably expected approval by the FDA in early 2002" was actionable where defendants knew "it was not reasonably foreseeable that the FDA would approve Erbitux on that time line"); *Odonate*, 2021 WL 3406271, at \*5 (defendants' statements, including that they were

"to complete enrollment of [a Phase 3 study] in the second half of 2019," gave a misleading "impression that [the study] was proceeding as expected, with no significant setbacks"); *Immunomedics*, 2020 WL 4381924, at *6 (positive statements about FDA review were actionable based on awareness of data breach that "could seriously jeopardize" approval); *Novavax*, 2022 WL 17585715, at *16 (same as to "contamination and purity issues . . . that were causing delays").

Defendants argue, as with their manufacturing statements, that their statements concerning the timeline for, and chances of approval of, the AXS-07 NDA are not actionable because they were forward-looking statements protected by the "safe harbor," opinion statements, "accurate statements of fact," and that Defendants did not have any duty to disclose. (Mem. 17-23). But statements describing the current status of the NDA submission process as "on track," or the existing level of support for the NDA currently under review, are statements of present or historical fact describing the current status of the NDA. *See Acadia Pharms.*, 2016 WL 5076147, at *6 (holding "'on track' assurances were representations about the current state of affairs" of "the NDA process"); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246 (2d Cir. 2016) (holding "present representations" may be "embedded within statements that Vivendi deems forward-looking").

Even if certain of these statements are forward looking, the safe harbor does not apply because the cautionary statements that Defendants cite were just boilerplate disclosures that apply to every FDA "regulatory approval process." (Mem. 17-18); *ImClone*, 2003 WL 21297285, at *1 (disclosure of risks associated with FDA review process is not "sufficient cautionary language").[17]

Defendants also mischaracterize their statements about the AXS-07 NDA as opinion

---

[17] Defendants' cases dealt with completely different situations. (*See* Mem. 17-18 (citing *Lefkowitz v. Synacor, Inc.*, 2019 WL 4053956, at *9 (S.D.N.Y. Aug. 28, 2019) (addressing knowledge prong of safe harbor); *Aratana*, 315 F. Supp. 3d at 760 (*see supra* at 16 n.10); *In re AstraZeneca plc Sec. Litig.*, 2022 WL 4133258, at *7 (S.D.N.Y. Sept. 12, 2022) (holdings statements were not rendered misleading based on omissions of "granular" dosage information); *In re Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 734 (S.D.N.Y. 2018) (not addressing safe harbor); *In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at *10-11 (S.D.N.Y. Sept. 14, 2015) (holding certain evidence "support[ed] Defendants' positive interpretation of the data" and defendants disclosed negative data that was allegedly omitted)).

21

statements. (Mem. 20). But the statements that they reference did not contain opinion phrases, such as "I believe" or "I think." *Omnicare*, 575 U.S. at 187. The only statement that specifically referenced what Axsome "believes" used that characterization about a specific Phrase 3 trial, not the timeline for submission of the NDA or the facts that Axsome subsequently promoted to support its approval and commercialization. *Compare* ¶118 (cited by Mem. 20) *to* ¶¶154, 167-69, 171, 176-77, 179. And even if any of these statements are opinions, they are actionable under *Omnicare* for the independent reasons that (1) Defendants could not possibly have believed them and (2) they were contradicted by the manufacturing problems that Defendants omitted. (*See supra* at 17); *In re iDreamSky Tech. Sec. Litig.*, 236 F. Supp. 3d 824, 833 (S.D.N.Y. 2017) (holding failure to disclose "then-known [product launch] delays" was misleading even "in the context of an opinion").

Next, Defendants argue that certain of their statements concerning the AXS-07 NDA were "accurate statements of fact" or that they did not have a duty disclose Axsome's manufacturing problems. (Mem. 19-20, 21-23). In addition to cherry-picking language that does not mention the NDA when many of Defendants' statements did just that (*see* Mem. 19-20), Defendants ignore the basic rule that once Defendants choose to speak on a topic, they must do so without misleadingly omitting significant information. (*See supra* at 14, 18-19).

### 3.   Defendants' Statements Are Not Puffery

Defendants argue that certain of their statements are puffery. (Mem. 21). But the cases cited above show that courts regularly hold that precisely the types of statements at issue here are actionable. Moreover, statements are not puffery when they provide "a completely misleading description of" events. *Ark. Teach. Ret. Sys. v. Bankrate*, 18 F. Supp. 3d 482, 485 (S.D.N.Y. 2014).

Defendants' statements concerning CMC issues, the timeline for the AXS-07 NDA, and

22

the support for its approval were all highly material for investors to be able to assess the level of risk associated with Axsome's ability to commercialize AXS-07 in light of the severe manufacturing problems that Defendants omitted. *See Novak*, 216 F.3d at 315 ("state[ments] that the inventory situation was 'in good shape' or 'under control' . . . were plainly false and misleading"); *Acadia Pharms.*, 2016 WL 5076147, at *7 ("on track" statements "were not vague statements of optimism"); *Odonate*, 2021 WL 3406271, at *5 (positive descriptions of drug's potential gave false impression that it faced "no significant setbacks").[18]

### 4.    Plaintiff Adequately Alleges Claims Against Defendant O'Gorman

Defendants argue that a statement attributed in the Complaint to Defendant O'Gorman was actually spoken by Tabuteau. (Mem. 24). They do not mention, however, that another version of the transcript attributes the statement to O'Gorman. (*See* Grunfeld Declaration, Ex. 1). And even the versions that Defendants provided contain inconsistencies between each other in terms of who said different statements. (*Id.*, Ex. 2). But even if O'Gorman did not utter the statement at issue, he can still be liable under Section 10(b) for any statement over which he had "ultimate authority"—which he did as Axsome's Senior Vice President of Clinical Development and Medical Affairs, who represented Axsome on in its earnings calls and in its FDA interactions (*id.*; ¶¶ 207, 209)—*Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011),[19] and under Section 20(a), based on his exercise of "control over the primary violator," *Pens. Comm. of Univ. of Montreal Pens. Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 190 (S.D.N.Y. 2006).

---

[18] In the cases that Defendants cite, there were no omitted facts that rendered statements misleading. (*See* Mem. at 21 (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 186 (2d Cir. 2014) (representation about "*adequate* diversification of risk" did not "constitute a guarantee that UBS would not accumulate a $100 billion RMBS portfolio"); *Adient*, 2020 WL 1644018, at *22 ("Plaintiffs have not alleged specific contradictory facts."); *In re GPC Biotech AG Sec. Litig.*, 2009 WL 5125130, at *1-2, 6 (S.D.N.Y. Dec. 29, 2009) (addressing statement "creating the impression that the trial was going well" after plaintiffs were forced to delete "critical allegations")).

[19] *See also In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 241 (S.D.N.Y. 2018) (holding there is a "presumption that those with direct involvement in the everyday business . . . made the statements at issue").

## C.    The Complaint Adequately Alleges Loss Causation

Defendants incorrectly assert that the Complaint fails adequately to plead loss causation. (Mem. 23-24). Alleging loss causation adequately requires only "'some indication of the loss and the causal connection that the plaintiff has in mind.'" *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 488 (S.D.N.Y. 2011) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). Rule 8(a)'s notice pleading standard applies. *Freudenberg v. E\*Trade Fin. Corp.,* 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) (citing *Dura*, 544 U.S. at 346-47; Fed. R. Civ. P. 8(a)). The Complaint pleads that in response to Defendants' disclosure that the FDA could not approve the AXS-07 NDA in its present form, Axsome's stock price fell almost 22%. ¶194.[20]

Defendants first assert that the Complaint fails to allege a corrective disclosure because they never disclosed the "equipment problems" that disabled them from manufacturing AXS-07. (Mem. 24). To constitute a correction, however, the statement must reveal that "the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered." *Vivendi*, 838 F.3d at 261; *E\*Trade Fin. Corp.,* 712 F. Supp. 2d at 202 (denying dismissal, holding no mirror disclosure is necessary). The corrective disclosure here tied the delay in FDA approval to "the need for additional CMC data pertaining to the drug product and ***manufacturing process***," ¶58 (emphasis added)—the very facts the Complaint alleges Defendants failed to disclose. At the pleading stage, no more specificity with respect to the manufacturing problems is required to tie the subject matter of the corrective disclosures to the materially false, actionable statements. *See Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, 2020 WL 3268531, at \*19 (S.D.N.Y. June 17, 2020) (denying dismissal, in part, finding that defendant's failing to reveal a material fact upon correction cannot defeat loss causation.); *Delcath Sys.,* 36 F. Supp. 3d at 336 (denying dismissal, finding that

---

[20] Plaintiff also plead a partial corrective disclosure on November 5, 2020, causing Axsome's stock price to fall almost 7%. ¶191. Defendants do not contest loss causation as to this corrective disclosure and subsequent stock drop.

24

"[t]his is a factual argument for a later day"); *Cohen v. Kitov Pharms. Holds.*, 2018 WL 1406619, at *6-7 (S.D.N.Y. Mar. 20, 2018) (Schofield, J.) (rejecting challenge to loss causation).

Second, Defendants assert that the April 25, 2022, announcement is inadequate to plead loss causation because it is a materialization of a disclosed risk. (Mem. 25). Defendants, however, concealed then existing CMC problems impacting the supply of AXS-07 that caused the FDA to deny the NDA. ¶¶34, 70, 72-76, 82-83. These ongoing, undisclosed manufacturing and supply issues were the reason for the FDA's rejection of the NDA. Contrary to Defendants' contention, the risk was concealed during the Class Period because of the manufacturing problems that Defendants omitted. *See Vivendi*, 838 F.3d at 262 (loss causation satisfied when misstatements concealed risk that materialized); *Rosi v. Aclaris Theraps.*, 2021 WL 1177505, at *26 (S.D.N.Y. Mar. 29, 2021) (denying dismissal, in part, because omitted facts resulted in materialization of concealed risk). The Complaint thus adequately pleads loss causation both by corrective disclosure and materialization of a concealed risk.

**D.      The Complaint Adequately Alleges Claims Under Section 20(a)**

The Complaint adequately alleges a primary violation of § 10(b) and Rule 10b-5 and that the Individual Defendants controlled Axsome. Plaintiff has thus adequately alleged a *prima facie* case under § 20(a). *See* 15 U.S.C. § 78t(a); *see also Venkataraman v. Kandi Tech. Grp.*, 2022 WL 4225562, at *9 (S.D.N.Y. Sept 13, 2022) (Schofield, J.) (finding primary violation plus alleged control suffices under Section 20(a)); *Kitov Pharms.,* 2018 WL 1406619, at *9.

### IV.      CONCLUSION

For all of these reasons, the Court should deny Defendants' Motion in its entirety.[21]

---

[21] In the alternative, Plaintiffs respectfully request leave to amend. *See Loreley*, 797 F.3d at 190.

Dated:  January 13, 2023

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Michael Grunfeld*_____
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com

*Co-Lead Counsel for Co-Lead Plaintiff Evy Gru and the Class*

**THE SCHALL LAW FIRM**
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Co-Lead Plaintiff Evy Gru*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Jacob Goldberg
Erica Stone
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com
jgoldberg@rosenlegal.com
estone@rosenlegal.com

*Co-Lead Counsel*

26