**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EVY GRU, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>          v.<br><br>AXSOME THERAPEUTICS, INC., HERRIOT TABUTEAU, NICK PIZZIE, MARK JACOBSON, CEDRIC O'GORMAN, and KEVIN LALIBERTE,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   No. 1:22-CV-03925 (LGS) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**MORGAN, LEWIS & BOCKIUS LLP**

Michael L. Kichline (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
michael.kichline@morganlewis.com

Emily E. Renshaw
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
emily.renshaw@morganlewis.com

Matthew C. McDonough (*pro hac vice*)
Michael A. Hacker
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
matthew.mcdonough@morganlewis.com
michael.hacker@morganlewis.com

**TABLE OF CONTENTS**

**Page**

ARGUMENT ....................................................................................................................... 2

I.      GRU FAILS TO PLEAD LOSS CAUSATION. ................................................................... 2

II.     GRU FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER. ............................... 5

      A.      Gru Fails Adequately To Allege Scienter
            As To Pre-November 5, 2020 Statements. ................................................................. 5

      B.      Gru Fails To Allege Any Motive To Commit Fraud. ............................................. 6

      C.      Gru Fails Adequately To Allege Any Circumstantial Evidence of Scienter. ........ 7

III.    GRU FAILS TO IDENTIFY ANY
      ACTIONABLE MISREPRESENTATION OR OMISSION. ........................................ 10

IV.     SECTION 10(B) CLAIM AGAINST
      DR. O'GORMAN SHOULD BE DISMISSED. ................................................................ 13

V.      PLAINTIFF FAILS TO PLEAD A SECTION 20(A) CLAIM. ...................................... 13

CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aceto Corp. Sec. Litig.*,
2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)................................................................10

*Ark. Tchr. Ret. Sys. v. Bankrate*,
18 F. Supp. 3d 482 (S.D.N.Y. 2014)............................................................................13

*Barr v. Matria Healthcare, Inc.*,
324 F. Supp. 2d 1369 (N.D. Ga. 2004) ........................................................................3

*In re Bausch & Lomb, Inc. Sec. Litig.*,
592 F. Supp. 2d 323 (W.D.N.Y. 2008) .........................................................................5

*Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*,
811 F. Supp. 2d 853 (S.D.N.Y. 2011)..........................................................................10

*Booking v. Gen. Star Mgmt. Co.*,
254 F.3d 414 (2d Cir. 2001).........................................................................................3

*In re Bristol Myers-Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)...........................................................................6

*Busic v. Orphazyme A/S*,
2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) ...............................................................7

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)...........................................................................13

*Cheng v. Canada Goose Holdings Inc.*,
2021 WL 3077469 (S.D.N.Y. July 19, 2021) ...............................................................8

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) (Schofield, J.) .................................13

*Collier v. Aksys Ltd.*,
2005 WL 1949868 (D. Conn. Aug. 15, 2005), *aff'd*, 179 F. App'x 770 (2d Cir.
2006) ...........................................................................................................................3

*Dean v. China Agritech, Inc.*,
2011 WL 5148598 (C.D. Cal. Oct. 27, 2011)................................................................3

*In re Delcath Sys., Inc. Sec. Litig.*,
36 F. Supp. 3d 320, 334-35 (S.D.N.Y. 2014) ......................................................9, 10, 12

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005)............................................................................................3

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
 553 F.3d 187 (2d Cir. 2009)................................................................................7

*In re EHang Holdings Ltd. Sec. Litig.*,
 2022 WL 17718546 (S.D.N.Y. Dec. 15, 2022) ...................................................8

*In re eSpeed, Inc. Sec. Litig.*,
 457 F. Supp. 2d 266 (S.D.N.Y. 2006)..................................................................2

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
 986 F. Supp. 2d 487 (S.D.N.Y. 2013)................................................................12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir. 2009)..............................................................................3, 5

*Gauquie v. Albany Molecular Rsch., Inc.*,
 2016 WL 4007591 (E.D.N.Y. July 26, 2016)....................................................10

*In re Gildan Activewear, Inc. Sec. Litig.*,
 636 F. Supp. 2d 261 (S.D.N.Y. 2009)..................................................................7

*Glaser v. The9, Ltd.*,
 772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................8

*In re iDeamSky Tech. Sec. Litig.*,
 236 F. Supp. 3d 824 (S.D.N.Y. 2017)................................................................13

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
 818 F.3d 85 (2d Cir. 2016)..................................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
 544 F. Supp. 2d 277 (S.D.N.Y. 2008)..................................................................3

*Inter-Loc. Pension Fund GCC/IBT v. Gen. Elec. Co.*,
 445 F. App'x 368 (2d Cir. 2011) .........................................................................8

*In re ITT Ed. Servs. Inc. Sec. Litig.*,
 34 F. Supp. 3d 298 (S.D.N.Y. 2014)..................................................................10

*In re Keyspan Corp. Sec. Litig.*,
 383 F. Supp. 2d 358 (E.D.N.Y. 2003) .................................................................7

*Lentell v. Merrill Lynch & Co.*,
 396 F.3d 161 (2d Cir. 2005)..............................................................................2, 4

*Meyer v. JinkoSolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)......................................................................................9

*In re MiMedx Grp., Inc. Sec. Litig.*,
    2021 WL 7210372 (N.D. Ga. Mar. 25, 2021)............................................................4

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
    455 F. App'x 10 (2d Cir. 2011) ...............................................................................10

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) .....................................................................................7

*Odeh v. Immunomedics, Inc.*,
    2020 WL 4381924 (D.N.J. July 31, 2020)...............................................................12

*In re Omnicom Grp. Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)......................................................................................4

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) .........................................................................................5

*In re Rhodia S.A. Sec. Litig.*,
    531 F. Supp. 2d 527 (S.D.N.Y. 2007)........................................................................4

*Rihn v. Acadia Pharms. Inc.*,
    2016 WL 5076147 (S.D. Cal. Sept. 19, 2016)....................................................10, 13

*Schaeffer v. Nabriva Therapeutics*
    *plc*, 2020 WL 7701463, at *10 (S.D.N.Y. Apr. 28, 2020)......................................11

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
    2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ............................................................3

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) .................................................................10, 11

*In re Sec. Cap. Assur. Ltd. Sec. Litig.*,
    2011 WL 4444206 (S.D.N.Y. Sept. 23, 2011)...........................................................4

*Shanawaz v. Intellipharmaceutics International Inc.*,
    348 F. Supp. 3d 313 (S.D.N.Y. 2018)........................................................................9

*Shapiro v. TG Therapeutics, Inc.*,
    2023 WL 405020 (S.D.N.Y. Jan. 25, 2023) ..................................................6, 11, 12

*Sinnathurai v. Novavax, Inc.*,
    2022 WL 17585715 (D. Md. Dec. 12, 2022)..............................................................9

*In re Velti PLC Sec. Litig.*,
    2015 WL 5736589 (N.D. Cal. Oct. 1, 2015)..................................................................................3

*Venkataraman v. Kandi Techs. Grp., Inc.*,
    2022 WL 4225562 (S.D.N.Y. Sept. 13, 2022) .......................................................................13

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223, 263 (2d Cir. 2016).............................................................................................4

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
    818 F. Supp. 2d 744 (S.D.N.Y. 2011)......................................................................................3

*Woodley v. Wood*,
    2022 WL 103563 (S.D.N.Y. Jan. 11, 2022),
    *aff'd sub nom.*, 2022 WL 14997930 (2d Cir. 2022)..................................................................8

When Defendants filed their Moving Brief,[1] this case had two Co-Lead Plaintiffs, Evy Gru and Santoshanand Thakkar.  Two days before he was to oppose Defendants' motion, Thakkar sought to withdraw from the case and the Court granted his request.

Thakkar's withdrawal fundamentally changes this action.  While Thakkar held Axsome shares through the end of the putative "Class Period"—i.e., through the alleged April 25, 2022 "corrective disclosure"—Gru sold his last Axsome share many months earlier, on August 17, 2021.[2]  In other words, Gru suffered all of his alleged investment losses by no later than August 17, 2021, *more than eight months* before the alleged fraud was supposedly revealed on April 25, 2022.  As a matter of law, Gru's investment losses suffered before the alleged fraud's revelation could not conceivably have been caused by the fraud and therefore his claims must be dismissed.

To try to save his Complaint, Gru may point to a "partial corrective disclosure" on November 5, 2020.  But the November 5 statement cannot be "corrective" as a matter of law because Gru alleges that the statement was misleading, asserting that the November 5 disclosure "did not reveal to investors the nature or extent of the CMC problems that Axsome was having with AXS-07."  ¶192.  Even if the November 5, 2020 statement was a corrective disclosure (it is not), Gru cannot sustain claims based on Defendants' statements after November 5, 2020.  First, Gru does not allege a corrective disclosure between November 5, 2020 and August 17, 2021, when he sold his Axsome shares.  Thus, no statement in that period can conceivably have caused his alleged losses.  Gru also did not rely on any statement after August 17, 2021 because he made no purchases after that date.  In short, even if the Court were to credit the November 5, 2020 "partial corrective disclosure," only statements made before that date are even conceivably actionable.

---

[1] All capitalized terms are as defined in Defendants' Moving Brief (ECF No. 42) ("MB").  Gru's Opposition (ECF No. 46) is referred to as "OB."  All emphases added unless otherwise noted.
[2] *Compare* ECF No. 10-3 at 2 (Thakkar certification that he held shares through April 25, 2022) *with* ECF No. 1 at 31 (Gru certifying that he sold his last Axsome share on August 17, 2021).

For these and the other reasons discussed below, Gru's Complaint should be dismissed.

## ARGUMENT

### I.    GRU FAILS TO PLEAD LOSS CAUSATION.

Gru periodically purchased Axsome shares between January 3, 2020 and July 14, 2021. ECF No. 1 at 31.  He sold all of those shares by August 17, 2021, and did not purchase or hold any additional Axsome shares thereafter, including through April 25, 2022.  *Id.*

Gru alleges that Axsome's stock was "artificially inflated" from December 30, 2019 to April 22, 2022 due to Axsome's misrepresentations or omissions concerning "purportedly strong support for the submission and approval of the NDA for AXS-07." ¶¶187, 189.  Gru alleges two "corrective disclosures" that "revealed that . . . problems with Axsome's manufacturing process for AXS-07 caused the Company to delay the submission of the NDA and then caused the FDA to issue a CRL for the NDA." ¶189.  He alleges a "partial corrective disclosure" on ***November 5, 2020***, when Axsome stated that it planned to delay its AXS-07 NDA "to allow for inclusion of supplemental manufacturing information."  OB 24 n.20 (citing ¶191).  Critically, Gru concedes that the November 5 disclosure did not reveal the alleged fraud and, instead, was misleading.  *See infra* 4-5; ¶192.  Gru alleges a second and final corrective disclosure on ***April 25, 2022***, when Axsome announced that the FDA would be rejecting its AXS-07 NDA due to "[CMC] issues." ¶193.  At that time, Gru had not been an Axsome shareholder for more than eight months.

To adequately plead loss causation, a plaintiff must allege "that the misstatement or omission concealed something from the market that, ***when disclosed***, negatively affected the value of the security."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).  "[I]t is axiomatic that a concealed fact cannot cause a decrease in the value of a stock before the concealment is made public."  *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 296 (S.D.N.Y.

2006) (citation omitted).[3]  A plaintiff who sells his shares before the alleged corrective disclosure is not "even 'conceivably' [] able to prove loss causation as a matter of law." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 39-40 (2d Cir. 2009).

Gru fails to allege loss causation because he sold all of his shares long before the alleged fraud was revealed.  His Complaint should be dismissed on that ground alone.  *See Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *10-11 (S.D.N.Y. Mar. 12, 2013) ("Plaintiff [] cannot tie his losses to the corrective disclosure because he sold his shares before it occurred"); *Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 755, 759 (S.D.N.Y. 2011) (loss causation inadequately pled where plaintiff's transactions took place 14 months before corrective disclosure).[4]  Gru may have investment losses, but the securities laws exist "not to provide investors with broad insurance against market losses, but to protect against those economic losses that misrepresentations actually ***cause***." *Dura Pharms. Inc.*, 544 U.S. at 345.

Gru's contention that the November 5 statement was a "partial corrective disclosure," OB 24 n.20, should be rejected.[5]  First, the statement cannot be corrective as a matter of law because Gru alleges, repeatedly, that the statement was itself a misrepresentation.  *See* ¶48 (November 5

---

[3] *See In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 290 (S.D.N.Y. 2008) ("It is not enough . . . for [Plaintiff] to allege merely that [he] purchased securities at artificially inflated prices") (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005)).

[4] *Dean v. China Agritech, Inc.*, 2011 WL 5148598, at *6 (C.D. Cal. Oct. 27, 2011) (finding "loss causation allegations implausible" where plaintiff's PSLRA certification "clearly show[ed] that [he] sold his stock prior to the [corrective disclosure]"); *Collier v. Aksys Ltd.*, 2005 WL 1949868, at *13 (D. Conn. Aug. 15, 2005), *aff'd*, 179 F. App'x 770 (2d Cir. 2006) (losses sustained in connection with transactions made before revelation of alleged fraud could not have been caused by alleged misstatements and omissions); *Barr v. Matria Healthcare, Inc.*, 324 F. Supp. 2d 1369, 1380 (N.D. Ga. 2004) (dismissing complaint and finding plaintiff "fail[ed] to state a claim on the merits of the case" where he sold his stock "four months prior to the disclosure of [the] alleged misrepresentations"); *see also In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *29 (N.D. Cal. Oct. 1, 2015) (dismissing Section 11 claims because, "[h]aving sold all of its Velti stock by [the alleged corrective disclosure], St. Paul cannot attribute its losses to those disclosures").

[5] Plaintiff contends that Defendants "do not contest loss causation as to this corrective disclosure," *id.*, but that is not accurate.  Unlike Gru, Thakkar held Axsome shares through the April 25, 2022 disclosure.  Accordingly, when Thakkar was a Co-Lead Plaintiff, there was no reason to challenge on a motion to dismiss the November 5, 2020 alleged "partial corrective disclosure" as it would not then have been case dispositive, so Defendants addressed loss causation as to the April 25 disclosure.  MB 24-25.  Moreover, the Court has allowed Gru the opportunity to respond, negating any arguable prejudice.  *See Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) (district court has discretion to consider arguments raised on reply, especially where the court orders additional briefing).

statement "*did not give any indication that there were actual problems with the manufacturing process for AXS-07*. . . . Rather, Defendants *continued to mislead* investors by assuring them that the 'inclusion of supplemental manufacturing information' would address any concerns and 'ensure a robust submission package'"). *See also* ¶¶145, 151 (alleging falsity of same); OB 5, 18, 25 (same). Gru "'cannot have it both ways' and 'simultaneously argue that [a] misstatement itself constituted a corrective disclosure.'" *In re MiMedx Grp., Inc. Sec. Litig.*, 2021 WL 7210372, at *3 (N.D. Ga. Mar. 25, 2021) (quoting *Flag Telecom*, 574 F.3d at 41). "[D]isclosures [] intended to mislead the investors by explaining away the decline in the stock price in order to conceal the fraud and maintain investor confidence . . . cannot be corrective, as a matter of law." *Id.*

Because Gru alleges the November 5 statement was misleading, he fails to plead that it "actually revealed" any "concealed facts." *In re Sec. Cap. Assur. Ltd. Sec. Litig.*, 2011 WL 4444206, at *4 (S.D.N.Y. Sept. 23, 2011). "[T]he loss causation requirement is satisfied only if the public disclosure causing injury addressed the specific fact allegedly concealed" by a misrepresentation. *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 545 (S.D.N.Y. 2007). The November 5 statement merely alerted the market that "Axsome now plans to submit the [AXS-07] NDA . . . in the first quarter of 2021 . . . to allow for inclusion of supplemental manufacturing information to ensure a robust submission package." ¶190. That statement "cannot plausibly be interpreted as 'reveal[ing] some then-undisclosed fact with regard to the *specific misrepresentations* alleged in the complaint.'" *Sec. Cap. Assur. Ltd.*, 2011 WL 4444206, at *6.[6] As Gru admits, "Axsome did not give any indication that there were actual problems with the

---

[6] *In re Omnicom Grp. Inc. Sec. Litig.*, 597 F.3d 501, 511-12 (2d Cir. 2010) (disclosure not corrective where it revealed "no hard fact" previously concealed); *see Lentell*, 396 F.3d at 175 n.4 (no "corrective disclosure" unless it "reveal[s] to the market the falsity of the prior [statements]"). *In re Vivendi, S.A. Sec. Litig.* (OB 21) is distinguishable. *See* 838 F.3d 223, 263 (2d Cir. 2016) (affirming jury's determination, and expert's opinion, that disclosure in which company "acknowledged its short-term liquidity problems," *inter alia*, revealed truth about the subject of defendants' alleged misstatements regarding company's liquidity risk).

*manufacturing process* for AXS-07 that might result in the FDA's rejection of its NDA."  ¶48; *see* ¶192 (alleging November 5 release "did not reveal to investors the nature or extent of the CMC problems that Axsome was having with AXS-07").[7]

Finally, even assuming the November 5, 2020 press release was a "partial corrective disclosure," the Court should dismiss all claims related to any challenged statement after November 5, 2020 because Gru cannot "even conceivably" demonstrate loss causation with respect to any such statement for the same reasons discussed *supra* at 2-3.  The only disclosure that allegedly corrected any statement made after November 5, 2020 was the April 25, 2022 disclosure.  But, Gru had sold all of his shares months earlier.[8]

## II.    GRU FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.

### A.    Gru Fails Adequately To Allege Scienter As To Pre-November 5, 2020 Statements.

Also fatal to Gru's Complaint, his scienter allegations rely almost exclusively on alleged circumstantial evidence derived from events more than *six months after* the November 5, 2020 alleged "partial corrective disclosure."  *See, e.g.*, ¶¶ 202 (May 2, *2022* conference call); 203 (April 25, *2022* announcement); 89-107, 204 (allegedly "similar" experience with AXS-05 in August *2021*); 205-12 (June *2021* FDA inspection report regarding AXS-05).  Events that took place *months after* the challenged pre-November 5, 2020 statements could not possibly give rise to an inference of scienter as to those earlier statements.  *See In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 352 n.32 (W.D.N.Y. 2008) (unless defendant had a "time machine," events

---

[7] The April 25, 2022 statement also did not reveal the information that Gru alleges was concealed.  *See* MB §I.D. Because Gru, who sold his last Axsome share months before April 25, 2022, cannot "even conceivably" demonstrate that he suffered losses as a result of the April 25, 2022 disclosure, *Flag Telecom*, 574 F.3d at 40, Axsome does not specifically address it here, but respectfully refers the Court to its Moving Brief.

[8] Gru also obviously could not have relied upon any statement made after his last purchase of shares on July 14, 2021. *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 104-05 (2d Cir. 2021) (affirming dismissal because plaintiffs could not "rely on the challenged [statement], which could not have influenced the price of a purchase that had already been made") (citing *Denny v. Barber*, 576 F.2d 465, 468 (2d Cir. 1978)).

occurring months after the alleged corrective disclosure "cannot raise any inference of scienter" as to challenged statements).[9]   Gru's only pre-November 5, 2020 scienter allegation is that Tabuteau and Pizzie signed SOX certifications (¶199), which is insufficient.  *See* MB 12.

### B.       Gru Fails To Allege Any Motive To Commit Fraud.

Gru does not attempt to demonstrate that the Complaint alleges a motive to commit fraud.  *See* OB 11-12.  He does not address the Complaint's failure to allege that any reporting Individual Defendant sold Axsome stock during the Class Period.  *See* MB 6-7 (citing cases).  He also ignores that Mr. Pizzie **purchased** Axsome common stock during the class period.  *See id.*  These facts are "wholly inconsistent with fraudulent intent."  *In re Bristol Myers-Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004); *see* MB 6-7.  Gru has no response.[10]

Instead, Gru argues that the Court should disregard that the reporting Individual Defendants increased their Axsome holdings during the Class Period because the increase in holdings was due, in part, to their acquisition of "unexercised options" that "did not fully vest until 2024."  OB 11-12 & n.8.  This is a red herring.  First, counsel is aware of no case, and Gru cites none, holding that scienter may be inferred based on defendants' failure to **increase** their stock holdings.  Second, the reporting Individual Defendants **could have** sold shares or exercised at least some of their options; Gru simply does not allege that they did.  *See, e.g.*, Decl. ¶16, Ex. N-1 (reporting Jacobson's ownership as of February 2020 of over 100,000 "immediately" exercisable options at prices as low as $1.30).  Third, the Court should not credit Gru's sleight of hand that "the options did not fully vest until 2024."  OB 12 n.8.  SEC filings establish that options granted during the Class Period "vest in substantially **equal quarterly installments** over four years," meaning that a portion of them

---

[9] *Shapiro v. TG Therapeutics, Inc.*, 2023 WL 405020, at *6 n.3 (S.D.N.Y. Jan. 25, 2023) (later knowledge of drug safety concern not supportive of scienter as to earlier statements concerning drug safety).

[10] Gru also fails to explain how Defendants' alleged concealment of the fact that it could not produce AXS-07 was motivated by putting "profits over patients."  *See* MB 7.  Absent a product to sell, it is not clear how Axsome could have hoped to profit at all, and Gru does not explain.  Nor does Gru explain how a "profit" motive is anything other than a motive "possessed by virtually all corporate insiders," which is insufficient.  *Shapiro*, 2023 WL 405020, at *6.

could have been exercised mere months after acquisition (and during the Class Period), regardless of when all of the options would be "fully vested." *See, e.g.*, Decl. ¶¶ 14-16, Exs. L-3, M-3, N-3. Finally, "the weight of the authority . . . lends credence to the position that options are to be taken into account in comparing the volume of an insider's sales to his shareholdings." *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 271 n.5 (S.D.N.Y. 2009) (including unexercised options in finding insider sales not significant enough to support scienter).[11]  In sum, the reporting Individual Defendants held thousands of unrestricted shares or exercisable options during the Class Period and Gru does not contend that they sold or exercised-to-sell a single one.  Instead, they purchased and accumulated shares and, when the share price fell, those shares and options ***declined*** in value by ***tens or hundreds of millions***.  *See* MB 6-7.  These facts are inconsistent with the conduct of alleged fraudsters facing their inevitable day of reckoning, and Gru's theory continues to "not make a whole lot of sense." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).[12]

### C.    Gru Fails Adequately To Allege Any Circumstantial Evidence of Scienter.

Failing to demonstrate motive, Gru's circumstantial allegations must be "correspondingly greater," but Gru flouts this principle as well.  *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009).

***Gru Improperly Employs Group Pleading.***  Gru must plead the scienter of each Defendant. MB 14.  The Complaint violates this rule.  Gru does not address this failing in his Opposition.

***Gru's Confidential Witness Allegations Fail.***  Defendants established that neither CW1's nor CW3's (there is no CW2) allegations support any inference of scienter because, among other

---

[11] *See In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 383 (E.D.N.Y. 2003) (including options in calculation and holding that "[t]he net acquisition of shares cuts against the notion that defendants sought to unload their holdings . . . before their likely diminution in value following the disclosure of negative insider information").

[12] *Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016) and *Busic v. Orphazyme A/S*, 2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) (cited OB 12) do not support Gru.  While those cases acknowledge the possibility that, in some circumstances, a defendant might benefit from concealing negative information that will inevitably become public at a later date, Gru alleges no such benefit to Defendants here.

things: the CWs are not alleged to have had any contact with any Individual Defendant; the CWs do not identify any specific information contradicting a challenged statement ever presented to an Individual Defendant; and neither of the CWs could plausibly allege that they knew the content of the CRL (and, therefore, that the Individual Defendants knew of any particular "CMC issue" addressed in the CRL) because the confidential CRL was issued to Axsome months after the CWs left the Company. *See* MB 8-10. All of the CW allegations also postdate the November 5, 2020 "partial corrective disclosure." *See* ¶¶ 69-78, 215. Gru's Opposition does not address any of these failings—he simply regurgitates the Complaint's allegations. *See* OB 8, 10.

**Gru's "Status" Theory Fail.** Gru's Opposition principally relies upon a June 2021 FDA inspection report in which the Individual Defendants identified themselves as knowledgeable about certain matters in connection with AXS-*05*, a different drug than the one at issue here. *See* OB 7-8. Even assuming that Individual Defendants' roles were similar for AXS-07 (an assumption Gru's allegations do not support), it is well established that "it is not enough that defendants held senior positions and had access to inside information." *Woodley v. Wood*, 2022 WL 103563, at *7 (S.D.N.Y. Jan. 11, 2022), *aff'd sub nom.*, 2022 WL 14997930 (2d Cir. 2022). "[C]onclusory statements that defendants 'were aware' of certain information, and mere allegations that defendants 'would have' or 'should have' had such knowledge is insufficient." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011).[13] Instead, Plaintiff "must 'specifically identify the reports or statements containing [the] information'" tending to show that the Defendants knew the statements in question were false. *Inter-Loc. Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011). The Complaint fails to do that. *See* MB 7-15.

---

[13] *See also, e.g.*, *In re EHang Holdings Ltd. Sec. Litig.*, 2022 WL 17718546, at *11 (S.D.N.Y. Dec. 15, 2022) ("[M]ust have known" and "would have known" allegations fail to provide "'concrete allegations' as to each individual Defendants' particular knowledge"); *Cheng v. Canada Goose Holdings Inc.*, 2021 WL 3077469, at *11 (S.D.N.Y. July 19, 2021) ("[S]uggestion that 'Defendants must have known' their statements were false when they made them" "clearly insufficient to satisfy Plaintiff's burden at the pleading stage").

Plaintiff's cases are plainly distinguishable. *See* OB 8. In *In re Delcath Sys., Inc. Sec. Litig.*, for instance, four confidential witnesses, including a direct report to the CEO, adequately alleged that the CEO made "all decisions" in connection with the development and submission of the company's NDA for its only product. 36 F. Supp. 3d 320, 334-35 (S.D.N.Y. 2014). The FDA also expressed "extreme negativity," including describing the company's supposed treatment as "life-threatening," which so directly contradicted defendants' statements that they supported a finding of recklessness. *Id.* at 326-27, 335-36.[14] In contrast, Gru does not allege that he (or the CWs) even knows what the FDA said other than that it eventually identified unspecified "CMC issues" which, as Gru's own sources state, may not even relate to manufacturing. MB 25 (discussing analyst report); ¶85. In short, Gru's reliance on threadbare allegations of Individual Defendants' roles in connection with a ***different drug*** are not sufficient. *See* OB 7-8; ¶¶205-211.

***Gru's "Unresolved" Theory Fails.*** Gru argues that Defendants must have been on notice of purported manufacturing issues because Axsome described "CMC issues" as "unresolved" in its April 25, 2022 disclosure.[15] *See* OB 9. The Court need only draw "***reasonable*** inferences in favor of the plaintiff." *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014). It is not reasonable to assume simply from the word "unresolved" that "the FDA had mandated that Axsome resolve the [manufacturing] issues before March 1, 2022." OB 9. First, "unresolved" was Axsome's word, not the FDA's, which lends no credence to Plaintiff's baseless conclusion that "the FDA had previously discussed these issues with the Company." ¶203. Second, it is just as likely that the FDA did not identify what the supposed deficiencies were ***until*** it issued the CRL.

---

[14] The complaint in *Shanawaz v. Intellipharmaceutics International Inc.* likewise "describe[ed] in detail the personal involvement of Defendants . . . in the development of the" NDA at issue and pled motive, including "suspiciously timed" stock sales. 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018). In *Sinnathurai v. Novavax, Inc.*, 2022 WL 17585715, at \*20-23 (D. Md. Dec. 12, 2022), plaintiff alleged defendants were required *by law* to know facts allegedly misrepresented, included allegations from *seven* confidential witnesses, and pled allegations of suspicious trading.

[15] As discussed above, Gru's claims based on the April 25, 2022 alleged corrective disclosure and any alleged misstatements after November 5, 2020 should be dismissed.

MB 12-13 (addressing alleged deficiencies with AXS-*05*, a different drug candidate that ultimately was approved). Finally, even if one were to assume that the FDA advised Axsome of "CMC issues" at some point before Axsome announced the same, Gru concedes that he cannot allege **when** the Company was so advised.[16] Thus, the "unresolved" statement cannot give rise to an inference of scienter as to any particular statement, especially those dating back to December 2019.

**Gru's "Core Operations" Theory Fails.** A "core operations" theory is not "independently sufficient to raise a strong inference of scienter" because it "would eviscerate the cogent and compelling inference of scienter required by *Tellabs*."[17] Instead, factual allegations establishing scienter with respect to the specific, allegedly fraudulent statements at issue are required. *Id.*; *see New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011) ("[C]ore operations" inference only useful to provide "supplemental support" to more specific allegations of scienter). There are no such specific allegations here.[18]

## III.    GRU FAILS TO IDENTIFY ANY ACTIONABLE MISREPRESENTATION OR OMISSION.

**Gru's Failure to Plead Falsity.** As Gru makes clear in his Opposition, his falsity theory for each "category" of challenged statement rests upon (1) CW1's allegation that "from April 2021 through . . . February 2022" (¶72) "Axsome was **unable to produce** [AXS-07]" (OB 18) and (2) the assumption that "Axsome was experiencing these problems the entire Class Period"—i.e.,

---

[16] Gru's case, *In re ITT Education Services Inc. Securities Litigation*, 34 F. Supp. 3d 298 (S.D.N.Y. 2014), is inapposite. While the court need not identify the "precise moment" when a "culpable inference overtook the innocent one," plaintiff there sufficiently alleged a specific period during which defendants became aware that loan "defaults would be a problem"—when Defendants' lender demanded payments on the parties' risk-sharing agreement. *Id.* at 309-10. Gru fails to include any analogous, specific allegations in his Complaint.

[17] *Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 872-73 (S.D.N.Y. 2011); MB 11-12. For this reason, the "core operations doctrine has been cast into doubt by the Second Circuit following the enactment of the PSLRA." *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *10 (E.D.N.Y. Aug. 6, 2019).

[18] Gru argues that "'public statements evinc[ing] familiarity with the data' at issue" can support a strong inference of scienter, OB 10, but all of Gru's cases involve additional cogent allegations of scienter absent here. *See, e.g.*, *Delcath*, 36 F. Supp. 3d at 334-35 (*supra* at 8-9); *Rihn v. Acadia Pharms. Inc.*, 2016 WL 5076147, at *3-6 (S.D. Cal. Sept. 19, 2016) (failure to perform critical step in NDA process undermined projections regarding same); *Gauquie v. Albany Molecular Rsch., Inc.*, 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016) (cogent CW allegations); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 905 (E.D. Pa. 2018) (specific documents contradicted public statements).

December 30, 2019 through April 22, 2022 (OB 15).[19]  This theory does not withstand scrutiny.

*First*, the allegation that Axsome could not produce AXS-07 is demonstrably false given that Axsome successfully completed two Phase 3 trials (involving over a thousand patients and tens of thousands of doses) ***during the Class Period***.  MB 10 & n.15.  Gru neither alleges that those trials were fabricated nor that the FDA rejected the NDA due to Axsome's submission of fabricated clinical trials.[20]  Unsurprisingly, the Opposition ignores this devastating fact.

*Second*, the allegation that an April 2021 "marketing" study was delayed, OB 15, does not support that Axsome was unable to manufacture the drug for clinical or commercial purposes or that the NDA was bound to be delayed or fail.  *See Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at *10 (S.D.N.Y. Apr. 28, 2020) (plaintiff failed to show why manufacturing issues "could not be remedied"); *Shapiro*, 2023 WL 405030, at *6 ("[M]ere occurrence of adverse events did not give the defendants knowledge that the drug was unsafe").[21]

*Third*, even crediting CW1's allegations, they do not support that Axsome was unable to produce AXS-07 for the whole Class Period.  CW1 alleges that the inability to produce the drug existed "from April 2021 through . . . February 2022" (¶72).  The Class Period begins December 30, 2019.  It is not plausible that Axsome was "unable to produce" AXS-07 for well over a year, but would have nonetheless told CW1 to expect to begin a marketing study using the drug in April 2021.[22]  Also head-scratching is CW1's allegation that "the CMC issues" identified in the April 2022 CRL are the same that he observed in 2021 despite that he left the Company months before

---

[19] *See also* OB 15 ("Axsome was unable to produce 'sufficient quantities of' AXS-07"); OB 17 ("complete shutdown of the Company's AXS-07 manufacturer"); 19 ("inability to manufacture"); 20 ("inability to manufacture").

[20] Indeed, as the Company reported (and Gru does not contest), "the FDA did not request any new clinical trials to support the approval of AXS-07."  ¶58.

[21] Gru's omissions claims fail for this reason too—he concedes that he does not allege that Defendants failed to disclose FDA communications.  OB 19.  Rather, he claims that all statements concerning manufacturing of AXS-07 omitted "Axsome's inability to manufacture AXS-07."  *Id.*  Failing to demonstrate that underlying fact with particularity, his omissions claims fail.

[22] The claim that Axsome was unable to manufacture AXS-07 dating to 2019 is also belied by Gru's allegation that, as of April 2021, the Company had available supply of AXS-07 (¶70).

11

the confidential CRL was issued.  MB 10.  Gru does not address this issue.

*Finally*, Gru's failure to demonstrate that Axsome was unable to produce AXS-07 between December 30, 2019 and November 5, 2020 is especially important because those are the only statements "even conceivably" actionable by Gru.  *See supra* §I.

***Forward-Looking Statements Are Safe-Harbor Protected.***  Gru does not dispute that many of the challenged statements are forward-looking, OB 15-17, or that the Safe Harbor's second, dispositive prong rises and falls on the strength of Gru's scienter allegations.  *See* OB 16, 21.  Those allegations fail.  *See supra* §II.  The forward-looking statements are also protected under the Safe Harbor's first prong because they are accompanied by meaningful cautionary language. Axsome's SEC filings include robust disclosures identifying specific risks facing AXS-07 during the NDA process, including many highlighting Axsome's dependence on third parties for manufacturing, and others identifying the risks associated with manufacturing combination products such as AXS-07.  *See, e.g.*, MB Decl. ¶2, Ex. A at 71, 83-86.[23]

***Remaining Statements Are Not Actionable.***  Axsome's remaining statements are not actionable because they are accurate statements of fact, opinion statements not known to be false,[24] or puffery.  *See* MB 21 & n.31.  Gru's response to the numerous cases from this Circuit deeming such statements classically inactionable is that none of those defenses are available because Defendants knew that Axsome was "unable to produce" AXS-07 during the Class Period.  *See* OB 17-18.  But Gru fails to demonstrate that fact with anything approaching particularity, and certainly

---

[23] *See Shapiro*, 2023 WL 405020, at *4-5 (statements that clinical trial results supported FDA approval deemed inactionable forward-looking statements where accompanied by warning that "FDA approval could be jeopardized by further [clinical trial] results"); *Delcath*, 36 F. Supp. 3d at 333-34 ("misstatements about the likelihood of FDA approval" not actionable where company "consistently gave warnings that the FDA might not approve the [] product"). Gru's cases are inapposite because they involve risks the plaintiff adequately pled had already occurred. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) (warning of possible revenue cut when one had already occurred); *Odeh v. Immunomedics, Inc.*, 2020 WL 4381924, at *6 (D.N.J. July 31, 2020) (warning of data breach actionable where breach had already occurred).

[24] Gru confoundingly accuses Defendants of citing only one statement of "belief," but the Complaint is riddled with such statements, including statements about Axsome's manufacturers, and Defendants cited them at MB 20 & n.30.

12

not for the entire Class Period.  His authorities are distinguishable on that ground and others.[25]

## IV.    <u>SECTION 10(B) CLAIM AGAINST DR. O'GORMAN SHOULD BE DISMISSED.</u>

In the face of ***three*** transcripts that attribute to Dr. Tabuteau a statement that Gru attributes to Dr. O'Gorman, Gru fails to meet his PSLRA burden by pointing to supposed "inconsistencies" in the transcripts.  OB 23.  Gru's argument that, even if Dr. Tabuteau made the statement, Dr. O'Gorman could still be liable because he had "ultimate authority" over the statement, *see id.*, also fails.  The statement was made orally by Dr. Tabuteau in response to an analyst's question.  ¶159; Decl. ¶9, Ex. G.[26]  It defies logic that Dr. O'Gorman had "ultimate authority" over an oral, unscripted statement by his boss, Dr. Tabuteau.  Additionally, Gru's Section 10(b) claim against Dr. O'Gorman should be dismissed because it relates to a May 10, 2021 statement Gru alleges Dr. O'Gorman made long after any corrective disclosure upon which Gru can rely. *See supra* 2-3.

## V.    <u>PLAINTIFF FAILS TO PLEAD A SECTION 20(a) CLAIM.</u>

Beyond failing to plead a primary violation, Gru fails to plead facts demonstrating actual control or culpable participation by Individual Defendants.[27]  Rather, the Complaint conclusorily alleges that Defendants were control persons "[b]ecause of their positions of control and authority as senior officers."  ¶242.  That is not enough in this Circuit.

### <u>CONCLUSION</u>

For all of these reasons, the Complaint should be dismissed with prejudice.

---

[25] *Rihn*, 2016 WL 5076147, at *3-6 (NDA-related statements deemed actionable where complaint detailed significant shortcomings in required processes that rendered stated submission timeline impossible); *In re iDeamSky Tech. Sec. Litig.*, 236 F. Supp. 3d 824, 833 (S.D.N.Y. 2017) ("well-pleaded allegations of Defendants' knowledge of the delays" defeated opinion defense); *Ark. Tchr. Ret. Sys. v. Bankrate*, 18 F. Supp. 3d 482, 485 (S.D.N.Y. 2014) (challenged statements described assets as "high quality" despite being written off by the company as "worthless").

[26] Thus, *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222 (S.D.N.Y. 2018), is inapposite.  That case involved a question of ultimate authority for statements in written ***SEC filings*** that were not attributed to any individual.

[27] Gru is wrong that "primary violation plus alleged control suffices," OB 25, and the cases he cites do not stand for that proposition.  *See Venkataraman v. Kandi Techs. Grp., Inc.*, 2022 WL 4225562, at *9 (S.D.N.Y. Sept. 13, 2022) (Schofield, J.) (dismissing Section 20(a) claims where complaint "contains no substantive allegations about Defendant['s] ***culpability***"); *Cohen v. Kitov Pharms. Holdings, Ltd.*, 2018 WL 1406619, at *9 (S.D.N.Y. Mar. 20, 2018) (Schofield, J.) (citing *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (identifying culpable participation as element of Section 20(a) claim)).

Dated: January 31, 2023                    Respectfully submitted,

                                           **MORGAN, LEWIS & BOCKIUS LLP**

                                           */s/ Michael L. Kichline*
                                           Michael L. Kichline (*pro hac vice*)
                                           1701 Market Street
                                           Philadelphia, PA 19103
                                           Tel: (215) 963-5000
                                           michael.kichline@morganlewis.com

                                           Emily E. Renshaw
                                           101 Park Avenue
                                           New York, NY 10178-0060
                                           Tel: (212) 309-6000
                                           emily.renshaw@morganlewis.com

                                           Matthew C. McDonough (*pro hac vice*)
                                           Michael A. Hacker
                                           One Federal Street
                                           Boston, MA 02110
                                           Tel: (617) 341-7700
                                           matthew.mcdonough@morganlewis.com
                                           michael.hacker@morganlewis.com

                                           *Counsel for Defendants*

14