**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re Axsome Therapeutics Securities Litigation | No. 1:22-CV-03925 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF AXSOME THERAPEUTICS INC.,**
**HERRIOT TABUTEAU, MARK JACOBSON, AND KEVIN LALIBERTE'S**
**MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

**MORGAN, LEWIS & BOCKIUS LLP**

Michael L. Kichline (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
michael.kichline@morganlewis.com

Emily E. Renshaw
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
emily.renshaw@morganlewis.com

Matthew C. McDonough (*pro hac vice*)
Michael A. Hacker
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
matthew.mcdonough@morganlewis.com
michael.hacker@morganlewis.com

*Counsel for Defendants Axsome Therapeutics, Inc.,*
*Herriot Tabuteau, Mark Jacobson, Kevin Laliberte,*
*Nick Pizzie, and Cedric O'Gorman*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

ARGUMENT .......................................................................................................................... 6

I.     PLAINTIFFS FAIL TO STATE A CLAIM
       UNDER SECTION 10(B) OF THE EXCHANGE ACT ................................................... 6

       A.     Plaintiffs Fail To Plead Scienter With The Requisite Particularity. ..................... 6

              1.     Plaintiffs Fail To Allege Adequately That
                     Any Defendant Had Any Motive To Defraud. ........................................... 7

              2.     Plaintiffs Fail To Plead Specific Facts
                     Constituting Strong Circumstantial Evidence Of Scienter. ....................... 9

                     a.     The Confidential Witness Allegations
                            Fail To Support A Strong Inference Of Scienter. ........................... 9

                     b.     Plaintiffs' Status And Access, "Core
                            Operations," And "SOX Certification" Allegations
                            Do Not Give Rise To A Strong Inference Of Scienter. ............... 12

                     c.     Alleged Issues With AXS-05 Do Not
                            Give Rise To A Strong Inference Of Scienter. ............................ 14

                     d.     The "Unresolved" Statement Does Not
                            Give Rise To A Strong Inference Of Scienter. ............................ 15

                     e.     Individual Defendants' Statements Do
                            Not Support A Strong Inference Of Scienter. .............................. 15

                     f.     Post-Class Period Statements Do Not
                            Support A Strong Inference Of Scienter. ..................................... 16

              3.     Plaintiffs Continue Improperly To Employ Group Pleading. .................. 16

              4.     Opposing Inferences Of Nonculpable Conduct
                     Are More Plausible Than Any Inference Of Fraud. ................................ 17

       B.     Plaintiffs Fail To Identify Any
              Actionable Material Misrepresentation Or Omission. ........................................ 17

              1.     Defendants' Forward-Looking Statements Are Not Actionable. ............ 17

                     a.     Defendants' Forward-Looking Statements Are Protected
                            By The Safe Harbor And The Bespeaks Caution Doctrine. ........ 18

                     b.     Defendants' Forward-Looking Statements Are Also
                            Protected By The Second Prong Of The Safe Harbor. ................ 20

              2.     The Remaining Challenged Statements Are Not Actionable. ................. 20

**TABLE OF CONTENTS**
(continued)

**Page**

a.   Accurate Statements Of Fact Are Not Actionable. ...................... 20

b.   Opinion Statements Are Not Actionable. ................................... 21

c.   Vague And Indefinite Statements Of
Optimism Are Immaterial And Not Actionable........................... 21

3.   Plaintiffs Fail To Identify Any
Actionable Omission Of Material Fact. .................................................. 22

a.   Axsome Had No Duty To Disclose Alleged "CMC Issues."....... 22

b.   No Challenged Statement Was
"So Incomplete As To Mislead." ................................................ 23

4.   Mischaracterizations Cannot Replace Actionable Statements................. 24

C.   Plaintiffs Fail Adequately To Allege Loss Causation.......................................... 24

II.   PLAINTIFFS' FAIL TO STATE A CLAIM
UNDER SECTION 20(A) OF THE EXCHANGE ACT. ............................................... 25

CONCLUSION.................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abady v. Lipocine Inc.*,
2023 WL 2938210 (D. Utah Apr. 13, 2023)............................................................................17

*In re Aceto Corp. Sec. Litig.*,
2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)..........................................................................13

*In re Adient plc Sec. Litig.*,
2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020)......................................................................21, 22

*In re Aegon N.V. Sec. Litig.*,
2004 WL 1415973 (S.D.N.Y. June 23, 2004) ...................................................................20, 21

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)..........................................................................8, 17, 19

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ......................................................................................................9

*In re AstraZeneca plc Sec. Litig.*,
2022 WL 4133258 (S.D.N.Y. Sept. 12, 2022)........................................................................20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).................................................................................................6, 25

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990).....................................................................................................23

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).................................................................................................................22

*In re Bausch & Lomb, Inc. Sec. Litig.*,
592 F. Supp. 2d 323 (W.D.N.Y. 2008)....................................................................................16

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004).......................................................................................8

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014).....................................................................................................22

*Constr. Laborers Pension Tr. of Greater St. Louis v. Neurocrine Biosciences, Inc.*,
2008 WL 4370010 (S.D. Cal. Sept. 23, 2008).........................................................................23

*Dempsey v. Vieau*,
   130 F. Supp. 3d 809 (S.D.N.Y. 2015)................................................................21

*Denny v. Barber*,
   576 F.2d 465 (2d Cir. 1978)...............................................................................3

*In re DRDGOLD Ltd. Sec. Litig.*,
   472 F. Supp. 2d 562 (S.D.N.Y. 2007).................................................................9

*Dresner v. Silverback Therapeutics, Inc.*,
   2023 WL 2913755 (W.D. Wash. Apr. 12, 2023).................................................17

*In re EDAP TMS S.A. Sec. Litig.*,
   2015 WL 5326166 (S.D.N.Y Sept. 14, 2015)........................................... *passim*

*In re EHang Holdings Ltd. Sec. Litig.*,
   646 F. Supp. 3d 443 (S.D.N.Y. 2022)................................................................13

*In re Fannie Mae 2008 Sec. Litig.*,
   742 F. Supp. 2d 382 (S.D.N.Y. 2010)................................................................17

*Frederick v. Mechel OAO*,
   475 F. App'x 353 (2d Cir. 2012) .........................................................................8

*Gamm v. Sanderson Farms, Inc.*,
   944 F.3d 455 (2d Cir. 2019)..........................................................................1, 25

*In re Garrett Motion Inc. Sec. Litig.*,
   2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) .............................................2, 7, 17

*In re Gildan Activewear, Inc. Sec. Litig.*,
   636 F. Supp. 2d 261 (S.D.N.Y. 2009).................................................................7

*Gillis v. QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016).................................................................8

*Glaser v. The9 Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011).................................................................9

*Glazer v. Formica Corp.*,
   964 F.2d 149 (2d Cir. 1992)..............................................................................23

*In re GPC Biotech AG Sec. Litig.*,
   2009 WL 5125130 (S.D.N.Y. Dec. 29, 2009) ...................................................22

*In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*,
   103 F. App'x 465 (3d Cir. 2004) .........................................................................3

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
2022 WL 18859055 (E.D.N.Y. Nov. 4, 2022).........................................................................10

*Hou Liu v. Intercept Pharms., Inc.*,
2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020) .........................................................................15

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
445 F. App'x 368 (2d Cir. 2011) ...............................................................................................9

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020).........................................................................................................7

*Lefkowitz v. Synacor, Inc.*,
2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019), *aff'd*, 832 F. App'x 54 (2d Cir.
2020) .........................................................................................................................................19

*Leung v. bluebird bio, Inc.*,
599 F. Supp. 3d 49 (D. Mass. 2022) ..................................................................................13, 17

*Lewakowski v. Aquestive Therapeutics, Inc.*,
2023 WL 2496504 (D.N.J. Mar. 14, 2023)..............................................................................17

*In re Lions Gate Entm't Corp. Sec. Litig.*,
165 F. Supp. 3d. 1 (S.D.N.Y. 2016)......................................................................................7, 16

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)..........................15

*Metzler Asset Mgmt. GmbH v. Kingsley*,
928 F.3d 151 (1st Cir. 2019)....................................................................................................11

*Missere v. Gross*,
826 F. Supp. 2d 542 (S.D.N.Y. 2011)........................................................................................6

*In re Neurotrope, Inc. Sec. Litig.*,
315 F. Supp. 3d 721 (S.D.N.Y. 2018).......................................................................................20

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ..........................................................................................2, 8, 17

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.*,
2005 WL 4161977 (D. Colo. Oct. 20, 2005) ...........................................................................23

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
563 F. Supp. 3d 259 (S.D.N.Y. 2021).......................................................................................24

*In re Omnicom Grp. Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)......................................................................................................24

*Paxton v. Provention Bio, Inc.*,
2022 WL 3098236 (D.N.J. Aug. 4, 2022) ...............................................................17

*In re Pretium Res. Inc. Sec. Litig.*,
2020 WL 953609 (S.D.N.Y. Feb. 27, 2020)............................................................24

*In re Razorfish, Inc. Sec. Litig.*,
2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001)..........................................................25

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)............................................................................17, 18, 22

*Rudman v. CHC Grp. Ltd.*,
217 F. Supp. 3d 718 (S.D.N.Y. 2016).......................................................................2

*San Leandro Emergency Med. Grp. Profit Sharing Plan v.
Philip Morris Cos., Inc.*,
75 F.3d 801 (2d Cir. 1996)........................................................................................14

*In re Sanofi Sec. Litig.*,
155 F. Supp. 3d 386 (S.D.N.Y. Jan. 6, 2016) ..........................................................23

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015).........................................................................23

*Shapiro v. TG Therapeutics, Inc.*,
652 F. Supp. 3d 416 (S.D.N.Y. 2023).................................................................12, 16

*Sinay v. CNOOC Ltd.*,
2013 WL 1890291 (S.D.N.Y. May 6, 2013),
*aff'd*, 554 F. App'x 40 (2d Cir. 2014).......................................................................16

*Slayton v. Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010)..................................................................................18, 20

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012).......................................................................25

*Special Sit. Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014).........................................................................25

*Strougo v. Barclays PLC*,
334 F. Supp. 3d 591 (S.D.N.Y. 2018).......................................................................25

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007).............................................................................................6, 7, 17

*In re The Hain Celestial Grp. Inc. Sec. Litig.*,
2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019)........................................................................14

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)................................................................................................21

*Tung v. Bristol-Myers Squibb Co.*,
412 F. Supp. 3d 453 (S.D.N.Y. 2019)..............................................................................8, 17

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ......................................................................11

*In re Wachovia Equity Sec. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011)..................................................................................11

*In re WebMD Health Corp. Sec. Litig.*,
2013 WL 64511 (S.D.N.Y. Jan. 2, 2013) ............................................................................18

*In re Weight Watchers Int'l Sec. Litig.*,
2016 WL 2757760 (S.D.N.Y. May 11, 2016) ......................................................................10

*Woodley v. Wood*,
2022 WL 103563 (S.D.N.Y. Jan. 11, 2022),
*aff'd* 2022 WL 14997930 (2d Cir. Oct. 27, 2022) ................................................................13

*Zhong Zheng v. Pingtan Marine Enter. Ltd.*,
379 F. Supp. 3d 164 (E.D.N.Y. 2019) ................................................................................13

**Statutes**

15 U.S.C. § 78u-5(c)(1) ...............................................................................................18, 20

## PRELIMINARY STATEMENT

This litigation is exactly the type of kneejerk "strike suit…of dubious merit" that the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b) are designed to prevent.[1]

On Monday, April 25, 2022, Axsome announced that the Food and Drug Administration had informed it that "chemistry, manufacturing, and controls issues" identified during the FDA's review of Axsome's New Drug Application ("NDA") for its pharmaceutical candidate AXS-07 were "unresolved" and that Axsome expected the FDA to formally deny the NDA by April 30, 2022. ¶2.[2]  Axsome's stock price fell 22%.  ¶10.  Less than three weeks later, Plaintiffs' counsel filed a complaint containing threadbare allegations of securities fraud against Axsome and five of its employees, officers, and directors.  *See* ECF No. 1.

Since, Plaintiffs' counsel has struggled to identify a viable named plaintiff,[3] a class period,[4] or a cogent theory of fraud.  The Court dismissed the prior complaint, finding that former Lead Plaintiff Gru had failed to plead loss causation, a misstatement or omission, or scienter as to any statement for which he had standing to sue.  *See* ECF No. 56 at 12.

Substitute Plaintiffs fail to cure the deficiencies that doomed the prior complaint.  Indeed, they reassert the same head-scratching theory of fraud:  Defendants allegedly told investors they believed FDA approval of AXS-07 was likely even though they knew the NDA was bound to fail because Axsome "could not even manufacture the drug while its [NDA] was under review."  ¶9.

---

[1] *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 464 (2d Cir. 2019).
[2] Paragraphs of the Second Amended Complaint (ECF No. 76) ("SAC") are referred to as "¶__."  Unless otherwise noted, all emphases are added.
[3] Former Co-Lead Plaintiff Thakkar withdrew because he could "no longer dedicate the attention" necessary. ECF No. 49.  The Court dismissed remaining Co-Lead Plaintiff Gru's claims.  ECF No. 56.  Plaintiffs' counsel attempted without leave to substitute another would-be plaintiff, Engel, who was impermissibly conflicted because he is the named plaintiff in a related derivative action.  *See* ECF No. 58 at 1-2.  Engel withdrew as well. ECF No. 63 at 3. Ultimately, Plaintiffs Giblin, Berger, and Sutherland were substituted as Lead Plaintiffs.  ECF No. 75.
[4] The SAC's proposed "Class Period" is now less than a year—May 10, 2021 to April 22, 2022—approximately a year-and-a-half shorter than Plaintiffs' prior proposed Class Period (*see* ECF No. 37 at ¶1).

1

This theory "encounter[s] an immediate motive problem"[5]:  why would Defendants tout the AXS-07 NDA if they knew it was bound to fail given that they literally "could not even manufacture the drug while [the NDA] was under review?"  ¶9.  Plaintiffs' "theory depends on the inference that [] Defendants would rather keep the stock price high for a time and then face the music once the inevitable problem surfaced.  That theory might work if the [] Defendants had sought to profit from this scheme in the interim, such as by 'sell[ing] their own shares at a profit.'"  *Garrett*, 2022 WL 976269, at *13.  "But there are no allegations like that here."  *Id.*

Plaintiffs do not allege that any Defendant sold company stock or benefitted in any other way from the supposed fraud.  To the contrary, the public record reflects that Dr. Tabuteau and Mr. Jacobson (Axsome's CEO and COO, respectively),[6] significantly ***increased*** their Axsome holdings during the Class Period.[7]  When Axsome's share price dropped following the revelation of the NDA's rejection, they were among those who suffered the greatest investment losses—***collectively well over a hundred million dollars' worth***.  The idea that Defendants committed a fraud that was sure to come to light without even attempting to benefit from it, "does not make a whole lot of sense."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).

Lacking motive allegations, Plaintiffs attempt to plead scienter on the back of alleged circumstantial evidence offered by Confidential Witness 1 ("CW1").  But, as before, CW1 is not alleged to have had ***any*** personal contact with ***any*** Individual Defendant, and there is not a single allegation that any Individual Defendant was privy to specific information contrary to any statement Plaintiffs challenge.  The couple "new" allegations offered by CW1 are vague recollections concerning ***someone else's*** supposed knowledge of "manufacturing issues" and an

---

[5] *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at *13 (S.D.N.Y. Mar. 31, 2022).

[6] Mr. Laliberte, did not occupy a position at Axsome requiring him to file transaction reports with the SEC.

[7] The Declaration of Matthew C. McDonough ("Decl.") attaches or links to publicly available documents this Court may consider.  *See Rudman v. CHC Grp. Ltd.*, 217 F. Supp. 3d 718, 723 (S.D.N.Y. 2016) (court may consider documents referenced in the complaint, SEC filings, and documents plaintiff relies upon).

audit of Axsome's facilities performed in the summer of 2021 that he claims identified "equipment problems" (though, s/he does not claim to have been involved in the audit and fails to describe how s/he allegedly came to learn of its results). *See* ¶¶71-73. Regarding their keystone allegation that "Axsome could not even manufacture [AXS-07]" during the Class Period, Plaintiffs and CW1 simply fail to plead "the who, what, where, when, and how: the first paragraph of any newspaper story." *In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004).

Plaintiffs other "new" allegation is that Defendants must have known that their hopeful statements concerning the AXS-07 NDA in 2021 and early 2022 (during the Class Period) were false because, based on FDA feedback received in late 2022 (*after* the Class Period), Axsome disclosed in September and November 2022 (five and seven months *after* the Class Period) that it intended to provide the FDA with "stability data on newly manufactured commercial scale batches of AXS-07" and, potentially, "additional clinical pharmacology information." ¶90; *see* ¶¶90-110. From those post-Class Period statements, Plaintiffs make the illogical leap that, "[a]s of the *start* of the Class Period, Defendants…did not have sufficient runway to complete stability studies on new batches in advance of Axsome's filing the AXS-07 NDA." ¶110. But, the SAC contains no well pled facts to support that "stability data" existing at the start of the Class Period was insufficient to support the NDA or that the FDA would necessarily require more "stability data" than that which existed at the start of the Class Period, or that any Defendant knew either of those things. The new "stability testing" allegations rely entirely on speculation about post-Class Period statements concerning post-Class Period interactions with the FDA, which fail to establish that Defendants knew any information contradicting their Class Period statements *at the time* they made them. Courts in this Circuit have long rejected such allegations of "fraud by hindsight." *See, e.g., Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).

3

Unable to plead with particularity any Defendant's scienter, Plaintiffs resort to dubious and frequently rejected "must have known" scienter theories against all Defendants as a group—a strategy that fails as a matter of law, and which this Court previously rejected. *See infra* §I.A.

The SAC also fails to identify an actionable misrepresentation or omission. *Infra* §I.B. Among the Class Period statements Plaintiffs challenge are many forward-looking statements that were accompanied by meaningful cautionary language, including regarding the "inherently unpredictable" FDA approval process and Axsome's reliance on third-party manufacturers. *Infra* §I.B.1. Plaintiffs also challenge many accurate statements of fact, statements of opinion, and vague and indefinite statements of optimism, none of which is actionable. *Infra* §I.B.2. And, to the extent that Plaintiffs allege that Axsome failed to disclose FDA commentary concerning its manufacturing capabilities, it is well settled that an applicant is not required to disclose interim FDA feedback. *Infra* §I.B.3. Ultimately, none of the challenged statements are actionable.

Plaintiffs also fail adequately to plead loss causation. *Infra* §I.C. The SAC fails to allege a single fact suggesting that the market ever learned during the proposed Class Period that any challenged statement was false. This alone is fatal to Plaintiffs' claims.

For these and the reasons that follow, the SAC should be dismissed with prejudice.

## FACTUAL BACKGROUND

Axsome is a biopharmaceutical company; one of its pharmaceutical candidates is AXS-07. ¶¶26-28. On May 10, 2021, the first day of the proposed Class Period, Axsome stated: "With regards to AXS-07, we're very much on track to file the NDA this quarter, as we've previously stated, and there really isn't any update there. The team is working diligently to make sure that we have a timely, but also a quality filing." ¶128. As it had forecasted, Axsome in fact filed its AXS-07 NDA in June 2021. ¶50. On September 14, 2021, Axsome stated that the FDA had accepted the NDA and set a target date of April 30, 2022 for acting on the NDA. ¶51.

4

On Friday, April 22, 2022 (the last day of the Class Period), the FDA rejected the NDA.  ¶2. Before the market opened on Monday, April 25, Axsome disclosed that the FDA had informed it that "chemistry, manufacturing, and controls ('CMC') issues identified during the FDA's review [of the AXS-07 NDA] are unresolved." ¶53.  Axsome's stock price dropped roughly 22%. ¶2.

Plaintiffs' counsel filed their first complaint a mere eighteen days later.  Like that complaint (ECF No. 1) and the Amended Complaint (ECF No. 37), which was dismissed, the SAC hinges on the theory that, because the NDA was rejected due to "unresolved" "CMC issues" (¶53), Defendants must have known about those issues prior to the NDA's submission; thus, Defendants fraudulently misled investors when they made almost any statement about AXS-07.  Though Plaintiffs vaguely allude to "CMC issues" that purportedly "plagued" AXS-07's development (¶3), the only particular "CMC issue" identified is an alleged "contract manufacturing organization's equipment problem," which Plaintiffs claim is what comprised the FDA's "CMC issues" (¶74).

Plaintiffs' central allegation that "Axsome could not even manufacture [AXS-07] while its [NDA] was under review" (¶9) relies exclusively on CW1, an alleged Clinical Trial Manager from July 2019 to February 2022 (¶67).  In sum, CW1 alleges that: "equipment problems" forced Axsome to delay a "marketing study" for AXS-07 from April 2021 to early 2022 (¶¶69, 74); s/he was told in August of 2021 by someone named Fang Liu that the reason for the study's delay was "that one of [Axsome's manufacturers]…was having equipment problems and was therefore unable to manufacture the drug" (¶70); and Axsome conducted an "internal audit" in the "summer of 2021" which identified "equipment problems" (¶¶72-73).

Plaintiffs jump to the conclusion that the existence of an alleged equipment issue that supposedly led to the delay of this "marketing study" necessarily means that Axsome was rendered unable to manufacture AXS-07 for the entire year-long Class Period and that such equipment issue

5

must be the "CMC issues" that caused the FDA to reject the NDA. *See* ¶¶68-82. Plaintiffs do not connect the delay in the "marketing study," or the alleged cause for the delay, to the FDA's rejection of the NDA. Plaintiffs do not allege that CW1 had any contact with any Individual Defendant, or ever informed them of alleged "equipment problems."[8]

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(b) OF THE EXCHANGE ACT.

A "complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b)," particularly when premised on "distorted inferences and speculations."[9] "Unwarranted inferences and unsupported conclusions cast in the form of factual allegations" should be rejected.[10] Plaintiffs fail to plead with particularity scienter, any material misrepresentation or omission, or loss causation, each of which independently warrants dismissal.

### A. Plaintiffs Fail To Plead Scienter With The Requisite Particularity.

The PSLRA's "[e]xacting pleading requirements," obligate Plaintiffs to "state with particularity facts giving rise to a ***strong*** inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313-14 (2007). To plead the required strong inference of scienter, Plaintiffs must allege specific facts: "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar*

---

[8] Plaintiffs attempt to muddy the waters by discussing AXS-**05**, another of Axsome's then-drug candidates. *See* ¶¶111-127. Plaintiffs assert that "CMC issues" AXS-**05** faced during ***its*** approval process must have put Axsome on "heightened notice" for "CMC issues" with AXS-07. ¶112. As Plaintiffs concede, however, the issues AXS-05 faced were "analytical methods in the CMC" (¶90), unrelated to the supply issues Plaintiffs claim affected AXS-07. ¶113. Plaintiffs also spend two paragraphs on allegations from CW1 regarding an alleged "poorly written" testing protocol for an AXS-**05** clinical trial. ¶¶105-06. Plaintiffs do not even attempt to connect this clinical trial to AXS-07. ¶105. Plaintiffs' purpose in focusing on AXS-05 appears to be to obscure the failings of their AXS-07 allegations.

[9] *In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at *7 (S.D.N.Y Sept. 14, 2015).

[10] *Missere v. Gross*, 826 F. Supp. 2d 542, 565 (S.D.N.Y. 2011).

*Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).[11] A reasonable or plausible inference of scienter is not sufficient: a complaint must raise an inference that is "cogent and ***at least as compelling as any opposing inference*** one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. Insofar as Plaintiffs rely on "allege[d] fraudulent omissions, rather than false statements, 'it is especially important to rigorously apply the standard for pleading intent.'" *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d. 1, 23 (S.D.N.Y. 2016).

### 1. Plaintiffs Fail To Allege Adequately That Any Defendant Had Any Motive To Defraud.

Plaintiffs do not allege "that 'defendants benefitted in some concrete and personal way from the purported fraud.'" *EDAP*, 2015 WL 5326166, at \*14. Plaintiffs "encounter an immediate motive problem" because their claims are based on the theory that the Defendants "would rather keep the stock price high for a time and then face the music once the inevitable problem surfaced." *Garrett*, 2022 WL 976269, at \*13. This theory makes sense only if the defendants "sought to profit from this scheme in the interim, such as by 'sell[ing] their own shares at a profit...'" *Id.*

Notably, the SAC is devoid of trading allegations. Based on publicly available information, neither Dr. Tabuteau nor Mr. Jacobson sold a single share during the Class Period. *See* Decl. ¶7, Ex. E. In fact, Dr. Tabuteau and Mr. Jacobson ***significantly increased*** their stock holdings via equity compensation.[12] When Axsome's share price fell following its announcement of the CRL in April 2022, Dr. Tabuteau's and Mr. Jacobson's shares and options declined in value by ***well over a hundred million dollars*** collectively; they were among the investors most harmed by the news. Plaintiffs do not explain why, if Defendants knew that the NDA would fail because

---

[11] To plead Axsome's scienter, Plaintiffs must sufficiently plead "that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020). Plaintiffs fail to plead the scienter of any individual "whose scienter may be imputed to [Axsome]." *Id.* at 99.

[12] "[T]he weight of the authority" says "options are to be taken into account in comparing the volume of an insider's sales to his shareholdings." *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 271 n.5 (S.D.N.Y. 2009) (including unexercised options in finding insider sales not significant enough to support strong inference of scienter).

Axsome could not manufacture AXS-07, they would not sell a single share before the inevitable day of reckoning. Plaintiffs' theory defies common sense. *See Nguyen*, 962 F.3d at 415; *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (absent "insider sales during the period of stock-price inflation, there would be no concrete benefit to defendants to justify the[] risks" of touting "NDA submissions [defendants] knew were doomed to fail"). Defendants' holding, and adding to their holdings, is "***wholly inconsistent*** with fraudulent intent." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004).[13]

Plaintiffs' only other arguable "motive" allegation is CW1's vague claim that "the Company's executive leadership appeared to prioritize profit over patients, they 'cut corners,' and they seemed to be always in a rush to meet milestones." ¶¶89, 184. This allegation is insufficient to raise any inference of scienter. First, CW1's allegations are not credible where s/he is not alleged to have had contact with any Defendant. *See infra* §I.A.2.a. Second, by Plaintiffs' admission, this general allegation concerns "quality controls," ***not*** the "the specific issue related to the manufacturing of AXS-07" on which Plaintiffs' claims are based. ¶89. Third, the allegation is nonsensical because Axsome could not "profit" from AXS-07 until it was approved by the FDA; any supposed "profit over patients" motive would be ***undermined*** by filing an NDA that was doomed to fail. Finally, motives "generally possessed by most corporate directors and officers," like generating profits, are "insufficient to withstand a motion to dismiss." *Frederick v. Mechel OAO*, 475 F. App'x 353, 355 (2d Cir. 2012); *see EDAP*, 2015 WL 5326166, at *14. Plaintiffs allege no cogent motive to support any inference of scienter, let alone a strong inference.

---

[13] *See Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 459-60 (S.D.N.Y. 2019) (same); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 763 (S.D.N.Y. 2018) (same).

**2.      Plaintiffs Fail To Plead Specific Facts
Constituting Strong Circumstantial Evidence Of Scienter.**

Where Plaintiffs fail to plead motive, "the circumstantial evidence of conscious misbehavior 'must be ***correspondingly greater***' and show 'highly unreasonable' behavior or that which evinces 'an extreme departure from the standards of ordinary care.'" *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). It is not enough to allege "that defendants 'knew facts or had access to information suggesting that their public statements were not accurate.'" *Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011). Plaintiffs "must 'specifically identify the reports or statements containing [] information'" tending to show that the defendants knew their statements were false. *Id.*

Crucially, the SAC fails to reference a single specific report reviewed by any Defendant that indicated the NDA could not succeed. *See In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 572 (S.D.N.Y. 2007). Instead, Plaintiffs offer vague theories as to why Defendants, as a group, supposedly "would have known" (¶¶78, 79, 183) their statements were false or misleading.

**a.      The Confidential Witness Allegations
Fail To Support A Strong Inference Of Scienter.**

Plaintiffs' confidential witness allegations amount to no more than rumor, innuendo, and general criticism of their former employer, which fail to give rise to any inference of scienter. *See Glaser v. The9 Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011). Plaintiffs principally rely on CW1 with scant reference to CW3 (and still no CW2). CW3 "had a senior role in Clinical Operations" and allegedly participated in a June 2021 FDA inspection of "one of Axsome's facilities" related to AXS-**05**. ¶¶173, 185. CW3's ***sole*** allegation is that "Axsome's top leadership [was] 'extremely secretive' and not forthcoming internally about Axsome's interactions with the FDA." ¶185. Such "generic and conclusory allegations based upon rumor or conjecture are undisputedly

9

insufficient"[14] and fall far short of supporting a strong inference of scienter.  Indeed, CW3's "secrecy" allegation ***undermines*** any inference of scienter; if CW3 and others were kept in the dark about the Company's FDA interactions, they would have no basis to know that any challenged statement contradicted the actual content of FDA interactions.[15]

Regarding CW1, Plaintiffs parrot vague allegations from the prior complaint that: CW1 reported (at some point) to Amanda Jones who reported to Dr. Tabuteau, so "Tabuteau would be aware of the items that CW1 observed" (¶¶178-80, 185); Axsome management "would have known" about Axsome's vendor's "equipment problems" (¶183); and Axsome's leadership "appeared to prioritize profit over patients," "cut corners," and "rush[ed] to meet milestones" (¶¶89, 184).[16]  In addition, CW1 now alleges: ***someone else*** (Ms. Liu) "was aware of the manufacturing problems, dealt with supply delays of the drug due to the [alleged] equipment issues, and [at an unspecified time] provided updates to Jacobson and Laliberte about the status of drug supplies" (¶71); in the summer of 2021, Axsome conducted an internal audit of its manufacturing facilities, which CW1 "understood" was conducted in "preparation of the FDA's review as part of the NDA process for AXS-07 and AXS-05" (¶72); and there was "an [undated] internal meeting" that CW1 does not attest s/he attended, "where Laliberte affirmatively discussed Axsome's equipment issues," which purportedly were "raised in the [internal] audit" (¶73).

These allegations do not move the needle; they still fail to reveal that any Defendant was presented with, or even had access to, any information specifically contradicting any challenged

---

[14] *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *29 (E.D.N.Y. Nov. 4, 2022).

[15] Indeed, Plaintiffs' concession that CW3 was not even informed of the filing of NDAs for AXS-05 and AXS-07 (¶185), undercuts any insinuation that s/he was in a position to characterize the knowledge of Axsome's top leadership.

[16] CW1 allegedly worked at Axsome from July 2019 to February 2022 and reported to different people "at various points during" his/her tenure.  ¶67.  Even if the Court accepted the dubious conclusion that CW1 could know Dr. Tabuteau's state of mind solely because s/he reported to Ms. Jones, who reported to Dr. Tabuteau, Plaintiffs fail to allege that CW1 reported to Ms. Jones ***during the Class Period***.  CW1's generalized opinions are the type courts routinely find inadequate.  *See In re Weight Watchers Int'l Sec. Litig.*, 2016 WL 2757760, at *7 (S.D.N.Y. May 11, 2016) ("characterization or opinion of the witness" is insufficient).

statement, and Plaintiffs still do not allege that CW1 "had any contact with the individual Defendants." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014).[17] Plaintiffs do not allege that CW1 attended a meeting, exchanged an email with, or talked to any Defendant, or even overheard any such communication. Instead, Plaintiffs jump to the conclusion that Individual Defendants *must have known* what CW1 claims to have known based on CW1's reporting chain, knowledge purportedly possessed by Ms. Liu, and the fact that Dr. Laliberte participated in an "internal audit" during which unspecified "equipment issues were raised."[18] The PSLRA requires much more. *See Turquoise Hill*, 2014 WL 7176187, at *7.

Even reading the CW allegations liberally, they do not support that any Defendant knew of information contradicting their public statements. For instance, even if it were true that, at some point "Axsome was simply unable to manufacture the drug" (¶4), and even if Defendants knew that, it would not contradict their public statements because Plaintiffs do not allege that Axsome could not remedy its supposed manufacturing problems in advance of NDA approval. *See Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at *13 (S.D.N.Y. Apr. 28, 2020) (despite knowledge of potential manufacturing issues, no scienter where plaintiff failed to show why issues "could not be readily remedied"). Indeed, Plaintiffs concede that Axsome successfully completed three Phase 3 trials in support of its AXS-07 NDA.[19] The more plausible inference is that Defendants' optimism was well founded. While CW1's "*marketing* study" may have been delayed, that does not mean that Axsome was unable to manufacture the drug for clinical or

---

[17] *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (lack of contact with defendants undermines inference of scienter); *Metzler Asset Mgmt. GmbH v. Kingsley*, 928 F.3d 151, 162 (1st Cir. 2019) (same)

[18] *See* ¶¶68, 70-73, 178-79, 181-82.

[19] The results of the trials, in which AXS-07 was administered to thousands of patients, further undermine CW1's contentions that Axsome could not manufacture the drug. *See* Decl. ¶6, Ex. D (citing Form 8-K (12/30/19) at 1 (MOMENTUM trial: 1,594 patients); Form 8-K (4/6/20) at 1 (INTERCEPT trial: 302 patients); Form 8-K (12/31/20) at 1 (MOVEMENT trial: 706 patients, 21,000 migraines)). As the Company reported (and Plaintiffs do not contest), "the FDA did not request any new clinical trials to support the approval of AXS-07." ¶58.

11

commercial purposes or that the NDA was bound to fail.[20]

Neither CW claims (nor could they) that they know the specific "CMC issues" that ultimately caused the FDA to reject the AXS-07 NDA because the CRL is not public. Although Plaintiffs insist that "[a]ccording to CW1, the CMC issues that the FDA identified in its CRL for AXS-07 involved" the "equipment problem" s/he supposedly observed (¶77), ***CW1 left Axsome two months before the FDA issued its CRL***. *Compare* ¶67 (CW1 left in February 2022) *with* ¶58 (Axsome received CRL in April 2022). CW1's alleged knowledge of the "CMC issues" the FDA identified is simply not plausible. CW3 likewise left the Company ***seven months before*** the CRL (¶185). Thus, even if either CW credibly attested to any Defendant's knowledge of any actual "CMC issues"—which they do not—they cannot allege with particularity that any Defendant knew the specific issues that would cause the FDA to reject the NDA.

> **b.      Plaintiffs' Status And Access, "Core Operations," And "SOX Certification" Allegations Do Not Give Rise To A Strong Inference Of Scienter.**

Plaintiffs attempt to bolster their scienter allegations with a potpourri of circumstantial theories that courts regularly reject. Plaintiffs insist, for instance, that Defendants "would have known" their statements were false or misleading because of their status as executives and their access to information. *E.g.*, ¶79. Plaintiffs point to a June 2021 FDA inspection report of "one of Axsome's facilities" in connection with the development of AXS-**05**. ¶173. Plaintiffs assert that the report described Individual Defendants' roles and responsibilities at Axsome and that "[t]his organizational structure...shows even further that [] Tabuteau would be aware of the items that CW1 observed." ¶180. Setting aside that this report related to AXS-**05** (a fact buried in footnote 14) and that the report was ***positive***, "it is not enough that defendants held senior positions

---

[20] *Cf. Shapiro v. TG Therapeutics, Inc.*, 652 F. Supp. 3d 416, 426 (S.D.N.Y. 2023) ("[M]ere occurrence of adverse events did not give the defendants knowledge [that the drug] was unsafe.").

and had access to inside information." *Woodley v. Wood*, 2022 WL 103563, at *7 (S.D.N.Y. Jan. 11, 2022), *aff'd* 2022 WL 14997930 (2d Cir. Oct. 27, 2022) (collecting cases).[21]

In fact, the June 2021 FDA inspection report cuts ***against*** any inference of scienter. Plaintiffs allege that "AXS-07 is manufactured at the same facility as AXS-05," ¶134, and that Axsome "could not even manufacture" AXS-07 in June 2021 due to equipment problems. ¶9. It defies logic that the FDA inspected the facility manufacturing AXS-05 and AXS-07 in June 2021—mere weeks before Axsome submitted its AXS-07 NDA—and did not report a supposedly prohibitive manufacturing problem. This renders Plaintiffs' allegations even more implausible.

Plaintiffs also ask the Court to infer scienter because the challenged statements allegedly "concerned Axsome's core operations." ¶187. The "core operations doctrine has been cast into doubt by the Second Circuit following the enactment of the PSLRA." *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *10 (E.D.N.Y. Aug. 6, 2019) (citing *Frederick*, 475 F. App'x at 356-57). Even where the doctrine has been applied, "the majority rule is to 'consider the core operations allegations to constitute supplementary, but not an independent means to plead scienter.'" *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 181 (E.D.N.Y. 2019).

That Dr. Tabuteau signed SOX certifications (¶167) also does not support scienter. *See Woodley*, 2022 WL 103563, at *8 ("[P]laintiff 'cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements.'").[22]

Such "must have known" allegations fail to ***specifically identify*** documents or

---

[21] *See In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 464 (S.D.N.Y. 2022) ("[M]ust have known" and "would have known" allegations are not "'concrete allegations' as to each individual Defendants' particular knowledge"); *Leung v. bluebird bio, Inc.*, 599 F. Supp. 3d 49, 64-66 (D. Mass. 2022) (dismissing complaint alleging scienter based on defendants' "ample experience in the field" and knowledge of "previous 'manufacturing issues'").
[22] *See also Zhong Zheng*, 379 F. Supp. 3d at 181 ("[C]ourts in this circuit regularly hold that the signing of a SOX certification, without more, is insufficient to plead scienter" since "allowing [SOX] certifications to create an inference in every case...would eviscerate the pleading requirements for scienter set forth in the PSLRA.").

contemporaneous facts showing that Defendants knew their challenged statements were false when made.  *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996).  Plaintiffs' continued reliance on the vague and conclusory allegation that "[i]n addition, Defendants had access to [unspecified] reports and communications describing these operations" (¶187) highlights this failing.  *See In re The Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *19 (E.D.N.Y. Mar. 29, 2019).

### c.     Alleged Issues With AXS-<u>05</u> Do Not Give Rise To A Strong Inference Of Scienter.

Plaintiffs wrest out of context deficiencies concerning "analytical methods" in AXS-<u>05</u>'s NDA in a vain attempt to paint all of Axsome's products as "plagued" by "CMC issues."  First, Plaintiffs' allegations face a temporal problem; they allege that, as of August 9, 2021, Defendants knew that "CMC issues" might prevent the FDA from approving Axsome's NDAs for both drugs. ¶125.  But, Plaintiffs concede that on August 9, Axsome reported that the FDA had "identified deficiencies" with AXS-<u>05</u>'s NDA but "***did not state what the deficiencies are***."  ¶121.  In other words, the FDA did ***not*** raise "CMC issues" related to AXS-05 by August 9, and these allegations cannot support the scienter of any Defendant as of August 2021.  Second, the FDA later advised Axsome of deficiencies in "***analytical methods*** in the [CMC] section of the [AXS-05] NDA." ¶127.  But Plaintiffs do not allege "analytical method" deficiencies were the cause of the FDA's denial of AXS-<u>07</u>'s NDA.  The only specific "CMC issue" Plaintiffs identify is that "equipment problems" caused Axsome not to be able to manufacture AXS-07 at all.  ¶9.[23]  It is not plausible to infer from AXS-<u>05</u>'s "analytical methods" issues that any Defendant knew that unrelated

---

[23] The market understood that AXS-05's "analytical method" issues did not concern "manufacturing."  *See* Decl. ¶13, Ex. K (Ladenburg Thalmann Report (11/9/21)) ("[O]f note, the [AXS-05] CMC deficiencies ***do not relate to the manufacturing process*** but to the testing of the finished drug product.").

manufacturing issues would cause the AXS-07 NDA to fail.[24]  Finally, to the extent that there could theoretically be any connection between the two sets of issues, the market was on notice of the AXS-**05** issues, defeating any inference of scienter.[25]

### d.  The "Unresolved" Statement Does Not Give Rise To A Strong Inference Of Scienter.

Based on the word "unresolved," Plaintiffs again baselessly conclude "the FDA had previously discussed these issues with the Company."  ¶171.  But, "unresolved" was Axsome's word, not the FDA's.  It is just as likely that, as with AXS-**05**, the FDA did not initially identify "what the deficiencies are."  ¶121.  And Plaintiffs fail to demonstrate that, even if the FDA identified "CMC issues" earlier, those issues "could not be remedied."  *Schaeffer*, 2020 WL 7701463, at *10.  In any event, Plaintiffs fail to allege any facts about the alleged discussion with the FDA, including, critically, **when** such discussion occurred.  Only if such discussion occurred before the making of any challenged statement could that fact possibly support an inference of scienter.  Without such particulars, this allegation falls far short of the PSLRA's requirements.

### e.  Individual Defendants' Statements Do Not Support A Strong Inference Of Scienter.

Plaintiffs also attempt to allege scienter based on Dr. Tabuteau's and Mr. Jacobson's public statements evincing familiarity with the manufacturing process.  *E.g.*, ¶¶169-70.  Such "must have known" allegations are insufficient.  *See, e.g.*, *Hou Liu v. Intercept Pharms., Inc.*, 2020 WL 1489831, at *15 n.156 (S.D.N.Y. Mar. 26, 2020) (defendants' "general comments about the treatment approach, the features of [the product], and the average dose prescribed" insufficient to plead scienter).  At best, this is a form of the dubious "core operations" theory and, accordingly,

---

[24] And the "analytical method" issues were ultimately resolved. As Plaintiffs admitted in their prior complaint (**but remove from the SAC**), the FDA has **approved** AXS-05, which is now sold under the brand name Auvelity.
[25] *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 583 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (if "past quality control problems put the company on notice of potential issues, they also put the market on notice that statements concerning the superior quality of the company's product had to be understood in this context").

is insufficient to plead a strong inference of scienter.  *See supra* §I.A.2.b.

**f.      Post-Class Period Statements Do Not
Support A Strong Inference Of Scienter.**

Grasping at straws, Plaintiffs newly assert that Defendants knew that all of their Class Period statements concerning AXS-07's NDA were false because Axsome would necessarily have to conduct lengthy stability studies on new batches of the product.  *See* ¶109.  This allegation is based entirely on statements Defendants made in *September and November 2022—five- and seven-plus months after the end of the putative Class Period*.  *See* SAC ¶¶90-91, 109-10.  The SAC contains no well pled facts to support that "stability data" existing at the start of the Class Period was insufficient to support Axsome's NDA, that any Defendant knew that to be so, or that the FDA would require, *later*, more "stability data" than that which existed at the start of the Class Period.  Plaintiffs' "hindsight-based viewpoint," based on post-Class Period statements suggests nothing about any Defendant's state of mind at the time of the alleged misstatements and is "classically insufficient to support a strong inference of scienter."  *E.g.*, *Sinay v. CNOOC Ltd.*, 2013 WL 1890291, at *8 (S.D.N.Y. May 6, 2013), *aff'd*, 554 F. App'x 40 (2d Cir. 2014).[26]

**3.      Plaintiffs Continue Improperly To Employ Group Pleading.**

Despite the Court's caution against group pleading (*see* ECF No. 56 at 13), Plaintiffs continue to employ the tactic.  *See, e.g.*, ¶¶168, 171-73, 183-85 ("Defendants' scienter"), 205 ("Defendants' knowledge"), 105 ("As the senior managers and/or directors...the Individual Defendants had knowledge"), 187 ("Defendants had access to reports and communications describing these operations").  Defendants still fail to "allege facts supporting a strong inference [of scienter] with respect to *each* defendant."  *Lions Gate*, 165 F. Supp. 3d at 22.

---

[26] *See also Shapiro*, 652 F. Supp. 3d at 426 n.3 (later knowledge of drug safety concern not supportive of scienter as to earlier statements concerning drug safety); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 352 n.32 (W.D.N.Y. 2008) (unless defendant had a "time machine," events occurring months after the alleged corrective disclosure "cannot raise any inference of scienter" as to challenged statements).

**4.      Opposing Inferences Of Nonculpable Conduct
Are More Plausible Than Any Inference Of Fraud.**

Courts must consider competing inferences of scienter. *See Tellabs*, 551 U.S. at 314.

Plaintiffs do not allege that Defendants gained anything from their supposed scheme. Indeed, the

value of their personal stock holdings plummeted by hundreds of millions on the news of the denial

of AXS-07's NDA. Weighed against Plaintiffs' vague "would have known" allegations based on

a "confidential witness" who never interacted with any Defendant and identifies no specific

contradictory information, the more compelling inference is that Defendants, whose "financial

interests were aligned with those of the investors," believed in the promise of the AXS-07 NDA

when they made the challenged statements. *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d

382, 403 (S.D.N.Y. 2010). Plaintiffs' theory just "does not make a whole lot of sense."[27]

In sum, Courts regularly dismiss securities fraud claims against pharmaceutical companies

where plaintiffs fail to plead scienter with the required particularity, including numerous

complaints filed by Plaintiffs' counsel.[28] This Court should follow suit.

**B.      Plaintiffs Fail To Identify Any
Actionable Material Misrepresentation Or Omission.**[29]

**1.      Defendants' Forward-Looking Statements Are Not Actionable.**

The PSLRA Safe Harbor permits companies to make projections without fear of liability

should those projections not come to pass. *See Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir.

---

[27] *Nguyen*, 962 F.3d at 415; *Garrett*, 2022 WL 976269, at *13.

[28] *See, e.g.*, *Abady v. Lipocine Inc.*, 2023 WL 2938210, at *24 (D. Utah Apr. 13, 2023) ("[W]hen Plaintiffs' conclusory allegations are disregarded, as they must be," complaint fails adequately to plead scienter regarding alleged omission of adverse facts regarding likelihood of FDA approval); *Lewakowski v. Aquestive Therapeutics, Inc.*, 2023 WL 2496504, at *11-12 (D.N.J. Mar. 14, 2023) ("Fatally," complaint alleged no concrete and personal benefit to the individual defendants, and was "devoid of any particularized facts—no internal reports, memoranda, or communications—suggesting Defendants were aware that the FDA would reject the NDA"); *Dresner v. Silverback Therapeutics, Inc.*, 2023 WL 2913755, at *13-16 (W.D. Wash. Apr. 12, 2023) (dismissing complaint which "ask[ed] the Court to make inferential leaps unsupported by the facts"); *Paxton v. Provention Bio, Inc.*, 2022 WL 3098236, at *15 (D.N.J. Aug. 4, 2022) (dismissing scienter allegations based on, *inter alia*, defendants' status as "senior executives," "knowledge[] about the FDA," "extensive experience in the pharmaceutical industry," and SOX certifications); *bluebird*, 599 F. Supp. 3d at 64-66; *Tung*, 412 F. Supp. 3d at 461; *Aratana*, 315 F. Supp. 3d at 765.

[29] A chart of each alleged misrepresentation, in context, is attached for the Court's convenience at Decl. ¶14, Ex. L.

17

2004).  A defendant shall not be liable (1) if a forward-looking statement is "identified" as such and "accompanied by meaningful cautionary statements" or (2) if the plaintiff "fails to prove that the forward-looking statement…was made with ***actual knowledge*** by that person that the statement was false or misleading."  15 U.S.C. § 78u-5(c)(1); *Slayton v. Am. Express Co.*, 604 F.3d 758, 765-66 (2d Cir. 2010).  Plaintiffs' claims fail under both independent prongs.

a.    **Defendants' Forward-Looking Statements Are Protected By The Safe Harbor And The Bespeaks Caution Doctrine.**

The Safe Harbor protects forward-looking statements accompanied by cautionary language conveying "substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statement."  *Slayton*, 604 F.3d at 771.  Companies need not predict the future but must disclose risks important to their projections.  *In re WebMD Health Corp. Sec. Litig.*, 2013 WL 64511, at *9 (S.D.N.Y. Jan. 2, 2013).[30]

Plaintiffs challenge many forward-looking statements.  First, Plaintiffs challenge Axsome's statement that: "We ***believe*** that our existing suppliers of our product candidate active pharmaceutical ingredients and finished products will be capable of providing sufficient quantities of each to meet our clinical trial supply needs."  ¶¶132, 138, 148, 153.[31]  Axsome expressly identified such statements as forward-looking.  *See, e.g.*, Decl. ¶2, (2021 10-K) at 4 (identifying as forward-looking statements of "belie[f]" and "[e]xpectations for the clinical and preclinical development, manufacturing, regulatory approval, and commercialization of our pharmaceutical product candidates…[and] the performance of third-party manufacturers").  These projections were accompanied by meaningful cautionary language.[32]  Every quarterly and annual filing during

---

[30] The Safe Harbor is reinforced by the "bespeaks caution" doctrine, which holds that alleged misrepresentations are "immaterial as a matter of law [if] it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering."  *Rombach*, 355 F.3d at 173 (citation omitted).

[31] Additional forward-looking statements about Axsome's manufacturing include those at: ¶¶128, 130, 136, 142, 145, 146, 155.

[32] A corporation may incorporate by reference risk factors in its recent SEC filings.  *See Slayton*, 604 F.3d at 763.

18

the Class Period includes an entire section devoted to the risks related to Axsome's dependence

on third parties, and states clearly:

> ***If the manufacturers upon whom we rely fail to produce our product candidates in the volumes that we require on a timely basis…we may face delays in the development and commercialization of … our products and may lose potential revenues.***

*See, e.g.*, Decl. ¶2 (2021 10-K ) at 45; *see also* ¶¶96, 132, 138, 148, 155.  Such risk disclosures

render accompanying forward-looking statements not actionable under the Safe Harbor.[33]

Second, in a relic of Plaintiffs' previously dismissed complaint, they allege that "Axsome

promoted an unrealistic timeline for the submission of an NDA for AXS-07." ¶8.  But only once

during the revised Class Period did Axsome forecast an NDA submission date (May 10, 2021

prediction that the "we're very much on track to file the NDA this quarter" (¶128)), which turned

out to be ***correct*** (Axsome filed its NDA in June 2021) (¶129).  Nevertheless, Axsome issued

cautionary language disclosing the risk that the NDA process may suffer delay.  *See, e.g.*, Decl. ¶2

(2021 10-K) at 54.  Far from boilerplate, Axsome's disclosures include a list of specific reasons

why AXS-07's approval might be delayed.  *See, e.g.*, *id.* at 27, 57.  These specific risk disclosures

render the "timeline" statement not actionable.  *See, e.g.*, *Lefkowitz v. Synacor, Inc.*, 2019 WL

4053956, at *9 (S.D.N.Y. Aug. 28, 2019) ("'anticipate' and 'expect' are common markers of

forward-looking statements"), *aff'd*, 832 F. App'x 54 (2d Cir. 2020); *Aratana*, 315 F. Supp. 3d at

758 (following statements not actionable: "Company ***anticipates*** submitting [NDA] in early

2016," "[W]e believe that we are ***on track*** to have these products reach the market in 2016....We

very much ***look forward to*** launching these products next year").

Third, Axsome's statements describing its positive clinical data and discussions with the

FDA as supporting the AXS-07 NDA (¶9) also are not actionable because "statements about the

---

[33] *See, e.g.*, *Aratana*, 315 F. Supp. 3d at 759-60 (risk disclosure regarding reliance on third-party manufacturers foreclosed argument that defendant misrepresented drug commercialization timeline).

likelihood of regulatory approval are 'classically forward-looking, as they address what defendants expect[] to occur in the future.'" *In re AstraZeneca plc Sec. Litig.*, 2022 WL 4133258, at *9 (S.D.N.Y. Sept. 12, 2022); *see In re Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 734 (S.D.N.Y. 2018) (optimistic statements about trial results are not actionable). Axsome clearly warned of risks inherent in the NDA process. *See, e.g.*, Decl. ¶2 (2021 10-K) at 27 (warning that "[d]ata obtained from clinical trials are not always conclusive and the FDA may interpret data differently than an applicant interprets the same data"). Thus, statements regarding the promise of Axsome's AXS-07 NDA based on its clinical trial results are not actionable.[34] *See EDAP*, 2015 WL 5326166, at *10 (warnings regarding risk of FDA rejection warranted Safe Harbor protection).

b.      **Defendants' Forward-Looking Statements Are Also Protected By The Second Prong Of The Safe Harbor.**

The challenged forward-looking statements are not actionable for the independent reason that, under the Safe Harbor's second prong, forward-looking statements are actionable only if made with ***actual knowledge*** of falsity. 15 U.S.C. § 78u-5(c)(1)(B); *Slayton*, 604 F.3d at 773. To overcome the Safe Harbor, a plaintiff must plead "specific facts" and may not "generally allege that the Defendants had actual knowledge of the alleged falsity of their statements." *In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *12 (S.D.N.Y. June 23, 2004). As discussed above, Plaintiffs do not plead a single specific contemporaneous fact giving rise to a strong inference that any challenged statement was made with "actual knowledge" of its falsity. *See supra* §I.A.

2.      **The Remaining Challenged Statements Are Not Actionable.**

a.      **Accurate Statements Of Fact Are Not Actionable.**[35]

Some challenged statements are not actionable because they are simply statements of fact

---

[34] These include the statements at ¶¶136, 140, 146, 150.
[35] Additional accurate statements of fact challenged by Plaintiffs include those at: ¶¶, 132, 136, 138, 142, 143, 145, 146, 148, 150, 152, 155.

that Plaintiffs fail to plead adequately were false or misleading when made.  For example:

- "So for the manufacturing process for AXS-07, that actually is a bit more complicated and there are two facilities that we utilized for the manufacturer of the drug product. The drug -- the API's are also available under open DMF too in the U.S. And of the two facilities that we used for drug product manufacturing, one of them is the same that we used for AXS-05."  ¶134.
- "The NDA is supported by results from two Phase 3 randomized, double-blind, controlled trials of AXS-07 in the acute treatment of migraine, the MOMENTUM and INTERCEPT trials, which demonstrated statistically significant elimination of migraine pain with AXS-07 compared to placebo and active controls."  ¶140.

Plaintiffs fail adequately to allege "how and why" any of these statements was false.  *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *13 (S.D.N.Y. Apr. 2, 2020) (citing *Rombach*, 355 F.3d at 174).  "[S]imply stating that the statements are false is not enough."  *Id.*

### b.       Opinion Statements Are Not Actionable.[36]

Other challenged statements are inactionable statements of opinion.  For instance:

- "We **believe** that our existing suppliers of our product candidate active pharmaceutical ingredients and finished products will be capable of providing sufficient quantities of each to meet our clinical trial supply needs."  ¶153.

"To state a claim based on an [*sic*] allegedly false opinions, plaintiffs must plead both their objective falsity and their subjective falsity."  *Dempsey v. Vieau*, 130 F. Supp. 3d 809, 818 (S.D.N.Y. 2015).[37]  Plaintiffs fail adequately to allege that any opinion statement was subjectively false because they fail to plead adequately that any Defendant **actually** knew at the time they made a challenged statement that Axsome was incapable of manufacturing AXS-07, or that such manufacturing issues would inevitably lead to the FDA's rejection of the NDA.  *See supra* §I.A.

### c.       Vague And Indefinite Statements Of
### Optimism Are Immaterial And Not Actionable.

Still other challenged statements are "expressions of puffery and corporate optimism,"

---

[36] Additional opinion statements challenged by Plaintiffs include those at: ¶¶128, 132, 138, 140, 148, 150, 155.

[37] *See Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016) (dismissing claims concerning expected timing of FDA approval).

which cannot give rise to liability. *Rombach*, 355 F.3d at 174. For instance, Plaintiffs challenge:

- "With regards to AXS-07, we're very much on track to file the NDA this quarter, as we've previously stated, and there really isn't any update there." ¶128.
- "2021 was a year of continued progress which has put us in a position to potentially launch two new investigational medicines for patients living with depression and migraine." ¶150.

Courts find such statements "too vague" or "too open-ended and subjective" to be material. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 186 (2d Cir. 2014); *see, e.g.*, *Adient*, 2020 WL 1644018, at *31 n.14 ("Statements about Adient's progress with respect to certain goals, including it being '*on track*,'…constitute inactionable puffery") (collecting cases); *In re GPC Biotech AG Sec. Litig.*, 2009 WL 5125130, at *6 (S.D.N.Y. Dec. 29, 2009) (statements that clinical trial "was going well" were non-actionable puffery).

### 3.      Plaintiffs Fail To Identify Any Actionable Omission Of Material Fact.

Plaintiffs' theory of liability relies largely on Defendants' alleged failure to disclose "CMC issues." *See* ¶¶7-9. But, "[s]ilence, absent a duty to disclose, is not misleading." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). Plaintiffs fail adequately to allege either: (a) any freestanding duty on Axsome to disclose allegedly omitted information; or (b) any voluntary statement that was rendered so incomplete as to mislead due to omitted information.

### a.      Axsome Had No Duty To Disclose Alleged "CMC Issues."

Plaintiffs insist that, because Axsome described "CMC issues" as "unresolved," the FDA must have previously made Axsome aware of such "CMC issues," which Axsome should have disclosed. *E.g.*, ¶56. Notwithstanding that this allegation is based on nothing beyond the word "unresolved" and that Plaintiffs fail to allege *any specifics* about this alleged FDA discussion (*see supra* §I.A.2.d), Axsome would have had no duty to disclose that fact. Courts "reject claims of material omissions where pharmaceutical companies d[o] not reveal procedural or methodological commentary, or other interim status reports, received from the FDA as to drugs under review."

*In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 541-42 (S.D.N.Y. 2015) ("interim FDA feedback is not material because it does not express a binding agency decision and is subject to change").

Nor did Axsome have any duty to disclose that the FDA ***might*** require additional stability testing.  *See* ¶92.  First, Plaintiffs plead no facts supporting that the FDA actually required stability testing ***during*** the Class Period.  *See supra* §I.A.2.f.  Additionally, to the extent Plaintiffs allege that Defendants had a duty to disclose how the "ICH guidelines" could impact the likelihood that the NDA would be approved,[38] *see* ¶92, the "fallacy in [Plaintiffs'] argument is that the FDA's policies and the ICH guidelines are public….Such information was available to investors." *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, 2005 WL 4161977, at \*7 (D. Colo. Oct. 20, 2005).

### b.    No Challenged Statement Was "So Incomplete As To Mislead."

A statement that is allegedly "so incomplete as to mislead" is only actionable in limited circumstances.  *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (adopted by *Glazer v. Formica Corp.*, 964 F.2d 149, 156 (2d Cir. 1992)).[39]  "[C]omplete and accurate" disclosure does not require that a company publish every fact about every subject it voluntarily discloses.  *Backman*, 910 F.3d at 16.  Plaintiffs allege that Axsome failed to disclose "equipment problems" affecting its ability to manufacture AXS-07 for a planned marketing study at some point before or during the NDA process.  ¶¶70, 78.  But none of the challenged statements relate to that alleged marketing study.  And even if it were true that Axsome was unable to manufacture AXS-07 at some point during the NDA process, that information was not inconsistent with Axsome's statements.

---

[38] *Constr. Laborers Pension Tr. of Greater St. Louis v. Neurocrine Biosciences, Inc.*, 2008 WL 4370010, at \*4 n.4 (S.D. Cal. Sept. 23, 2008) (plaintiffs "fail[ed] to explain why defendants' failure to accurately predict the FDA's decision is not merely the difference between two permissible judgments, but rather the result of a falsehood").

[39] Since *Glazer*'s adoption of *Backman*, courts in the Second Circuit adhere to a strict construction of this principle. *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. Jan. 6, 2016) ("The critical consideration...is whether 'the alleged omissions...are sufficiently connected to defendants' existing disclosures to make those public statements misleading.'").

### 4.    Mischaracterizations Cannot Replace Actionable Statements.

The SAC is laden with cherry-picked snippets of Defendants' actual statements and Plaintiffs' mischaracterizations, which lack any significance and should be disregarded. *See In re Pretium Res. Inc. Sec. Litig.*, 2020 WL 953609, at *5 (S.D.N.Y. Feb. 27, 2020). For example, the SAC alleges that Axsome "conclude[d] that Axsome's CMOs '***will be capable of providing sufficient quantities***' of product '***to meet our clinical trial supply needs***.'" ¶32 (emphasis in original). Plaintiffs fail to include the broader statement, which reflects Axsome's expression of "***belief***" that its suppliers would prove capable; it was not promising or "concluding" anything. Assessed in context, none of the challenged statements is actionable. *See* Decl. ¶14, Ex. L.

### C.    Plaintiffs Fail Adequately To Allege Loss Causation.

To plead loss causation, Plaintiffs must allege either "(a) the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud; or (b) that that [*sic*] the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 266 (S.D.N.Y. 2021). Plaintiffs fail to do either. They claim Axsome failed to disclose that its alleged inability to manufacture AXS-07 "caused the FDA to issue a CRL for the NDA." ¶160. But, the supposed "corrective disclosure" was Axsome's April 25, 2022 announcement that the FDA had denied the NDA, citing "CMC issues" (¶161). *See In re Omnicom Grp. Inc. Sec. Litig.*, 597 F.3d 501, 511-12 (2d Cir. 2010) (disclosure revealed "no hard fact" previously concealed). Plaintiffs concede "CMC" covers many areas unrelated to manufacturing. *See* ¶88 (Berenberg Capital Markets Report). Other than vague, unsupported allegations (*see* ¶67, 77) from CW1 (who departed Axsome months before the NDA was denied), Plaintiffs fail sufficiently to allege that the basis for the FDA's denial of the NDA was Axsome's inability to manufacture AXS-07. Axsome's announcement that the FDA would reject the AXS-07 NDA due to "CMC issues" did not reveal

24

any allegedly withheld information.  Rather, the risk that Axsome specifically disclosed—that the FDA may reject its NDA for any number of reasons—ultimately materialized.

## II.  PLAINTIFFS' FAIL TO STATE A CLAIM
UNDER SECTION 20(a) OF THE EXCHANGE ACT.

"Control person" liability under Section 20(a) of the Exchange Act requires a primary violation, control of the primary violator, and culpable participation "in the controlled person's fraud."  *ATSI*, 493 F.3d at 108.  Culpable participation requires "particularized facts of the *controlling person's* conscious misbehavior or recklessness."[40]

Plaintiffs' Section 20(a) claims fail.[41]  First, Plaintiffs plead no primary violation. *See supra* §I.  Second, Plaintiffs fail to plead specifically that each Defendant actually controlled any alleged primary violator, or that any Defendant culpably participated in any other Defendant's alleged fraud.  *See Strougo v. Barclays PLC*, 334 F. Supp. 3d 591, 596 (S.D.N.Y. 2018) (culpable participation "is established by alleging scienter on the part of a controlling person to the extent that it would satisfy § 10(b)"); *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (dismissing §20(a) claims based on allegations of "high-level position[]," "awareness of [Defendants'] operations," and "intimate knowledge" of public statements).  For much the same reasons that Plaintiffs fail to plead a strong inference of scienter (*supra* §I.A), they fail to plead culpable participation by any Individual Defendant.

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice.[42]

---

[40] *Special Sit. Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014) (emphasis in original).

[41] Defendants Pizzie and O'Gorman are filing contemporaneously a motion to dismiss Plaintiffs' Section 20(a) claims.

[42] Plaintiffs have twice amended their complaint and provide "no particularized basis for any belief that any further amendment of the already-amended SAC would cure its deficiencies."  *In re Razorfish, Inc. Sec. Litig.*, 2001 WL 1111502, at *2 (S.D.N.Y. Sept. 21, 2001); s*ee Gamm*, 944 F.3d at 461 (affirming dismissal with prejudice of TAC).

Dated: March 11, 2024

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Michael L. Kichline*
Michael L. Kichline (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
michael.kichline@morganlewis.com

Emily E. Renshaw
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
emily.renshaw@morganlewis.com

Matthew C. McDonough (*pro hac vice*)
Michael A. Hacker
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
matthew.mcdonough@morganlewis.com
michael.hacker@morganlewis.com

*Counsel for Defendants Axsome Therapeutics, Inc.,*
*Herriot Tabuteau, Mark Jacobson, Kevin Laliberte,*
*Nick Pizzie, and Cedric O'Gorman*

26