**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AXSOME THERAPEUTICS, INC. SECURITIES LITIGATION | Case No.: 1:22-cv-3925-LGS |

**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS
NICK PIZZIE'S AND CEDRIC O'GORMAN'S MOTION TO
<u>DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 3

    A.  PLAINTIFFS PLED A SECTION 20(A) CLAIM AGAINST PIZZIE AND O'GORMAN ......................................................................................................... 3

        1.  Plaintiffs Are Not Required to Plead Culpable Participation .................... 3

        2.  Culpable Participation is an Affirmative Defense for Defendants to Raise 4

        3.  Procedural Posture is Crucial to Evaluate a Section 20(a) Claim ............... 7

    B.  ALTERNATIVELY, PLAINTIFFS HAVE PLED PIZZIE'S AND O'GORMAN'S CULPABLE PARTICIPATION ................................................. 8

        1.  There is Strong Circumstantial Evidence of Pizzie's and O'Gorman's Conscious Misbehavior or Recklessness ...................................................... 8

            a)  O'Gorman's May 10, 2021 Statement ............................................ 9

            b)  Defendants' Lack-of-Motive Arguments Fail as They Misleadingly Discuss their Axsome Class Period Transactions ......................... 10

    C.  PIZZIE AND O'GORMAN HAD CONTROL ...................................................... 14

        1.  Pizzie, as Axsome's CFO, is a Control Person ......................................... 15

        2.  O'Gorman is a Control Person of Axsome ............................................... 16

        3.  Defendants had a Duty to Correct Each Other .......................................... 16

III. CONCLUSION ............................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Grp.*,
47 F.3d 47 (2d Cir. 1995)..............................................................................................12

*Brown v. Enstar Grp., Inc.*,
84 F.3d 393 (11th Cir. 1996) ...........................................................................................5

*Busic v. Orphazyme A/S*,
2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) ...................................................................8, 14

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
56 F. Supp. 3d 549 (S.D.N.Y. 2014).................................................................................4, 5

*City of Pontiac Gen. Emps.' Ret. Sys.*,
875 F. Supp. 2d 359, 371 (S.D.N.Y. 2012)..........................................................................14

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012).................................................................................5

*First Interstate Bank of Denver, N.A. v. Pring*,
969 F.2d 891 (10th Cir. 1992), *rev'd sub nom. Cent. Bank of Denver, N.A. v.*
*First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) ......................................................5

*Gayle v. Harry's Nurses Registry, Inc.*,
594 F. App'x 714 (2d Cir. 2014) .......................................................................................2

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)............................................................................................10

*Harrison v. Dean Witter Reynolds, Inc.*,
974 F.2d 873 (7th Cir. 1992) ............................................................................................5

*Hollinger v. Titan Cap. Corp.*,
914 F.2d 1564 (9th Cir. 1990) (en banc) ............................................................................5

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)................................................................................12

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................................................15

*In re Comput. Assocs. Class Action Sec. Litig.*,
75 F. Supp. 2d 68 (E.D.N.Y. 1999) ...................................................................................13

*In re Credit Suisse First Bos. Corp. Sec. Litig.*,
1998 WL 734365 (S.D.N.Y. Oct. 20, 1998) ........................................................................10

*In re Digi Int'l Inc. Sec. Litig.*,
6 F. Supp. 2d 1089 (D. Minn. 1998)....................................................................................13

*In re Emex Corp. Sec. Litig.*,
2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002)...................................................................16

*In re eSpeed, Inc. Sec. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006)..................................................................................12

*In re EVCI Colleges Holding Corp. Secs. Litig.*,
469 F. Supp. 2d 88 (S.D.N.Y. 2006)....................................................................................12

*In re Health Mgmt., Inc. Sec. Litig.*,
970 F. Supp. 192 (E.D.N.Y. 1997) .........................................................................................4

*In re iAnthus Cap. Holdings, Inc. Sec. Litig.*,
No. 20-cv-3135 (LAK), 2022 WL 19037215 (S.D.N.Y. Dec. 7, 2022) ..................................4

*In re IPO Sec. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003).....................................................................................6

*In re Kidder Peabody Sec. Litig.*,
10 F. Supp. 2d 398 (S.D.N.Y. 1998).....................................................................................13

*In re LaBranche Sec. Litig.*,
405 F. Supp. 2d 333 (S.D.N.Y. 2005)..................................................................................5, 6

*In re Oxford Health Plans, Inc.*,
187 F.R.D. 133 (S.D.N.Y. 1999) ..........................................................................................12

*In re Parmalat Sec. Litig.*,
375 F. Supp. 2d 278 (S.D.N.Y. 2005).....................................................................................5

*In re ShengdaTech, Inc. Sec. Litig.*,
2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) (Schofield, J.) .............................................2, 4

*In re Tronox, Inc. Sec. Litig.*,
2010 WL 2835545 (S.D.N.Y. June 28, 2010) .........................................................................4

*In re Vivendi Universal, S.A. Sec. Litig.*,
381 F. Supp. 2d 158 (S.D.N.Y. 2003)..................................................................................12

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
504 F. Supp. 3d 224 (S.D.N.Y. 2020)..................................................................................15

*In re Wellcare Mgmt. Grp. Sec. Litig.*,
    964 F. Supp. 632 (N.D.N.Y. 1997) ................................................................................13

*In re WorldCom, Inc. Sec. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003) ..........................................................................4, 10

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016) ..............................................................................................14

*Indep. Energy Holdings PLC Sec. Litig.*,
    154 F. Supp. 2d 741 (S.D.N.Y. 2001) ..............................................................................6

*Kader v. Sarepta Therapeutics, Inc.*,
    887 F.3d 48 (1st Cir. 2018) ...............................................................................................5

*Katz v. Image Innovations Holdings, Inc.*,
    542 F. Supp. 2d 269 (S.D.N.Y. 2008) .............................................................................15

*Kelleher v. ADVO, INC.*,
    2008 WL 11376597 (D. Conn. Apr. 28, 2008) ................................................................16

*Kirschner v. Robeco Cap. Growth Funds - Robeco BP U.S. Premium Equities (In
    re Nine W. LBO Sec. Litig.)*,
    87 F.4th 130 (2d Cir. 2023), *petition for cert. filed*, No. 23-1081 (U.S. Apr. 4,
    2024) ......................................................................................................................2, 3, 6, 7

*Lanza v. Drexel & Co.*,
    479 F.2d 1277 (2d Cir. 1973) .........................................................................................7, 8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ............................................................................................17

*Mader v. Armel*,
    461 F.2d 1123 (6th Cir. 1972) ...........................................................................................8

*Marbury Mgmt., Inc. v. Kohn*,
    629 F.2d 705 (2d Cir. 1980) ..............................................................................................5

*Metge v. Baehler*,
    762 F.2d 621 (8th Cir. 1985) .............................................................................................5

*Nguyen v. New Link Genetics Corp.*,
    297 F. Supp. 3d 472 (S.D.N.Y. 2018) .............................................................................13

*No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ...........................................................................................13

iv

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)..............................................................................................8

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006)..............................................................................4, 5

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  12 F.4th 171 (2d Cir. 2021) ............................................................................................2, 7

*Plumbers' & Pipefitters' Loc. No. 562 Supplemental Plan & Tr. v. J.P. Morgan
  Acceptance Corp. I*,
  2012 WL 601448 (E.D.N.Y. Feb. 23, 2012).....................................................................4, 5

*Ret. Sys. v. Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012)...............................................................................10

*Rihn v. Acadia Pharms. Inc.*,
  2016 WL 5076147 (S.D. Cal. Sept. 19, 2016)....................................................................8

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) .............................................................................................12

*Rosi v. Aclaris Theraps., Inc.*,
  2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021) ...............................................................14, 16

*S.E.C. v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996)...........................................................................................7, 8

*S.E.C. v. Stone*,
  2023 WL 6387276 (S.D.N.Y. Sept. 29, 2023)....................................................................2

*Sinnathurai v. Novavax, Inc.*,
  645 F. Supp. 3d 495 (D. Md. 2022) ...................................................................................9

**Statutes**

15 U.S.C. §78j(b) ................................................................................................................2, 4

15 U.S.C. §78t(a) ........................................................................................................ *passim*

Private Securities Litigation Reform Act of 1995 .............................................................8

**Rules**

Fed. R. Civ. P. 8.....................................................................................................................4

Lead Plaintiffs Thomas Giblin, Paul Berger, and Paul Sutherland ("Plaintiffs"), respectfully submit this Memorandum in Opposition to the Motion to Dismiss the Second Amended Class Action Complaint by Defendants Nick Pizzie ("Pizzie") and Cedric O'Gorman ("O'Gorman") (ECF Nos. 81-83).[1]

## I.    INTRODUCTION

The Complaint alleges Pizzie's and O'Gorman's violations of Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). During the Class Period, Axsome Therapeutics, Inc. ("Axsome" or the "Company") did not have a commercialized drug product. Thus, the U.S. Food and Drug Administration's ("FDA") approval of a New Drug Application ("NDA") for AXS-07, Axsome's drug candidate for the acute treatment of migraine, was imperative to the Company's operations and financial results as it was the closest to FDA approval and commercialization.[2] Given AXS-07's importance to Axsome's success, all Defendants knew of, or were severely reckless about, the status and hurdles AXS-07 faced, including issues surrounding chemistry, manufacturing, and controls ("CMC").

Puzzlingly, Defendants devote much of their brief to rehashing alleged shortcomings of a complaint that is no longer operative. Ultimately, Defendants assert that the operative Complaint fails to plead a Section 20(a) claim against Pizzie and O'Gorman, arguing that it alleged neither their control nor their culpable participation. They are incorrect.

---

[1] ¶ _ references are to the Second Amended Class Action Complaint ("Complaint") (ECF No. 76). Defendants Pizzie and O'Gorman's Memorandum in Support of their Motion (ECF No. 83) is referenced as "Pizzie/O'Gorman Brief." Internal quotations and citations are omitted, and emphases are added, unless noted otherwise. References to the "Main Brief" are to Lead Plaintiffs' Opposition to Axsome Therapeutics Inc., Herriot Tabuteau, Mark Jacobson, and Kevin Laliberte's Motion to Dismiss the Second Amended Class Action Complaint. "Main MTD" refers to the Memorandum in Support of Axsome, Tabuteau, Jacobson, and Laliberte's Motion to Dismiss. (ECF No. 80).

[2] For the sake of brevity, Plaintiffs respectfully refer the Court to the Main Brief for a more detailed background and statement of facts.

1

There is conflicting precedent among the district courts in the Second Circuit as to the proper standard for a Section 20(a) claim. To state a control-person liability claim, Section 20(a)'s plain text requires no allegations of "culpable participation." Thus, the burden is on Pizzie and O'Gorman to show they acted in good faith, an affirmative defense available at summary judgment or trial.

Plaintiffs recognize that this Court has stated previously that "culpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss." *In re ShengdaTech, Inc. Sec. Litig.*, 2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12, 2014) (Schofield, J.). Several courts, however, have held otherwise (*see infra* at 4-6), and since this Court last addressed this issue in depth, there have been important judicial developments.

In light of the fact that the Second Circuit has never ruled on a pleading standard for a Section 20(a) claim, Plaintiffs respectfully submit that the Court should re-evaluate the standard by considering relevant recent Second Circuit rulings. These Second Circuit opinions hold that the *defendant* has the burden, not plaintiff, where there are safe harbors or good faith affirmative defenses embedded within statutory language similar to Section 20(a).[3] *See Kirschner v. Robeco Cap. Growth Funds - Robeco BP U.S. Premium Equities (In re Nine W. LBO Sec. Litig.)*, 87 F.4th 130, 144 (2d Cir. 2023), *petition for cert. filed*, No. 23-1081 (U.S. Apr. 4, 2024); *Picard*, 12 F.4th at 195-200. In particular, *Picard* addressed a bankruptcy statute whose structure closely resembles Section 20(a). Further, *Kirschner* made clear that a plaintiff-friendly pleading rule is one of general

---

[3] Section 20(a) provides a "safe harbor" for defendants that acted in good faith. *S.E.C. v. Stone*, 2023 WL 6387276, at *9 (S.D.N.Y. Sept. 29, 2023). It is also an affirmative defense, as statutes that permit a defendant to escape liability based on a showing of good faith create an affirmative defense. *See Gayle v. Harry's Nurses Registry, Inc.*, 594 F. App'x 714, 718 (2d Cir. 2014). *Accord, Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 196 (2d Cir. 2021).

application, and is not confined to the Bankruptcy Code. *Kirschner,* 87 F.4th at 144.[4] These recent developments offer insight on how the Second Circuit would address Section 20(a) pleading standards and suggest that the Second Circuit would not require the plaintiff to plead culpable participation.

In addition, should this Court continue to require Plaintiffs to plead Defendants' culpable participation with particularity, the Complaint suffices, as it adequately alleges that Pizzie and O'Gorman knew, or should have known, that Defendants' public statements about the timeline of NDA approval of AXS-07 were misleading. FDA approval of the Company's drugs was central to Axsome's success and any ability to prosper.

Second, Pizzie and O'Gorman controlled Axsome. Pizzie is Axsome's Chief Financial Officer ("CFO"), accountable for how Axsome spends its resources on developing its drug candidates with an eye focused on commercialization and profitability. O'Gorman was Axsome's Vice President of Clinical Development and Medical Affairs. In this role, O'Gorman oversaw drug candidate trials, including for AXS-07, and knew of the trial delays due to manufacturing issues. Accordingly, both Pizzie and O'Gorman had control over Axsome and its public statements, particularly those made regarding AXS-07. ¶¶ 213-14. Thus, the Complaint satisfies these requirements and lays out a Section 20(a) claim against Pizzie and O'Gorman.

## II. ARGUMENT

### A. Plaintiffs Pled a Section 20(a) Claim Against Pizzie and O'Gorman

#### 1. Plaintiffs Are Not Required to Plead Culpable Participation

Plaintiffs state a Section 20(a) claim as to Pizzie and O'Gorman. To allege a Section 20(a) claim, all Plaintiffs are required to plead are: (1) a primary violation by the controlled person; and

---

[4] These newer authorities are discussed further *infra* at 6-7.

3

(2) control of the primary violator by the targeted defendant. *Plumbers' & Pipefitters' Loc. No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp. I*, 2012 WL 601448, at \*20 (E.D.N.Y. Feb. 23, 2012) (citing *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996)). In the Main Brief, Plaintiffs demonstrate that they have pled Axsome's, Herriot Tabuteau's, Mark Jacobson's, and Kevin Laliberte's primary violation of Section 10(b) of the Exchange Act.

Certain district courts in the Second Circuit, including this one, have held that a Section 20(a) claim requires a complaint to allege with particularity, a controlling defendant's culpable participation, essentially their scienter. *See, e.g.*, *ShengdaTech, Inc.*, 2014 WL 3928606, at \*10 n.1. Several district courts in this Circuit, however, require only a showing of a primary violation and control. *See e.g.*, *In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, No. 20-cv-3135 (LAK), 2022 WL 19037215, at \*1 (S.D.N.Y. Dec. 7, 2022); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 414 (S.D.N.Y. 2003) (no affirmative requirement to plead culpable state of mind for Section 20(a) liability); *In re Health Mgmt., Inc. Sec. Litig.*, 970 F. Supp. 192, 206 (E.D.N.Y. 1997) (holding no requirement of scienter or culpable participation to plead Section 20(a) liability). Some courts also have held that Rule 8(a) notice pleading applies to a Section 20(a) claim. *See e.g.*, *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 56 F. Supp. 3d 549, 560 (S.D.N.Y. 2014); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 190 (S.D.N.Y. 2006). This Court should require no pleading of culpable participation.

### 2.      Culpable Participation is an Affirmative Defense for Defendants to Raise

The plain language of Section 20(a) explicitly provides that culpable participation is an affirmative defense, stating the liability attaches "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. §78t(a). Thus, "the statutory language places the burden on defendants to exculpate themselves by proving either good faith or due diligence." *In re Tronox, Inc. Sec. Litig.*, 2010 WL

4

2835545, at *15 (S.D.N.Y. June 28, 2010); *Plumbers' & Pipefitters'*, 2012 WL 601448, at *20 (holding that "a complaint arising out of Section 20(a) does not need to affirmatively plead facts in avoidance of this defense"). As Judge Kaplan explained in *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 310 (S.D.N.Y. 2005), the Second Circuit held in *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980), that once the plaintiff pleads control, the burden of proving good faith shifts to the defendant. As the Second Circuit has never explicitly overruled *Marbury Management*, courts should follow Section 20(a)'s "unambiguous" statutory language that only requires a plaintiff plead a primary violation and control. *Parmalat*, 375 F. Supp. 2d at 310; *see also Plumbers' & Pipefitters'*, 2012 WL 601448, at *20 (failure of defendant to prove good faith entitles plaintiff "to prevail simply upon showing a primary violation plus control"); *Pension Comm.*, 446 F. Supp. 2d at 191 (holding that the "statutory language places the burden on defendants to 'exculpate' themselves by proving either good faith or due diligence"). Thus, a number of courts within this Circuit hold that a plaintiff need not plead culpable participation.

Courts beyond the Second Circuit – namely the Fifth, Seventh, Eighth, Ninth (en banc), Tenth, and Eleventh Circuits – agree with Plaintiffs. These courts have held that a plaintiff need not plead culpable participation to allege a Section 20(a) claim, but rather, Section 20(a) provides an affirmative defense of "good faith" that is defendants' burden. *See Carpenters Pension*, 56 F. Supp. 3d at 560 n.75.[5] Thus, the clear weight of Circuit-level authority holds that "a plaintiff need not plead culpable participation by the control person in order to state a legally sufficient claim." *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 257 (S.D.N.Y. 2012); *accord In re*

---

[5] Citing *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981); *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir. 1992); *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985); *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990) (en banc); *First Interstate Bank of Denver, N.A. v. Pring*, 969 F.2d 891, 898, 896-97 (10th Cir. 1992), *rev'd sub nom. Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) and *Brown v. Enstar Grp., Inc*., 84 F.3d 393, 396 (11th Cir. 1996). The First Circuit in *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 56 n.2 (1st Cir. 2018) has also indicated that it supports this view.

*LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 363 (S.D.N.Y. 2005) (holding plaintiffs are not required to allege "particularized facts showing culpable participation").

Although this Court has previously found that culpable participation is an element of a Section 20(a) claim that Plaintiffs must plead with particularity, Judge Scheindlin—who also initially took the contrary view (*see Indep. Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d 741, 771 (S.D.N.Y. 2001))—later reassessed this issue in *In re IPO Sec. Litig.*, 241 F. Supp. 2d 281, 392-97 (S.D.N.Y. 2003), adopting the view that plaintiffs need ***not*** plead culpable participation. In so holding, Judge Scheindlin found the statute's legislative history persuasive. *See IPO*, 241 F. Supp. 2d at 395 (citing S. Rep. No. 73-792, at 22 (1934) & H.R. Conf. Rep. No. 73-1383, at 26 (1934)). As Judge Scheindlin also noted:

> Section 20(a) provides that anyone who "controls" a person liable under the 1934 Act is equally liable, ***subject only to the defense of "good faith."*** The section is remedial and is to be construed liberally. It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a "controlling person" liable. . . . The [Act's] purpose is to expand, not restrict, the public's remedies.

*Id.* at 395-96 (quoting *Sennett v. Rodman & Renshaw*, 414 U.S. 926, 929 (1973) (Douglas, J., dissenting from denial of certiorari)) (omission and emphasis in original).

Judge Scheindlin's analysis can be said to foretell recent developments. A similar reassessment of the Section 20(a) "good faith" affirmative defense, that is in the nature of a safe harbor, is quite appropriate in light of newer Second Circuit authority concerning how courts must approach statutes containing similar affirmative defenses and safe harbors. The Second Circuit interpreted a bankruptcy code safe harbor in *Kirschner*, 87 F.4th at 144. The Second Circuit was clear on how its existence should affect pleading standards, stating:

> Section 546(e) has been uniformly recognized as an affirmative defense, though not yet by this Court. We have, however, held that safe harbors in other statutory

6

schemes are affirmative defenses. Accordingly, we hold today that 11 U.S.C. § 546(e) is an affirmative defense.

> *Defendants therefore bear the burden of demonstrating that the transfers fall within the safe harbor. See, e.g.*, *Capitol Records*, 826 F.3d at 94. *Plaintiffs are under no obligation to plead facts supporting or negating an affirmative defense in the complaint. See, e.g.*, *Picard v. Citibank N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 195 (2d Cir. 2021) (first citing Fed. R. Civ. P. 8(c); and then citing *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 137 S. Ct. 1975, 1987 n.9, 198 L. Ed. 2d 527 (2017) ("An affirmative defense to a plaintiff's claim for relief is not something the plaintiff must anticipate and negate in her pleading." (cleaned up))), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

*Id.* (footnotes omitted).

*Kirschner* built upon *Picard*. 12 F.4th at 195-200. *Picard* addressed a fraudulent transfer statue similar to Section 20(a) in that it set a standard for liability subject to a showing of "good faith." The Second Circuit ruled that it was the defendant's burden to establish good faith, and there was no obligation to plead any culpable acts or intent. *Id.* at 196 ("Because we conclude that good faith is an affirmative defense … [under] the well-established burden-of-pleading rules, the trustee is not required to plead a transferee's lack of good faith.").

In sum, this Court should reject Defendants' assertion that Plaintiffs must plead culpable participation with particularity for their Section 20(a) claim to survive a motion to dismiss. It is Defendants' burden to raise this affirmative defense at summary judgment or trial, as the Second Circuit has recently held in analogous circumstances.

### 3.    Procedural Posture is Crucial to Evaluate a Section 20(a) Claim

To evaluate a Section 20(a) claim, the procedural posture of the action is critical. Neither *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) nor *First Jersey*, 101 F.3d at 1450, two Second Circuit cases on this issue, involve a pleading's adequacy. In *Lanza*, the Second Circuit injected confusion as to whether culpability is an element of a 20(a) claim. 479 F.2d at 1299. Notably, however, *Lanza* does not concern pleadings, but is an appeal of a judgment after a lengthy

7

bench trial.[6] Similarly, *First Jersey* does not impose a culpable participation pleading requirement. Instead, the Second Circuit in discussing the lower court's judgment (not a pleading) wrote that establishing a *prima facie* case at **summary judgment or trial** requires a showing "in some meaningful sense" of culpable participation in the fraud. 101 F.3d at 1472.[7] Unlike here with the Private Securities Litigation Reform Act of 1995 discovery stay, once there has been an opportunity for discovery, at summary judgment, defendants may invoke the affirmative defense that they acted in good faith. Until then, Plaintiffs need not plead culpable participation.

**B.    Alternatively, Plaintiffs Have Pled Pizzie's and O'Gorman's Culpable Participation**

Even if, however, this Court requires Plaintiffs to plead culpable participation, the Complaint pleads it with requisite particularity. Plaintiffs can allege Defendants' scienter by showing a strong inference (a) that "defendants had both motive and opportunity to commit fraud" or (b) "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000).

**1.    There is Strong Circumstantial Evidence of Pizzie's and O'Gorman's Conscious Misbehavior or Recklessness**

AXS-07 was one of two drug candidates that Axsome planned to commercialize in the near future. Given this, the success of AXS-07's FDA approval was integral for the Company. As detailed in the Main Brief (at 10, 13), the "core operations doctrine" supports Pizzie's and O'Gorman's scienter. *See e.g.*, *Rihn v. Acadia Pharms. Inc.*, 2016 WL 5076147, at *9 (S.D. Cal. Sept. 19, 2016); *Busic v. Orphazyme A/S*, 2022 WL 3299843, at *22 (N.D. Ill. Aug. 11, 2022);

---

[6] *Lanza* cites to *Mader v. Armel*, 461 F.2d 1123, 1126 (6th Cir. 1972), noting that a Section 20(a) claim cannot be found once a defendant at trial "had established his good faith defense." *Lanza*, 479 F.2d at 1300.

[7] *First Jersey* relied on *Lanza. First Jersey*, 101 F.3d at 1472. In *Lanza,* the Second Circuit compared Congress's choices about the federal securities laws to the states' choices among two different blue-sky statute models. 479 F.2d at 1308-09. Congress rejected a model that expressly required directors' participation in the fraud, preferring the model that requires only a showing of control before shifting the burden. *Id.*

*Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495, 526 (D. Md. 2022). In their high-level roles at Axsome, Pizzie (as CFO) and O'Gorman (Vice President of Clinical Development and Medical Affair, overseeing drug trials) knew, or should have known, about the progress and status AXS-07's FDA approval. Achieving FDA approval – particularly the Company's first drug approval – was essential to the Axsome's operations and financial position.

Moreover, both Pizzie and O'Gorman were in their same roles at Axsome during the NDA process of AXS-05, that also suffered from CMC issues. With this previous experience of the FDA rejecting an NDA, Pizzie and O'Gorman were on notice of potential CMC issues AXS-07 faced. ¶¶ 6, 112, 172. Thus, they knew – or were reckless in not knowing – that the AXS-07 NDA would not be approved on the timeline Defendants provided the public given the manufacturing problems and the need for stability studies.

### a)    O'Gorman's May 10, 2021 Statement

Further, O'Gorman knowingly misled, or at least was severely reckless, when he stated that Axsome was "very much on track to file the NDA [for AXS-07] this quarter" and that "[t]he team is working diligently to make sure that we have a timely, but also a quality filing." ¶128.[8] In his position, O'Gorman was responsible for overseeing the Company's drug trials and the FDA's NDA approval process. Indeed, the FDA's July 2021 inspection report identified O'Gorman's participation in the FDA's visit. ¶¶173-75, 177; Declaration of Michael Grunfeld (filed herewith) ("Grunfeld Decl."), Ex. 1. Additionally, as O'Gorman also oversaw the trials and NDA process for AXS-05, he was on heightened alert about what was needed for FDA approval. He was aware that there was a dearth of supply of AXS-07 needed to complete trials due to manufacturing issues, and that stability testing would be required. ¶¶ 69, 70, 109, 139. Moreover,

---

[8] Notably, O'Gorman does not contest this statement's falsity.

once he spoke, O'Gorman was required to speak fully to make his statements not misleading. *WorldCom*, 294 F. Supp. 2d at 428; *In re Credit Suisse First Bos. Corp. Sec. Litig.*, 1998 WL 734365, at *6 (S.D.N.Y. Oct. 20, 1998). Accordingly, the Complaint pleads that O'Gorman knew, or should have known, that his statements on the May 10, 2021 conference call were false.

### b) Defendants' Lack-of-Motive Arguments Fail as They Misleadingly Discuss their Axsome Class Period Transactions[9]

In an effort to discount Defendants' motive, Defendants deceptively describe Pizzie's, Tabuteau's, and Jacobson's (collectively, the "Transaction Defendants") Axsome securities transactions during the Class Period.[10] This argument fails, firstly, because where a complaint adequately alleges conscious misbehavior or recklessness, a court need not assess motive as well. *See City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 371 (S.D.N.Y. 2012) (holding "the law clearly allows a plaintiff to plead scienter and survive a motion to dismiss if it alleges strong circumstantial evidence of conscious misbehavior"); Main Brief at 7-15. In addition, Defendants' motive argument is wrong on its own terms both as a matter of law and because of their mischaracterization of their Class Period transactions in Axsome securities.

Defendants incorrectly argue that the Transaction Defendants, "significantly increased their Axsome holdings during the Class Period." (Pizzie/O'Gorman Brief at 4; Main MTD at 2, 7; McDonough Declaration, Ex. E (ECF No. 81-5).[11] The clear insinuation is that these defendant insiders bought a significant number of shares, and thus they did not have a motive to commit

---

[9] This section expands upon the Main Brief, at 15-16.

[10] In the Pizzie/O'Gorman Brief at 1 n.1, O'Gorman states that SEC rules did not require him to disclose his transactions in Axsome securities. Interestingly, O'Gorman does not state that he refrained from engaging in Axsome transactions during the Class Period. Thus, it is possible that he sold Axsome securities during this time period.

[11] Moreover, Defendants should not be allowed to go outside of the pleadings to advance what is a highly fact-intensive argument. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). The Court should not countenance this effort without converting this motion to one for summary judgment. *See id.* Nonetheless, Plaintiffs address Defendants' specious contentions in full, in the event the Court wishes to consider the issues they have raised.

fraud. But that is **not** what occurred. What really happened is that in late 2021 and early 2022, the directors who sat on the Compensation Committee (who knew nothing of the alleged fraud) granted these defendant insiders a materially greater number of *unvested and unexercised* options and restricted stock units ("RSUs") than they had in early 2021 to make up for the stock's rapid decline between 2021 and 2022.[12] Indeed, Defendants concede that their options were "unexercised" and the Form 4s that they include as exhibits show that their options and RSUs would not fully vest until 2026 and their RSUs would not be delivered to them until "seven (7) years from the [grant] date." (*See* McDonough Decl., Exs. E, G, H, I (ECF Nos. 81-5, 81-7, 81-8, 81-9)).

Going into late 2021 and early 2022, the insiders were sitting on 2021 grants that had substantially lost their value, and they would be naturally desirous of receiving a late 2021 and early 2022 "re-load." This was provided to them by the unsuspecting Compensation Committee: for example, Pizzie received 155,134 unvested options and RSUs during the Class Period, roughly 180% higher than the 55,294 he received in early 2021.[13]

---

[12] From March 2021 to November 2021, and then to March 2022, Axsome's stock price dropped from about $65 per share to roughly under $40 per share, and finally to under $30 per share. *See* Grunfeld Decl. Ex. 4 (stock price chart). The early 2021 options were exercisable at a high "strike" price, and were "out of the money" by late 2021. (Grunfeld Decl. Ex. 3 (2022 Proxy), at 33). Options and RSUs granted in each year would vest, if at all, *over a four year period*. *Id.* The unvested underlying shares were thus largely unavailable to the three insiders to buy, receive or trade in late 2021 and early 2022. The Transaction Defendants' holdings thus were not in any way materially "increased." But that is not all: Axsome's 2023 and 2022 Proxy Statements indicate that the insiders had *nothing at all* to do with how many unvested options or RSUs they were granted in late 2021 early 2022. *See* Grunfeld Decl. Ex. 2 (2023 Proxy), at 23 (incentive awards were made with assistance of independent compensation consultant); 24 (no insiders served on the Compensation Committee); 32 (the CEO recommended compensation awards for others, but not for himself); *see also*, Grunfeld Decl. Ex. 2 (2022 Proxy), at 18-19, 27 (same). The suggestion that the insiders' desire for the Compensation Committee *to grant them large awards during the Class Period* to make up for the precipitous 2021-2022 share price decline is somehow exculpatory, is nonsensical.

[13] *See also* Main Brief at 16 n.12 (discussing Tabuteau and Jacobson's awards). In sum, in 2022, these three key insiders were granted substantial unvested compensation to augment or replace 2021 awards that had been eviscerated in value. Pizzie's new "replacement" awards in 2021 were worth $1.07 million and in 2022 they were worth $2.6 million. (Grunfeld Decl., Ex. 3 (2022 Proxy) at 33; Ex. 2 (2023 Proxy) at 35).

Defendants also err as a matter of law in asserting that the involuntary receipt of unvested options or RSUs should be viewed as an "increase" in shareholdings in the same way that buying shares in the open market would be deemed an increase in shareholdings. For purposes of analyzing whether an insider has increased or decreased his shares during a Class Period, "unvested" and untradeable incentive awards are deemed *irrelevant* by the majority of courts. *See e.g.*, *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 763 (S.D.N.Y. 2018) (holding "the Court will include among defendants' total shareholdings both [tradeable] zero-cost shares of common stock and vested options, but not unvested options," as what matters when measuring insider holdings is how many shares "he or she *could have* sold") (emphasis in original); *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 291 (S.D.N.Y. 2006) (counting vested, but not unvested, options); *In re EVCI Colleges Holding Corp. Secs. Litig.*, 469 F. Supp. 2d 88, 100 (S.D.N.Y. 2006) (finding "vested but unexercised options are not shareholdings"); *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 140 (S.D.N.Y. 1999) (finding vested options are not shares and should not be considered in volume of shareholdings); *Ronconi v. Larkin*, 253 F.3d 423, 435 n.25 (9th Cir. 2001) ("Stock options should be considered in calculating the percentage of shares sold unless the insider could not have exercised them.").

While the key insiders cannot be exonerated by the involuntary receipt of unvested incentive compensation, their desire to receive extraordinary and unusual compensation (as they did here via the "re-load" awards) can create an inference of motive and scienter. To be sure, the common goal of corporate executives to receive higher compensation does not create an inference of scienter "without more." *Acito v. IMCERA Grp.*, 47 F.3d 47, 54 (2d Cir. 1995). But "more" has been found in this Circuit where concealing a fraud permitted substantial increases. *See e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003) (CEO's $3 million

12

bonus for boosting earnings statement supported scienter where the earnings statement was the subject of multiple alleged misstatements); *In re Comput. Assocs. Class Action Sec. Litig.*, 75 F. Supp. 2d 68, 74 (E.D.N.Y. 1999) (desire to receive large stock grants adequately stated motive); *In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398, 417-18 (S.D.N.Y. 1998) (finding adequate pleading of scienter where plaintiffs submitted evidence that defendants received substantial bonuses based upon reported profits); *In re Wellcare Mgmt. Grp. Sec. Litig.*, 964 F. Supp. 632, 639 (N.D.N.Y. 1997) (upholding complaint where insiders received increased bonuses and had an opportunity to commit fraud, and noting "the Court will not disregard, as irrelevant, allegations that incentive compensation was affected by the alleged fraudulent conduct").[14] That is the case here because the Compensation Committee would not have granted substantial stock awards to Defendants had they known the truth about the manufacturing problems that persisted with AXS-07 during the Class Period, and their concealment of this issue.

Further, Pizzie purchasing Axsome shares on the open market during the Class Period does not cut against his scienter. Prior to the Class Period, Pizzie held 204,529 shares of Axsome common stock. McDonough Decl., Ex. E (ECF No. 81-5) at 2. Although he ended the Class Period with 303,225 shares, only 955 were bought on the open market. *Id*. Thus, for the shares he acquired during the Class Period, under 1% were publicly purchased. This drop in the bucket does not afford

---

[14] *See also*, *Nguyen v. New Link Genetics Corp.,* 297 F. Supp. 3d 472, 498 (S.D.N.Y. 2018) (although complaint was dismissed for lack of loss causation, scienter was adequately pled where the allegations regarding defendants' "specific motives to obtain outsized bonuses may certainly be considered as part of the calculus in assessing whether there is a strong inference of scienter"). Courts outside this Circuit have reached similar results. *See e.g.*, *No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003) (noting that because "[n]one of the [defendant company's] executive officers received options awards in 1997 . . . [but defendant company] awarded [thousands of options to executive officers] in March 1998 [for performance allegedly increased by misrepresentations] . . . a strong inference of scienter can be inferred"); *In re Digi Int'l Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1098 (D. Minn. 1998) ("In the circumstances presented here, in which the individual defendants' performance-based compensation could be enhanced significantly by inflated financial results caused by particularized material omissions of fact and misleading accounting practices, such compensation constitutes evidence of conscious misbehavior.").

him the obverse inference Defendants suggest that he lacked any motive. Compared to his prior holdings, this purchase supports the opposite inference: Pizzie bought only this relatively small number of shares because of his ongoing fraud, as well as to try to obscure his motive.

In sum, Plaintiffs have not speculated as to motive in their Complaint and are not required to do so. *See Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 97 (2d Cir. 2016) (holding fraud revealed after two months was "hardly implausible"); *City of Pontiac Gen. Emps.' Ret. Sys.*, 875 F. Supp. 2d at 371 (holding "[t]hat plaintiff has not pled motive does not make the fraud illogical" and "[t]he Court will not speculate at this preliminary stage, nor should it," as to motive); *Orphazyme A/S*, 2022 WL 3299843, at \*24 (defendants "could still have hoped to benefit" if a "resubmitted NDA were ultimately approved").[15] It should suffice to say at this juncture that motive is not a prerequisite to liability and, even so, may yet be found in discovery. Defendants' attempt to go outside the pleadings to exonerate themselves falls far short of the mark because it mischaracterizes both the applicable law and the true circumstances of the stock awards here. At the very least, Defendants' stock "increase" argument should be wholly disregarded.

## C.    Pizzie and O'Gorman had Control

Plaintiffs have shown that Pizzie and O'Gorman had control over Axsome – a primary violator. Pizzie and O'Gorman narrowly construe control liability, wrongly asserting they must have control over an individual. Control is satisfied when defendants are executives, involved in the Company's day-to-day operations, and participated in earnings calls and SEC filings. *Rosi v.*

---

[15] The cases that Defendants cite did not dismiss on the basis of motive alone, but rather, merely addressed an absence of insider sales where, unlike here, the complaint did not independently plead a strong inference of conscious misbehavior or recklessness. (*See, e.g.*, Pizzie/O'Gorman Brief at 4 (citing *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 n.7 (S.D.N.Y. 2004) (addressing "Plaintiffs' allegations of insider trading"); *Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 459-60 (S.D.N.Y. 2019) (addressing plaintiffs' allegations that stock sales were a motive to commit fraud); *Aratana Therapeutics*, 315 F. Supp. 3d at 762-763 (addressing plaintiffs' allegations that corporate insiders "profited from suspiciously timed" transactions)).

14

*Aclaris Theraps., Inc.*, 2021 WL 1177505, at *27 (S.D.N.Y. Mar. 29, 2021). Pizzie, as CFO, and O'Gorman as Vice President of Clinical Development and Medical Affairs, overseeing the Company's FDA approval process of AXS-05 and AXS-07, did each of these things.

### 1.    Pizzie, as Axsome's CFO, is a Control Person

Pizzie had control over, and is responsible for, overseeing Axsome's finances. In his capacity as CFO, Pizzie signed the 1Q2021 10-Q, 2Q2021 10-Q, 3Q2021 10-Q, and the 2021 10-K, as well SOX certifications. ¶¶ 130, 136, 145, 152. A defendant signing SEC filings supports control liability. *See e.g.*, *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 276 (S.D.N.Y. 2008); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 491 (S.D.N.Y. 2004) (denying motion to dismiss, holding senior officers who sign and certify financials are duty-bound to be familiar with core operations and financial reports).[16] At a pharmaceutical company in the process of developing drug candidates for FDA approval, Pizzie's role includes ensuring that Axsome is funding its drug candidates in a way that properly allocates the Company's funds. Pizzie, therefore, is in charge of knowing what it costs Axsome to develop its new products, including the costs associated with obstacles and delays. Here, the NDA for AXS-07 was delayed several times and Axsome was entirely unable to manufacture AXS-07 while its NDA was under submission. It is illogical to conceive that Pizzie was not in control of Axsome's finances as its drug candidates were striving to receive FDA approval. Thus, it is clear that Pizzie was a control person over Axsome as to its development of AXS-07.

---

[16] Defendants' cases are unavailing. Although they cite to *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 264 (S.D.N.Y. 2020) to support their scienter arguments, the section Defendants rely upon is about control. There, the court found that a large entity shareholder did not have control because the entity's CEO signed SEC filings in her capacity as a company director, not a shareholder.

### 2.    O'Gorman is a Control Person of Axsome

When O'Gorman spoke on May 10, 2021, he spoke on behalf of Axsome, a primary violator. *Aclaris Theraps.*, 2021 WL 1177505, at \*27 (holding, based on "a high-level management position and [having] the power to control the actionable statements; he was their maker"); *In re Emex Corp. Sec. Litig.*, 2002 WL 31093612, at \*10 (S.D.N.Y. Sept. 18, 2002) (control pled when defendants were high-level executives and directly managed the company, including drafting and disseminating public statements).

On company earnings calls, it is expected that the CEO and CFO participate in both prepared remarks and in the question-and-answer portion. It is uncommon, however, for a company to have a Vice President not only attend, but ***participate on***, earnings calls. O'Gorman responded to an analyst's questions regarding the progress of the Company's submission of the AXS-05 and AXS-07 NDAs and drug trials. ¶ 128. O'Gorman responding, rather than a C-suite executive, demonstrates several keys points: he is highly knowledgeable and involved in Axsome's NDA submission process and drug trials, including for AXS-07; and given this expertise, he is qualified to speak on Axsome's behalf to the public. Furthermore, O'Gorman participated in the FDA inspection discussed in the report described in the Complaint. The report described O'Gorman as the Senior Vice President of Medical Affairs and he told the inspector that his "responsibilities include overseeing and providing medical monitoring services, safety meetings, and evaluation of adverse events and adverse events reports." ¶¶ 175, 177; Grunfeld Decl., Ex. 1. Thus, control is sufficiently pled as to O'Gorman.

### 3.    Defendants had a Duty to Correct Each Other

Due to their roles at the Company, Pizzie and O'Gorman had a duty to correct others who publicly made false statements. *Kelleher v. ADVO, INC.*, 2008 WL 11376597, at \*2 (D. Conn. Apr. 28, 2008) (holding defendants were liable for failing to correct prior false statements). Pizzie

16

failed this duty when O'Gorman spoke on the May 10, 2021 earnings call. And both Pizzie and

O'Gorman failed this duty by acquiescing to public statements Tabuteau, Jacobson, and Laliberte

made during the Class Period. Once the other Defendants spoke, both Pizzie and O'Gorman should

have corrected them.

## III.    CONCLUSION

For all of these reasons, the Court should deny Defendants Pizzie's and O'Gorman's

Motion in its entirety. In the alternative, Plaintiffs respectfully request leave to amend, which the

Court should grant because it has not yet had occasion to rule on the core of Plaintiffs' claims. *See*

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177-78 (2d Cir. 2015).


Dated:  April 11, 2024                                  Respectfully submitted,

                                                        **POMERANTZ LLP**

                                                        */s/ Michael Grunfeld*_____
                                                        Jeremy A. Lieberman
                                                        Michael Grunfeld
                                                        600 Third Avenue, 20th Floor
                                                        New York, New York 10016
                                                        Telephone: (212) 661-1100
                                                        Facsimile: (212) 661-8665
                                                        jalieberman@pomlaw.com
                                                        mgrunfeld@pomlaw.com

                                                        **THE ROSEN LAW FIRM, P.A.**
                                                        Laurence M. Rosen
                                                        Phillip Kim
                                                        Jacob Goldberg
                                                        Erica L. Stone
                                                        275 Madison Avenue, 40th Floor
                                                        New York, New York 10016
                                                        Telephone: (212) 686-1060
                                                        Facsimile: (212) 202-3827
                                                        lrosen@rosenlegal.com
                                                        philkim@rosenlegal.com
                                                        jgoldberg@rosenlegal.com
                                                        estone@rosenlegal.com

*Co-Lead Counsel for Lead Plaintiffs Thomas Giblin, Paul Berger, and Paul Sutherland*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Thomas Giblin*

**PASKOWITZ LAW FIRM P.C.**
Laurence D. Paskowitz (LP-7324)
97-45 Queens Boulevard
Suite 1202
Rego Park, New York 11374
Telephone: (212) 685-0969
lpaskowitz@pasklaw.com

*Additional Counsel for Lead Plaintiff Paul Berger, for himself and as sole trustee of the Paul Berger Revocable Trust*

18