**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Axsome Therapeutics Securities Litigation | No. 1:22-CV-03925 (LGS) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**AXSOME THERAPEUTICS, INC., HERRIOT TABUTEAU,**
**MARK JACOBSON, AND KEVIN LALIBERTE'S**
**MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

**MORGAN, LEWIS & BOCKIUS LLP**

Michael L. Kichline (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
michael.kichline@morganlewis.com

Emily E. Renshaw
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
emily.renshaw@morganlewis.com

Matthew C. McDonough (*pro hac vice*)
Michael A. Hacker
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
matthew.mcdonough@morganlewis.com
michael.hacker@morganlewis.com

*Counsel for Defendants Axsome Therapeutics, Inc.,*
*Herriot Tabuteau, Mark Jacobson, Kevin Laliberte,*
*Nick Pizzie, and Cedric O'Gorman*

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................ 1

I.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B). .......................... 1

        A.      Plaintiffs Fail To Plead Scienter With The Requisite Particularity. ..................... 1

                1.      Plaintiffs Fail To Allege Adequately Any Motive To Defraud. ............... 1

                2.      Plaintiffs Fail To Plead Specific Facts
                        Constituting Strong Circumstantial Evidence Of Scienter. ...................... 4

        B.      Plaintiffs Fail To Identify Any Actionable Misrepresentation Or Omission......... 8

        C.      Plaintiffs Fail Adequately to Plead Loss Causation............................................. 10

II.     PLAINTIFFS' FAIL TO STATE A CLAIM UNDER SECTION 20(A). ...................... 10

CONCLUSION............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aramic LLC v. Revance Therapeutics, Inc.*,
  2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) .................................................................1, 2, 7, 8

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
  28 F.4th 343 (2d Cir. 2022) ...............................................................................................4, 6

*Ark. Tchr. Ret. Sys. v. Bankrate*,
  18 F. Supp. 3d 482 (S.D.N.Y. 2014)........................................................................................9

*Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*,
  811 F. Supp. 2d 853 (S.D.N.Y. 2011)......................................................................................7

*In re Computer Assocs. Class Action Sec. Litig.*,
  75 F. Supp. 2d 68 (E.D.N.Y. 1999) .........................................................................................3

*In re EDAP TMS S.A. Sec. Litig.*,
  2015 WL 5326166 (S.D.N.Y Sept. 14, 2015) (Schofield, J.) ....................................................1

*In re Emergent BioSolutions Inc. Sec. Litig.*,
  2023 WL 5671608 (D. Md. Sept. 1, 2023) ...............................................................................5

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013)......................................................................................8

*Gabelli Asset Fund v. Garrett Motion Inc.*,
  2024 WL 1653451 (2d Cir. Apr. 17, 2024) ..............................................................................2

*Gillis v. QRX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016).......................................................................................2

*In re iDreamSky Tech. Sec. Litig.*,
  236 F. Supp. 3d 824 (S.D.N.Y. 2017).......................................................................................9

*In re ITT Educ. Servs. Inc. Secs. Litig.*,
  34 F. Supp. 3d 298 (S.D.N.Y. 2014)........................................................................................7

*In re Kidder Peabody Sec. Litig.*,
  10 F. Supp. 2d 398 (S.D.N.Y. 1998)........................................................................................3

*In re Lottery.com, Inc. Sec. Litig.*,
  2024 WL 454298 (S.D.N.Y. Feb. 6, 2024).........................................................................4, 5, 6

*Lozada v. TaskUs, Inc.*,
  2024 WL 68571 (S.D.N.Y. Jan. 5, 2024) ................................................................5

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)............6

*Morales v. City of New York*,
  59 F. Supp. 3d 573 (S.D.N.Y. 2014)........................................................................3

*In re Mylan N.V. Sec. Litig.*,
  2023 WL 3539371 (W.D. Pa. May 18, 2023)............................................................5

*Odeh v. Immunomedics, Inc.*,
  2020 WL 4381924 (D.N.J. July 31, 2020)................................................................8

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
  89 F. Supp. 3d 602 (S.D.N.Y. 2015)........................................................................5

*Rihn v. Acadia Pharms. Inc.*,
  2016 WL 5076147 (S.D. Cal. Sep. 19, 2016) ..........................................................9

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009)........................................................................................4

*Singh v. Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019)........................................................................................7

*Sinnathurai v. Novavax, Inc.*,
  645 F. Supp. 3d 495 (D. Md. 2022) ..........................................................................6

*In re Smith Barney Transfer Agent Litig.*,
  884 F. Supp. 2d 152 (S.D.N.Y. 2012).....................................................................10

*United Indus. Workers Pension Plan v. Waste Mgmt., Inc.*,
  2024 WL 1312593 (S.D.N.Y. Mar. 27, 2024) ..........................................................7

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003) ......................................................................3

*In re Wellcare Mgmt. Grp., Inc. Sec. Litig.*,
  964 F. Supp. 632 (N.D.N.Y. 1997)........................................................................3, 6

*Woodley v. Wood*,
  2022 WL 103563 (S.D.N.Y. Jan. 11, 2022),
  *aff'd sub nom.*, 2022 WL 14997930 (2d Cir. 2022)..................................................6

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................................................1

This case, like too many others, is an attempt to manufacture a securities fraud claim against a life sciences company simply because its product faces a setback during the regulatory approval process.  As one federal court recently observed in dismissing a similar case:

> [W]ere plaintiffs' version of falsity the law, a pharmaceutical company could be sued for securities fraud each and every time it received a new drug application rejection from the FDA, as potential plaintiffs could merely parrot any deficiency identified by the FDA rejection letter and then claim the company concealed from the market that it failed to include this 'necessary' piece of information in its application.

*Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at *10 (N.D. Cal. Apr. 2, 2024). Because that is not the law, this Court should follow the many that reject such "fraud by hindsight" allegations, and dismiss this case with prejudice.[1]

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(b).

As an initial matter, Plaintiffs understate the pleading standard. *See* OB 6 (citing Rule 12(b)(6)). As this Court knows well, a "complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b)." *In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at *7 (S.D.N.Y Sept. 14, 2015) (Schofield, J.). "Distorted inferences and speculations"—all that Plaintiffs offer here—are insufficient. *Id.*

#### A. Plaintiffs Fail To Plead Scienter With The Requisite Particularity.

##### 1. Plaintiffs Fail To Allege Adequately Any Motive To Defraud.

Plaintiffs allege that for just over eleven months, Axsome was "*entirely unable* to manufacture AXS-07." OB (ECF#84) 1 (emphasis in original). Plaintiffs also allege that the NDA was bound to fail for the additional reason that Axsome would need to generate a year's worth of stability data on newly manufactured batches, which would inevitably extend beyond

---

[1] *See, e.g.*, *Aramic*, 2024 WL 1354503, at *10; Moving Brief (ECF#80) ("MB") 17, n.28 (collecting numerous recent, analogous cases that were dismissed).

the PDUFA date for the NDA. ¶¶109-10; OB 11.

Plaintiffs do not attempt to explain why, if Defendants were committing fraud, they would not sell a single share of their massive company stockholdings and, instead, suffer declines of *hundreds of millions of dollars* when the FDA inevitably rejected the NDA. *See* MB §I.A.1. Indeed, Plaintiffs concede that they cannot so much as speculate as to any Defendant's motive to commit such a brazen fraud. OB 15.[2] As the Second Circuit recently reiterated, plaintiffs fail to plead scienter where, as here, there are no motive allegations and defendants' alleged "deception would have, at most, provided 'a short respite from an inevitable day of reckoning' before the truth was discovered." *Gabelli Asset Fund v. Garrett Motion Inc.*, 2024 WL 1653451, at *3 (2d Cir. Apr. 17, 2024) (affirming dismissal for failure to plead scienter). Courts regularly "refuse to infer scienter…when confronted with [such] illogical allegations."[3]

Tellingly, Plaintiffs do not respond to this argument or any of the numerous cases on which Defendants rely. *See* MB at 7-9 (collecting cases). Instead, they assert that Defendants should not be given credit for having *increased* their stock holdings during the Class Period because those increases were due to awards that did not vest during the Class Period. *See* OB at 15-16; 20(a) OB at 10-14. This argument misses the mark.

First, even if the Court were to ignore that the reporting Individual Defendants greatly *increased* their holdings during the Class Period, Plaintiffs cite no case, and counsel is aware of none, supporting the nonsensical notion that scienter may be inferred based on defendants' *failure to increase* their stock holdings. Second, Plaintiffs do not (because they cannot) dispute that the reporting Individual Defendants *could have* sold shares or exercised options to sell

---

[2] *See also* 20(a) OB (ECF#85) 14 ("Plaintiffs have not speculated as to motive in their Complaint"). It appears that Plaintiffs have abandoned their vague, nonsensical "profit over patients" allegation. *See* MB at 8 (citing ¶¶89, 184).
[3] *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 601 (S.D.N.Y. 2016); MB 7-8. *See also Aramic*, 2024 WL 1354503, at *6, *15 (N.D. Cal. Apr. 2, 2024) (dismissing where complaint lacked allegations of motive to tout FDA approval where defendants allegedly "knew…the projected timeline for [FDA] approval was not possible").

shares. At the beginning of the Class Period, Dr. Tabuteau and Mr. Jacobson "beneficially owned" a combined over 8.7 million shares and options. Decl., Ex. F (ECF#81-6) at 28. Third, simple arithmetic demonstrates that the reporting Individual Defendants *did increase* their holdings significantly. While the thousands of shares the reporting Individual Defendants were granted during the Class Period had not yet vested, Dr. Tabuteau's and Mr. Jacobson's holdings increased respectively by 240,752 and 83,660 shares regardless. Decl., Ex. E (ECF#81-5) §§ I, II.[4] As disclosed in Axsome's Proxy Statements, these reported increases only account for "shares of common stock subject to options or warrants held by that person or entity that are *currently exercisable* or that *will become exercisable or releasable* within 60 days of the Record Date." *Id.*, Ex. F at 28. Accordingly, all of the cases Plaintiffs cite holding that increases from *vested* equity cut against an inference of scienter actually support dismissal. *See* 20(a) OB 12.

Although Plaintiffs concede that the SAC fails to allege motive (20(a) OB 14), they also improperly argue[5] that Defendants' receipt of equity compensation somehow "can create an inference of motive and scienter." 20(a) OB 12. As Plaintiffs' cases demonstrate, allegations concerning executive bonuses only support an inference of scienter where the bonuses are tied directly to the alleged misrepresentations, or, at the very least, to the company's stock price.[6] There are no such allegations here. Indeed, in trying to explain away Defendants' large stock increases, Plaintiffs argue that "the insiders had *nothing at all* to do with" how much they received in equity compensation. 20(a) OB at 11 n.12 (emphasis in original). Plaintiffs cannot

---

[4] Mr. Pizzie's holdings increased by 98,696 shares, which included his *open market purchase* of thousands of dollars of shares. *See id.* § III. Plaintiffs have no good response to this fact. *See* 20(a) Reply (ECF#88) at 5-6.

[5] *Morales v. City of New York*, 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) ("Plaintiff cannot amend her already amended complaint 'by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'").

[6] *See In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003) (bonus tied to misrepresentations relating to "boosting Vivendi's EBITDA by more than 30% in 2001"); *In re Computer Assocs. Class Action Sec. Litig.*, 75 F. Supp. 2d 68, 74 (E.D.N.Y. 1999) (stock grants tied to keeping stock price high during specific period); *In re Wellcare Mgmt. Grp., Inc. Sec. Litig.*, 964 F. Supp. 632, 639 (N.D.N.Y. 1997) ("increased bonus, as a result of fraudulently inflating profits"); *In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398, 418 (S.D.N.Y. 1998) (bonuses directly tied to allegedly inflated profits).

have it both ways. Lacking allegations tying executive compensation directly to alleged misrepresentations, equity compensation does not support any inference of scienter.[7]

### 2. Plaintiffs Fail To Plead Specific Facts Constituting Strong Circumstantial Evidence Of Scienter.

Where, as here, Plaintiffs fail to plead motive, "the circumstantial evidence of conscious misbehavior 'must be *correspondingly greater*' and show 'highly unreasonable' behavior or that which evinces 'an *extreme departure* from the standards of ordinary care.'" *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). Plaintiffs fail that standard.

*Plaintiffs' Confidential Witness Allegations Fail.* Defendants have established that neither CW1's nor CW3's allegations support any inference of scienter. MB 9-12. Among other things: the CWs are not alleged to have had any contact with any Individual Defendant; the CWs do not identify any specific information contradicting a challenged statement ever presented to any Individual Defendant; and neither of the CWs could plausibly allege that they knew the CRL's content because it was issued to Axsome months after the CWs left the Company. *See id.*

Plaintiffs rely heavily on CW1,[8] whose allegations fall woefully short of the PSLRA's standards, especially lacking motive allegations. *See* MB 10-12. CW1 offers *no specifics* about supposed "equipment problems," let alone any facts supporting the SAC's core allegation that Axsome "could not even manufacture the drug while its Application was under review." ¶9. Even if CW1's allegations supported that Axsome was unable to manufacture AXS-07 for a moment in time in August 2021, that would not support that Axsome was unable to manufacture the drug for the *entire Class Period*, and certainly not *before* August 2021, when some of the

---

[7] *See, e.g.*, *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) ("[I]t is not sufficient to allege goals that are 'possessed by virtually all corporate insiders,' such as…the desire to maintain a high stock price in order to increase executive compensation.") (collecting cases); *In re Lottery.com, Inc. Sec. Litig.*, 2024 WL 454298, at *31 (S.D.N.Y. Feb. 6, 2024) ("The existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter.").

[8] Plaintiffs' Opposition barely mentions CW3, merely regurgitating the self-defeating allegation of management "secrecy" without responding to Defendants' arguments. *See* MB 9-10; OB 10.

4

challenged statements occurred (*see* ¶¶128-33).[9]

As importantly, CW1 claims no direct knowledge of any communication with any Defendant, or even any indirect knowledge of any specific communication. MB 10-11. While CW1 points to ***someone else*** (Liu), CW1 does not allege that Liu told any Defendant of an inability to manufacture AXS-07, nor does s/he describe how s/he supposedly knew what Liu told anyone about anything. The CW1 allegations fail even Plaintiffs' own standard: that Plaintiffs allege "with sufficient particularity to support the probability that" CW1 "would possess the information." OB 8.[10] Plaintiffs also do not respond to Defendants' argument that it takes an illogical leap to assume that the lack of supply for a marketing study is somehow the same thing as being able to manufacture the drug at all, or insufficient supply to support the NDA. MB at 5-6, 11-12. They simply proclaim that it makes "common sense." OB at 9.[11]

---

[9] Plaintiffs claim the Court previously "accepted the premise that 'serious manufacturing problems' emerged by the second quarter of 2021." OB 1 (citing ECF#56 at 11). Not so. The Court granted Axsome's Motion to Dismiss based largely on now-dismissed Plaintiff Gru's sale of all of his shares by August 2021, which defeated loss causation as to an alleged April 2022 "corrective disclosure." *See* ECF#56 at 9. Gru attempted to sustain his claims by asserting that a November 2020 disclosure was "corrective." *See id.* at 11. But, as the Court concluded, ***at best***, CW1 alleged that manufacturing issues existed beginning in April 2021, providing an independent basis to dismiss Gru's claims based on statements made prior to November 2020, even if that disclosure had been "corrective." *Id.* at 12. Because it was irrelevant to Gru's claims (based on alleged November 2020 "corrective disclosure"), the Court did not reach whether the complaint alleged with particularity that Axsome was "*entirely unable* to manufacture AXS-07 during the Class Period," as Plaintiffs allege. OB 1 (emphasis in original). Plaintiffs concede that Axsome successfully completed three Phase 3 trials in support of its AXS-07 NDA. *See* MB at 11 n.19.

[10] Plaintiffs' cases are inapposite as, unlike CW1, they involved CWs in positions to know about the alleged underlying issues and also ***did*** involve direct contact between at least some CWs and the individual defendants. *See, e.g.*, *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 615 (S.D.N.Y. 2015) (CW alleged to have contact with defendant and, as regional director of sales was well-positioned to attest to the participation of the individual defendants in sales practices in that region); *In re Emergent BioSolutions Inc. Sec. Litig.*, 2023 WL 5671608, at *22 (D. Md. Sept. 1, 2023) (noting that "lack of direct contact between CWs and the defendants 'weakens the inference of scienter'" and that CW allegations were not sufficient to demonstrate scienter); *Lozada v. TaskUs, Inc.*, 2024 WL 68571, at *3 (S.D.N.Y. Jan. 5, 2024) (confidential witness provided monthly excel file to defendant containing information contrary to public statements); *In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371, at *5 (W.D. Pa. May 18, 2023) (***eight*** confidential witnesses, including multiple people working at relevant manufacturing facility, whose allegations were corroborated by various documents).

[11] Plaintiffs position is inconsistent. On the one hand, Plaintiffs argue that the FDA's inspection of the facility in connection with AXS-**05** somehow suggests that there were issues with AXS-**07**. OB 6, 14 n.9. On the other, Plaintiffs claim that the FDA's positive inspection of the AXS-05 facility does not cut against scienter because the "CMC issues" the two drugs experienced were "***different***." OB 14 n.9. But, Plaintiffs allege that the AXS-05 and -07 facilities were ***one and the same***. *See* MB 13 (¶143). If Axsome could not manufacture AXS-07 ***at the same facility*** for any "issue" similar to AXS-05, it is implausible the FDA would not have identified that the company was

Plaintiffs' attempt to distinguish Defendants' cases (OB 8 n.3) actually highlights CW1's failings. The very reasons that Plaintiffs claim the CWs in those cases had "far less specific knowledge" than CW1 actually apply, in spades, to CW1. CW1 was "not in a position to know" of manufacturing issues—s/he did not work at manufacturing facilities and had no manufacturing responsibilities. *See id.* CW1 likewise offers "vague allegations," was "'several levels removed from' [the] executive team," and offers an account "bereft of particulars." *See id.*

Lacking any specific allegations supporting any Defendant's scienter, Plaintiffs offer a litany of "must have known" theories (OB 8-15) hoping pure volume will push them over the line. Courts consistently reject such tactics.[12]

***Plaintiffs' "Status" Theory Fails.*** Plaintiffs rely heavily upon a June 2021 FDA inspection report in which the Individual Defendants identified themselves as knowledgeable about certain matters in connection with AXS-**05**, a different drug than the one at issue here. OB 9-10. Even assuming that Defendants' roles were similar for AXS-07 (an assumption Plaintiffs' allegations do not support), "it is not enough that defendants held senior positions and had access to inside information." *Woodley v. Wood*, 2022 WL 103563, at *7 (S.D.N.Y. Jan. 11, 2022), *aff'd sub nom.*, 2022 WL 14997930 (2d Cir. 2022); MB 12-14.[13]

---

"*entirely unable* to manufacture" (OB 1) the drugs during its inspection. *See* MB 13.

[12] *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 586 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ("Even when considered together," the "myriad of theories in support of the required cogent and compelling inference of scienter" were "insufficient to survive the instant motions to dismiss."); *In re Lottery.com, Inc. Sec. Litig.*, 2024 WL 454298, at *33 (rejecting four theories under which "Plaintiffs urge that Defendants simply *must have* known that their statements were false or misleading").

[13] Plaintiffs' cases, OB 8, are distinguishable. In *In re Delcath Sys., Inc. Sec. Litig.*, four confidential witnesses (including the defendant CEO's direct report) adequately alleged that the CEO made "all decisions" in connection with the development and submission of the company's NDA for its only product. 36 F. Supp. 3d 320, 334-35 (S.D.N.Y. 2014). Further, there, the FDA expressed "extreme negativity," including describing the company's drug as "life-threatening," which so directly contradicted defendants' statements, they supported a finding of recklessness. *Id.* at 326-27, 335-36. Here, in contrast, Plaintiffs allege only that the FDA identified "CMC issues" during its review, which, as Plaintiffs' concede, may cover areas unrelated to manufacturing. *See* MB 24; ¶88. In *Shanawaz v. Intellipharmaceutics Int'l Inc.*, the complaint "describe[ed] in detail the personal involvement of Defendants…in the development of the" NDA and pled motive, including "suspiciously timed" stock sales. 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018). In *Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495, 524-30 (D. Md. 2022),

*Plaintiffs' "Unresolved" Theory Fails.* Plaintiffs argue that Defendants must have been on notice of purported manufacturing issues because Axsome described "CMC issues" as "unresolved" in its April 25, 2022 disclosure. *See* OB 10-11. The Court need only draw "***reasonable*** inferences in the plaintiff's favor." *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019). It is not reasonable to assume from nothing more than Axsome's use of the word "unresolved" that "the FDA communicated this issue before March 1, 2022," much less a year earlier at the beginning of the Class Period. OB 11. Indeed, Plaintiffs concede that they cannot allege when the Company was so advised—not surprising given that CW1 was not in a position to know anything about the FDA's identification of CMC issues.[14]

*Plaintiffs' "Core Operations" Theory Fails.* Even if it were viable, the "core operations" theory is not "independently sufficient to raise a strong inference of scienter" because it "would eviscerate the cogent and compelling inference of scienter required by *Tellabs*."[15] MB 12-14. Instead, factual allegations establishing scienter with respect to the specific, allegedly fraudulent statements at issue are required. *Id.* There are no such specific allegations here.

*Post-Class-Period Statements Do Not Support Scienter.* Plaintiffs' "stability testing" allegations rely on speculation about *post-Class-Period* statements concerning *post-Class-Period* FDA interactions, which fail to establish that Defendants knew any information contradicting their Class Period statements when made, or that stability data available at the time of the NDA was insufficient. *See Aramic*, 2024 WL 1354503, at \*14 (hindsight allegations insufficient).[16]

---

plaintiff alleged defendants were required ***by law*** to know facts allegedly misrepresented, included allegations from ***seven*** confidential witnesses, and pled allegations of suspicious trading. There are no such allegations here.

[14] *In re ITT Educ. Servs. Inc. Secs. Litig.*, 34 F. Supp. 3d 298, 310 (S.D.N.Y. 2014) is inapposite. While the court need not identify the "precise moment" when a "culpable inference overtook the innocent one," plaintiff there sufficiently alleged a specific period during which defendants became aware that loan "defaults would be a problem"—when defendants' lender demanded payments on the parties' risk-sharing agreement. *Id.* at 309-10. The SAC contains no analogous, specific allegations.

[15] *Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 872-73 (S.D.N.Y. 2011).

[16] This case is a far cry from *United Indus. Workers Pension Plan v. Waste Mgmt., Inc.*, 2024 WL 1312593, at \*7

There are *zero* well-pled allegations that any Defendant knew or believed that the FDA was going to deny the NDA, much less that it was going to deny them for the reason that the Company could not make the drug, or for failure to submit adequate stability data. *See Aramic*, 2024 WL 1354503, at *14.

**Plaintiffs Continue Improperly to Employ Group Pleading.** As the Court previously ruled, Plaintiffs must plead the scienter of each Defendant. MB 16. Plaintiffs' only response is their *ipse dixit* that the SAC supposedly contains "many allegations related specifically to each of the Individual Defendants." OB 15 n.10. A review of the SAC belies that conclusion. MB 16.

### B.    Plaintiffs Fail To Identify Any Actionable Misrepresentation Or Omission.

Plaintiffs challenge sixteen statements. None is actionable. *See* MB 20-26 & Decl., Ex. L (ECF#81-12); *see Aramic*, 2024 WL 1354503, at *4-10 (statements concerning NDA prospects inactionable because not materially false or misleading, puffery, opinions, or forward-looking accompanied by meaningful cautionary language). Plaintiffs' response to numerous cases from this Circuit deeming such statements classically inactionable is that none of those defenses are available because Defendants knew that Axsome was "unable to manufacture" AXS-07 during the Class Period. *See* OB 18. But, by whatever label (e.g., "manufacturing statements" (OB 16) or "statements concerning the AXS-07 NDA" (OB 21)), all of Plaintiffs' theories as to why Defendants' statements were false rely on their underlying allegation that, "during the Class Period, Axsome was completely unable to manufacture any new batches of AXS-07" (OB 18). Plaintiffs fail to allege that "fact" with anything approaching particularity (*see supra* 4-5) and Plaintiffs' authorities are distinguishable.[17]

---

(S.D.N.Y. Mar. 27, 2024), where defendants spoke with their counterparty concerning the likelihood of negative DOJ action prior to making public statements.

[17] *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487 (S.D.N.Y. 2013) (warning of possible revenue cut when one had already occurred); *Odeh v. Immunomedics, Inc.*, 2020 WL 4381924 (D.N.J. July 31,

Tellingly, Plaintiffs continue to distort Defendants' statements in an ill-conceived effort to survive dismissal. For instance, Plaintiffs assert that "Defendants reassured investors about an FDA inspection of a manufacturing facility for AXS-07 shortly before the drug's PDUFA date." OB 17 (citing ¶150). That is a gross mischaracterization. Axsome merely disclosed a notification by the FDA that the FDA expected to timely complete its inspection that it had previously warned it may not be able to complete by the PDUFA date "*due to COVID-19 pandemic-related travel restrictions*." *See* Decl., Ex. L at 10 (¶150 in context).

Plaintiffs also mischaracterize Axsome's statements as having "den[ied] any concern over manufacturing issues with the AXS-07 [*sic*]." OB 20 (citing ¶¶142-43). But a review of Axsome's *actual* statements reveals that, again, Axsome was addressing the *FDA's* expressed concerns that it might not be able to complete its inspection by the PDUFA date, not "denying any concern over manufacturing issues." *See* Decl., Ex, L at 8 (¶¶142-43 in context).

Likewise, Plaintiffs claim that Axsome made "statements reassuring investors about 'the manufacturing process for AXS-07' in light of manufacturing problems that slowed FDA approval of AXS-05." OB 20 (citing ¶134). Not so. Mr. Jacobson simply responded to the question "Is AXS-07 manufactured in the same facility as AXS-05?" by describing that "the manufacturing process for AXS-07, that actually is a bit more complicated….there are 2 facilities that we utilize for the manufacture of the drug product…one of them is the same that we use for AXS-05." Decl., Ex. L at 5 (¶134 in context). Plaintiffs do not challenge what Mr. Jacobson *actually* said as false. Indeed, they *confirm its accuracy*. OB 14 ("Axsome used

---

2020) (warning of data breach actionable where breach had already occurred); *Rihn v. Acadia Pharms. Inc.*, 2016 WL 5076147 (S.D. Cal. Sep. 19, 2016) (NDA-related statements actionable where complaint detailed significant shortcomings in required processes that rendered stated submission timeline impossible); *In re iDreamSky Tech. Sec. Litig.*, 236 F. Supp. 3d 824 (S.D.N.Y. 2017) ("well-pleaded allegations of Defendants' knowledge of the delays" defeated opinion defense); *Ark. Tchr. Ret. Sys. v. Bankrate*, 18 F. Supp. 3d 482 (S.D.N.Y. 2014) (challenged statements described assets as "high quality" despite being written off as "worthless").

9

multiple facilities for different stages of manufacturing AXS-07").

> C.        **Plaintiffs Fail Adequately to Plead Loss Causation.**

Under either a "corrective disclosure" theory or "materialization of a concealed risk" theory, Plaintiffs fail to plead loss causation. MB 24-25. Regarding the former, Plaintiffs again attempt to amend their SAC through their brief. They now claim that their alleged loss was caused by the "corrective disclosure" that "Axsome could not obtain stability data since it was unable to manufacture new batches of AXS-07." OB 25 (citing ¶¶109-10). But Plaintiffs allege that that supposed "disclosure" was not made until September and November 2022 (¶¶109-10)— months *after* April 25, 2022 when Plaintiffs claim they suffered their losses (¶2). Regarding the latter, Plaintiffs fail with specificity to plead the underlying fact that Axsome was unable to manufacture AXS-07—the risk allegedly concealed. *See* MB 24-25.

## II.        <u>PLAINTIFFS' FAIL TO STATE A CLAIM UNDER SECTION 20(a).</u>

Beyond failing to plead a primary violation, Plaintiffs also fail to plead facts demonstrating actual control or culpable participation by Dr. Tabuteau, Mr. Jacobson, or Dr. Laliberte.[18] Rather, Plaintiffs conclusorily allege that the Individual Defendants were control persons "[b]ecause of their positions of control and authority as senior officers." ¶213. That is not enough. *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (dismissing §20(a) claims based on allegations of "high-level position[]," "awareness of [Defendants'] operations," and "intimate knowledge" of public statements); *see* 20(a) Reply at 8--10.

### CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice.

---

[18] As discussed in Pizzie and O'Gorman's Motion (ECF#83) and Reply (ECF#88), Plaintiffs must plead culpable participation (scienter) to survive a motion to dismiss their Section 20(a) claims. Plaintiffs' failure to plead Dr. Tabuteau's, Mr. Jacobson's, or Dr. Laliberte's scienter dooms Plaintiffs' Section 20(a) claims against them.

Dated: May 1, 2024                      Respectfully submitted,

                                        **MORGAN, LEWIS & BOCKIUS LLP**

                                        */s/ Michael L. Kichline*
                                        Michael L. Kichline (*pro hac vice*)
                                        1701 Market Street
                                        Philadelphia, PA 19103
                                        Tel: (215) 963-5000
                                        michael.kichline@morganlewis.com

                                        Emily E. Renshaw
                                        101 Park Avenue
                                        New York, NY 10178-0060
                                        Tel: (212) 309-6000
                                        emily.renshaw@morganlewis.com

                                        Matthew C. McDonough (*pro hac vice*)
                                        Michael A. Hacker
                                        One Federal Street
                                        Boston, MA 02110
                                        Tel: (617) 341-7700
                                        matthew.mcdonough@morganlewis.com

                                        *Counsel for Defendants Axsome Therapeutics, Inc.,*
                                        *Herriot Tabuteau, Mark Jacobson, Kevin Laliberte,*
                                        *Nick Pizzie, and Cedric O'Gorman*

11