**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re Axsome Therapeutics, Inc. Securities Litigation | No. 1:22-CV-03925 (LGS) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS NICK PIZZIE AND CEDRIC O'GORMAN'S MOTION**
**TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

**MORGAN, LEWIS & BOCKIUS LLP**

Michael L. Kichline (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
michael.kichline@morganlewis.com

Emily E. Renshaw
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
emily.renshaw@morganlewis.com

Matthew C. McDonough (*pro hac vice*)
Michael A. Hacker
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
matthew.mcdonough@morganlewis.com
michael.hacker@morganlewis.com

*Counsel for Defendants Axsome Therapeutics, Inc.,*
*Herriot Tabuteau, Nick Pizzie, Mark Jacobson,*
*Cedric O'Gorman, and Kevin Laliberte*

## TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................................ 1

I.    PLAINTIFFS FAIL ADEQUATELY TO PLEAD A PRIMARY SECURITIES
      FRAUD VIOLATION. ................................................................................................. 1

II.   PLAINTIFFS FAIL ADEQUATELY TO PLEAD CULPABLE
      PARTICIPATION. ...................................................................................................... 1

      A.    Plaintiffs Must Plead Culpable Participation to Survive Dismissal...................... 1

      B.    Plaintiffs Fail to Plead With Particularity the Culpable Participation of
            Either Mr. Pizzie or Dr. O'Gorman. .................................................................... 4

III.  PLAINTIFFS FAIL ADEQUATELY TO PLEAD ACTUAL CONTROL. ..................... 8

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aceto Corp. Sec. Litig.*,
2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)..............................................................................7

*Aramic LLC v. Revance Therapeutics, Inc.*,
2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) ..........................................................................10

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018).......................................................................................6

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ......................................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)................................................................................................ *passim*

*Bachow v. Swank Energy Income Advisers, LP*,
2010 WL 70520 (N.D. Tex. Jan. 6, 2010) .................................................................................9

*Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*,
811 F. Supp. 2d 853 (S.D.N.Y. 2011)........................................................................................7

*Boguslavsky v. Kaplan*,
159 F.3d 715 (2d Cir. 1998).......................................................................................................2

*In re Bristol Myers Squibb Co. Sec. Litig.*,
586 F. Supp. 2d 148 (S.D.N.Y. 2008)........................................................................................8

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)........................................................................................6

*Busic v. Orphazyme A/S*,
2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) ...........................................................................7

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)........................................................................................3

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)....................................................................................................2, 3

*In re Citigroup Inc. Sec. Litig.*,
753 F. Supp. 2d 206 (S.D.N.Y. 2010)........................................................................................4

*In re Emex Corp. Sec. Litig.*,
  2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002)...........................................................................9

*In re Global Crossing, Lts. Sec. Litig.*,
  2005 WL 1881514 (S.D.N.Y. Aug. 8, 2005)................................................................................4

*In re iAnthus Cap. Holdings, Inc. Sec. Litig.*,
  2022 WL 19037215 (S.D.N.Y. Dec. 7, 2022) .............................................................................2

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
  445 F. App'x 368 (2d Cir. 2011) ...............................................................................................7

*Kelleher v. ADVO, INC.*,
  2008 WL 11376597 (D. Conn. Apr. 28, 2008).........................................................................10

*Lapin v. Goldman Sachs Grp., Inc.*,
  506 F. Supp. 2d 221 (S.D.N.Y. 2006)........................................................................................3

*In re Livent, Inc. Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)........................................................................................9

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
  982 F. Supp. 2d 277 (S.D.N.Y. 2013)........................................................................................4

*Morales v. City of New York*,
  59 F. Supp. 3d 573 (S.D.N.Y. 2014)..........................................................................................6

*In Re: Nine W. LBO Sec. Litig.*,
  87 F.4th 130 (2d Cir. 2023) .......................................................................................................4

*In re Parmalat Sec. Litig.*,
  375 F. Supp. 2d 278 (S.D.N.Y. 2005)........................................................................................2

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006)........................................................................................2

*Plumbers' & Pipefitters' Loc. No. 562 Supplemental Plan & Tr. v.
  J.P. Morgan Acceptance Corp. I*,
  2012 WL 601448 (E.D.N.Y. Feb. 23, 2012)..............................................................................2

*Rihn v. Acadia Pharms. Inc.*,
  2016 WL 5076147 (S.D. Cal. Sept. 19, 2016)...........................................................................7

*Rose v. Rahfco Mgmt. Grp., LLC*,
  2014 WL 7389900 (S.D.N.Y. Dec. 15, 2014) ...........................................................................9

*Rosi v. Aclaris Therapeutics, Inc.*,
  2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021) ........................................................................8, 9

*Ross v. Lloyds Banking Grp., PLC*,
    546 F. App'x 5 (2d Cir. 2013) ...............................................................................2

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001)....................................................................................2

*Schwab v. E\*TRADE Fin. Corp.*,
    752 F. App'x 56 (2d Cir. 2018) .............................................................................2

*In re ShengdaTech, Inc. Sec. Litig.*,
    2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ........................................................3

*Sinnathurai v. Novavax, Inc.*,
    645 F. Supp. 3d 495 (D. Md. 2022) .......................................................................7

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012).....................................................................9

*Solow v. Citigroup, Inc.*,
    507 F. App'x 81 (2d Cir. 2013) .............................................................................2

*Strougo v. Barclays PLC*,
    334 F. Supp. 3d 591 (S.D.N.Y. 2018).....................................................................4

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001).....................................................................................2

*Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*,
    812 F. Supp. 2d 357 (S.D.N.Y. 2011).....................................................................6

*In re Tronox, Inc. Sec. Litig.*,
    2010 WL 2835545 (S.D.N.Y. June 28, 2010) .........................................................2

*Tung v. Bristol-Myers Squibb Co.*,
    412 F. Supp. 3d 453 (S.D.N.Y. 2019).....................................................................6

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
    504 F. Supp. 3d 224 (S.D.N.Y. 2020).....................................................................3

*Woodley v. Wood*,
    2022 WL 103563 (S.D.N.Y. Jan. 11, 2022),
    *aff'd*, 2022 WL 14997930 (2d Cir. 2022) ..............................................................8

*In re WorldCom, Inc. Sec. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003)......................................................................2

**Statutes & Authorities**

15 U.S.C. § 78t(a) ...............................................................................................................8

-v-

Fed R. Civ. P 8(a) ...............................................................................................................4

Instead of demonstrating how the SAC supposedly pleads Mr. Pizzie's or Dr. O'Gorman's culpable participation (i.e., scienter) in any other Defendant's alleged fraud, Plaintiffs spend most of their Opposition arguing that they do not need to plead culpable participation. That is incorrect under controlling Second Circuit law and persuasive decisions of the majority of courts in this District. The remainder of Plaintiffs' Opposition is rife with incorrect statements of law and improper efforts to amend the SAC through their brief. The Court should dismiss the Section 20(a) claims with prejudice because Plaintiffs have failed to plead: (i) a primary violation of Section 10(b); (ii) culpable participation by either Mr. Pizzie or Dr. O'Gorman; and (iii) actual control by either Mr. Pizzie or Dr. O'Gorman of any statement that Plaintiffs challenge as false or misleading.

## ARGUMENT

### I. PLAINTIFFS FAIL ADEQUATELY TO PLEAD A PRIMARY SECURITIES FRAUD VIOLATION.

Plaintiffs agree that, if they fail to plead a primary violation of Section 10(b) by any Defendant (as they do), their Section 20(a) claims necessarily fail. Mem. (ECF No. 83) at 3; Opp. (ECF No. 85) at 3-4. The Court may dismiss the Section 20(a) claims without further inquiry.

### II. PLAINTIFFS FAIL ADEQUATELY TO PLEAD CULPABLE PARTICIPATION.

#### A. Plaintiffs Must Plead Culpable Participation to Survive Dismissal.

Plaintiffs assert that they "are not required to plead culpable participation" (Opp. at 3) because, they claim, "the Second Circuit has never ruled on a pleading standard for a Section 20(a) claim" (*id.* at 2). They suggest that there is "confusion as to whether culpability is an element of a 20(a) claim" (*id.* at 7) and that some old Second Circuit cases "do[] not impose a culpable participation pleading requirement" (*id.* at 8). These assertions are demonstrably false.

The Second Circuit has ***repeatedly*** held that culpable participation is an element of a plaintiff's *prima facie* case under Section 20(a). *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

1

F.3d 87, 108 (2d Cir. 2007) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).[1]  Accordingly, the Second Circuit also has held that a plaintiff must **plead** culpable participation "**[t]o state a claim** of control person liability under § 20(a)." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (citing *ATSI*, 493 F.3d at 108) (affirming in part grant of motion to dismiss Section 20(a) claims).[2]

Lacking any response to the controlling Second Circuit authority, Plaintiffs simply ignore it, inaccurately portraying the issue as one of "conflicting precedent among the district courts." Opp. at 2.  Plaintiffs rely on outlier district court cases—one recent cursory decision and a handful of decisions predating the Second Circuit's 2014 *Carpenters Pension* decision.  *See* Opp. at 4-6.[3] In particular, Plaintiffs rely heavily on the two-decades-old *In re IPO Securities Litigation* decision, in which Judge Scheindlin opined that, while the "Second Circuit ha[d] held that in order to **prove** a Section 20(a) claim, 'a plaintiff must show…that the controlling person was in some meaningful sense a culpable participant in the primary violation,'" it had not, at that time, stated that a plaintiff must **plead** culpable participation to avoid a motion to dismiss.  241 F. Supp. 2d 281, 393 (S.D.N.Y. 2003) (emphasis in original).  Plaintiffs likewise assert that "two Second Circuit cases on this issue" only identify the elements a plaintiff must prove "at **summary judgment or trial**."  Opp. at 8 (emphasis in original).  Like proverbial ostriches with their heads in

---

[1] *See also, e.g.*, *Schwab v. E\*TRADE Fin. Corp.*, 752 F. App'x 56, 58 (2d Cir. 2018); *Ross v. Lloyds Banking Grp., PLC*, 546 F. App'x 5, 12 (2d Cir. 2013); *Solow v. Citigroup, Inc.*, 507 F. App'x 81, 83 (2d Cir. 2013); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

[2] *See also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77-78 (2d Cir. 2001) ("A plaintiff may **allege** a primary § 10(b) violation by a person controlled by the defendant, and culpable participation by the defendant in the perpetration of the fraud."); *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001) (same).

[3] Citing *In re Health Mgmt., Inc. Sec. Litig.*, 970 F. Supp. 192, 206 (E.D.N.Y. 1997); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 414 (S.D.N.Y. 2003); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 310 (S.D.N.Y. 2005); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006); *In re Tronox, Inc. Sec. Litig.*, 2010 WL 2835545, at \*15 (S.D.N.Y. June 28, 2010); *Plumbers' & Pipefitters' Loc. No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp. I*, 2012 WL 601448, at \*20 (E.D.N.Y. Feb. 23, 2012); and *In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, 2022 WL 19037215, at \*1 (S.D.N.Y. Dec. 7, 2022) (cursory decision relying on *Parmalat*).

the sand, Plaintiffs ignore the many more recent Second Circuit decisions stating that culpable participation is part of the plaintiff's *prima facie* case and, critically, *Carpenters Pension*, which expressly states that plaintiffs must plead culpable participation "[t]o state a claim."  750 F.3d at 236.

Moreover, this Court analyzed, and rejected, Plaintiffs' argument in *In re ShengdaTech, Inc. Sec. Litig.*, 2014 WL 3928606, at *10-11 & n.1 (S.D.N.Y. Aug. 12, 2014).  There, this Court "agree[d] with those courts holding that a ***plaintiff must sufficiently plead culpable participation*** as a separate scienter element of control person liability under § 20(a) in order to survive a motion to dismiss."  *Id.* at 10 n.1 (emphasis added).  As this Court noted, "***most*** courts in this district have come to recite—routinely and without controversy—the control person liability standard as one requiring all three elements, including culpable participation as scienter, to be affirmatively pleaded."  *Id.* (collecting cases).[4]  Like this Court, many district courts have considered the argument, reviewed the cases Plaintiffs cite, and rejected their argument.  *See, e.g.*, *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 256 (S.D.N.Y. 2018); *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 247-48 & n.9 (S.D.N.Y. 2006).[5]

Further ignoring controlling Second Circuit law, Plaintiffs claim that "culpable participation is an affirmative defense" (Opp. at 4), relying on two recent Second Circuit decisions interpreting an affirmative defense provision of the Bankruptcy Code that Plaintiffs deem "analogous" (Opp. at 4-7).  Plaintiffs are wrong twice over.  First, as noted, the Second Circuit has repeatedly stated that culpable participation is part of ***plaintiff's prima facie case*** under Section

---

[4] *See also In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 264 (S.D.N.Y. 2020) (recognizing that majority of district courts require Section 20(a) plaintiffs to plead culpable participation to avoid dismissal).

[5] *See also* Opp. at 16 (citing *In re Emex Corp. Sec. Litig.*, 2002 WL 31093612, at *10 (S.D.N.Y. Sept. 18, 2002) ("Because of the absence of particularized facts alleging culpable participation, the Section 20(a) claim against [defendants] is dismissed.")).

3

20(a). *See ATSI*, 493 F.3d at 108; *Carpenters Pension*, 750 F.3d at 236. As such, it is not an affirmative defense.[6] Second, the Bankruptcy Code cases stand for the unremarkable conclusion that "Plaintiffs are under no obligation to plead facts supporting or negating an affirmative defense in the complaint." *In Re: Nine W. LBO Sec. Litig.*, 87 F.4th 130, 144 (2d Cir. 2023). This principle is inapposite here, where culpable participation is not an affirmative defense. *See ATSI,* 493 F.3d at 108.

Finally, Plaintiffs are wrong that "Rule 8(a) notice pleading applies to a Section 20(a) claim." Opp. at 4. While Plaintiffs need only to plead control with plausibility, the PSLRA applies to the culpable participation element, requiring Plaintiffs to "plead ***particularized facts*** that give rise to a strong inference of [the alleged control person's] culpable participation in the alleged fraud." *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 249 (S.D.N.Y. 2010) (emphasis added); *see also In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 307 (S.D.N.Y. 2013) ("[T]he heightened pleading standards of the PSLRA apply with respect to the [culpable participation] prong of a Section 20(a) claim); *In re Global Crossing, Lts. Sec. Litig.*, 2005 WL 1881514, at *12 (S.D.N.Y. Aug. 8, 2005) (same).[7] Plaintiffs appear to concede the point later in their Opposition. *See* Opp. at 8 ("requisite particularity").

> **B.      Plaintiffs Fail to Plead With Particularity the Culpable Participation of Either Mr. Pizzie or Dr. O'Gorman.**

A Section 20(a) plaintiff must "alleg[e] scienter on the part of a controlling person to the

---

[6] 27 Fed. Proc., L. Ed. § 62:85 ("An affirmative defense rests on matters ***outside the scope of the plaintiff's prima facie case***…An essential element of the plaintiff's case, on which the plaintiff bears the burden of proof, is ***not an affirmative defense***").

[7] The two Judge Scheindlin opinions Plaintiffs cite (Opp. at 4 (citing *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 56 F. Supp. 3d 549, 560 (S.D.N.Y. 2014) and *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 190 (S.D.N.Y. 2006))) do not provide that culpable participation need not be pled with particularity. As noted *supra* at 2, Judge Scheindlin opined that plaintiffs bringing Section 20(a) claims need not plead culpable participation at all. That opinion is inconsistent with controlling law, and the cases requiring culpable participation to be pled universally require it be pled with particularity.

extent that it would satisfy § 10(b) and Rule 10b–5." *Strougo v. Barclays PLC*, 334 F. Supp. 3d 591, 596 (S.D.N.Y. 2018). Accordingly, Plaintiffs must allege specific facts: "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99.

Plaintiffs concede that they have not pled motive of Mr. Pizzie or Dr. O'Gorman. *See* Opp. at 14 ("Plaintiffs have not speculated as to motive in their Complaint"); *see* Mem. at 4-5. Instead, Plaintiffs quibble that, though Mr. Pizzie received admittedly "substantial" equity compensation awards during the Class Period (Opp. at 10-11 & n.13), that fact should not be considered in assessing the adequacy of Plaintiffs' scienter allegations. *See* Opp. at 10. Plaintiffs' gripe, apparently, is that the equity compensation Mr. Pizzie received during the Class Period did not vest or, for options, was not exercisable during the Class Period. *See* Opp. at 10-11. This is a red herring. First, Plaintiffs concede they have no motive allegations. Second, counsel is aware of no case, and Plaintiffs cite none, holding that scienter may be inferred based on defendants' failure to *increase* their common stock holdings. Third, Plaintiffs do not allege that Mr. Pizzie was *unable* to sell any shares or exercise any options during the Class Period; Plaintiffs simply do not allege (because they cannot allege) that he did. *See* Decl., Ex. F (ECF No. 81-6) (Mr. Pizzie started the Class Period with 204,529 beneficially owned shares, and sold none). Finally, even if Mr. Pizzie's equity compensation is disregarded, Mr. Pizzie *purchased* almost $35,000 worth of Axsome shares *on the open market* during the Class Period. Decl., Ex. I (ECF No. 81-9) at 2. Plaintiffs' only response is the utter conjecture (based on no allegation appearing in the SAC) that "Pizzie bought only this relatively small number of shares because of his ongoing fraud, as well as to try to obscure his motive." Opp. at 14. This makes no sense. Why would Mr. Pizzie spend $35,000 to purchase shares that he knew, "because of his ongoing fraud," were actually worth far less than that? And

5

there is **not a single** allegation in the SAC that Mr. Pizzie purchased shares to "obscure his motive." Plaintiffs cannot amend the SAC through briefing to make this utterly speculative allegation.[8]

Even excluding many thousands of shares and options Mr. Pizzie acquired as compensation during the Class Period, the facts are that Mr. Pizzie sold not a single share of stock and purchased thousands of dollars of shares on the open market—facts "**wholly inconsistent** with fraudulent intent." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (emphasis added). Courts regularly dismiss complaints on this very ground. *See, e.g.*, *Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 459-60 (S.D.N.Y. 2019) (dismissing complaint where, as to some defendants, "the complaint entirely fails to allege that [they] sold any shares during the relevant period" and, as to others, they "kept constant or *increased* [their] ownership…during the class period.") (emphasis in original); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 763 (S.D.N.Y. 2018) (dismissing complaint where defendants' holdings increased).

Plaintiffs likewise do not attempt to identify any motive by Dr. O'Gorman. They simply speculate (also not in the SAC) that, because Dr. O'Gorman was not required to file trading records with the SEC, "it is possible that he sold Axsome securities during this time period." Opp. at 10 n.10. Plaintiffs could have, but did not, allege that in their SAC. Defendants decline Plaintiffs' invitation to convert their motion to dismiss into one for summary judgment by submitting materials outside of those permissible on a motion to dismiss.[9]

---

[8] *Morales v. City of New York*, 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) ("Plaintiff cannot amend her already amended complaint 'by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.'"); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 363, n.9 (S.D.N.Y. 2011) ("[T]he complaint may not be amended simply by raising new facts in opposition to Defendants' motion.").

[9] Generally, on a motion to dismiss, courts may consider documents incorporated in the complaint, SEC filings, and documents known to the plaintiff and upon which plaintiff relied in bringing suit. *ATSI*, 493 F.3d at 98. Plaintiffs' contention that the Court cannot consider SEC filings reflecting the Defendants' lack of stock sales (Opp. at 10 n.11) is another false statement of the controlling law.

Where, as here, Plaintiffs fail to plead motive, "the circumstantial evidence of conscious misbehavior 'must be **correspondingly greater**' and show 'highly unreasonable' behavior or that which evinces 'an **extreme departure** from the standards of ordinary care.'" *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (emphasis added).  Plaintiffs ignore this principle, hoping to skate by on paper thin allegations "that defendants 'knew facts or had access to information suggesting that their public statements were not accurate,'" but that is not enough.  *Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011).  Plaintiffs must, but fail to, "specifically identify the reports or statements containing [] information" demonstrating that defendants knew their statements were false.  *Id.*

As to both Mr. Pizzie and Dr. O'Gorman, Plaintiffs conclusorily assert that the "core operations" doctrine supports their scienter because "AXS-07's FDA approval was integral for the Company."  Opp. at 8.  But, the "core operations doctrine has been cast into doubt by the Second Circuit following the enactment of the PSLRA."  *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at \*10 (E.D.N.Y. Aug. 6, 2019).  In any event, the "core operations" theory is not "independently sufficient to raise a strong inference of scienter" because it "would eviscerate the cogent and compelling inference of scienter required by *Tellabs*."  *Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 872-73 (S.D.N.Y. 2011).[10]

Plaintiffs also assert that, due to "previous experience of the FDA rejecting [the AXS-05] NDA, Pizzie and O'Gorman were on notice of potential CMC issues AXS-07 faced."  Opp. at 9.  Accordingly, Plaintiffs allege, "they knew – or were reckless in not knowing – that the AXS-07

---

[10] Plaintiffs' out-of-Circuit cases are not to the contrary.  Each involved well-pled allegations of scienter that are missing here.  *See Rihn v. Acadia Pharms. Inc.*, 2016 WL 5076147, at \*3-6 (S.D. Cal. Sept. 19, 2016) (failure to perform critical step in NDA process undermined projections regarding same); *Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495, 526 (D. Md. 2022) (plaintiff alleged defendants were required **by law** to know facts allegedly misrepresented, included allegations of **seven** confidential witnesses, and alleged suspicious trading); *Busic v. Orphazyme A/S*, 2022 WL 3299843, at \*22-23 (N.D. Ill. Aug. 11, 2022) (well-pled allegations that CEO intentionally evaded questions about clinical trials and that CMO was aware of FDA's safety concerns before making statements).

NDA would not be approved on the timeline Defendants provided the public given the manufacturing problems and the need for stability studies." *Id.* This theory suffers a host of problems. First, as Plaintiffs admit, the FDA did *not* reject the AXS-05 NDA. ¶¶122-26. Second, in none of the statements Plaintiffs challenge did Defendants "provide[] the public" a "timeline" on which AXS-07 would be *approved*. *Id.* Rather, Axsome provided an expected timeline for its NDA *submission* (¶128), which ultimately proved to be an accurate prediction. *See* PB at 19. Third, in support of this theory, Plaintiffs cite ¶¶6, 112, and 172 (Opp. at 9), but none of those paragraphs say anything about Mr. Pizzie or Dr. O'Gorman specifically; they are general "group" allegations that fail to heed the Court's warning of the "need for individual allegations as to each Defendant." ECF No. 56 at 13. Fourth, the FDA's delay in approval of the AXS-05 NDA was not announced until August 9, 2021 (¶120), so could not possibly evidence scienter as to any earlier statements (*see* ¶¶128-34). And, Dr. O'Gorman left Axsome in September 2021. ¶23. Even if Dr. O'Gorman's experience with AXS-05 was indicative of his scienter with respect to statements concerning AXS-07 (and it is not), that theory would apply to very few of the challenged statements. Finally, the "AXS-05" theory is simply a "must have known" theory, but it is settled that "it is not enough that defendants held senior positions and had access to inside information." *Woodley v. Wood*, 2022 WL 103563, at *7 (S.D.N.Y. Jan. 11, 2022), *aff'd*, 2022 WL 14997930 (2d Cir. 2022). Having failed to plead with anything approaching particularity that Mr. Pizzie or Dr. O'Gorman culpably participated in any fraud, Plaintiffs' Section 20(a) claims fail.

## III.     **PLAINTIFFS FAIL ADEQUATELY TO PLEAD ACTUAL CONTROL.**

Under Section 20(a), a control person is liable for "directly or indirectly induc[ing] *the act or acts constituting the violation*." 15 U.S.C. § 78t(a). Accordingly, it is not enough to plead "control person status." *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 170 (S.D.N.Y. 2008). Rather, plaintiffs must plead that the defendant exercised "actual control *over*

*the alleged misstatements.*"   *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505, at *27 (S.D.N.Y. Mar. 29, 2021) (cited Opp. at 14-15).  Plaintiffs ignore this law, arguing that control person status—as opposed to actual control over any challenged statement—is sufficient. *See* Opp. at 14-15.  That is not the law, and the cases they cite do not support their conclusion.[11]

Plaintiffs only allege Mr. Pizzie's control *status*.  They allege that Mr. Pizzie's "control of Axsome's *finances*" is sufficient, rendering him "a control person over Axsome as to its development of AXS-07."  Opp. at 15.  Plaintiffs appear to concede they do not allege control by Mr. Pizzie over any specific challenged statement.  *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (dismissing Section 20(a) claims based on vague allegations of "high-level position[]," "awareness of [Defendants'] operations," and "intimate knowledge" of public statements); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 436-37 (S.D.N.Y. 2001).

As to Dr. O'Gorman, plaintiffs apparently concede that he did not control the making of any specific statement other than the May 10, 2021 statement that they allege that *he* made.  *See* Opp. at 10, 16.[12]  Plaintiffs do not explain, however, how Dr. O'Gorman can be held *secondarily* liable for a statement he allegedly made.  *See* Mem. at 9[13]; *Rose v. Rahfco Mgmt. Grp., LLC*, 2014 WL 7389900, at *5 (S.D.N.Y. Dec. 15, 2014) ("'Control person' liability is a form of secondary liability, meaning a defendant can be held liable under Section 20(a) for *another person's*

---

[11] *See Rosi*, 2021 WL 1177505, at *27; *In re Emex*, 2002 WL 31093612, at *10 (control pled where defendants drafted and disseminated the company's public statements).

[12] Plaintiffs claim that Dr. "O'Gorman does not contest this statement's falsity."  Opp. at 9 n.8.  Not true.  Dr. O'Gorman incorporated by reference the Principal Brief, which demonstrates that this May 10, 2021 statement was true, even in hindsight, because Axsome in fact did file its AXS-07 NDA in the quarter as predicted.  *See* PB at 4, 19.

[13] Citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 384 (5th Cir. 2004) (dismissing Section 20(a) claim against alleged speaker who "obviously can have no section 20(a) liability for his own statements" made during conference with "securities analysts"); *Bachow v. Swank Energy Income Advisers, LP*, 2010 WL 70520, at *9 (N.D. Tex. Jan. 6, 2010) (dismissing Section 20(a) claims because defendants "cannot be 'control persons' of themselves").

violations of Section 10(b) or Rule 10b–5.").  Tellingly, Plaintiffs ignore this argument.[14]

Plaintiffs also do not explain how Dr. O'Gorman supposedly controlled all of Axsome's Class Period statements concerning manufacturing when his alleged responsibilities related to safety, not manufacturing.  *See* Mem. at 9.  Finally, Plaintiffs appear to concede that Dr. O'Gorman cannot possibly have controlled any challenged statements made after Plaintiffs allege that he left the company in September 2021.  *See id.*[15]

## CONCLUSION

For the foregoing reasons, Plaintiffs Section 20(a) claims against Mr. Pizzie and Dr. O'Gorman should be dismissed with prejudice.


Dated: May 1, 2024                    Respectfully submitted,

                                      **MORGAN, LEWIS & BOCKIUS LLP**

                                      */s/ Michael L. Kichline*
                                      Michael L. Kichline (*pro hac vice*)
                                      1701 Market Street
                                      Philadelphia, PA 19103
                                      Tel: (215) 963-5000
                                      michael.kichline@morganlewis.com

                                      Emily E. Renshaw
                                      101 Park Avenue
                                      New York, NY 10178-0060
                                      Tel: (212) 309-6000
                                      emily.renshaw@morganlewis.com

---

[14] Plaintiffs' arguments are also incompatible.  They argue that Dr. O'Gorman can be secondarily liable for statements that he made, but that they do not need to plead culpable participation (i.e., scienter) to hold Dr. O'Gorman liable for those statements.  If both of those principles were true, Section 10(b) and its scienter requirement would be rendered meaningless—plaintiffs could bring Section 20(a) claims against alleged primary violators without pleading scienter.

[15] Plaintiffs also conclusorily argue that Mr. Pizzie and Dr. O'Gorman had a "duty to correct" statements made by others. *Kelleher v. ADVO, INC.*, 2008 WL 11376597, at *2 (D. Conn. Apr. 28, 2008) (cited Opp. at 16-17) does not support scienter.  That case merely restates the allegations in the complaint there.  Its Section 20(a) discussion does not mention a "duty to correct" or even allude to how such a duty would support an inference of scienter or control. To the contrary, defendants are not even ***primarily*** liable for failing to correct an incorrect statement unless they have "ultimate authority"—i.e., control—over the statement.  *See Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at *12 (N.D. Cal. Apr. 2, 2024).  Plaintiffs fail adequately to plead control.

Matthew C. McDonough (*pro hac vice*)
Michael A. Hacker
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
matthew.mcdonough@morganlewis.com
michael.hacker@morganlewis.com

*Counsel for Defendants Axsome Therapeutics, Inc.,*
*Herriot Tabuteau, Nick Pizzie, Mark Jacobson,*
*Cedric O'Gorman, and Kevin Laliberte*

11