**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AXSOME THERAPEUTICS, INC. SECURITIES LITIGATION | Case No.: 1:22-cv-3925-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ............................................................................................. 1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT ....................................... 2

        A.      Factual and Procedural Background........................................................................ 2

        B.      Terms of the Settlement ........................................................................................... 2

                1.      Cash Consideration and Release ................................................................. 2

                2.      Notice to the Class ........................................................................................ 3

                3.      Exclusions and Objections............................................................................ 4

                4.      The Plan of Allocation .................................................................................. 5

III.    ARGUMENT ............................................................................................................... 5

        A.      The Court Should Grant Final Approval of the Settlement............................................ 5

                1.      The Settlement Is Procedurally Fair ..................................................................... 7

                        a.      Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class.............................................................................. 7

                        b.      The Settlement Was Negotiated at Arm's Length ....................................... 8

                2.      The Settlement Is Substantively Fair ................................................................... 9

                        a.      The Case is Complex and Continued Litigation Will be Protracted and Costly ...................................................................................... 10

                        b.      Lead Plaintiffs Faced Risks to Establishing Liability and Damages ........... 12

                        c.      The Risks of Maintaining Class Action Status Through Trial..................... 14

                        d.      The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks................................................................. 15

                        e.      The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii)) .................................................................................. 17

                        f.      The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii))................................................................................. 18

                        g.      Related Agreements (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3)) ................... 18

                        h.      The Reaction of the Settlement Class Supports Final Approval (Grinnell Factor 2) ....................................................................... 19

                j.      Defendants' Ability to Withstand a Greater Judgment (Grinnell Factor 7).......... 21

        B.      The Court Should Approve the Plan of Allocation ....................................................... 21

        C.      The Court Should Approve the Notice Disseminated to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process ......................................... 23

        D.      The Court Should Finally Certify The Settlement Class........................................... 25

IV.     CONCLUSION ...................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ...............................................................................10, 23, 24

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ..........................................................................15

*Cagan v. Anchor Sav. Bank FSB*,
1990 WL 73423 (E.D.N.Y. May 22, 1990) ...........................................................................17

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................... *passim*

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .................................................................................... *passim*

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..........................................................................10

*Doe #1 ex rel. Parent #1 v. N.Y.C. Dep't of Educ.*,
2018 WL 3637962 (E.D.N.Y. July 31, 2018) ........................................................................14

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................................22

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ....................13

*Gordon v. Vanda Pharms. Inc.*,
2022 WL 4296092 (E.D.N.Y. Sep. 15, 2022) ..........................................................................8

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ................................................................................................16

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................................11

*Hunter v. Blue Ridge Bankshares, Inc.*,
2025 WL 1649323 (E.D.N.Y. June 11, 2025) .......................................................................8, 9

*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023) .................................................................................................5, 6, 9

*In re 3D Sys. Sec. Litig.*,
  2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ...................................................................9

*In re "Agent Orange" Prod. Liab. Litig.*,
  611 F. Supp. 1396 (E.D.N.Y. 1985), *aff'd in part, rev'd in part on other
  grounds*, 818 F.2d 179 (2d Cir. 1987) ...................................................................16

*In re Alloy, Inc. Sec. Litig.*,
  2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ...........................................................11

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y, 2001)................................................................14, 20

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......................................................11, 12, 20

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................15, 19

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)........................................................22

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ..........................................................15

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)...................................................................10

*In re Datatec Sys., Inc. Sec. Litig.*,
  2007 WL 4225828 (D.N.J. Nov. 28, 2007) .............................................................22

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*,
  822 F. App'x 40 (2d Cir. 2020) .........................................................................16

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................12, 21

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y., 2012) ...............................................................10, 20, 21

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................19

*In re Marsh & McLennan Cos. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..........................................................21

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................21

*In re Nano-X Sec. Litig.*,
   2023 WL 12071594 (E.D.N.Y. Oct. 31, 2023)...................................................................16

*In re OSG Sec. Litig.*,
   2015 WL 3466094 (S.D.N.Y. May 29, 2015) .....................................................................14

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)....................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................9, 18

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018)........................................................................8

*In re Revolution Lighting Techs., Inc. Sec. Litig.*,
   2020 WL 4596811 (S.D.N.Y. Aug. 11, 2020)..................................................................19

*In re Sony Corp. SXRD*,
   448 F. App'x 85 (2d Cir. 2011) ...............................................................................10

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
   2015 WL 5333494 (S.D.N.Y. Sep. 14, 2015), *aff'd in part, vacated in part on
   other grounds*, 699 F. App'x 8 (2d Cir. 2017).................................................................22

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)...................................................................19

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)..................................20

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................................21

*Kommer v. Ford Motor Co.*
   2020 WL 7356715 (N.D.N.Y. Dec. 15, 2020)..................................................................11

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021).............................................................15, 19

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................................12

*Mikhlin v. Oasmia Pharm. AB*,
   2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ..................................................................12

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)........................................................................17

*Rodriguez v. CPI Aerostructures, Inc.*,
    2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)...........................................................................6

*Rodriquez v. It's Just Lunch Int'l*,
    2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) .........................................................................10

*Schutter v. Tarena Int'l, Inc.*,
    2024 WL 4118465 (E.D.N.Y. Sep. 9, 2024)...........................................................................7

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .......................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................ *passim*

**Statutes**

Private Securities Litigation Reform Act of 1995 ............................................................18, 23, 24

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

**Other Authorities**

Laarni Bulan and Eric Tam, *2024 Review & Analysis, Securities Class Action*
    *Settlements* (Cornerstone Research 2025 (Fig. 5)) ................................................................16

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs Thomas Giblin ("Giblin"), Paul Berger, for himself and as sole trustee of the Paul Berger Revocable Trust ("Berger"), and Paul Sutherland ("Sutherland") (collectively, "Lead Plaintiffs"), individually and on behalf of the Settlement Class, respectfully submit this memorandum in support of their motion seeking for final approval of the proposed Settlement, releasing Claims against all Released Parties in exchange for a cash payment of $7,750,000.

On October 27, 2025, the Court preliminarily approved the Settlement of this Action, finding that it would likely be able to finally approve the Settlement as fair, reasonable, and adequate.[1] ECF No. 122 ("Preliminary Approval Order"). As the Preliminary Approval Order directed, Lead Plaintiffs, through the Court-approved Claims Administrator, issued notice to the Settlement Class. To date, no Settlement Class Members have submitted an objection to any aspect of the Settlement, and no Settlement Class Members have requested exclusion from the Settlement Class.

The Settlement resolves Lead Plaintiffs' claims against Defendants Axsome Therapeutics, Inc. ("Axsome"), Herriot Tabuteau, and Mark Jacobson (collectively, the "Settling Defendants"). Before agreeing to the Settlement, Lead Plaintiffs thoroughly investigated their claims and filed two amended complaints, detailing numerous factual allegations supporting their theories of liability against the Settling Defendants. After the Court denied Settling Defendants' motion to dismiss the Second Amended Complaint and once discovery was underway, the Parties began to discuss potential resolution. The Parties engaged Jed Melnick, Esq. of JAMS, an experienced mediator, to oversee and assist in settlement negotiations. Thus, the Settlement was the product of

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation of Settlement, fully executed on September 19, 2025 (the "Stipulation"). ECF No. 117-1. Unless otherwise indicated, all emphasis is added and all internal citations and quotations marks are omitted.

arm's-length negotiations between the Parties, represented by experienced counsel, over the course of several weeks. These facts, along with the positive reaction of the Settlement Class, indicate that the Settlement is fair, reasonable, and adequate.

While Lead Plaintiffs believe that they would be able to prove their claims at trial, they acknowledge that they would have faced significant challenges in obtaining a full judgment on their claims, including obtaining class certification, defeating Settling Defendants' anticipated motion(s) for summary judgment, and subsequently prevailing at trial on complex securities claims, and on the expected post-trial motions and appeal. Even if Lead Plaintiffs were to prevail at trial, there is no guarantee the Settlement Class would have recovered as much, or anything at all.

For the following reasons, therefore, this Court should approve the Settlement as fair, reasonable, and adequate, and it should likewise approve the Plan of Allocation.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Factual and Procedural Background

The procedural history of this Action is set out in detail in the Declaration of Michael Grunfeld in Support of Lead Plaintiffs' Motions for (I) Final Approval of Class Action Settlement and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Lead Plaintiffs ("Grunfeld Declaration" or "Grunfeld Decl.") at ¶¶12-30.

### B.    Terms of the Settlement

#### 1.    Cash Consideration and Release

The Settlement provides for a payment of $7,750,000 in cash for the benefit of the Settlement Class. If the Court grants final approval of the Settlement, Lead Plaintiffs and Settlement Class Members will forever release the Released Plaintiffs' Claims against the Released Defendant Parties. Stipulation ¶4. The "Released Plaintiffs' Claims" are limited to claims

2

that Lead Plaintiffs did or could have asserted in this Action, or any forum, that "that arise out of or are based upon, in whole or in part, the allegations, transactions, facts, matters, occurrences, representations, or omissions alleged in the Amended Complaint or Second Amended Complaint and (ii) the purchase or acquisition of Axsome common stock during the class periods alleged in the Amended Complaint or Second Amended Complaint." Stipulation ¶1(bb). Settling Defendants will release any and all claims that could have been brought against the Released Plaintiff Parties "that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants." Stipulation ¶¶1(z), 5.

### 2. Notice to the Class

In the Preliminary Approval Order, the Court approved the retention of Strategic Claims Services ("SCS") as Claims Administrator. Preliminary Approval Order ¶8. As directed by the Preliminary Approval Order, SCS: (i) within ten business days after entry of the Preliminary Approval Order, emailed links of the Long Notice and Claim Form to potential Settlement Class Members for whom SCS was able to obtain email addresses with reasonable effort or if no email address could be obtained, mailed the Postcard Notice to all potential Settlement Class Members that could be identified with reasonable effort; (ii) within fourteen calendar days after entry of the Preliminary Approval Order, disseminated the Summary Notice over *GlobeNewswire*; (iii) within fourteen calendar days after entry of the Preliminary Approval Order, established the Settlement Website at which Settlement Class Members could obtain important documents regarding the Settlement (including the Long Notice and the Stipulation) and file claims; and (iv) maintained a toll-free telephone number for Settlement Class Members to obtain information about the Settlement. *See* Declaration of Josephine Bravata Concerning: (A) Mailing/Emailing of the Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections

3

("Bravata Declaration") Ex. 1 ¶¶4-7, 10-12; *see also* Bravata Decl., Ex. D (proof of publication of Summary Notice).

The Notice advised potential Settlement Class Members: (1) of the terms of the Settlement and Plan of Allocation; and (2) that Lead Plaintiffs and Plaintiffs' Counsel would seek (a) a fee award to not to exceed 30% of the Settlement Amount, plus interest, (b) recovery of actual Litigation Expenses, not to exceed $250,000, and (c) awards to Lead Plaintiffs not to exceed $30,000 in total. The Notice also informed potential Settlement Class Members of their options regarding the Settlement including how to file a claim, how to exclude themselves from the Settlement Class, and how to object to the Settlement or to the fee and expense requests. Bravata Decl., Ex. A (Long Notice and Claim Form).

To date, SCS has sent notice to 75,036 potential Settlement Class Members, either by e-mailed links to the Long Notice and Claim Form or mailed Postcard Notice. Bravata Decl. ¶8.

### 3.     Exclusions and Objections

Pursuant to the Preliminary Approval Order, the Notice states that members of the Settlement Class may request exclusion from the Settlement Class no later than January 13, 2026, and explains how to do so. Bravata Decl., Ex. A (Long Notice) at 6; Ex. C (Postcard Notice). The Notice also informs Settlement Class Members that they may object to the Settlement, the Plan of Allocation, or the requests for fees and expenses, no later than January 13, 2026, and explains how to do so. Bravata Decl., Ex. A (Long Notice) at 7-8; Ex. C (Postcard Notice). To date, no Settlement Class Member has objected to the Settlement, the Plan of Allocation, or the requests for attorneys' fees, reimbursement of expenses, and awards to Lead Plaintiffs. Bravata Decl. ¶14. In addition, no Settlement Class Member has requested exclusion from the Settlement Class. *Id*. ¶13. In Lead Plaintiffs' reply papers in further support of final approval of the Settlement, to be

4

filed by February 3, 2026, Lead Plaintiffs will inform the Court of any requests for exclusion and will respond to any objections.

### 4. The Plan of Allocation

The Long Notice provides a thorough explanation of the Plan of Allocation. *See* Bravata Decl., Ex. A at 11-12. The Plan of Allocation fairly and reasonably distributes the Net Settlement Fund to Settlement Class Members consistent with the federal securities laws and principles of loss causation. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Net Settlement Fund (*i.e.*, the Settlement Fund less Notice and Administration Costs and any Court-approved attorneys' fees, expenses, awards to Lead Plaintiffs). *See id.*; Grunfeld Decl. ¶¶58-63.

Finally, the Settlement Class meets the requirements of Rule 23(a) and (b)(3) and merits certification. Lead Plaintiffs respectfully request that the Court enter a final judgment granting approval of the Settlement, Plan of Allocation and Notice, and certifying the Settlement Class.

## III. ARGUMENT

### A. The Court Should Grant Final Approval of the Settlement

Rule 23(e) requires judicial approval of any class action settlement, which must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Public policy favors settlement, particularly in class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"), *superseded on other grounds*, Fed. R. Civ. P. 23(e)(2), *as recognized in Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation. When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), courts determine whether a settlement, taken as a whole, is fair, reasonable, and adequate, ensuring that it was not

the product of collusion. *Wal-Mart*, 396 F.3d at 116; *see also Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *8 (E.D.N.Y. Feb. 16, 2023).

Rule 23(e)(2) identifies four factors for a court to consider in determining whether a class action settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's-length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Second Circuit has held that "the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Moses*, 79 F.4th at 243 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974)).

> *Grinnell* directs courts to consider:
>
> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 244 n.4 (quoting *Grinnell*, 495 F.2d at 463).

### 1.    The Settlement Is Procedurally Fair

"To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length.'" *Schutter v. Tarena Int'l, Inc.*, 2024 WL 4118465, at *7 (E.D.N.Y. Sep. 9, 2024) (quoting Fed. R. Civ. P. 23(e)(2)(A)-(B)).

### a.    Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Schutter,* 2024 WL 4118465, at *5 (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019)). "Here, there are no fundamental conflicts between the class representatives and the class members." *Id*. Lead Plaintiffs, like all Settlement Class Members, purchased Axsome common stock and were "damaged in the same or similar ways that the [Settlement] Class Members were damaged," and "are seeking to recover from Defendants' alleged misconduct." *Id*. "Therefore, their interests are aligned with those of other Settlement Class Members as they share the common objective of maximizing their recovery from [the company] for the same alleged misconduct." *Id*. Moreover, Lead Plaintiffs oversaw the prosecution of the Action and settlement process, regularly communicating with counsel. *See* Grunfeld Decl., Exs. 2-4 (Declarations of Lead Plaintiffs).

Further, Lead Counsel are qualified, experienced, and able to conduct the litigation. Both Pomerantz and Rosen Law have successfully litigated dozens of securities class actions, including many in this District. *See* Grunfeld Decl., Ex. C to Ex. 5 (Pomerantz resume) and Ex. C to Ex. 6

(Rosen Law resume). Indeed, each firm has achieved historic settlements in this District. *See, e.g.*, *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 862 (S.D.N.Y. 2018) (Pomerantz, as Lead Counsel, recovered $3 billion for class members); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (securing $250 million settlement against Chinese company Alibaba, which was the largest settlement with a Chinese issuer at the time). Thus, Lead Counsel is adequate.

### b.    The Settlement Was Negotiated at Arm's Length

In addition, "[c]ourts reviewing proposed settlements must also scrutinize the negotiating process, to ensure they resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *Hunter v. Blue Ridge Bankshares, Inc.*, 2025 WL 1649323, at *14 (E.D.N.Y. June 11, 2025) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). Here, "[t]he record is clear that this Settlement was the product of arm's-length negotiations by informed, experienced counsel." *Id.* at *15. Following the Court's denial of the Settling Defendants' motion to dismiss the Second Amended Complaint and during the beginning of formal discovery, the Parties began discussions to potentially resolve the Action. The Parties retained Mr. Melnick as a mediator and participated in a full-day, in-person mediation session on July 31, 2025. Grunfeld Decl., ¶31. Prior to the mediation, the Parties exchanged detailed mediation submissions with exhibits. A settlement was not reached at the mediation session, but the Parties continued discussions through Mr. Melnick while continuing to vigorously pursue their discovery efforts, eventually accepting a mediator's proposal to resolve the Action. *Id.* ¶ 32. Courts have routinely recognized Mr. Melnick's experience in overseeing mediations of similar securities class action and found his involvement supporting the fairness of approval of a settlement. *See e.g.*, *Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *4 (E.D.N.Y. Sep. 15, 2022) ("The

participation of Jed D. Melnick, a highly qualified mediator[,] strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *9 (E.D.N.Y. Jan. 4, 2024) (settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval). These were arm's-length negotiations between highly experienced counsel. "While the Second Circuit held in *Moses* that arm's-length-negotiated settlements are no longer entitled to a presumption of fairness, such circumstances support approval of settlements." *Hunter*, 2025 WL 1649323, at *15 (citing *Moses*, 79 F.4th at 243). Thus, this factor supports granting final approval to the Settlement.

Rule 23(e)(2)'s two factors concerning procedural fairness of a class action settlement are both satisfied here.

### 2.      The Settlement Is Substantively Fair

With respect to the evaluating the substantive fairness of a class action settlement, "the factors outlined in *Grinnell* and the revised Rule 23(e)(2) largely overlap." *Moses*, 79 F.4th at 244; *see also Christine Asia*, 2019 WL 5257534, at *10 ("Rule 23(e)(2)(C)(i) incorporates the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate.").[2]

While courts consider each *Grinnell* factor, "not every factor must weigh in favor of settlement, rather a court should consider the totality of these factors in light of the particular

---

[2] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re Payment Card*, 330 F.R.D. at 36 ("The first factor – costs, risks, and delay of trial and appeal – subsumes several *Grinnell* factors …").

circumstances." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y., 2012). "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). Indeed, because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's settlement recommendations, especially when negotiations are arm's length. *See Rodriquez v. It's Just Lunch Int'l*, 2020 WL 1030983, at *3 (S.D.N.Y. Mar. 2, 2020) ("Where counsel for plaintiffs is able and experienced, particularly in the specific area with which these actions are concerned, counsel's judgment is entitled to great weight.").

Lead Plaintiffs submit that the proposed Settlement is fair, reasonable and adequate and should be finally approved.

**a.     The Case is Complex and Continued Litigation Will be Protracted and Costly**

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (quoting *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

This Action is no exception. While Lead Plaintiffs believe that their claims are meritorious, uncertainty in litigation always remains. Further litigation would have required substantial additional expenditures of time and resources, with a material risk of a lower recovery, if any. *See*

10

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

In the absence of the Settlement, Lead Plaintiffs would have to certify the class, survive dispositive motion practice, and then prepare for and prevail at trial, and then prevail *again* on the inevitable post-trial motions and appeals. Throughout each additional step of litigation, Lead Plaintiffs would continue to face a robust defense from experienced and capable counsel. *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties"); *See also* Grunfeld Decl. ¶8.

Even if Lead Plaintiffs prevailed in securing a larger judgment after a trial, the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, reducing its value in comparison to the present proposed recovery. *See Kommer v. Ford Motor Co.* 2020 WL 7356715, at *4 (N.D.N.Y. Dec. 15, 2020) ("Even if a shareholder or class member was willing to assume all the risks of pursuing . . . further litigation [,] the passage of time would introduce yet more risks and would in light of the time value of money, make future recoveries less valuable than this current recovery."). Accordingly, material risk exists that further litigation might yield a smaller recovery, years in the future—or no recovery at all. *See*, *e.g.*, *Hicks v. Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."). The expense, duration, and difficulties of the Action were it to proceed through discovery, trial, and appeals weigh in favor of final approval

of the Settlement.

> **b.      Lead Plaintiffs Faced Risks to Establishing Liability and Damages**

In evaluating fairness, courts consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Courts should not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Glob. Crossing*, 225 F.R.D. at 459.

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11. Lead Plaintiffs alleged that Settling Defendants made false and misleading statements regarding Axsome's manufacturing capabilities and its planned New Drug Application ("NDA") for its drug candidate, AXS-07. Thus, Lead Plaintiffs would need to establish materiality and falsity of the statements as well as Settling Defendants' state of mind – all are challenging feats. *Christine Asia*, 2019 WL 5257534, at *12 ("Plaintiffs also faced the risk that a jury would conclude that Defendants did not act with the requisite scienter. Proving scienter is hard to do."); *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) ("At the summary judgment stage, Plaintiffs would face the burden of establishing the existence of a genuine issue of material fact regarding the element of scienter, which is notably difficult to establish."). Here, Settling Defendants vigorously challenged that they made any false or

12

misleading statements and that they made any of the alleged false and misleading statements with the requisite scienter. Grunfeld Decl. at ¶¶8, 51-57. Settling Defendants would surely continue to press these arguments if the Action continued, and their answer indicated their belief that they would be able to prove that their alleged misstatements were true and thus not false or misleading. *See* the Answer of Defendants Axsome Therapeutics, Inc., Herriot Tabuteau, and Mark Jacobson To The Second Amended Class Action Complaint (ECF No. 110). Thus, it is very possible that Settling Defendants might convince a jury that they did not make any materially false statements regarding Axsome's manufacturing capabilities for AXS-07 and U.S. Food and Drug Administration ("FDA") approval of the NDA or did not do so with scienter. *Christine Asia*, 2019 WL 5257534, at *12-13 (recognizing the challenges of proving falsity and scienter to a jury); *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011).

Additionally, establishing loss causation and damages would be a risk if litigation continued. Lead Plaintiffs contend that the truth about Axsome's AXS-07 NDA was revealed when Axsome disclosed to the market it would receive a Complete Response Letter ("CRL") from the FDA rejecting the NDA. Settling Defendants, however, could assert that Lead Plaintiffs' losses were not causally connected to the alleged false and misleading statements, but rather that a large portion of Axsome's stock price decline is attributable to the market's extrapolation of the news about the AXS-07 CRL to Axsome's other lead therapy at the time. If Settling Defendants were successful, the amount of recoverable damages could be significantly diminished – potentially wiping out any recovery for Axsome investors. These issues would certainly become fodder for expert testimony, likely leading to an expensive (and always unpredictable) "battle of the experts."

13

Before a verdict, neither the Parties nor a court can predict which expert's testimony or methodology the jury would adopt, and thus courts recognize the need for compromise. *See generally Doe #1 ex rel. Parent #1 v. N.Y.C. Dep't of Educ.*, 2018 WL 3637962, at *11 (E.D.N.Y. July 31, 2018) (saying that the prospect of an expensive battle of the experts supports settlement); *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y, 2001) (approving settlement based, in part, on counsel's recognizing that a jury might accept defendants' expert and eliminate or reduce damages materially); *see In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

As a result, Lead Plaintiffs would face a material risk that the Court or a jury would find that all or a portion of the declines in Axsome's common stock price were not related to Settling Defendants' alleged misstatements, which would reduce or even eliminate classwide damages. Grunfeld Decl. ¶56; *see also In re OSG Sec. Litig.*, 2015 WL 3466094, at *4 (S.D.N.Y. May 29, 2015) (dismissing the case on summary judgment for defendants failure to prove loss causation).

Accordingly, the material risks of Lead Plaintiffs failing to establish liability, loss causation, and damages could lead to the Settlement Class recovering less than the Settlement Amount or even nothing at all. This strongly favors final approval of the Settlement, which eliminates these risks entirely.

### c.    The Risks of Maintaining Class Action Status Through Trial

The Court has not yet finally certified the Settlement Class. Given the loss causation arguments asserted in their motion to dismiss and their readiness to contest the addition of new lead plaintiffs in the SAC, Settling Defendants would assuredly have aggressively contested price impact and Plaintiff-specific issues at class certification. *See* ECF No. 58 at 1-2; ECF No. 74; ECF No. 80 at 24-25. Thus, there was a risk of the Court denying class certification. Then, even if the Court certified a class over Settling Defendants' opposition, Settling Defendants may have moved

14

to decertify the class before trial or on appeal, as class certification "may be altered or amended before the final judgment" under Rule 23(c)(1)(C). *Christine Asia*, 2019 WL 5257534, at *13; *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010). Thus, the risks of maintaining the class action status support final approval of the Settlement.

> **d.    The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks**

A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario—assuming Lead Plaintiffs overcome all the obstacles noted above, and Settling Defendants do not prevail on any of their current arguments—Lead Plaintiffs' expert estimates that the maximum amount of potentially recoverable classwide damages is approximately $98.4 million. Grunfeld Decl. ¶55. That estimate encompasses all claims asserted in the Second Amended Complaint. Thus, the $7.75 million Settlement represents a recovery of approximately 7.9% of estimated ***maximum*** damages, which is in line with the recoveries in securities fraud class actions. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[T]he average settlement amounts in securities fraud class actions where investors sustained losses over the past decade ... have ranged from 3% to 7% of the class members' estimated losses."); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (finding 6.5% recovery of damages "is reasonable and in line with other settlements in securities class actions"); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *10

15

(S.D.N.Y. Nov. 30, 2021) (approving 5.3% recovery as it "represents a fair deal for the settlement class"); *In re Nano-X Sec. Litig.*, 2023 WL 12071594, at \*8 (E.D.N.Y. Oct. 31, 2023) (finding 4.5% recovery is "within the average range of settlement amounts for securities fraud class actions"). Indeed, for settlements with alleged damages between $75 million and $149 million, the average settlement recovery of damages was 7.3% between 2015 and 2023, and 7.5% in 2024. *See* Grunfeld Decl., Ex. 8 (Laarni Bulan and Eric Tam, *2024 Review & Analysis, Securities Class Action Settlements* (Cornerstone Research 2025 (Fig. 5)). Moreover, the Settlement Amount represents a significantly higher percentage of damages if Settling Defendants were to successfully argue that the entire stock drop from the single corrective disclosure at issue in this case cannot be attributed to news regarding AXS-07, but rather and that a large portion of Axsome's stock price decline was attributable to the market's extrapolation of the news about the AXS-07 CRL to Axsome's other lead therapy at the time.

In factually and legally complex securities class actions, responsible counsel cannot be certain that they will be able to obtain a judgment at or near the full amount of the class-wide damages that they will seek to prove at trial. The possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Money in Settlement Class Members' pockets now is more valuable than a speculative recovery that Settlement Class Members might obtain after a complex trial, undertaking the substantial risk that the Settlement Class may end up with nothing given the challenges that Plaintiffs face in establishing liability and damages. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly."), *aff'd in part, rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987); *In re Facebook, Inc., IPO Sec. & Derivative*

*Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018) ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery"), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020).

In light of the aforementioned material risks that Lead Plaintiffs and the Settlement Class might recover less, or nothing, without the Settlement, this Settlement is well within the range of reasonableness. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621-22 (S.D.N.Y. 2012) (granting finals approval which amounted to 2% of potential recovery); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (granting final approval amounting to approximately 1.9% of best possible recovery).

For the foregoing reasons, the proposed Settlement is both procedurally and substantively fair, reasonable, and adequate, and in the Settlement Class's best interests. These *Grinnell* factors weigh in favor of granting final approval of the Settlement.

### e.     The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii))

The Settlement proceeds will be allocated to Settlement Class Members who timely submit valid Claim Forms in accordance with the Plan of Allocation. As provided in the Preliminary Approval Order, ¶17(a)-(d), the Claims Administrator has processed and will continue to process claims under Lead Counsel's guidance, and has allowed and will continue to allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims. After the Court enters a distribution order, the Claims Administrator will provide Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), with a second *pro rata* distribution, if warranted. Stipulation ¶28. No funds will be returned to

17

Defendants. *Id.* ¶11.

This method for claims processing and distributing settlement proceeds is standard in securities and other class actions and has proved to be effective. *Christine Asia*, 2019 WL 5257534, at *14; *In re Payment Card*, 330 F.R.D. at 40-41. For this reason, the Court already determined (in its Preliminary Approval Order) that the proposed protocol does not impose an undue burden on Settlement Class Members.

### f. The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii))

As provided in the Notice, Lead Counsel disclosed that they will seek up to 30% of the Settlement Fund in attorneys' fees. As discussed in detail in the memorandum of law accompanying Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Lead Plaintiffs, filed herewith, Lead Counsel's fee request is reasonable in light of counsel's skill, efforts, and time investment, the risks counsel faced, and the overall benefit to the Settlement Class. Courts in this Circuit routinely find that requests for attorneys' fees totaling 30% of the settlement fund are reasonable. In any event, approval of the Settlement is determined separate and apart from the Court's decision on the fee award. Stipulation ¶18. Further, the Notice alerted Settlement Class Members that Lead Counsel would seek up to $250,000 in Litigation Expenses and compensatory awards to Lead Plaintiffs up to $30,000 in total pursuant to 15 U.S.C. § 78u-4(a)(4).

### g. Related Agreements (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3))

With respect to identifying agreements pursuant to Rule 23(e)(3)(C)(iv), the Parties have entered into a Supplemental Agreement, which was provided to the Court for *in camera* review prior to its granting of preliminary approval. Grunfeld Decl. ¶35. The Supplemental Agreement provides Axsome with the option to terminate the Settlement if the number of Settlement Class

18

Members requesting exclusion from the Settlement Class exceeds a certain threshold. *Id.* To protect the Settlement Class, the precise terms of the Supplemental Agreement are kept confidential to avoid creating incentives for a small group of Settlement Class Members to opt out solely to leverage larger individual settlements for themselves to the detriment of the rest of the Settlement Class. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia*, 2019 WL 5257534, at *15.

### h.      The Reaction of the Settlement Class Supports Final Approval (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to a settlement is considered perhaps the most significant factor to be weighed in considering its adequacy." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007). "Lack of objection is strong evidence of the settlement's fairness." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006); *see also Lea*, 2021 WL 5578665, at *2 (approving the settlement where there were no objectors and only three requests for exclusion); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, 2020 WL 4596811, at *1 (S.D.N.Y. Aug. 11, 2020) (finding a settlement fair and granting final approval where there were no objections from the class).

To date, no Settlement Class Members have requested exclusion from the Settlement Class or objected to any aspect of the Settlement. Bravata Decl. ¶¶13-14; Grunfeld Decl. ¶77. The absence of objections and exclusion requests supports final approval of the Settlement. Lead Plaintiffs will address any subsequent requests for exclusion or objections in their reply papers.

### i.      The Stage of the Litigation and Discovery Completed Support Approval (*Grinnell* Factor 3)

Courts also evaluate whether Lead Plaintiffs and Lead Counsel were sufficiently informed about the merits of the claims and defenses and the value thereof when they entered into the Settlement. *Bear Stearns*, 909 F. Supp. 2d at 267. Considering the stage of the proceedings, *Wal-*

*Mart*, 396 F.3d at 117, discovery need not be comprehensive so long as the Court is satisfied that Lead Plaintiffs "'have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the settlement,'" *AOL Time Warner*, 2006 WL 903236, at *10; *IMAX*, 283 F.R.D. at 190 (The "sufficiently well informed" factor is "not an overly burdensome one to achieve.").

Lead Plaintiffs achieved this Settlement only after thoroughly investigating the alleged claims and consulting with both liability and damages experts. Prior to reaching the Settlement, Lead Plaintiffs, through Lead Counsel: (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts; (ii) drafted and filed a 60-page Amended Complaint (ECF No. 37); (iii) opposed Defendants' motion to dismiss the Amended Complaint (ECF Nos. 46-47); (iv) successfully moved for leave to amend (ECF Nos. 73-75); (v) drafted and filed a 69-page Second Amended Complaint addressing the Court's loss causation concerns (ECF No. 76); (vi) successfully opposed Settling Defendants' motion to dismiss the Second Amended Complaint (ECF Nos. 84, 86, 90); (vii) drafted and served party discovery requests and responses; (viii) served and pursued third-party discovery requests; (ix) engaged in extensive written and oral meet-and-confer correspondence following up on the party and third-party discovery requests; (x) drafted and filed a class certification pre-motion letter informed by extensive expert analysis (ECF No. 114); (xi) drafted and exchanged mediation statements; and (xi) participated in a full-day, in-person mediation session before Mr. Melnick and follow-up settlement discussions. Grunfeld Decl. at. ¶5; *see also In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases"), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Am. Bank Note Holographics*, 127 F. Supp. 2d at 425-26 ("[T]he Court need not find that the parties have engaged in extensive discovery…. [I]t is

enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement."). Therefore, Lead Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of their claims, further supporting final approval.

**j.    Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)**

Although Settling Defendants have D&O insurance that may potentially contribute to funding the Settlement and thus may be able to withstand a greater judgment, "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate," especially where other applicable factors weigh heavily in favor of settlement approval. *Glob. Crossing Sec.* 225 F.R.D. at 460 (citing cases); *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval.").

**B.    The Court Should Approve the Plan of Allocation**

The Court must also evaluate whether the Settlement treats Settlement Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Plan of Allocation "must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia*, 2019 WL 5257534, at *15-16. A fair and rational plan may take into account "the relative strength and values of different categories of claims." *Glob. Crossing*, 225 F.R.D. at 462; *see also In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

21

The Plan of Allocation, set forth in the Long Notice, is fair, reasonable, and adequate, and does not treat Lead Plaintiffs or any other Settlement Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, 2015 WL 5333494, at \*6 (S.D.N.Y. Sep. 14, 2015), *aff'd in part, vacated in part on other grounds*, 699 F. App'x 8 (2d Cir. 2017). The Plan does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the revelation of the alleged truth. *See **Error! Bookmark not defined.**Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (if "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"). Lead Counsel developed the Plan of Allocation with Lead Plaintiffs' damages expert. Grunfeld Decl. at ¶¶59, 63. The Plan of Allocation distributes the Net Settlement Fund equitably among Settlement Class Members who were injured by Settling Defendants' alleged misconduct and who submit valid Claim Forms. *Id*. Each eligible Settlement Class Member who submits a Claim Form will receive a *pro rata* distribution pursuant to the Plan of Allocation. The Plan of Allocation calculates a claimant's relative loss proximately caused by Settling Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold Axsome common stock.

The Plan of Allocation closely tracks the form of plans of allocation commonly approved in similar securities class action settlements. In securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common" because they tend to mirror the complaint's allegations. *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at \*5 (D.N.J. Nov. 28, 2007); *see also In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at \*5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awarded a *pro rata* share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds").

If any funds remain after the initial distribution from the Net Settlement Fund to Authorized Claimants, SCS will conduct a second distribution to Authorized Claimants as long as the second distribution is cost effective. Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund after such distribution(s). Any residual funds will be distributed to a non-profit, non-sectarian 501(c)(3) organization designated by Lead Plaintiffs. Stipulation ¶28.

To date, no Settlement Class Member has objected to the Plan of Allocation. Bravata Decl. ¶14, Grunfeld Decl. ¶77. Accordingly, the Court should approve the proposed Plan of Allocation.

### C. The Court Should Approve the Notice Disseminated to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process

The notice program, alerting the Settlement Class to their rights to file a claim or request exclusion, the right to object, and the consequences of any particular choice, complies with the Preliminary Approval Order and satisfies Fed. R. Civ. P. 23(c)(2), Rule 23(e)(1), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(7), and due process.

Courts evaluate a notice program's compliance with Rule 23 and due process in terms of its reasonableness. Fed. R. Civ. P. 23(e)(1); *Arbuthnot*, 607 F. App'x at 73-74. Notice is reasonable where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 73-74. Notice need not be perfect but only "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(2)(C)(ii). In its Preliminary Approval Order, the Court approved the notice program and its substance, and appointed SCS as Claims Administrator.

Under Lead Counsel's direction, SCS executed the notice program as the Court directed in the Preliminary Approval Order. More than 75,000 copies of the Court-approved Notice were sent to potential Settlement Class Members who could be identified with reasonable effort via emailed

links to the Long Notice and Claim Form or mailed Postcard Notice. Bravata Decl. at ¶¶6-8. SCS also published the Court-approved Summary Notice online in *GlobeNewswire*. *Id.* at ¶10. SCS further established and maintains a toll-free telephone number for Settlement Class Members to call and obtain information about the Settlement, and published all information regarding the Settlement online on the Settlement website. *Id.* at ¶¶11-12.

The Notice provided to the Settlement Class also provided all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Arbuthnot*, 607 F. App'x at 73-74. The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan of Allocation as described in the Long Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.

**D.     The Court Should Finally Certify The Settlement Class**

Lead Plaintiffs' memorandum of law in support of their motion for preliminary approval of the Settlement set forth the bases for the certification of a Settlement Class. ECF No. 116 at 19-25. On October 27, 2025, this Court certified the Settlement Class preliminarily for settlement purposes. Preliminary Approval Order ¶¶2-3. No circumstances have changed that would militate against final certification of the Settlement Class for settlement purposes. Thus, the Court should finally certify the Settlement Class for settlement purposes, appoint Lead Plaintiffs as Class Representatives for the Settlement Class, and approve their selection of Pomerantz and Rosen Law as Class Counsel for the Settlement Class.

## IV.     CONCLUSION

For the forgoing reasons, the Court should grant final approval of the proposed Settlement and Plan of Allocation, approve the notice program as executed, and enter final judgment. With their reply papers in support of this motion, Lead Plaintiffs will submit a proposed Final Judgment (in the form attached as Exhibit B to the Stipulation) to reflect any valid requests for exclusion from the Settlement Class.

Dated: January 6, 2026

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
Brandon M. Cordovi
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          mgrunfeld@pomlaw.com
          bcordovi@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Jacob Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: 215-600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com

Erica L. Stone
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: estone@rosenlegal.com

*Co-Lead Counsel for Lead Plaintiffs Thomas Giblin, Paul Berger, and Paul Sutherland*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Thomas Giblin*

**PASKOWITZ LAW FIRM P.C**
Laurence D. Paskowitz (LP-7324)
97-45 Queens Boulevard
Suite 1202
Rego Park, New York 11374
Telephone: (212) 685-0969
lpaskowitz@pasklaw.com

*Additional Counsel for Lead Plaintiff Paul Berger, for himself and as sole trustee of the Paul Berger Revocable Trust*

## WORD COUNT CERTIFICATE

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing document contains 7,933 words, excluding the exempted portions, and that it complies with the appliable word count limitation.

/s/ Michael Grunfeld___
Michael Grunfeld

27