**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AXSOME THERAPEUTICS, INC. SECURITIES LITIGATION | Case No.: 1:22-cv-3925-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO LEAD PLAINTIFFS**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT.................................................................................. 1

II.   ARGUMENT ........................................................................................................ 4

    A.    Plaintiffs' Counsel Should be Awarded Attorneys' Fees and Expenses from the
        Common Fund ............................................................................................ 4

    B.    The Court Should Award a Reasonable Percentage of the Common Fund .................... 6

    C.    Analysis of the Relevant Factors Confirms that the Requested Fee Is Reasonable ....... 8

        1.    The Requested Fee in Relation to the Settlement is Fair, Reasonable, and Wholly
            Consistent with Case Law ................................................................... 9

        2.    Time and Labor Plaintiffs' Counsel Expended ...................................... 10

        3.    The Magnitude and Complexity of the Action ...................................... 12

        4.    The Risks of Litigation ................................................................ 13

        5.    The Settling Parties Were Represented by Experienced, High-Caliber
            Counsel ...................................................................................... 18

        6.    Public Policy Considerations: Private Securities Suits Are an "Essential
            Supplement" to Criminal Prosecution and Civil Enforcement ............................. 20

        7.    A Lodestar Cross-Check Confirms That the Requested Attorneys' Fees are
            Reasonable ................................................................................. 21

    D.    Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve
    the Benefit Obtained ...................................................................................... 22

    E.    The Proposed Compensatory Awards to Lead Plaintiffs are Reasonable ...................... 23

III.  TIMING OF PAYMENTS ...................................................................................... 25

IV.   CONCLUSION.................................................................................................... 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)......................................................................9, 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)......................................................................................................20

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .....................................................................................14

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) .................................................................9

*Asare v. Change Grp. of N.Y., Inc.*,
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)...............................................................22

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sep. 4, 2013)................................................................22

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).......................................................................................................20

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)..................................................................................................5, 20

*Becher v. Long Island Lighting Co.*,
64 F. Supp. 2d 174 (E.D.N.Y. 1999) ...........................................................................10

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979).........................................................................................14

*Blum v. Stenson*,
465 U.S. 886 (1984)........................................................................................................6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).......................................................................................................4

*Bryant v. Avado Brands, Inc.*,
100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on other grounds sub nom.*
*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001)...................................................15

*Burns v. FalconStor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ............................................................22

ii

*Calfo v. Messina*,
No. 15-cv-04010, ECF No. 184 (S.D.N.Y. Oct. 30, 2017).........................................................7

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) .................................................................8, 27

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)....................................................................................................18

*City of Providence v. Aéropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v.
Pierson*, 607 F. App'x 73 (2d Cir. 2015)........................................................... *passim*

*Collins v. Olin Corp.*,
2010 WL 1677764 (D. Conn. Apr. 21, 2010)..........................................................................10

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 18, 2011) .......................................................................22

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...................................................................................22

*Eltman v. Grandma Lee's, Inc.*,
1986 WL 53400 (E.D.N.Y. May 28, 1986) .............................................................................18

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..................................................................................................17

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).......................................................................................... *passim*

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ....................................................................9, 22

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013) .................................................................................................6

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .........................................................................20

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) .................................................................................................14

*In re 3D Sys. Sec. Litig.*,
2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ...............................................................................26

iii

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir.
2008) ...................................................................................................................19

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)...............................................................7, 13

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......................................................12, 15

*In re Apple Comput. Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sep. 6, 1991) ...........................................................14

*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013), *aff'd*, 772 F.3d 125 (2d Cir.
2014) ...................................................................................................................24

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .........................................................17

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................16

*In re Bisys Sec. Litig.*,
2007 WL 2049726 (S.D.N.Y July 16, 2007) ..........................................................21

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022).....................................................6, 7, 8

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
No. 17-cv-01580, ECF No. 444 (S.D.N.Y. Aug. 2, 2022).......................................25

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)...................................................................7, 22

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ......................................................9, 21

*In re Delcath Sys., Inc. Sec. Litig.*,
No. 13-cv-3116, ECF No. 141 (S.D.N.Y. Oct. 22, 2015).......................................25

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005)....................................................................22

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)..........................................................11

iv

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...............................................................19, 22, 23

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .........................................................................................23

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................21, 23

*In re Ikon Off. Sols., Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)...........................................................................................12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)..................................................................................22

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ....................................................................6, 22

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales
  Pracs. & Prods. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) ...............................................................................................26

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................................25

*In re Merrill Lynch & Co., Inc. Sec., Deriv. and ERISA Litig.*,
  No. 07-cv-09633 (S.D.N.Y.)................................................................................................21

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................................19, 24

*In re PPDAI Grp. Inc. Sec. Litig.*,
  2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ........................................................................26

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997) .......................................................................................13

*In re Qudian Inc. Sec. Litig.*,
  2021 WL 2328437 (S.D.N.Y. June 8, 2021) ........................................................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..................................................................17, 23

*In re Top Tankers, Inc. Sec. Litig.*,
  2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................................................................5

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) .......................................................................................20

v

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ....................................................................7, 24

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ..................................................................................18, 19

*In re Worldcom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................................20

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005).....................................................................................14

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ..............................16

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ..........................................................................10

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009)................................................................................12

*Lea v. TAL Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)......................................................................9, 12

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................................5, 20, 21

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .........................................................................10

*Pa. Pub. Sch. Emps' Ret. Sys. v. Bank of Am. Corp.*,
   318 F.R.D. 19 (S.D.N.Y. 2016) ...............................................................................................24

*Pilgaonkar v. Kitov Pharms. Holdings Ltd.*,
   No. 17-cv-00917, ECF No. 87 (S.D.N.Y. Mar. 29, 2019)........................................................7

*Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) .........................................................................13

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ...............................................................................................14

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999)..................................................................................................6, 21

*Silverberg v. People's Bank*,
   23 F. App'x 46 (2d Cir. 2001) .................................................................................................10

*Silverstein v. AllianceBernstein, L.P.*,
　　2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) ........................................................................19

*Stefaniak v. HSBC Bank USA, N.A.*,
　　2008 WL 7630102 (W.D.N.Y. June 28, 2008) ......................................................................10

*Stein v. Eagle Bancorp, Inc.*,
　　2022 WL 407367 (S.D.N.Y. Feb. 10, 2022) .............................................................6, 8, 9, 25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　　396 F.3d 96 (2d Cir. 2005) ...................................................................................................21

**Statutes**

Private Securities Litigation Reform Act of 1995 .................................................................. *passim*

**Other Authorities**

7B Wright & Miller's Federal Practice and Procedure § 1803, Westlaw (database
　　updated Sep. 2025)..................................................................................................................5

Brian T. Fitzpatrick, *The End of Objector Blackmail*?, 62 Vand. L. Rev. 1623
　　(2009) .....................................................................................................................................26

Cornerstone Research, Securities Class Action Filings: 2024 Year in Review
　　(2025).....................................................................................................................................18

Edward Flores and Svetlana Starykh, "Recent Trends in Securities Class Action
　　Litigation: 2024 Full-Year Review," (NERA Jan. 22, 2025) ..................................................8

Manual for Complex Litigation (Fourth) § 14.121, Westlaw (database updated
　　Aug. 2025) ..............................................................................................................................5

Lead Plaintiffs Thomas Giblin ("Giblin"), Paul Berger, for himself and as sole trustee of the Paul Berger Revocable Trust ("Berger"), and Paul Sutherland ("Sutherland") ("Lead Plaintiffs") and Lead Counsel Pomerantz LLP ("Pomerantz") and The Rosen Law Firm, P.A. ("Rosen") ("Lead Counsel") respectfully submit this memorandum in support of their motion for: (i) an award of attorneys' fees of 30% of the Settlement Amount, plus accrued interest; (ii) reimbursement of necessary and reasonable litigation expenses of $146,553.93, plus accrued interest; and (iii) compensatory awards of $22,095 in total to Lead Plaintiffs.[1]

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs obtained a cash Settlement of $7,750,000 for the benefit of the Settlement Class to resolve this securities class action against Defendants Axsome Therapeutics, Inc. ("Axsome"), Herriot Tabuteau, and Mark Jacobson (collectively, "Settling Defendants") after more than three years of litigation. Plaintiffs' Counsel, who have received no payment to date, now seek attorneys' fees of 30% of the Settlement Fund, or $2,325,000, plus interest. Plaintiffs' Counsel have spent over 1,829 hours prosecuting this case, with a lodestar of $1,977,521. *See* Declaration of Michael Grunfeld in Support of Lead Plaintiffs' Motions for (I) Final Approval of Class Action Settlement and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Lead Plaintiffs ("Grunfeld Declaration" or "Grunfeld Decl.") filed herewith, ¶66, and Exhibits 5-7. The requested fee award represents a lodestar multiplier of just 1.18 on Plaintiffs' Counsel's efforts since May 2022. The fee sought is well within—and often below—the amount regularly approved by courts in this Circuit. *See*, *e.g.*, *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *10-11 (S.D.N.Y. May 9, 2014) (awarding 33% of the settlement fund of

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation of Settlement (the "Stipulation"). ECF No. 117-1. Unless otherwise indicated, all emphasis is added and all internal citations and quotations marks are omitted.

$15,000,000) (collecting cases), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Lead Plaintiffs believe this request is reasonable. *See* Declarations of Giblin, Berger and Sutherland, attached to the Grunfeld Declaration as Exs. 2-4, respectively.

The time and labor Plaintiffs' Counsel expended litigating this Action for more than three years included: (a) drafting the initial complaint in the Action (ECF No. 1) and moving for the appointment of the original lead plaintiffs and Lead Counsel (ECF Nos. 8-14); (b) conducting a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, and earnings conference call transcripts, and interviewing former employees of Axsome; (c) drafting and filing a detailed 60-page Amended Complaint (ECF No. 37); (d) consulting with a damages expert to evaluate recoverable losses and an U.S. Food and Drug Administration ("FDA") regulatory expert to evaluate issues related to FDA approval; (e) researching and opposing Defendants' motion to dismiss the Amended Complaint (ECF Nos. 46-47); (f) successfully moving for the appointment of Lead Plaintiffs and re-appointment of Lead Counsel after the Court reopened the lead plaintiff appointment process (ECF Nos. 67-70); (g) successfully seeking leave to amend (ECF Nos. 73-75); (h) drafting and filing a 69-page Second Amended Complaint ("SAC") addressing the Court's loss causation concerns (ECF No. 76); (i) successfully opposing Settling Defendants' motion to dismiss the SAC (ECF Nos. 84-86, 90); (j) drafting and serving party discovery requests to Settling Defendants and responses to Settling Defendants' requests, followed by substantial written correspondence and meet-and-confer calls with counsel for Settling Defendants regarding the scope of Settling Defendants' and Plaintiffs' document productions; (k) serving and extensively pursuing third-party discovery requests from the FDA; (l) submitting a class certification pre-motion letter (ECF No. 114); (m) engaging in a

mediation process overseen by a highly experienced third-party mediator, Jed D. Melnick, Esq. of JAMS, which involved an exchange of comprehensive written submissions, a full-day formal mediation session; (n) extensive post-mediation follow up settlement discussions; (o) drafting and negotiating the terms of the Stipulation (including the exhibits thereto) (ECF No. 117-1) and Supplemental Agreement with Settling Defendants' Counsel; (p) working with a damages expert to craft a plan of allocation that treats Lead Plaintiffs and all other members of the proposed Settlement Class fairly; (q) drafting the Preliminary Approval Motion and supporting papers (ECF Nos. 115-17); (r) implementing changes to the settlement documents in accordance with the Court's instructions at the Preliminary Approval hearing (ECF No. 121); (s) overseeing Notice of the Settlement to Class Members; and (t) drafting the Motion for Final Approval and supporting papers.

Strategic Claims Services ("SCS"), the Court-appointed Claims Administrator, provided individual notice of the Settlement via e-mail, or where e-mail could not be identified or where an e-mail was returned as undeliverable, via first-class mail to each member of the Class whose address was reasonably ascertainable, and caused publication of the Summary Notice in *GlobeNewswire* on November 10, 2025. Ex. 1, Declaration of Josephine Bravata Concerning: (A) Mailing/Emailing of the Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated January 6, 2026 ("Bravata Decl."). The Notice amply described the terms of the Settlement, including the: (a) nature, history, and progress of the litigation; (b) proposed Settlement; (c) final approval hearing; (d) process to opt out of, or object to, the Settlement; (e) plan for allocating the Net Settlement Fund among Settlement Class Members; (f) maximum amount of fees and expenses to be sought by counsel and the maximum amount of compensatory awards to be sought for Lead Plaintiffs; and (g) necessary information

3

for any Settlement Class Member to find more information or examine the Court records should he or she desire to do so. The deadline for objections and requests for exclusion is January 13, 2026. Thus far, no objections or requests for exclusion have been received. Bravata Decl. ¶¶13-14.

In addition, Plaintiffs' Counsel respectfully request reimbursement of $146,553.93 for expenses that they reasonably and necessarily incurred in prosecuting this litigation.[2] Grunfeld Decl., ¶68. Moreover, these expenses were both eminently reasonable and necessary to successfully prosecute this Action over three years and to resolve the claims against Settling Defendants in a beneficial manner for the Settlement Class.

Lead Plaintiffs respectfully deserve the request for awards totaling $22,095 to compensate them for their time and service to the Settlement Class. They devoted substantial time and effort researching the facts of the case, reviewed filings, collected documents for production, conferred with Plaintiffs' Counsel about litigation and settlement strategies, were prepared to sit for a deposition and testify at trial, and conferred with and provided authorization to Plaintiffs' Counsel for the Settlement.

## II.    ARGUMENT

### A.    Plaintiffs' Counsel Should be Awarded Attorneys' Fees and Expenses from the Common Fund

The Supreme Court and Second Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472,

---

[2] The Grunfeld Declaration and exhibits are integral to this submission. The Court is respectfully referred to them for a detailed description of the factual and procedural history of the Action, the claims asserted, investigation and litigation efforts, the Settlement negotiations, and the fairness and reasonableness of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's request for an award of attorneys' fees and expenses and compensatory awards for Lead Plaintiffs.

478 (1980). This ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (Fourth) § 14.121, Westlaw (database updated Aug. 2025). "The court's authority to reimburse the representative parties…stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Wright & Miller's Federal Practice and Procedure § 1803, Westlaw (database updated Sep. 2025). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Aéropostale*, 2014 WL 1883494, at *10-11. Courts recognize that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g.*, *Aéropostale*, 2014 WL 1883494, at *10-11; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

The Supreme Court has repeatedly underscored the importance of this goal, noting that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). Courts in this Circuit have consistently adhered to these principles. *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *12 (S.D.N.Y. July 31, 2008) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to a reasonable fee – set by the

5

court – to be taken from the fund."). Moreover, the "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at \*10 (S.D.N.Y. Oct. 26, 2004). Here, the request for attorneys' fees of 30% of the Settlement Fund ($2,325,000) is reasonable in light of the work provided and the result achieved by Plaintiffs' Counsel.

**B.**      **The Court Should Award a Reasonable Percentage of the Common Fund**

The Supreme Court has held that where counsel has created a common fund, an attorneys' fee is properly determined on a percentage-of-recovery basis. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,'…a reasonable fee is based on a percentage of the fund bestowed on the class…."). The Second Circuit has echoed this call and authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See, e.g.*, *Goldberger*, 209 F.3d at 50 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) (affirming district court's conclusion that the percentage method "aligns the interests of class counsel with those of the class"). In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49; *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Moreover, this Court has consistently used the percentage method to award attorneys' fees of 30% or more in securities class action settlements. *See Stein v. Eagle Bancorp, Inc.*, 2022 WL 407367, at \*1 (S.D.N.Y. Feb. 10, 2022) (Schofield, J.) (awarding 30% of the $7,500,000 settlement); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2022 WL 3220783, at \*1 (S.D.N.Y. Aug. 5, 2022) ("*Chi. Bridge*") (Schofield, J.)

6

(awarding 33⅓% of $44,000,000 settlement); *Pilgaonkar v. Kitov Pharms. Holdings Ltd.*, No. 17-cv-00917, ECF No. 87 at 1 (S.D.N.Y. Mar. 29, 2019) (Schofield, J.) (awarding 33⅓% of $2,000,000 settlement); *Calfo v. Messina*, No. 15-cv-04010, ECF No. 184 at 1-2 (S.D.N.Y. Oct. 30, 2017) (Schofield, J.) (awarding 33⅓% of $1,650,000 settlement).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") also supports using the percentage-of-recovery method explicitly stating: "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). Some courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage method in assessing fees for securities class actions. *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007).

Given the PSLRA's language, the Supreme Court's strong support for the percentage method, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the established practice among the district courts in this Circuit, Lead Plaintiffs submit that fees should be awarded based on the percentage approach. That approach aligns the interests of counsel and the class, *see In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (Schofield, J.), and best serves "as a proxy for the market in setting counsel fees." *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001).

When awarding attorneys' fees in comparable cases based on the percentage approach, this Court often works off of a baseline percentage and cites to empirical studies of attorneys' fee awards in class action settlements, which provide "an unbiased and useful reference for comparing fee[] cases of similar magnitude as a starting point for the sliding scale." *Colgate-Palmolive*, 36 F. Supp. 3d at 349 (Schofield, J.); *Chi. Bridge*, 2022 WL 3220783, at *1 (Schofield, J.) (applying

7

baseline fee and adjusting it upward based on plaintiffs' counsel's efforts). This Court has previously relied on reports published by NERA Economic Consulting to determine the applicable baseline percentage for attorney's fees to apply. *Id.*; *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at \*3 (S.D.N.Y. Dec. 17, 2020) (Schofield, J.).

According to a recent report published by NERA Economic Consulting, for securities class action settlements settled between 2015 and 2024 with a gross settlement value ranging from $5,000,000 to $10,000,000, the median of plaintiffs' attorneys' fees as a percentage of settlement value was 30%. Edward Flores and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review," at 30 (NERA Jan. 22, 2025), attached to the Grunfeld Decl., as Ex. 9. The same was true for securities class actions settled during the 1996-2014 timeframe; the median of plaintiffs' attorneys' fees as a percentage of gross settlement value ranging from $5,000,000 to $10,000,000 was 30%. *Id*. Thus, fee awards in securities class action cases settling for between $5,000,000 to $10,000,000—like this one—have remained remarkably consistent since the passage of the PSLRA in 1995 and are wholly consistent with Plaintiffs' Counsel's fee request of 30% of the Settlement Fund. Indeed, in *Eagle Bancorp*, based on similar studies, this Court applied a 30% baseline in its fee analysis and awarded fees of 30% on a $7,500,000 settlement. *Eagle Bancorp*, 2022 WL 407367, at \*1. Further, as demonstrated below, each factor courts apply to determine the reasonableness of a fee request amply supports Plaintiffs' Counsel's request as fair and reasonable.

C. **Analysis of the Relevant Factors Confirms that the Requested Fee Is Reasonable**

The requested attorneys' fees are supported by the factors the Second Circuit identified as relevant. In *Goldberger*, the Second Circuit explained that whether a court uses the percentage-of-the-fund method or the lodestar approach, it should consider the traditional criteria that reflect a

reasonable fee in common fund cases, including: (i) the time and labor expended by counsel; (ii) the risks of the litigation; (iii) the magnitude and complexity of the litigation; (iv) the requested fee in relation to the settlement; (v) the quality of representation; and (vi) public policy considerations. 209 F.3d at 50. An analysis of these factors demonstrates that Plaintiffs' Counsel's requested fee of 30% of the Settlement Fund, or $2,325,000, plus accrued interest, is fair and reasonable.

### 1.    The Requested Fee in Relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *3 (E.D.N.Y. June 24, 2010); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, at *2 (S.D.N.Y. Nov. 29, 2018) (same).

Here, Plaintiffs' Counsel's 30% fee request is fair and reasonable for litigation of this kind as it falls well within—and often below—the range of percentages that courts in this Circuit, including this Court, have routinely awarded in similar securities class action and complex litigation settlements of this size. *See, e.g.*, *Eagle Bancorp*, 2022 WL 407367, at *1 (awarding 30% of $7,500,000 settlement); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *1, *15 (S.D.N.Y. Dec. 18, 2019) (awarding one-third of $7,500,000 settlement, and stating: "[i]n this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund"); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (finding 33% fee request of the approximate $7,700,000 settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (awarding

33⅓% of $7,500,000 settlement fund while stating: "[t]he percentage of the fund request[ed] – one-third – is a percent that has been approved as reasonable in this Circuit"); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) (awarding one-third of $8,500,000 settlement following decision on motion to dismiss, but prior to formal discovery); *Aéropostale*, 2014 WL 1883494, at *20 (awarding 33% of $15,000,000 settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding one-third of settlement and finding "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit").[3] As such, Plaintiffs' Counsel's request is in line with fees awarded in similar securities class action settlements and should be granted.

### 2.    Time and Labor Plaintiffs' Counsel Expended

Plaintiffs' Counsel have expended a substantial amount of time and effort pursuing this litigation on behalf of the Settlement Class. Since its inception over three years ago, Plaintiffs' Counsel have devoted more than 1,829 hours to this litigation for a total lodestar of $1,977,521. Grunfeld Decl., ¶66. As enumerated *supra* at § I and discussed more fully in the Grunfeld Declaration, the Settlement was only able to be reached after Plaintiffs' Counsel rigorously litigated this Action from the earliest stages through successfully opposing Settling Defendants' second motion to dismiss. Grunfeld Decl., ¶¶12-21.

---

[3] The same is true in other courts in this Circuit. *See, e.g.*, *Silverberg v. People's Bank*, 23 F. App'x 46, 48 (2d Cir. 2001) (affirming award of nearly one-third of settlement fund); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *1, *9-10 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9,250,000 settlement); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding one-third fee of $7,750,000, which was "well within the range accepted by courts in this circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund); *Collins v. Olin Corp.*, 2010 WL 1677764, at *6–7 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund).

Following the initial dismissal of this case, Plaintiffs' Counsel successfully moved to appoint new Lead Plaintiffs (ECF Nos. 67-70). Plaintiffs' Counsel proceeded to successfully seek leave to file the SAC (ECF Nos. 73-75), prepared and filed a SAC curing the loss causation deficiencies the Court identified (ECF No. 76), and successfully defeated Settling Defendants' motion to dismiss based on the falsity of their statements concerning Axsome's AXS-07 manufacturing issues and its planned AXS-07 NDA submission, scienter and loss causation (ECF Nos. 84, 86, 90). Upon defeating Settling Defendants' motion to dismiss, Plaintiffs' Counsel diligently pursued party discovery and served responses to Defendants' requests, which included substantial written correspondence and meet-and-confers with Defendants' counsel regarding the scope of party discovery. Grunfeld Decl. ¶27. Further, Plaintiffs' counsel pursued third-party discovery, including multiple meet-and-confers with the FDA and correspondence with Settling Defendants' counsel who sought to prevent or substantially curtail the FDA's production. *Id.* ¶28. Thereafter, Plaintiffs' Counsel drafted and submitted a detailed mediation statement and exhibits, participated in a full-day mediation, and negotiated the Settlement.

Moreover, the legal work on this litigation will not end with the Court's approval of the Settlement. Additional hours and resources will be expended assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion, and overseeing the distribution process. Grunfeld Decl. ¶67. No additional compensation will be sought for this work. *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (finding 33% fee award reasonable where "the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [Settlement] Class Members in submitting their Proof of Claims").

11

Throughout the litigation, Plaintiffs' Counsel's efforts focused on advancing the Action to bring about the most successful outcome for the Settlement Class, by the most efficient means possible. Accordingly, the time and effort devoted to this case by Plaintiffs' Counsel to obtain the $7,750,000 recovery confirms that the request for 30% of the Settlement Fund is reasonable.

### 3.    The Magnitude and Complexity of the Action

Courts repeatedly recognize the "notorious complexity" of securities fraud class actions like this one. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006); *Lea*, 2021 WL 5578665, at \*9 ("Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain …."); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at \*8 (D.N.J. Dec. 4, 2009) (same). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Off. Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *AOL*, 2006 WL 903236, at \*9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

This was a hard-fought, expensive, multi-year litigation, with millions of dollars of damages at stake, and it required considerable skill and resources to litigate. As detailed throughout the Grunfeld Declaration, Settling Defendants, through two rounds of motion to dismiss briefing and mediation, raised many complex issues related to loss causation and damages, and Defendants contested their liability on falsity and scienter, discussed in greater detail in the risk section below. *Infra* Section II(C)(4). Addressing these issues required substantial efforts by Lead Counsel, through detailed analysis of the factual record, intensive legal research, and extensive consultation with experts. In fact, when preparing the class certification pre-motion letter, Lead Counsel

consulted with Lead Plaintiffs' damages expert, who conducted a full class certification analysis. Grunfeld Decl. ¶30.

In addition, the magnitude of this Action is unquestionable. This was a hard-fought, expensive, multi-year litigation, with approximately one hundred of million dollars of damages at stake, and it required considerable skill and resources to litigate. Consequently, the magnitude and complexity of the litigation support the requested fee. *Aéropostale*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Risks of Litigation

In the Second Circuit, "the risk of success" is "perhaps the foremost factor to be considered in determining" a reasonable award. *Goldberger*, 209 F.3d at 54. Indeed, courts within the Second Circuit have long recognized that the risk of non-payment associated with a contingency arrangement is an important factor in determining an appropriate fee award:

> Lead Counsel undertook this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute the Action without a guarantee of compensation or even the recovery of expenses. Unlike counsel for Defendants, who is paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began, and would have received no compensation or expenses had this case not been successful.

*Aéropostale*, 2014 WL 1883494, at *14. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). Thus, it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award." *Am. Bank Note*, 127 F. Supp. 2d at 433; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("[A]ttorney's contingent fee risk is an important factor in determining the fee award.").

13

Here, Plaintiffs' Counsel pursued claims on behalf of the Settlement Class for more than three years, with no guarantee of ever being compensated for the investment of time and money that the Action would require. In undertaking this responsibility, they dedicated substantial attorney and professional resources to the prosecution of the litigation as demonstrated by the total lodestar in this action of $1,977,521. Grunfeld Decl., ¶66. Plaintiffs' Counsel also advanced over $146,553.93 dollars in out-of-pocket expenses with no guaranty that those expenses would ever be reimbursed. Grunfeld Decl., ¶68. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

Law firms handling complex contingent litigation frequently lose, whether on a motion to dismiss, class certification, or summary judgment. Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."). Even plaintiffs who succeed at trial may find their judgment overturned on appeal or on a post-trial motion.[4]

---

[4] *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 730 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81,000,000 for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Comput. Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sep. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

14

"The difficulty of establishing liability is a common risk of securities litigation." *AOL,* 2006 WL 903236, at *11. As one court has noted, an "unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001). Indeed, the high rate of dismissals in securities class actions demonstrates the risks involved as compared to the prospects for success. NERA Economic Consulting reports that the rate of dismissal in securities class actions has steadily increased over time: in 2015, a little less than half of cases filed were dismissed, whereas in 2024, approximately 57% of the cases filed were dismissed. Grunfeld Decl. Ex. 9 at 13. Lead Plaintiffs faced that considerable risk here.

While Lead Plaintiffs overcame Settling Defendants' motions to dismiss, there can be no guarantee of ultimate success. Indeed, while the Court sustained Lead Plaintiffs' claims for purposes of Settling Defendants' motion to dismiss, Settling Defendants continued to contest them through the Parties' mediation and the initial steps of discovery. Settling Defendants would inevitably raise these issues in an effort to eliminate or limit the scope of the case. For instance, while Lead Plaintiffs believe they could demonstrate that Settling Defendants made materially false and misleading statements in violation of the federal securities laws, Settling Defendants would argue at summary judgment and trial that their alleged statements and omissions were inactionable because they were not material to a reasonable investor, and because Settling Defendants publicly warned of the risks at issue or the truth was on the market. Grunfeld Decl. ¶52.

Settling Defendants would also argue that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims

15

alleged. Grunfeld Decl., ¶52. While Lead Plaintiffs strongly disagree with this assertion, had the litigation continued there is simply no guarantee that the trier of fact would have adopted Lead Plaintiffs' view of the case. Scienter, in particular, is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (similar), *aff'd*, 264 F.3d 131 (2d Cir. 2001). This case would have been no different given the multiple factors that supported scienter here on a holistic basis, even if no single factor sufficiently supported it on its own. ECF No. 90 at 17-22.

Another considerable risk Lead Plaintiffs faced is whether they could ultimately prove, in the face of vigorous opposition, that the Settlement Class was damaged by the alleged misrepresentations and the amount of those damages. At trial, this would come down to a "battle of the experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by Defendants' experts to minimize the Settlement Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267-68 (S.D.N.Y. 2012) (noting in a battle of the experts "victory is by no means assured" and the Defendants experts could sway the jury and minimize damages). Here, the Settling Defendants would likely argue that the FDA's Complete Response Letter ("CRL") with respect to the AXS-07 NDA did not reveal the specific manufacturing problems at issue and that the entire stock drop could not be attributed to the news about AXS-07 because a large portion of Axsome's stock price decline was attributable to the market's extrapolation of the news about the AXS-07 CRL to Axsome's other lead therapy at the time. Grunfeld Decl. ¶56. Thus, even if Lead Plaintiffs

16

prevailed as to liability at trial, the judgment obtained could have been only a fraction of the damages claimed.

Additionally, given the loss causation arguments asserted in their motion to dismiss and their readiness to contest the addition of new lead plaintiffs in the SAC, Settling Defendants would assuredly have aggressively contested price impact and Plaintiff-specific issues at class certification. ECF Nos. 58 at 1-2; 74; 80 at 24-25. While Lead Plaintiffs believe they had strong arguments that the Settlement Class meets the requirements for class certification, there is no guarantee that the Court would agree. *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *20 (S.D.N.Y. July 21, 2020) (emphasizing "difficult and hotly contested questions concerning class certification" while approving settlement). Therefore, there is a substantial risk that the Settlement Class would not be certified and, even if it were certified, it could have been decertified at a later stage of the proceedings. Grunfeld Decl., ¶57. Given all these significant ongoing risks Lead Plaintiffs faced, the litigation could have been extended for years and might have led to a smaller recovery or no recovery at all had the parties not reached this settlement.

Finally, even if Lead Plaintiffs overcame all these significant risks and prevailed at trial, such a victory would not have guaranteed the Settlement Class an ultimate recovery larger than the $7,750,000 Settlement. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion and remanding for a new trial); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following jury verdict favoring plaintiffs on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard*, 688 F.3d at 730. Accordingly, this factor demonstrates that the requested 30% fee is reasonable and fair.

17

**5.    The Settling Parties Were Represented by Experienced, High-Caliber Counsel**

The result achieved and the quality of the services provided are also important factors for courts to consider in determining reasonable attorneys' fees under a percentage-of-fund analysis. *Goldberger*, 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748 (S.D.N.Y. 1985). Despite the significant risk to recovery in this Action, Plaintiffs' Counsel successfully obtained a substantial $7,750,000 cash settlement for the Settlement Class. This represents approximately 7.9% of estimated ***maximum*** recoverable damages, above the median recovery in similarly sized securities class actions. For settlements with alleged damages between $75,000,000 and $149,000,000, the average settlement recovery of damages was 7.3% between 2015 and 2023, and 7.5% in 2024. Grunfeld Decl. Ex. 8 (Cornerstone Research Report). Moreover, the Settlement Amount represents an even higher percentage of maximum damages if Settling Defendants were to successfully argue that the entire stock drop from the single corrective disclosure at issue cannot be attributed to news regarding AXS-07, but rather and that a large portion of Axsome's stock price decline was attributable to the market's extrapolation of the news about the AXS-07 CRL to Axsome's other lead therapy at the time. For example, if half of the stock drop is not attributable to damages in this action, the Settlement Amount would represent approximately 15.8% of actual recoverable damages, far exceeding the average recovery in similar cases.

The experience of counsel is also relevant in determining fair compensation. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir. 1974); *Eltman v. Grandma Lee's, Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). As the firm resumes demonstrate, Pomerantz and Rosen have extensive experience in securities litigation. Grunfeld Decl., Exs. C to Exs. 5-6. They

18

successfully leveraged this experience and their resources to effectively advance the Action and successfully negotiate the Settlement.

The quality and vigor of opposing counsel also matters. *Warner Commc'ns*, 618 F. Supp. at 749. This litigation was vigorously contested by experienced and qualified attorneys from Morgan, Lewis & Bockius LLP. Grunfeld Decl. ¶74. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (settlements "obtained from defendants represented by formidable opposing counsel … evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). "[N]otwithstanding this formidable opposition, Lead Counsel was able to develop Lead Plaintiff's case so as to resolve the litigation on terms favorably to the Class." *Aéropostale*, 2014 WL 1883494, at *17. The fact that Plaintiffs' Counsel achieved the Settlement for the Settlement Class in the face of high-quality legal opposition further evidences the quality of their efforts. *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010).

The Settlement Class Members' positive reaction confirms the quality of Plaintiffs' Counsel's representation. To date, no Settlement Class Members have objected to the Settlement or requested exclusion from the Settlement Class. Grunfeld Decl., ¶81; *Silverstein v. AllianceBernstein, L.P.*, 2013 WL 7122612, at *9 (S.D.N.Y. Dec. 20, 2013) (33 1/3% fee request supported where "No Class Member objected" to the request). That such a positive reaction followed the emailing and mailing of over 75,000 Notices constitutes powerful support for the requested awards.

### 6.    Public Policy Considerations: Private Securities Suits Are an "Essential Supplement" to Criminal Prosecution and Civil Enforcement

"Congress, the Executive Branch, and [the Supreme] Court…have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007)); *Bateman*, 472 U.S. at 310 (emphasizing that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action"). The federal securities laws are remedial in nature and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).[5]

Courts in this District recognize the strong public policy in favor of attorneys' fee awards in order to encourage securities-fraud class actions. *See, e.g.*, *Hicks v. Stanley*, 2005 WL 2757792, at \*9 (S.D.N.Y. Oct. 24, 2005); *In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial … it is necessary to provide appropriate financial incentives."). This factor therefore also weighs in favor of the requested fee.

---

[5] *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) (Emphasizing the significance of protecting investors and that "[a] large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").

### 7.    A Lodestar Cross-Check Confirms That the Requested Attorneys' Fees are Reasonable

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers. Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie*, 166 F.3d at 460. Thus, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar." *Comverse Tech.*, 2010 WL 2653354, at *5.

Here, Plaintiffs' Counsel collectively devoted a total of 1,829.88 hours to the prosecution of this Action, resulting in a lodestar of $1,977,521. Grunfeld Decl. ¶66. Based on a 30% fee (equal to $2,325,000), Plaintiffs' Counsel's lodestar yields a multiplier of 1.18. This multiplier is well below the range of multipliers commonly awarded in securities class actions and other complex litigation, including by courts in this District, even further supporting the requested attorneys' fees. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 369 (awarding 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Merrill Lynch & Co., Inc. Sec., Deriv. and ERISA Litig.*, No. 07-cv-09633 (S.D.N.Y.), ECF No. 256 at 2, ECF No. 272 ¶12 (awarding multiplier of 2.8); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (upholding multiplier of 3.5 as reasonable on appeal); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding 2.99 multiplier "falls well within the

21

parameters set in this district and elsewhere"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding multiplier of 4.7); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding multiplier of 5.3, which was "not atypical" in similar cases); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 in light of an early settlement).[6]

In sum, Plaintiffs' Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar. Moreover, as discussed above, each *Goldberger* factor supports a finding that the requested fee is reasonable.

### D.    Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Plaintiffs' Counsel also request reimbursement of $146,553.93 in expenses incurred while prosecuting the Action, which is less than the $250,000 maximum provided for in the Notice. In support of this request, Plaintiffs' Counsel are submitting separate declarations categorizing and attesting to the accuracy of these expenses, which are properly recovered by counsel. *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be

---

[6] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *8 (S.D.N.Y. Sep. 4, 2013) (stating that courts routinely award lodestar multipliers of "between four and five"); *Interpublic*, 2004 WL 2397190, at *12 ("[M]ultipliers of between 3 and 4.5 have been common in federal securities cases."); *Guevoura Fund Ltd.*, 2019 WL 6889901, at *18 (similar); *Colgate-Palmolive*, 36 F. Supp. 3d at 353 (awarding multiplier of 5.2, which was "large, but not unreasonable"); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding 33.3% fee award "reasonable" based on cross-check multiplier of 4.75).

compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.").

A significant portion of the expenses were incurred for professional services rendered by Lead Plaintiffs' experts, the investigator, and the mediator, and the remaining expenses are attributable to the legal and factual research, travel, press releases, service of process, and other expenses incurred in the course of the litigation. Grunfeld Decl., ¶68. These expenses were critical to Lead Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. *Signet Jewelers*, 2020 WL 4196468, at *22. As such, they should be reimbursed. *Flag Telecom*, 2010 WL 4537550, at *30; *Glob.*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys" and are "properly chargeable to the Settlement fund").

### E.    The Proposed Compensatory Awards to Lead Plaintiffs are Reasonable

The PSLRA expressly permits Lead Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]." 15 U.S.C. § 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011). In accordance with the PSLRA and their inherent powers, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives. *See, e.g.*, *Alaska Elec. Pension Fund*, 2018 WL 6250657, at *4 (awarding $50,000 to each of six named plaintiffs and $100,000 each to two others, finding that "the considerable effort expended by the

23

named Plaintiffs to assist in the litigation renders the incentive awards requested by lead counsel appropriate" and that "in the aggregate they amount to a miniscule portion of the settlement fund"); *In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2013 WL 12091355, at *2 (S.D.N.Y. Apr. 8, 2013) (awarding $259,610 to one plaintiff and $125,688 to a second plaintiff), *aff'd*, 772 F.3d 125 (2d Cir. 2014); *Pa. Pub. Sch. Emps' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (awarding $130,323 to lead plaintiff); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5,500,000 settlement and characterizing such awards as "routine[]"). Lead Plaintiffs' requested awards are also appropriate in light of their relationship to "the amounts recovered by absent class members under the settlement." *Metlife*, 689 F. Supp. 2d at 370.

Here, Lead Plaintiffs at all times diligently and capably represented the best interests of the Settlement Class and awards reflecting this effort of $7,875 to Giblin, $7,500 to Berger, and $6,720 to Sutherland. As detailed in Lead Plaintiffs' Declarations, Lead Plaintiffs have been committed to pursuing the Settlement Class's claims over the past two years—and have taken an active and diligent role in so doing. Among other things, Lead Plaintiffs: (a) reviewed the key pleadings and briefing filed in the Action; (b) regularly consulted with Plaintiffs' Counsel regarding the progress of and strategy for the case; (c) compiled their trading data and completed their certifications in connection with their motion to be appointed Lead Plaintiffs; (d) responded in writing to Defendants' First Set of Document Requests and First Set of Interrogatories; (e) collected their documents to produce in response to those requests; (f) conferred with Plaintiffs' Counsel regarding the mediations and settlement negotiations; and (g) evaluated and approved the proposed Settlement and the plan of allocation. Grunfeld Decl. Exs. 2-4. These efforts provided a significant benefit to the Settlement Class and are "precisely the types of activities that support awarding

24

reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). Berger estimates that he devoted 60 hours total to these tasks. Giblin estimates that he devoted 35 hours total to these tasks. Sutherland estimates that he devoted 40 hours total to these tasks. Grunfeld Decl. Exs. 2-4.

Lead Plaintiffs and Plaintiffs' Counsel submit that the relatively modest request of awards amounting in the aggregate of $22,095 to compensate the Settlement Class Representatives in this Action for their time and service to the Settlement Class throughout the life of this case is reasonable and should be granted. The amount of these requested awards are consistent with other awards issued by this Court. *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, No. 17-cv-01580, ECF No. 444 at 5 (S.D.N.Y. Aug. 2, 2022) (Schofield, J.) (awarding $60,000, $25,000 and $20,000 to lead plaintiffs); *In re Delcath Sys., Inc. Sec. Litig.*, No. 13-cv-3116, ECF No. 141 at 9 (S.D.N.Y. Oct. 22, 2015) (Schofield, J.) (awarding $12,500 to each lead plaintiff for their "reasonable costs and expenses directly relating to the representation of the Class"); *Eagle Bancorp*, 2022 WL 407367, at *2 (Schofield, J.) (awarding $7,500 to lead plaintiff). Importantly, these awards also fall within the noticed cap of $30,000, to which no Settlement Class Members have objected. Grunfeld Decl. ¶83.

## III.    TIMING OF PAYMENTS

Lead Counsel respectfully submits that all attorneys' fees and expenses, plus accrued interest, should be awarded upon approval of the Settlement. As discussed above, the Settlement was a highly favorable result for the Settlement Class, and securing such a recovery required substantial time and effort, particularly since this action has been heavily litigated since 2022.

Moreover, the immediate payment of attorney's fees to class counsel upon settlement approval (referred to as "quick pay") is common and "does not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless

of when the attorneys get paid." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) (quoting *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016)); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *14 n.14 (E.D.N.Y. Jan. 21, 2022) (approving quick pay provision where "the claims administrator is tasked with distributing the fund to approved claimants" and "the Court will retain jurisdiction over any disputes arising out of the administration of the settlement fund"); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *13 n.12 (E.D.N.Y. Jan. 4, 2024) (same); Brian T. Fitzpatrick, *The End of Objector Blackmail*?, 62 Vand. L. Rev. 1623, 1643 (2009) (finding that over one third of federal class action settlement agreements in 2006 included quick-pay provisions).

Furthermore, there should be no concern of delay in the distribution of the Net Settlement Fund to the Settlement Class. SCS has a reputation for being careful and identifying fraudulent claims. Grunfeld Decl., Ex. 1, ¶1. Lead Counsel and SCS will use their best efforts to ensure the claims review process is diligent, however, the timing of how long this process will take is not fully in Lead Counsel's and SCS's control because there may be deficient claims that take longer than anticipated to cure and it is important to ensure that all valid claimants are able to participate in the Settlement. As such, Lead Counsel will file a status update with the Court on July 1, 2026 (approximately five months from the February 3, 2026 claim-filing deadline) if it has not made a motion for distribution of the Settlement Fund by that time.

If the Court decides that a portion of Plaintiffs' Counsel's attorneys' fees should not be paid until a distribution is made to the Settlement Class, Plaintiffs' Counsel respectfully requests that the Court approve payment of three quarters of the fee award and reimbursement of all litigation expenses upon final approval of the Settlement, with the other quarter of the fee payable to Plaintiffs' Counsel upon the first distribution to the Settlement Class. This Court approved a similar

schedule in *City of Birmingham*, 2020 WL 7413926, at *5 (Schofield, J.). This distribution is appropriate here given Plaintiffs' Counsel's extensive efforts in the litigation since 2022 without any payment, which included partaking in multiple lead plaintiff appointment processes, briefing two rounds of motions to dismiss, engaging with an expert who performed extensive analysis in support of Plaintiffs' pre-motion letter in support of class certification, and zealously pursuing discovery from defendants and third parties. Further, additional time will be expended after the submission of this motion for which Plaintiffs' Counsel will not seek additional attorneys' fees.

## IV.    CONCLUSION

As Lead Counsel's efforts resulted in a very favorable result for the Settlement Class, they respectfully request that the Court: (a) award attorneys' fees of 30% of the gross Settlement Fund, plus interest; (b) reimburse Litigation Expenses of $146,553.93, plus interest; and (c) grant awards to Lead Plaintiffs totaling $22,095.

Dated: January 6, 2026

Respectfully Submitted,

**POMERANTZ LLP**

By: */s/ Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
Brandon M. Cordovi
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        mgrunfeld@pomlaw.com
        bcordovi@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**
Jacob Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: 215-600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com

Erica L. Stone
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: estone@rosenlegal.com

*Co-Lead Counsel for Lead Plaintiffs Thomas Giblin, Paul Berger, and Paul Sutherland*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Thomas Giblin*

**PASKOWITZ LAW FIRM P.C**
Laurence D. Paskowitz (LP-7324)
97-45 Queens Boulevard
Suite 1202
Rego Park, New York 11374
Telephone: (212) 685-0969
lpaskowitz@pasklaw.com

*Additional Counsel for Lead Plaintiff Paul Berger, for himself and as sole trustee of the Paul Berger Revocable Trust*

## WORD COUNT CERTIFICATE

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing document contains 8,740 words, excluding the exempted portions, and that it complies with the appliable word count limitation.


*/s/ Michael Grunfeld___*
Michael Grunfeld

29