**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE AXSOME THERAPEUTICS, INC.
SECURITIES LITIGATION

Case No.: 1:22-cv-3925-LGS

---

**DECLARATION OF MICHAEL GRUNFELD**
**IN SUPPORT OF LEAD PLAINTIFFS' MOTIONS FOR (I) FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND (II) FOR AN AWARD OF ATTORNEYS' FEES,**
**REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS**
**TO LEAD PLAINTIFFS**

I, Michael Grunfeld, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a Partner of the law firm of Pomerantz LLP ("Pomerantz"), which, together with The Rosen Law Firm, P.A. ("Rosen Law"), is court-appointed Lead Counsel for Lead Plaintiffs Thomas Giblin, Paul Berger, for himself and as sole trustee of the Paul Berger Revocable Trust, and Paul Sutherland (collectively, "Lead Plaintiffs") and the proposed Settlement Class.[1] I am admitted to practice before this Court. I respectfully submit this declaration in support of Lead Plaintiffs' Motions for (I) Final Approval of Class Action Settlement (the "Final Approval Motion"), and (II) for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Lead Plaintiffs (the "Fee Motion"). I have personal knowledge of the matters testified to herein.

2.      I have been actively involved in all aspects of the prosecution and resolution of the Action, am familiar with its proceedings, and have personal knowledge of the matters set forth

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation of Settlement, fully executed on September 19, 2025 (the "Stipulation"). ECF No. 117-1.

herein based upon my supervision and participation in all material aspects of the Action, and if called as a witness, could and would testify competently thereto.

3.      This Declaration and/or the accompanying memoranda of law discuss several documents, true and correct copies of which are attached as Exhibits hereto as follows:

| | |
|---|---|
| **Exhibit 1** | Declaration of Josephine Bravata Concerning: (A) Mailing/Emailing of the Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| **Exhibit 2** | Declaration of Thomas Giblin |
| **Exhibit 3** | Declaration of Paul Berger |
| **Exhibit 4** | Declaration of Paul Sutherland |
| **Exhibit 5** | Declaration of Michael Grunfeld on Behalf of Pomerantz LLP in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Lead Plaintiffs, which has three exhibits (A-C) of its own. |
| **Exhibit 6** | Declaration of Erica L. Stone on Behalf of The Rosen Law Firm, P.A. in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Lead Plaintiffs, which has three exhibits (A-C) of its own. |
| **Exhibit 7** | Declaration of Laurence D. Paskowitz on Behalf of the Paskowitz Law Firm P.C. in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Lead Plaintiffs, which has one exhibit (A) of its own |
| **Exhibit 8** | Excerpts from a report by Cornerstone Research, authored by Laarni Bulan and Eric Tam, and titled *2024 Review & Analysis, Securities Class Action Settlements* (2025). |
| **Exhibit 9** | Excerpts from a report by NERA Economic Consulting, authored by Edward Flores and Svetlana Starykh, and titled *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (2025) |

## I.    PRELIMINARY STATEMENT

4.      The proposed Settlement now before the Court resolves claims against the Settling Defendants[2] in the Action in exchange for a cash payment of $7,750,000. As detailed herein, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement represents a very favorable result for the Settlement Class in light of the significant risks of continuing to litigate the Action.

5.      This litigation has been pending for more than three years.  The Settlement was achieved only after Lead Plaintiffs and Lead Counsel, *inter alia,* as detailed herein:

(i)      drafted the initial complaint in the Action (ECF No. 1) and moved for the appointment of the original lead plaintiffs and Lead Counsel (ECF Nos. 8-14);

(ii)     conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, and earnings conference call transcripts, and interviewing former employees of Axsome;

(iii)    drafted and filed a detailed 60-page Amended Complaint (ECF No. 37);

(iv)     consulted with a damages expert to evaluate recoverable losses and an U.S. Food and Drug Administration ("FDA") regulatory expert to evaluate issues related to FDA approval;

(v)      researched and opposed Defendants' motion to dismiss the Amended Complaint (ECF Nos. 46-47);

(vi)     moved for the appointment of Lead Plaintiffs and re-appointment of Lead Counsel after the Court reopened the lead plaintiff appointment process (ECF Nos. 67-70);

(vii)    sought leave to amend (ECF Nos. 73-75);

---

[2] Settling Defendants are Axsome Therapeutics, Inc. ("Axsome"), Herriot Tabuteau ("Tabuteau"), and Mark Jacobson ("Jacobson") (collectively, "Settling Defendants"). Defendants are the Settling Defendants and Defendants Nick Pizzie ("Pizzie"), Cedric O'Gorman ("O'Gorman"), and Kevin Laliberte ("Laliberte") who were previously defendants in this action, but were dismissed from the case (collectively, "Defendants").

(viii)   drafted and filed a 69-page the operative Second Amended Complaint ("SAC") that addressed the Court's loss causation concerns (ECF No. 76),

(ix)   opposed Defendants' motion to dismiss the SAC and successfully opposed Settling Defendants' motion to dismiss the SAC (ECF Nos. 84-86, 90);

(x)   drafted and served party discovery requests to Settling Defendants and responses to Settling Defendants' requests, including initial disclosures, requests for production of documents, and interrogatories, followed by substantial written correspondence and meet-and-confer calls with counsel for Settling Defendants regarding the scope of Settling Defendants' and Lead Plaintiffs' document productions;

(xi)   served and extensively pursued third-party discovery requests from the FDA;

(xii)   engaged a market efficiency expert and submitted a class certification pre-motion letter incorporating that expert analysis (ECF No. 114);

(xiii)   engaged in the mediation process overseen by a highly experienced third-party mediator, Jed D. Melnick, Esq. of JAMS, which involved an exchange of comprehensive written submissions, a full-day formal mediation session; and

(xiv)   participated in extensive post-mediation follow up settlement discussions.

6.   On September 19, 2025, Lead Plaintiffs filed the Stipulation (ECF No. 117-1) and the Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 115), seeking preliminary approval of the Settlement and approval of the form and method of notifying Settlement Class Members of the Settlement and their rights to exclude themselves from the Settlement Class, to file a claim for a portion of the Net Settlement Fund, and/or to object to the Settlement, the Plan of Allocation, and/or any request for attorneys' fees, expenses, and compensatory awards to Lead Plaintiffs.

7.   After a hearing held on October 21, 2025, the Court preliminarily approved the Settlement on October 27, 2025, preliminarily finding that it would "likely be able to approve the Settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2),

subject to further consideration at the Settlement Hearing." (ECF No. 122 (the "Preliminary Approval Order"), at 2).

8.    As Lead Plaintiffs and Lead Counsel stated in support of the Preliminary Approval Motion, they believe that the Settlement is in the best interests of the Settlement Class. Due to their efforts, Lead Plaintiffs and Lead Counsel are well-informed about the strengths and weaknesses of the claims and defenses in the Action. The Settlement was achieved in the face of vigorous opposition by Settling Defendants who would have continued to raise numerous challenging defenses. For example, Defendants have already raised arguments regarding key elements of Lead Plaintiffs' claims, including falsity, materiality, scienter, loss causation, and damages. Settling Defendants would surely raise these same issues at later stages of this Action if the Parties were to continue litigating. Were a jury to support Settling Defendants' position on any element, Lead Plaintiffs and Settlement Class Members could recover nothing. Relatedly, Settling Defendants would likely argue that damages are far less significant than Lead Plaintiffs claim. Issues relating to loss causation and damages would likely have come down to an inherently unpredictable and hotly disputed "battle of the experts," with Settling Defendants' experts opining, among other things, that Lead Plaintiffs' expert(s) overstated damages and failed to account for other factors that may have caused the price of Axsome's common stock to decline.

9.    The proposed Plan of Allocation of the Net Settlement Fund is fair and reasonable. As discussed below, the Plan of Allocation was developed with the assistance of Lead Plaintiffs' damages expert and provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on their losses attributable to the alleged securities law violations.

10.     For the reasons set forth below and in the accompanying memoranda and declarations, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval of the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

11.     In addition, Lead Counsel seeks an award of attorneys' fees to Plaintiffs' Counsel[3] in the amount of 30% of the Settlement Amount (plus interest thereon), reimbursement of Litigation Expenses, and compensatory awards to Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Lead Plaintiffs and Lead Counsel believe that the requested attorneys' fees, Litigation Expenses, and awards to Lead Plaintiffs are fair and reasonable in light of the extent and quality of the work performed as well as the substantial result achieved.

## II.     PROCEDURAL HISTORY

### A.     Commencement of the Action and the Initial Appointment of Lead Plaintiffs and Lead Counsel

12.     On May 13, 2022, Evy Gru ("Gru") commenced this Action, styled *Evy Gru v. Axsome Therapeutics, Inc., et al.*, Case No. 1:22-cv-03925 (S.D.N.Y.). The Court appointed Gru and Santoshanand Thakkar ("Thakkar") as lead plaintiffs in the Action and Pomerantz and Rosen Law as Lead Counsel for the putative class. (ECF No. 28).

### B.     The Amended Complaint and Defendants' First Motion to Dismiss

13.     Once Lead Counsel was appointed, counsel engaged in a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Axsome's regulatory filings, (b) public reports and announcements,

---

[3] Lead Counsel together with The Schall Law Firm and Paskowitz Law Firm P.C. ("Paskowitz Law") are referenced herein as "Plaintiffs' Counsel."

research reports prepared by analysts, and news articles concerning Defendants, and (c) other publicly available material related to Defendants; and (2) conducting an extensive investigation (with the aid of a private investigator) that involved, *inter alia*, numerous interviews of former Axsome employees. To further understand the magnitude of the damages and evaluate loss causation, Lead Counsel consulted with experts.

14.    On October 7, 2022, lead plaintiffs Gru and Thakkar filed the Amended Complaint. (ECF No. 37). The Amended Complaint asserted claims against Defendants under Section 10(b) of the Securities Exchange of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. The Amended Complaint alleged, among other things, that during the initial class period (from December 30, 2019 to April 22, 2022), Defendants made false and misleading statements concerning Axsome's AXS-07 manufacturing capabilities and its planned NDA submission for AXS-07 NDA. The Amended Complaint also alleged that Axsome's stock price was artificially inflated as a result of these allegedly false and misleading statements and that it declined when the truth was revealed.

15.    On December 16, 2022, Defendants moved to dismiss the Amended Complaint, which was fully briefed on February 7, 2023. (ECF Nos. 41-43, 46-47, 52-54).

16.    While the motion to dismiss was pending, on January 11, 2023, Thakkar requested to withdraw from this action as a lead plaintiff, which the Court granted on January 18, 2023. (ECF Nos. 44, 49).

17.    On September 25, 2023, the Court dismissed the Amended Complaint solely on the grounds that lead plaintiff Gru did not adequately plead loss causation because, "having long since sold his shares," Gru did not "dispute that the fraud revealed through [the] April 2022 'corrective disclosure' caused him no loss" and the alleged November 2020 partial corrective disclosure "was

7

not 'corrective.'" (ECF No. 56 at 10, 12). The Court, however, granted lead plaintiff Gru permission to move for leave to file a proposed second amended complaint. *Id.* at 12-13.

## C.    Reopening of the Lead Plaintiff Appointment Process

18.    After reviewing the motion to dismiss order, Lead Counsel determined that they were unable to rehabilitate Gru's claims. (ECF No. 57). Accordingly, the proposed Second Amended Complaint sought to add new plaintiffs to address the Court's Order regarding loss causation. *Id.* Following Berger's request, the Court reopened the lead plaintiff appointment process. During the reopening of the lead plaintiff appointment process, Lead Counsel moved for Giblin, Berger, and Sutherland to be appointed as lead plaintiffs. (ECF Nos. 60, 62-70). On January 22, 2024, the Court appointed Giblin, Berger, and Sutherland as Lead Plaintiffs in the Action and Pomerantz and Rosen Law as Lead Counsel. (ECF No. 72).

## D.    Request for Leave to File the Second Amended Complaint, the Second Amended Complaint, and Motions to Dismiss in Response

19.    On January 26, 2024, Lead Plaintiffs sought leave to file a SAC on the basis that the amendments adequately cured the loss causation deficiencies identified in the Court's order. (ECF No. 73). Despite Defendants' opposition (ECF No. 74), on February 6, 2024, the Court granted Lead Plaintiffs' request for leave to file the SAC (ECF No. 75).

20.    Pursuant to the February 6, 2024 Order, Lead Plaintiffs filed the SAC on February 7, 2024. (ECF No. 76). On March 11, 2024, Defendants filed motions to dismiss the SAC. (ECF Nos.79-83). Lead Plaintiffs filed their oppositions to Defendants' motions on April 11, 2024. (ECF Nos. 84-86). Defendants filed their replies in further support of their motions on May 1, 2024. (ECF Nos. 87-88).

21.    In an Order dated March 31, 2025, the Court largely denied Defendants' motions to dismiss the SAC as to the Settling Defendants and granted them as to Defendants Laliberte,

O'Gorman, and Pizzie. (ECF No. 90 ("Motion to Dismiss Decision")). In denying Settling Defendants' motion, the Court held that Lead Plaintiffs adequately alleged (1) that Settling Defendants, O'Gorman and Pizzie made materially false and misleading statements concerning Axsome's AXS-07 manufacturing capabilities and its planned AXS-07 NDA submission, (2) a strong inference of scienter against the Settling Defendants, and (3) loss causation. *Id.* The Court, however, dismissed Lead Plaintiffs' claims against Defendant Laliberte for failure to allege material misstatements or omissions by him and against Defendants O'Gorman and Pizzie for failure to allege scienter. *Id.*

22.    On June 30, 2025, Settling Defendants filed their Answer to the SAC. (ECF No. 110).

### E.    Additional Litigation, Discovery Commences

23.    On April 22, 2025, the Parties attended a Pretrial Conference where the Court discussed the proposed civil case management plan and scheduling order the Parties filed on April 16, 2025 (ECF No. 92) as well as anticipated motions for class certification.

24.    On April 30, 2025, the Parties submitted a letter regarding a schedule for Lead Plaintiffs' class certification motion (ECF No. 95), which the Court endorsed on May 2, 2025 (ECF No. 96).

25.    On May 2, 2025, the Court also entered the Civil Case Management Plan and Scheduling Order (ECF No. 97).

26.    On May 19, 2025, the Parties requested that certain deadlines be adjourned to allow the Parties to explore private mediation (ECF No. 98). The Court agreed to adjourn certain of the requested deadlines but not others. (ECF No. 99).

27.    Meanwhile, the Parties began discovery with the exchange of Initial Disclosures on May 2, 2025. The Parties also served upon each other requests for production of documents and

interrogatories, as well as responses and objections to these discovery requests. Counsel for the Parties then exchanged substantial written correspondence and engaged in lengthy meet and confer discussions regarding the scope of party discovery.

28.     Lead Plaintiffs also served a third-party subpoena on the FDA. In pursuit of this third-party discovery, Lead Counsel engaged in multiple meet and confer discussions with the FDA concerning its production and corresponded with Settling Defendants' counsel, who sought to prevent or substantially curtail the FDA's production.

29.     As the case proceeded into discovery, Lead Counsel also consulted with an expert in FDA regulatory approval, who they also consulted with earlier in the litigation, to advise on litigation strategy and in preparation for expert discovery.

30.     Pursuant to the Court's scheduling orders (ECF Nos. 96, 101), on August 18, 2025, Lead Plaintiffs filed a pre-motion letter in support of a motion for class certification (ECF No. 114). While preparing the class certification pre-motion letter, Lead Counsel consulted with Lead Plaintiffs' expert, who conducted a full analysis of market efficiency for class certification purposes.

## III.    SETTLEMENT NEGOTIATIONS AND THE SETTLEMENT'S PRELIMNARY APPROVAL

### A.    The Parties Negotiate the Settlement

31.     On July 31, 2025, the Parties participated in a full-day, in-person private mediation with Jed D. Melnick, Esq., an experienced mediator at JAMS. Prior to the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits that addressed issues related to liability, class certification, loss causation, and damages. In response to Defendants' mediation submissions, Lead Plaintiffs also consulted with their expert in FDA regulatory approval in order to have fully informed discussions.

32.     Although the Parties did not reach agreement at the mediation, settlement discussions continued through Mr. Melnick. Eventually, the Parties reached an agreement in principle to settle the Action, accepting Mr. Melnick's mediator's proposal of a payment of $7.75 million for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers.

33.     On August 15, 2025, the Parties notified the Court that they had reached a settlement in principle to resolve the Action. The Parties informed the Court that they would file a motion for preliminary approval by September 19, 2025. The Parties executed a term sheet on August 28, 2025.

### B.     The Court Preliminarily Approves the Settlement.

34.     On September 19, 2025, Lead Plaintiffs filed the Stipulation (including the exhibits thereto) (ECF No. 117-1) as well as the Preliminary Approval Motion, supported by a memorandum of law and declaration (ECF Nos. 115-17).

35.     On the same day, the Parties also entered into a Supplemental Agreement, which was provided to the Court for *in camera* review prior to its granting of preliminary approval. The Supplemental Agreement provides Axsome with the option to terminate the Settlement if the number of Settlement Class Members requesting exclusion from the Settlement Class exceeds a certain threshold.

36.     On October 21, 2025, the Court held a hearing regarding the Preliminary Approval Motion. At the hearing, the Court requested modifications to the proposed preliminary approval order, Long Notice, and Summary Notice. Lead Plaintiffs filed these updated documents, in clean and redline formats, on October 24, 2025. (ECF No. 121).

37.     On October 27, 2025, the Court, finding that it would likely be able to approve the Settlement, entered the Preliminary Approval Order, and approved Strategic Claims Services

("SCS" or the "Claims Administrator") as the claims administrator (ECF No. 122). The Court further approved the form, substance and requirements of the Long Notice, Claim Form, Summary Notice, and Postcard Notice as well as the Parties' proposed plan for providing notice to the Settlement Class. The Court found the proposed notice plan as: (a) constituting the best notice to Settlement Class Members practicable under the circumstances; (b) reasonably calculated, under the circumstances, to describe the terms and effect of the Settlement and to apprise Settlement Class Members of their right to object to the proposed Settlement or to exclude themselves from the Settlement Class; (c) reasonable and constituting due, adequate, and sufficient notice to all Persons entitled to receive such notice; and (d) satisfying all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA, and the Rules of this Court. Preliminary Approval Order ¶7.

## IV.    LEAD PLAINTIFFS ISSUE NOTICE TO THE SETTLEMENT CLASS PURSUANT TO THE PRELIMINARY APPROVAL ORDER

38.    The Preliminary Approval Order directed SCS, under Lead Counsel's direction, to: (i) post the Long Notice and Claim Form on the website for the Settlement; (ii) email links to the Long Notice and Claim Form to Settlement Class Members for whom SCS is able to obtain email address with reasonable effort; (iii) mail the Postcard Notice to Settlement Class Members who SCS could identify with reasonable effort; and (iv) publish the Summary Notice once in *GlobeNewswire*. Preliminary Approval Order ¶¶13, 16.

39.    The Court set a Settlement Hearing for February 10, 2026 at 2:30 p.m. Preliminary Approval Order ¶5. The Court also set a deadline of January 13, 2026 (28 calendar days prior to the Settlement Hearing) for Settlement Class Members to: (i) request exclusion from the Settlement Class; or (ii) submit objections to the Settlement, the Plan of Allocation, and/or the Fee

Motion or to request exclusion from the Settlement Class. *Id.* ¶¶20, 24. The deadline to submit a Claim is February 3, 2026. *Id.* ¶17(a).

40.     The Court-approved Notice disclosed, among other things, the following information to Settlement Class Members: (a) a summary of the Settlement, including the $7,750,00 Settlement Amount; (b) that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount plus interest, reimbursement of actual expenses up to $250,000, and compensatory awards to Lead Plaintiffs of up to $30,000 in total; (c) the details of the Plan of Allocation; (d) that any Settlement Class Member could object to any aspect of the Settlement including the requested attorneys' fees, reimbursement of the litigation expenses and Award to Lead Plaintiffs; (e) an explanation of the reasons for the Settlement; (f) that requests for exclusion from the Settlement must be submitted to the Claims Administrator no later than January 13, 2026; (g) that objections to the Settlement, the Plan of Allocation, and/or the Fee Motion must be served on the Claims Administrator and counsel no later than January 13, 2026; and (h) that the deadline for submitting a Claim Form is February 3, 2026. The Notice is attached as Exhibit A to the Declaration of Josephine Bravata Concerning: (A) Mailing/Emailing of the Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl."), which is itself attached as Exhibit 1 hereto.

41.     To disseminate notice, by November 10, 2025, SCS mailed a copy of the Postcard Notice to the five individuals or organizations identified in the transfer agent records provided to Claims Administrator by Defendants. *See* Bravata Decl. ¶6. On November 7, 2025, SCS also sent the Long Notice and Claim Form to the Depository Trust Company ("DTC") to publish on its Legal Notice System ("LENS"). *Id.* ¶3. LENS provides DTC participants the ability to search and

download legal notices as well as receive email alerts based on particular notices or particular CUSIPs once a legal notice is posted. *Id*.

42.    On November 7, 2025, SCS also mailed or emailed a letter to the 2,462 nominees in a proprietary list that it maintains of banks, brokerage companies, mutual funds, insurance companies, pension funds, and money managers. *Id*. ¶4. Nominees were requested to, within ten (10) calendar days, either: (a) request from SCS sufficient copies of the Postcard Notice to send to each of their customers who may be beneficial purchasers/owners, and within ten (10) calendar days after receipt of the copies of the Postcard Notice, mail them to such beneficial owners or email the link to the Long Notice and Claim Form to its clients who may be beneficial purchasers/owners of Axsome common stock; or (b) provide SCS with a list of the names, mailing addresses, and email addresses, to the extent email addresses were available, of such beneficial purchasers/owners so that SCS could promptly either mail the Postcard Notice or email the links to the Long Notice and Claim Form on the Settlement Website directly to them. *Id*.

43.    SCS received additional names and addresses of potential Settlement Class Members, additional names and email addresses of potential Settlement Class Members, requests to send Postcard notices to additional potential Settlement Class Members, and notification from other nominees that they had mailed Postcard Notices to their clients who were potential Settlement Class Members. *Id*. ¶¶6-7.

44.    To date, SCS and nominees have mailed 20,722 copies of the Postcard Notice and emailed 54,314 links of the Long Notice and Claim Form to potential Settlement Class Members. *Id.* ¶¶6-7.

45.     On November 10, 2025 in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be published over *GlobeNewswire*. *Id.* ¶10; *see also id.*, Ex. D to Bravata Declaration (confirmation of publication).

46.     Lead Counsel also caused SCS to establish the dedicated Settlement Website, which became operational on November 7, 2025, to provide potential Settlement Class Members with information concerning the Settlement, including exclusion, objection, and claim-filing deadlines for the case; the online claim filing link; the date and time of the Settlement Hearing; and downloadable versions of the Notice and Claim Form, as well as copies of the Stipulation and Preliminary Approval Order. Bravata Decl. ¶12.

47.     SCS also maintains a toll-free telephone number for potential Settlement Class Members to call and obtain information about the Settlement and/or request a Long Notice and Claim Form. SCS promptly responds to each telephone inquiry and will continue to address potential Settlement Class Members' inquiries. *Id*. ¶11.

48.     As set forth above, the Notice informed potential Settlement Class Members that the deadline to submit objections to the Settlement, the proposed Plan of Allocation and/or the Fee Motion, or to request exclusion from the Settlement Class, is January 13, 2026. To date, no requests for exclusion have been received. *Id*. ¶13. Lead Plaintiffs will file a supplemental affidavit from SCS after the January 13, 2026 deadline addressing whether any requests for exclusion have been received.

49.     In addition, to date, no objections to the Settlement, the Plan of Allocation, and/or the Fee Motion have been received by Lead Counsel, Defendants' Counsel, or SCS. *Id*. ¶14. Lead Plaintiffs' reply papers in support of the Final Approval Motion and the Fee Motion, which are due on February 3, 2026, will address any objections that may be received.

15

## V.    RISKS LEAD PLAINTIFFS FACED IN THE ACTION

50.    The proposed Settlement eliminates significant risks posed by continuing litigation, including the potential risk that the Settlement Class would recover nothing or an amount significantly less than the $7,750,000 negotiated here. Further, while Lead Plaintiffs believe that the claims asserted against Settling Defendants are meritorious, they recognize that there are significant hurdles to overcome to prove their case as litigation continues to summary judgment and trial. Lead Plaintiffs faced considerable risks and obstacles to achieving a greater recovery, had the case continued. Lead Plaintiffs and Lead Counsel carefully considered these challenges during the months leading up to mediation and were mindful of such risks during settlement discussions with Settling Defendants. In addition, even if Lead Plaintiffs were able to overcome the risks to establishing falsity and scienter, they faced very serious risks in proving loss causation and damages.

### A.    Risks Concerning Liability

51.    In order to establish Settling Defendants' liability at trial, Lead Plaintiffs would need to prove that Defendants made material misstatements or omitted material facts necessary to make their statements not misleading. Defendants would almost certainly argue at summary judgment and trial that the alleged misstatements or omissions concerning Axsome's manufacturing capabilities and its planned New Drug Application ("NDA") to the FDA for its drug candidate, AXS-07 were not materially false and misleading. If Defendants produced discovery and/or adduced testimony that, in the Court's view, disproved Lead Plaintiffs' allegations of falsity, the Settlement Class would receive nothing.

52.    Although the Settling Defendants' motion to dismiss was denied, pleading a case is not the same as proving a case. As litigation continued, Settling Defendants would put forth arguments that they did not make any false and materially misleading statement. For instance,

Settling Defendants would argue at summary judgment and trial that their alleged statements and omissions were inactionable because they were not material to a reasonable investor, and because Settling Defendants publicly warned of the risks at issue or the truth was on the market. Settling Defendants would also argue that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. Thus, Settling Defendants could potentially wipe out Lead Plaintiffs' claims at summary judgment or trial leaving Axsome investors with no recovery.

53.     For these reasons, Lead Plaintiffs faced a substantial risk that the Court or a jury would have concluded that the alleged misstatements were not materially false or misleading.

**B.      Risks Related to Loss Causation and Damages**

54.     Even if Lead Plaintiffs overcame the above risks and successfully established liability, Settling Defendants would likely argue that there are no recoverable damages or that damages are minimal.

55.     Lead Plaintiffs' damages expert has estimated that maximum aggregate class-wide damages are approximately $98.4 million. This figure encompasses all claims asserted in the Second Amended Complaint. Should litigation continue, Settling Defendants would contest that the damages figure is significantly less, or even zero.

56.     Defendants would certainly assert such arguments at class certification, summary judgment, and/or trial, and would proffer expert evidence purporting to establish that the decline in the price of Axsome's common stock on April 25, 2022—the single corrective disclosure date at issue in this action—was unrelated to the alleged misstatements. For instance, the Settling Defendants would likely argue that the FDA's Complete Response Letter ("CRL") with respect to the AXS-07 NDA did not reveal the specific manufacturing problems alleged in the SAC and that the entire stock drop could not be attributed to the news about AXS-07 because a large portion of

Axsome's stock price decline was attributable to the market's extrapolation of the news about the AXS-07 CRL to Axsome's other lead therapy at the time. Lead Plaintiffs would then be compelled to proffer their own expert evidence to rebut Settling Defendants' evidence. The inherently uncertain outcome of this "battle of the experts" would pose a risk to Lead Plaintiffs' ability to recover the full amount of alleged damages, or even *anything* at all, for the Settlement Class, even if Lead Plaintiffs were able to prove that Defendants made material misstatements.

### C.    Risks Related to Class Certification

57.    Given the loss causation arguments asserted in their motions to dismiss and their readiness to contest the addition of new lead plaintiffs in the SAC, Settling Defendants would assuredly have aggressively contested price impact and Plaintiff-specific issues at class certification. (ECF Nos. 58 at 1-2; 74; 80 at 24-25). While Lead Plaintiffs believe they had strong arguments that the Settlement Class meets the requirements for class certification, there is no guarantee that the Court would agree. As such, there is a substantial risk that the Settlement Class would not be certified had the litigation continued and, even if it were certified, it could have been decertified at a later stage of the proceedings.

## VI.    THE PLAN OF ALLOCATION

58.    Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Claim Form, including all required information, by February 3, 2026. Bravata Decl., Ex. A (Long Notice and Claim Form) at 2, 5. As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Costs, and Taxes and Tax Expenses, the balance of the Settlement Fund will be distributed according to the Plan of Allocation, if approved by the Court. *Id*. at 4.

59.     The proposed Plan of Allocation, which is set forth in full in the Long Notice (*id*. at Exhibit 1, pp. 11-12), was designed to achieve an equitable and rational distribution of the Net Settlement Fund, but it is not a damages analysis that would be submitted at trial. Lead Counsel developed the Plan of Allocation in close consultation with Lead Plaintiffs' damages expert, and believe that the plan provides a fair and reasonable method for equitably distributing the Net Settlement Fund among Authorized Claimants.

60.     Under the Plan of Allocation, a "Recognized Loss" is calculated for each purchase of Axsome common stock. When calculating Recognized Losses pursuant to the Exchange Act, the Plan of Allocation's computation of the estimated alleged artificial inflation is based on the misrepresentations alleged by Lead Plaintiffs and the decline in the price of the stock, net of market- and industry-wide factors, on the corrective disclosure date.

61.     The Claims Administrator, under Lead Counsel's direction, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Claim compared to the aggregate Recognized Claims of all Authorized Claimants. Calculation of Recognized Claims will depend upon several factors, including when the Authorized Claimant purchased Axsome common stock during the Class Period, whether the stock was sold and, if so, when.

62.     Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will distribute the Net Settlement Fund. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of initial distribution, Lead Counsel will, if cost effective, re-distribute the balance among Authorized Claimants who have cashed their checks. These re-distributions will

be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not cost effective to reallocate, after payment of any outstanding Notice and Administration Costs or Taxes and Tax Expenses, will be contributed to a 501(c)(3) organization designated by Lead Plaintiffs. Stipulation ¶28.

63.    In sum, the proposed Plan of Allocation, developed in consultation with Lead Plaintiffs' damages expert, is designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Lead Plaintiffs and Lead Counsel believe the proposed Plan of Allocation is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

## VII.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

64.    In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel is applying for a fee award of 30% of the Settlement Amount, plus interest at the same rate earned by the Settlement Fund. Lead Counsel also request reimbursement of Litigation Expenses from the Settlement Fund in the amount of $146,553.93. The requested Litigation Expenses are well below the maximum amount of $250,000 in set forth in the Notice. The legal authorities supporting these requests are set forth in the memorandum of law in support of the Fee Motion filed contemporaneously herewith. The primary factual bases for the requested fee and reimbursement of Litigation Expenses are summarized below and in the Exhibits discussed below.

### A.    The Favorable Outcome Achieved is the Result of the Significant Time and Labor That Lead Counsel Devoted to the Action

65.    Lead Counsel spent considerable time prosecuting the Action on behalf of Settlement Class. Among other things, Lead Counsel:

(i)    drafted the initial complaint in the Action (ECF No. 1) and moved for the appointment of the original lead plaintiffs and Lead Counsel (ECF Nos. 8-14);

(ii)      conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, and earnings conference call transcripts, and interviewing former employees of Axsome;

(iii)     drafted and filed a detailed 60-page Amended Complaint (ECF No. 37);

(iv)     consulted with a damages expert to evaluate recoverable losses and an FDA regulatory expert to evaluate issues related to FDA approval;

(v)      researched and opposed Defendants' motion to dismiss the Amended Complaint (ECF Nos. 46-47);

(vi)     moved for the appointment of Lead Plaintiffs and re-appointment of Lead Counsel after the Court reopened the lead plaintiff appointment process (ECF Nos. 67-70);

(vii)    sought leave to amend (ECF Nos. 73-75);

(viii)   drafted and filed a 69-page the operative SAC that addressed the Court's loss causation concerns (ECF No. 76);

(ix)     opposed Defendants' motion to dismiss the SAC and successful opposed Settling Defendants' motion to dismiss the SAC (ECF Nos. 84-86, 90);[4]

(x)      drafted and served party discovery requests to Settling Defendants and responses to Settling Defendants' requests, including initial disclosures, requests for production of documents, and interrogatories, followed by substantial written correspondence and meet-and-confer calls with counsel for Settling Defendants regarding the scope of Settling Defendants' and Lead Plaintiffs' document productions;

(xi)     served and extensively pursued third-party discovery requests from the FDA;

(xii)    engaged a market efficiency expert and submitted a class certification pre-motion letter (ECF No. 114);

(xiii)   engaged in the mediation process overseen by a highly experienced third-party mediator, Mr. Melnick, which involved an exchange of

---

[4] The SAC was based on the same core allegations as the prior Amended Complaint, tailored to the Court's narrow concerns on the issue of loss causation and containing additional factual allegations based on recent developments that bolstered Lead Plaintiffs' claims. All of Lead Counsel's efforts in connection with the Amended Complaint, the SAC, and Defendants' motions to dismiss therefore contributed to the successful resolution of this action.

comprehensive written submissions and a full-day formal mediation session;

(xiv)   participated in extensive post-mediation follow up settlement discussions;

(xv)    drafted and negotiated the terms of the Stipulation (including the exhibits thereto) (ECF No. 117-1) and Supplemental Agreement with Settling Defendants' Counsel;

(xvi)   worked with a damages expert to craft the Plan of Allocation that treats Lead Plaintiffs and all other members of the proposed Settlement Class fairly;

(xvii)  drafted the Preliminary Approval Motion and supporting papers (ECF Nos. 115-17);

(xviii) implemented changes to the settlement documents in accordance with the Court's instructions at the Preliminary Approval hearing (ECF No. 121)

(xix)   oversaw the Notice of the Settlement to Class Members; and

(xx)    prepared the Final Approval Motion, along with all supporting documents and declarations.

66.     Pomerantz expended a total of 1,111.48 hours in the investigation and prosecution of this Action, resulting in a lodestar of $1,031,449. *See* Exhibit 5 (Declaration of Michael Grunfeld Regarding Attorneys' Fees and Expenses) ("Grunfeld Fee Decl.") ¶3 and Ex. A thereto. Rosen Law expended a total of 626.40 hours in the investigation and prosecution of this Action, resulting in a lodestar of $860,972. Exhibit 6 (Declaration of Erica L. Stone Regarding Attorneys' Fees and Expenses) ("Stone Fee Decl.") ¶3 and Ex. A. thereto. Paskowitz Law expended a total of 92 hours in the investigation and prosecution of this Action, resulting in a lodestar of $85,100. Exhibit 7 (Declaration of Laurence D. Paskowitz Regarding Attorneys' Fees and Expenses) ("Paskowitz Fee Decl.") ¶4. Jointly, Pomerantz, Rosen Law, and Paskowitz Law expended 1,829.88 hours in the investigation and prosecution of the Action, resulting in a lodestar of $1,977,521. These figures exclude time spent on the request for attorneys' fees and expenses. The

requested fee amount of 30% of the Settlement Fund. A 30% fee would amount to $2,325,000, plus interest, and therefore represents a total lodestar multiplier of approximately 1.18.

67.    Lead Counsel will expend additional time and resources assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion, and overseeing the distribution process. They will not be seeking compensation for the additional time spent on these important tasks.

### B.    Lead Counsel Bore Significant Risks Prosecuting the Action

68.    This prosecution was undertaken by Lead Counsel on an entirely contingent-fee basis. From the outset, there was no guarantee that Lead Counsel would ever be compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and that the considerable litigation costs required by a litigation like this one were covered. Upon Lead Counsel's involvement in the Action, it was unknown how long litigation would last. With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Pomerantz and Rosen Law received no compensation during the course of the Action and incurred $146,553.93 in out-of-pocket litigation-related expenses. Grunfeld Fee Decl. ¶5; Stone Fee Decl. ¶5. A significant portion of the out-of-pocket litigation-related expenses were incurred for professional services rendered by Lead Plaintiffs' experts, investigator, and the mediator, and the remaining expenses are attributable to the legal and factual research, travel, service of process, and other expenses incurred in the course of the litigation.

### C.    The Magnitude and Complexity of the Action

69.    As detailed in the Fee Motion, securities class action cases are known for their complexity. This case was no different.

70.    As discussed above, the Action involved two amended complaints, several motions to dismiss, substantial discovery efforts, and preparation for class certification.

71.    This case would only grow more complex were it to continue, with the prospect of continued discovery and expert testimony concerning the regulatory drug approval process by the FDA, and disputes regarding damages and loss causation.

### D.    The Quality of the Representation

72.    Pomerantz and Rosen Law are nationally recognized securities litigation firms. Their attorneys are highly experienced in this area of the law and have proven themselves time and again to be successful investor advocates. Indeed, both firms have substantial experience in litigating securities class actions and have negotiated numerous other class settlements, which have been approved by courts in the Second Circuit and throughout the country. Their knowledge and experience benefited Lead Plaintiffs and the Settlement Class in this case, as evidenced by the recovery they achieved.

73.    Additional information about each firm's experience is contained within the firm resumes, which are attached to the respective declarations concerning attorneys' fees and expenses. Ex. C to Ex. 5 (Pomerantz resume); Ex. C to Ex. 6 (Rosen Law resume), Ex. A to Ex. 7 (Paskowitz Law resume).

74.    The quality of the work performed by Lead Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition. Here, Defendants were represented by Morgan, Lewis & Bockius LLP, a well-known law firm that vigorously represented the interests of their clients throughout the Action. Indeed, from past experience, Lead Counsel

knows firsthand that Defendants' Counsel will zealously advocate for their clients through class certification, summary judgment, trial, and appeals. In the face of this experienced and formidable opposition, Lead Counsel was nonetheless able to persuade Settling Defendants to settle the case on terms favorable to the Settlement Class.

### E.    The Requested Fee in Relation to the Settlement

75.    The amount of the fee requested, 30% of the Settlement Amount, plus interest thereon at the same rate earned by the Settlement Fund, is fair and reasonable. As discussed in the Fee Motion, courts routinely award fees of 30% in securities class action settlements of this magnitude, and a lodestar "cross-check" confirms the reasonableness of the attorneys' fees requested by Lead Counsel here.

### F.    Interest of Public Policy, Including the Need to Ensure the Availability of Experienced Counsel in High-Risk Contingent Securities Case

76.    Courts have consistently recognized that it is in the public interest to have vigorous private enforcement of the federal securities laws. If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action. Relatedly, it is long-recognized public policy that settlement is to be encouraged, including the resolution of fee applications that fairly and adequately compensate the counsel who bear the risks and dedicate the time, financial investment, and expertise necessary to achieve those settlements.

### G.    The Reaction of the Settlement Class Supports Lead Counsel's Fee Request

77.    As noted above, as of January 6, 2026, 75,036 copies of the notice were sent to potential Settlement Class Members. Bravata Decl. ¶8. In addition, the Court-approved Summary Notice was transmitted over *GlobeNewswire*. *Id.* ¶10. To date, no requests for exclusion and no

objections to the Settlement, Plan of Allocation, or attorneys' fees have been received. *Id*. ¶¶12-13. To date, no objections to the maximum potential attorneys' fees request set forth in the Notice have been received by SCS or Lead Counsel. Any objections received after the date of this filing will be addressed in Lead Plaintiffs' reply papers, which are due by February 3, 2026. Furthermore, any persons who have validly requested exclusion from the Settlement Class will be identified in a [Proposed] Final Order and Judgment, the form of which was previously submitted as Exhibit B to the Stipulation.

**H.        Lead Plaintiffs Support Lead Counsel's Fee Request**

78.        As set forth in their declarations submitted herewith, Lead Plaintiffs Giblin, Berger, and Sutherland support Lead Counsel's requested fee as fair and reasonable based on the work performed and the recovery obtained for the Settlement Class. *See* Ex. 2 (Declaration of Thomas Giblin) ("Giblin Decl.") ¶10; Ex. 3 (Declaration of Paul Berger) ("Berger Decl.") ¶10; Ex. 4 (Declaration of Paul Sutherland) ("Sutherland Decl.") ¶10.

79.        Lead Plaintiffs have been intimately involved in the prosecution and resolution of this Action, and their endorsement of Lead Counsel's fee request supports the reasonableness of the request.

**I.        Reimbursement of the Requested Litigation Expenses is Fair and
        Reasonable**

80.        The Long Notice, Summary Notice, and Postcard Notice informed potential Settlement Class Members that Lead Counsel would be seeking reimbursement of Litigation Expenses in an amount not to exceed $250,000. As set forth in the Grunfeld Fee Decl. (Ex. 5 hereto) and the Stone Fee Decl. (Ex. 6 hereto), Pomerantz and Rosen Law incurred $124,498.29 and $22,055.64 in Litigation Expenses, respectively, for a total of $146,553.93.

81.    This amount, for which Lead Counsel seeks reimbursement from the Settlement Fund, is well below the $250,000 maximum amount set forth in the Notice to Settlement Class Members. To date, no Settlement Class Members have objected to the maximum amount set forth in the Notice. If any objection to the request for reimbursement of Litigation Expenses is made after the date of this filing, it will be addressed in Lead Plaintiffs' reply papers, which are due by February 3, 2026.

82.    From the beginning of the Action, Lead Counsel understood that, even assuming the case was ultimately successful, eventual reimbursement for expenses would not compensate them for inability to use those funds for other purposes in the interim. Accordingly, Lead Counsel were motivated to, and did, take steps to ensure that all expenses were reasonable and necessary to prosecute the case.

### J.    Awards to Lead Plaintiffs Pursuant to the PSLRA

83.    Lead Counsel request awards to Lead Plaintiffs, pursuant to the PLSRA, 15 U.S.C. § 78u-4(a)(4), for the time they devoted to the representation of the Settlement Class, in the amount of $7,875 for Giblin, $7,500 for Berger, and $6,720 for Sutherland, for a total of $22,095. Lead Plaintiffs were highly motivated to, and did, work closely with Lead Counsel throughout the Action to secure the highest possible recovery for themselves and the Settlement Class. Instead of devoting their time to their professional endeavors, as detailed in their declarations, Lead Plaintiffs: (i) regularly communicated with Lead Counsel regarding the posture and progress of the case, as well as strategy; (ii) reviewed all significant pleadings and briefs filed in the Action; (iii) responded to interrogatories and document requests; (iv) collected and produced documents to their counsel; (iv) consulted with Lead Counsel regarding the settlement negotiations; and (v) evaluated and approved the proposed Settlement. Ex. 2 (Giblin Decl.); Ex. 3 (Berger Decl.); Ex. 4 (Sutherland

Decl.). The requested awards to Lead Plaintiffs fall well within the noticed cap of $30,000, to which no Settlement Class Members have objected.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of January, 2026 at New York, New York.

*/s/ Michael Grunfeld*
Michael Grunfeld